UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SIMRET SEMERE TEKLE,<br><br>    *Plaintiff*,<br><br>v.<br><br>NOUF BIN NAYEF ABUL-AZIZ AL SAUD<br>MOHAMMAD BIN ABDULLAH AL SAUD<br><br>    *Defendants*. | Case No.:  1:18cv211<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Simret Semere Tekle, by and through her undersigned counsel, files this Complaint against Nouf bin Nayef Abul-Aziz Al Saud and Mohammad Bin Abdullah Al Saud.  In support thereof, she alleges the following:

**INTRODUCTION**

1.  Plaintiff Simret Semere Tekle, a citizen of Eritrea, brings this action for damages resulting from human trafficking and forced labor in the United States.  The Defendants, members of the Saudi royal family, recruited Ms. Tekle to work as a nanny in the United States. They promised her excellent wages and a legal job.  Ms. Tekle agreed to move to Virginia.  But instead of the decent salary and reasonable working conditions guaranteed in her contract, Ms. Tekle found herself held in forced labor as a domestic servant.

2.  Defendants Nouf bin Nayef Abul-Aziz Al Saud (hereinafter "Defendant Mrs. Al Saud"), and Mohammad bin Abdullah Al Saud (hereinafter "Defendant Mr. Al Saud") are wealthy and influential members of the Saudi royal family. Defendants held Ms. Tekle in their homes in Saudi Arabia and the United States, forcing her to work long hours each day for meager, illegal wages.  Defendants imprisoned Ms. Tekle in their compound, subjecting her to

threats and psychological abuse. The heavy physical labor and psychological abuse that Ms. Tekle endured caused both physical and mental harm. Ms. Tekle is entitled to the agreed-upon pay for her labor. She is also entitled to damages.

## PARTIES

3. Simret Semere Tekle is a citizen of Eritrea who currently resides in Virginia.

4. Upon information and belief, Defendant Nouf bin Nayef Abul-Aziz Al Saud is a resident of Virginia and a citizen of Saudi Arabia. Defendant Mrs. Al Saud is the daughter of Maha bint Mohammed bin Ahmad Al Sudairi (hereinafter "Princess Maha") and the late crown prince Nayef bin Abdul-Aziz Al Saud. At all relevant times, Defendant Mrs. Al Saud was Ms. Tekle's employer.

5. Upon information and belief, Defendant Mr. Al Saud is a resident of Virginia and a citizen of Saudi Arabia. Defendant Mr. Al Saud is a member of the Saudi royal family. Defendants Mr. Al Saud and Mrs. Al Saud are married. At all relevant times, Defendants Mr. and Mrs. Al Saud were Ms. Tekle's employers. At the time of the events that gave rise to this Complaint, the Defendants resided at 1034 Aziza Court in Great Falls, Virginia.

## JURISDICTION AND VENUE

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 as this action involves questions of federal law; and 18 U.S.C. § 1595 as this action involves an offense under the federal Trafficking Victims Protection Act, 18 U.S.C. §§ 1584, 1589, 1590, 1592, and 1596, as the offender is present in the United States, irrespective of nationality.

7. This Court has supplemental jurisdiction over Ms. Tekle's state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

**Trafficking to Saudi Arabia for Forced Labor**

9. Simret Semere Tekle was born in Asmara, Eritrea, where she resided with her family.

10. After finishing high school, Ms. Tekle was unable to find work in Eritrea to support her family. Ms. Tekle's aunt, who worked for the Saudi royal family for 40 years, offered to help Ms. Tekle find a job in Saudi Arabia. The aunt arranged for Ms. Tekle to work as a maid in the household of Princess Maha in Saudi Arabia. Ms. Tekle has a high school education. At the time, she spoke Tigrinya. Ms. Tekle could speak, understand, and read very little English.

11. In 2008, Ms. Tekle traveled from Eritrea to Saudi Arabia.

12. Princess Maha was a demanding and difficult employer. She enforced a system of rules meant to make Ms. Tekle and other staff members believe that they were inferior. Ms. Tekle was instructed to never look her employer in the eye. She was not permitted to approach her employer unless summoned. If Ms. Tekle wished to speak with Princess Maha, she was required to bow and kiss Princess Maha's hands. Princess Maha told Ms. Tekle and other staff that they were like "toilet shoes" and should know their place.

**Recruitment and Trafficking to the United States**

13. In 2011, Princess Maha's daughter, Defendant Mrs. Al Saud, came to visit her family in Saudi Arabia from the United States. Defendant Mrs. Al Saud offered Ms. Tekle a position as a nanny for one of her three children in the United States. Ms. Tekle was told that she

would work forty hours per week, with two full days off per week, and earn $4,500.00 per month. This represented a significant raise for Ms. Tekle. Ms. Tekle also believed that her working conditions would be better in the United States than the conditions she faced in Saudi Arabia. Ms. Tekle planned to use the extra money to help her family in Eritrea. Relying on Defendant Mrs. Al Saud's assurances and promises regarding the terms and conditions of employment, Ms. Tekle agreed to go to the United States.

14. In Saudi Arabia, an aide to Princess Maha's family arranged for Ms. Tekle's visa paperwork and travel arrangements. This aide gave Ms. Tekle a contract to sign. The contract was in Arabic, a language that Ms. Tekle could not read. She did not receive a copy of the contract.

15. In order to receive a U.S. visa, Ms. Tekle was interviewed by an official at the U.S. Consulate in Jeddah, Saudi Arabia. Employees of the Saudi royal family escorted Ms. Tekle to her visa interview.

16. On information and belief, Defendants falsely represented to the American consular authorities in Jeddah, Saudi Arabia that Ms. Tekle would be compensated at a lawful rate for childcare services in the United States and that she would be provided with legally acceptable conditions of employment. As members of a royal family, the Defendants were eligible to bring a domestic worker to the United States on an A-3 visa, a category also used for the domestic workers of diplomats.

17. Ms. Tekle was granted an A-3 visa in September 2011.

18. A member of the Saudi military escorted Ms. Tekle from Saudi Arabia to the United States. This escort held her passport the entire time. The only time that Ms. Tekle had possession of her passport was to provide it to a U.S. customs official at Dulles International

Airport. Ms. Tekle was then taken to the family's compound in Great Falls, Virginia. Ms. Tekle's escort did not return her passport, and she did not know where it was stored.

19. Upon her arrival at the home, Defendant Mrs. Al Saud told Ms. Tekle that she had paid a lot of money to bring Ms. Tekle to the United States and that Ms. Tekle should be grateful.

20. At the time of Ms. Tekle's arrival, she felt completely isolated. She had no contact with family members or friends living in the United States.

**Forced Labor and Exploitation in the United States**

21. When Ms. Tekle arrived in Great Falls, she was told that she would work as a domestic worker, not a nanny as originally promised. The Defendants employed two other domestic workers, as well as two caretakers for each of the three children, a total of six.

22. Ms. Tekle received orders from three of Defendant Mrs. Al Saud's personal aides: Milen, Frail, and Faisa. These aides accompanied and attended to Defendant Mrs. Al Saud. Ms. Tekle was not permitted to speak directly to Defendant Mrs. Al Saud. Upon information and belief, Milen, Frail, and Faisa are agents of Defendants.

23. Ms. Tekle was immediately put to work. Ms. Tekle performed a heavy load of housekeeping duties in addition to helping the nannies care for the Defendants' three children. In return, Defendants paid Ms. Tekle only meager wages, a tiny fraction of the amount they had promised in the contract.

24. On a typical work-day, Ms. Tekle would wake at 5:30 A.M. and begin cleaning the house. Ms. Tekle would also wash and iron the family's clothing and laundry. The family required that their bed linens be washed and ironed on a daily basis. In addition to these duties,

Ms. Tekle was required to assist both the cook and the nannies. Ms. Tekle usually worked until after 9:00 P.M. Ms. Tekle was also on-call during the night.

25. Ms. Tekle lived in the Defendants' home and was on-call to serve her employers at all hours.

26. The family frequently traveled. The travel meant more work for Ms. Tekle. She packed and carried the family's bags – each child traveled with several suitcases. In addition, Ms. Tekle cared for the children on these trips. She worked non-stop on the family's vacations. During the trips, Ms. Tekle's passport remained in the possession of her employers at all times. She was never alone.

27. As a result of this physical labor, Ms. Tekle developed chronic back pain which persists today. At times Ms. Tekle could not sleep because the pain was so severe. Ms. Tekle asked Defendant Mrs. Al Saud's personal aide several times if she could see a doctor, but never received a response.

**Failure to Pay Promised Wages**

28. Defendants did not pay Ms. Tekle her promised salary. Ms. Tekle only received $400.00 to $500.00 per month in cash. This was significantly less than the promised wage of $4,500.00 per month. After several months, Ms. Tekle attempted to complain about her lower wages and treatment to Defendant Mrs. Al Saud, but Mrs. Al Saud instructed Ms. Tekle to speak to one of her aides. Ms. Tekle complained to the aides repeatedly about her treatment, but they told Ms. Tekle not to complain because her salary was more than she had been paid in Saudi Arabia.

29. When Ms. Tekle inquired about her heavy workload and illegal wages, one of the Defendants' aides told her that that the Defendants had lied to bring Ms. Tekle to the United States on an A-3 visa.

30. Ms. Tekle consistently worked more than 80 hours each week.

31. Ms. Tekle was held in forced labor in the United States for seven months, working morning to night, seven days a week, with no days off. For this entire period, Defendants paid Ms. Tekle just $3,000.00, or approximately $1.13 per hour.

**Psychological Abuse, Disparagement, and Humiliation**

32. Defendants treated Ms. Tekle in an abusive manner intended to make her feel inferior. Defendants' agents instructed Ms. Tekle not to look the Defendants in the eye or approach them without being summoned. Ms. Tekle was terrified of the Defendants.

33. Defendants' agents repeatedly abused, demeaned, and humiliated Ms. Tekle. Ms. Tekle was subjected to constant verbal abuse and called offensive names in Arabic, including "whore", "colored", "donkey", and "garbage." Ms. Tekle was also reprimanded if she spoke with a man.

34. On at least three occasions, Defendant Mrs. Al Saud was in the same room and within hearing distance when her aides verbally abused Ms. Tekle.

**Enforced Isolation**

35. Defendants restricted Ms. Tekle's contact with the outside world for the purpose of keeping her in a situation of coerced labor and involuntary servitude.

36. Defendant Mrs. Al Saud gave Ms. Tekle several ground rules when she first arrived at the residence. Ms. Tekle was prohibited from leaving the residence without an escort. She was forbidden from interacting with people outside the residence, and told that she could

never run away. Defendant Mrs. Al Saud told Ms. Tekle that she would be attacked by Americans if she went outside alone. When she was allowed outside to shop or run errands for the family, Ms. Tekle was always accompanied by another staff member. Defendant Mrs. Al Saud instructed Ms. Tekle not to speak to anyone when she was outside the residence.

37. Defendant Mrs. Al Saud told Ms. Tekle that her activities would be closely monitored at all times. Defendant Mrs. Al Saud and her agents showed Ms. Tekle surveillance cameras placed throughout the residence, including a camera in Ms. Tekle's bedroom. Defendant Mrs. Al Saud indicated that these cameras were monitored at all times by security personnel. The cameras and constant monitoring caused Ms. Tekle to feel anxious, afraid, and uncomfortable. Ms. Tekle would dress and undress in her bathroom to avoid being seen by the camera in her bedroom. She felt that she could not escape.

38. Defendant Mrs. Al Saud also told Ms. Tekle the residence was guarded by armed security, threatening that Ms. Tekle would be arrested and deported if she tried to run away. Ms. Tekle could see herself that the compound was guarded by armed men.

39. On one occasion, Ms. Tekle left the house to attend church services with a fellow-employee. When Defendant Mrs. Al Saud found out that Ms. Tekle had left the compound, she became angry. She reminded Ms. Tekle that she could not leave the residence, even for church services, and forbade Ms. Tekle from attending church.

**Abuse of Legal Process**

40.     Defendants and their agents abusively threatened Ms. Tekle with legal consequences for the purpose of keeping her in a situation of forced labor and involuntary servitude.

41.     Defendants led Ms. Tekle to believe that, if she did not continue working in involuntary servitude, she would suffer serious legal harm.  The day Ms. Tekle arrived, Defendant Mrs. Al Saud told her that she would be arrested and deported if she ran away.

42.     Defendant Mrs. Al Saud verbally abused and threatened a kitchen staff member with deportation in the presence of Ms. Tekle.  Defendant Mrs. Al Saud was aware that Ms. Tekle was present and witnessed the threats.

43.     Defendants' personal aides also conveyed Defendant Mrs. Al Saud's threats to Ms. Tekle.  Whenever Ms. Tekle complained about her work to Defendants' aides, they would relay these complaints to Defendant Mrs. Al Saud.  Through these aides, Defendant Mrs. Al Saud would threaten Ms. Tekle with deportation if she continued to complain.

44.     Stripped of her passport, believing herself to be alone in the United States, and facing threats of arrest or deportation, Ms. Tekle remained in the Defendants' home and continued working against her will.  Ms. Tekle was effectively trapped in the employ of the Defendants.

**Escape from Defendants' Compound**

45.     While in the Defendants' compound, Ms. Tekle spoke with her mother on just three occasions.  About a month before Ms. Tekle fled, her mother told her that relatives lived in Northern Virginia.  Ms. Tekle had never met these relatives and did not know that they were living in the United States.

46. Ms. Tekle contacted her relatives and described her working conditions. Her relatives encouraged her to leave and offered her refuge. Ms. Tekle was afraid and feared reprisals from the Defendants if she left.

47. One day, Ms. Tekle was sent out to run errands for the family at the local mall. As usual, Ms. Tekle was escorted by one of the family's drivers, who was instructed to accompany her everywhere. On this excursion, the driver told Ms. Tekle that he had other work to do and that he would meet her back at the mall.

48. Ms. Tekle seized the driver's unexpected departure as an opportunity to call her relatives in Northern Virginia, who gave Ms. Tekle their address. Ms. Tekle fled with only the clothes on her back.

49. Following her escape, Ms. Tekle remained terrified that the Defendants would find her. She rarely left the house. Ms. Tekle suffered nightmares and frequently woke up screaming.

## SUSPENSION OF STATUTES OF LIMITATION

50. Any statute of limitations relating to the causes of action alleged in this complaint on behalf of Ms. Tekle has been suspended and equitably tolled for the period of Ms. Tekle's coerced labor and involuntary servitude and for a reasonable time period following her escape. Ms. Tekle was unaware of her rights and unable to seek appropriate remedies, including the filing of a lawsuit, during such time period as a result of the Defendants' statements and actions.

## FIRST CLAIM FOR RELIEF

**Trafficking With Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor in Violation of 18 U.S.C. § 1590**

51. Ms. Tekle realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

52. As alleged herein, Defendants knowingly recruited, harbored, transported, provided and/or obtained Ms. Tekle, bringing her to the United States from Saudi Arabia, for the purpose of involuntary servitude and forced labor in violation of 18 U.S.C. § 1590. Ms. Tekle is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

53. Defendants recruited Ms. Tekle with false promises of good working conditions and wages in the United States, transported Ms. Tekle to the United States, and harbored Ms. Tekle in their residence, all for the purpose of forced labor and involuntary servitude.

54. As a direct and proximate result of Defendants' actions, Ms. Tekle has suffered severe emotional distress, physical injuries, and economic losses.

55. Ms. Tekle is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## SECOND CLAIM FOR RELIEF

**Forced Labor in Violation of 18 U.S.C. § 1589**

56. Ms. Tekle realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

57. Defendants knowingly obtained Ms. Tekle's forced and coerced labor through a scheme, plan, pattern and practice of physical and psychological abuse; enforced isolation; threats of serious harm; physical restraint; and threatened abuse of legal process, in violation of

18 U.S.C. § 1589. Ms. Tekle is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

58. Defendants confiscated Ms. Tekle's passport; isolated her; psychologically abused her; and warned her that if she ever tried to escape, she would be arrested and/or deported.

59. Defendant Mrs. Al Saud subjected Ms. Tekle to threats and psychological abuse designed to demean Ms. Tekle and prevent her from seeking help from authorities or others who could have assisted her in leaving Defendants' compound.

60. Defendants and their agents repeatedly threatened Ms. Tekle with arrest and deportation. Because of the abuse she had suffered at the hands of Princess Maha in Saudi Arabia, Ms. Tekle was highly vulnerable to Defendants' threats. Defendants exploited her vulnerability. Defendants were aware that Ms. Tekle feared deportation to her home country of Eritrea. Defendants threatened Ms. Tekle with deportation with the intention and design of coercing Ms. Tekle to remain in their home, to continue her work for them, and to prevent her from seeking the help of law enforcement or reporting the offenses against her.

61. Defendants knowingly benefited from Ms. Tekle's labor and services because they did not compensate her as the law requires.

62. As a direct and proximate result of the actions of the Defendants, Ms. Tekle has suffered severe emotional distress, physical injuries, and economic losses.

63. Ms. Tekle is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## THIRD CLAIM FOR RELIEF

**Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. § 1592**

64. Ms. Tekle realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

65. Defendants knowingly removed, confiscated, concealed and possessed Ms. Tekle's actual passport. Defendants removed, confiscated, concealed, and possessed Ms. Tekle's passport in order to prevent or restrict Ms. Tekle's liberty to move or travel for the purpose of subjecting her to involuntary servitude and forced labor, in violation of 18 U.S.C. § 1592. Ms. Tekle is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

66. As a direct and proximate result of the actions of the Defendants, Ms. Tekle has suffered severe emotional distress, physical injuries, and economic losses.

67. Ms. Tekle is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## FOURTH CLAIM FOR RELIEF

**Involuntary Servitude in Violation of 18 U.S.C. § 1584**

68. Ms. Tekle realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

69. Defendants knowingly and willfully subjected Ms. Tekle to a condition of involuntary servitude for a period of seven months in the United States. Defendants forced Ms. Tekle to work long hours against her will, holding her in isolation and paying her a pittance for her services.

70. Defendants kept Ms. Tekle in a condition of involuntary servitude through physical, legal, and psychological coercion. Defendants confiscated Ms. Tekle's passport, isolated her from anyone who might be able to help her, falsely imprisoned her, psychologically abused her, and threatened her with legal retaliation (including arrest and/or deportation) should she attempt to escape.

71. Ms. Tekle was highly vulnerable to Defendants' threats and Defendants exploited her vulnerability. Defendants were aware that Ms. Tekle feared deportation to her home country of Eritrea.

72. Through the conduct of the Defendants, alleged herein, acting individually and in concert, these Defendants created and perpetuated a system of involuntary servitude, and led Ms. Tekle to reasonably believe she had no way of avoiding this servitude, in violation of 18 U.S.C. § 1584. Ms. Tekle is permitted to bring a civil cause of action under 18 U.S.C. § 1595.

73. As a direct and proximate result of the actions of the Defendants, Ms. Tekle has suffered severe emotional distress, physical injuries, and economic losses.

74. Ms. Tekle is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## FIFTH CLAIM FOR RELIEF

### Breach of Contract

75. Ms. Tekle realleges and incorporates by reference the allegations set forth above as if fully set forth herein.

76. Ms. Tekle, Defendant Mrs. Al Saud, and Defendant Mr. Al Saud entered into a valid, legally enforceable employment agreement in 2011, whereby Ms. Tekle agreed to work as a nanny in their home in the United States, and, in return, Defendants agreed to pay Ms. Tekle a

lawful, agreed-upon wage for her services. Ms. Tekle's duties were to include caring for one of Defendants' three children.

77. On information and belief, Ms. Tekle fully performed the terms of the agreement by working as a domestic worker and nanny in the Defendants' household.

78. Upon information and belief, the Defendants materially breached the contract by, *inter alia*, failing to pay the agreed amount, forcing Ms. Tekle to work more than forty-eight hours per week, forcing her to assume non-contractual duties such as housecleaning, subjecting her to harsh and abusive working conditions, confiscating her passport, refusing to allow Ms. Tekle to leave, and holding Ms. Tekle in involuntary servitude.

79. Upon information and belief, the Defendants willfully and wantonly breached their contract with Ms. Tekle, with a conscious disregard for Ms. Tekle's rights.

80. Upon information and belief, the Defendants withheld a copy of the contract from Ms. Tekle in an effort to obstruct her exercise of her rights under the contract.

81. As a direct and proximate result of the actions of the Defendants' breach of contract, Ms. Tekle has suffered severe emotional distress, physical injuries, and economic losses.

82. Ms. Tekle is therefore entitled to recover damages in an amount to be proven at trial, including attorneys' fees and other relief that the Court may deem proper.

## PRAYER FOR RELIEF

83. Ms. Tekle respectfully requests that judgment be entered in her favor against all Defendants and prays as follows:

84. Award Ms. Tekle damages in an amount to be calculated at trial including but not limited to the full amount of Ms. Tekle's losses for violation of federal laws including:

trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1590; forced labor in violation of 18 U.S.C. § 1589; unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1592; and involuntary servitude in violation of 18 U.S.C. § 1584.

85. Award Ms. Tekle punitive damages for Defendants' violation of the Trafficking Victims Protection Act. *See Doe v. Howard*, No. 1:11-cv-01105, 2012 WL 3834867, at *2 (E.D. Va. Sept. 4, 2012) (citing *Ditullio v. Boehm*, 662 F.3d. 1091, 1100 (9th Cir. 2011)).

86. Award Ms. Tekle compensatory and punitive damages in an amount to be calculated at trial for Defendants' breach of contract;

87. Award Ms. Tekle prejudgment and post judgment interest;

88. Award Ms. Tekle reasonable attorneys' fees, together with the cost and disbursement of this action; and

89. Grant such other relief as this Court deems just and proper.

## JURY DEMAND

90. Ms. Tekle respectfully demands a trial by jury of all issues for which she has a right to demand a trial by jury.

Dated: February 23, 2018

Respectfully submitted,

/s/ Nicholas Cooper Marritz

Richard F. Levy*
Jonathan A. Langlinais*
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
(202) 639-6000
rlevy@jenner.com

Nicholas Cooper Marritz, VSB #89795
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

Agnieszka M. Fryszman\*
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4000
afryszman@cohenmilstein.com

Le'ake Fesseha\*
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

*Counsel for Plaintiff Simret Semere Tekle*

*\*Motions for Admission Pro Hac Vice Pending*