**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| SIMRET SEMERE TEKLE          ) | |
|                         ) | |
|     *Plaintiff*,             ) | |
|                         ) | |
| v.                      ) | Case No.:    1:18-cv-00211 |
|                         ) | |
| NOUF BINT NAYEF ABUL-AZIZ AL SAUD and ) | |
| MOHAMMAD BIN ABDULLAH AL SAUD   ) | |
|                         ) | |
|     *Defendants*.          ) | |
| _____) | |

**DEFENDANTS' MEMORANDUM**
**IN SUPPORT OF THEIR MOTION TO DISMISS**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Nouf bint Nayef Abul-Aziz al Saud and Mohammad bin Abdullah al Saud ("Defendants"), by and through undersigned counsel, submit this memorandum in support of their motion to dismiss the Fifth Claim in the Amended Complaint (Dkt. 28) filed by Plaintiff Simret Semere Tekle ("Plaintiff"). Plaintiff's Amended Complaint alleges claims of Trafficking with Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor, in violation of 18 U.S.C. § 1590 (First Claim); Forced Labor, in violation of 18 U.S.C. § 1589 (Second Claim); Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor, in violation of 18 U.S.C. § 1592 (Third Claim); Involuntary Servitude, in violation of 18 U.S.C. § 1584 (Fourth Claim); and Breach of Contract (Fifth Claim).

Defendants assert categorically that *all* of Plaintiff's claims are false and without merit. However, only one of Plaintiff's claims is legally deficient, and subject to dismissal at this preliminary stage of the proceedings. For the reasons set forth below, Plaintiff's Fifth Claim

(Breach of Contract) is time-barred under the applicable statute of limitations, and, accordingly, should be dismissed with prejudice.   In addition, Plaintiff's Fifth Claim (Breach of Contract) is legally deficient because Plaintiff does not, and cannot, plead essential elements of a breach of contract claim.

## I.      BACKGROUND

Plaintiff alleges that she and Defendants entered into a written employment contract in 2011, under which she agreed to work as a nanny in Defendants' home in the United States in exchange for an agreed-upon wage.   Am. Compl. ¶¶ 19, 92.   Plaintiff further alleges that Defendants materially breached the contract by (1) failing to pay Plaintiff the contracted wage, (2) forcing Plaintiff to work more than eighty hours per week, (3) forcing Plaintiff to complete tasks not specified in the contract, (4) subjecting Plaintiff to harsh working conditions, and (5) refusing to allow Plaintiff to take time off.   *Id.* ¶ 94.   In her Amended Complaint, Plaintiff states that any statute of limitations relating to any of her causes of action has been suspended and equitably tolled for the period of her involuntary servitude and for a reasonable time period after she departed Defendants' home.   *Id.* ¶ 66.   What Plaintiff failed to state in her Original Complaint, but now concedes in her Amended Complaint, is that she left Defendants' home in April of 2012— over six years ago.   Because Plaintiff failed to bring her Fifth Claim within the five-year statute of limitations for breach of contract actions, her claim is time-barred and must be dismissed.   Va. Code Ann. § 8.01-246(2) (West 2018) ("In actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, [actions shall be brought] within five years whether such writing be under seal or not.").   In addition, the Fifth Claim fails to include essential elements of a breach of contract claim.

## II.      ARGUMENT

### A.      Plaintiff's Fifth Claim Is Barred By Va. Code § 8.01-246(2).

Plaintiff's Fifth Claim is time-barred due to Virginia's statute of limitations for breach of contract actions, which allows parties five years within which to bring their claims.  *Id.*  Under Virginia law, "actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, [must be brought] within five years whether such writing be under seal or not."  *Id.*  Plaintiff alleges that the employment contract was in writing and signed by both Plaintiff and (presumably) "the part[ies] to be charged" under the contract in this action—the Defendants.  Am. Compl. ¶ 19.

Plaintiff's Fifth Claim accrued, at the latest, when she left Defendants' home in April of 2012.  Under Va. Code § 8.01-230, "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run . . . when the breach of contract occurs in actions ex contractu." § 8.01-230; *see also Hanback v. DRHI, Inc.*, 94 F. Supp. 3d 753, 759 (E.D. Va. 2015) ("[A] cause of action for breach of contract accrues and the limitation period commences to run from the date of the alleged breach.") (internal quotation marks and citation omitted).  Any alleged breach in this case could have occurred no later than April of 2012.  Indeed, "Plaintiff's cause of action accrued no later than [April of 2012], because it was on that date that the [employment] contract was effectively terminated . . . ."  *See Cruz v. Maypa*, 981 F. Supp. 2d 485, 489 (E.D. Va. 2013), *rev'd on other grounds*, 773 F.3d 138 (4th Cir. 2014).

Under Va. Code § 8.01-246(2), Plaintiff had until April of 2017—five years after she left Defendants' home—to bring her breach of contract claim.  But Plaintiff filed her claim in February of 2018.  Plaintiff is nearly a year too late.  Accordingly, her Fifth Claim is time-barred and should be dismissed with prejudice.

**B.      Equitable Tolling Does Not Save Plaintiff's Claim.**

Plaintiff states in her Complaint that "[a]ny statute of limitations relating to the causes of action alleged in this complaint on behalf of [Plaintiff] has been suspended and equitably tolled for the period during which [Plaintiff] was held in forced labor and involuntary servitude and for a reasonable time period following her escape."  Am. Compl. ¶ 66.  Plaintiff's Fifth Claim is still time-barred.  Under Va. Code § 8.01-229(D), "[w]hen the filing of an action is obstructed by a defendant's . . . using any . . . direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought."  § 8.01-229(D).  A plaintiff who seeks to rely on Va. Code § 8.01-229(D) "must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action."  *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001).  To relieve the bar of the statute of limitations, a plaintiff must also establish that the defendant's conduct "ha[d] the effect of debarring or deterring the plaintiff from his action."  *Newman v. Walker*, 618 S.E.2d 336, 339 (Va. 2005) (citation omitted); *see also Mulvey Constr. Inc. v. Bituminous Cas. Corp.*, 571 F. App'x. 150, 156 (4th Cir. 2014) (unpublished) (explaining that when a defendant misleads a plaintiff into delayed filing . . . "there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action.") (citations omitted).

The Supreme Court of Virginia has held that, "[i]n light of the policy that surrounds statutes of limitation, the bar of such statutes should not be lifted unless the legislature makes unmistakably clear that such is to occur in a given case."  *Burns v. Bd. of Supervisors*, 315 S.E.2d 856, 859 (Va. 1984).  "Where there exists any doubt, it should be resolved in favor of the operation of the statute of limitations."  *Id.*

Because Plaintiff has not identified any affirmative act by the defendants that had the effect of deterring her from filing this action within five years, equitable tolling is not applicable, and Plaintiff's breach of contract claim is barred by the statute of limitations.

**1.      Neither Of The Newly Alleged Bases For Equitable Tolling Are Sufficient To Save Plaintiff's Otherwise Time-Barred Breach Of Contract Claim.**

Realizing that her breach of contract claim was likely to be dismissed, Plaintiff, instead of responding to Defendants' initial motion to dismiss, filed an Amended Complaint asserting two entirely new bases for equitable tolling not so much as mentioned in the Original Complaint. Specifically, Plaintiff alleges in her Amended Complaint: "[o]n information and belief," that "threats were made against Ms. Gebreyesus [(a friend of Plaintiff's mother)] at the Defendants' behest *or* as the result of the actions of the Defendants *or* their agents, and were made with the intention of preventing [Plaintiff] from filing suit."  Am. Compl. ¶ 64 (emphasis added).  Plaintiff further alleges, again "[o]n information and belief," that "Ms. Gebreyesus made several calls to [Plaintiff's] family asking about [Plaintiff's] whereabouts and intentions at the Defendants' behest *or* as the result of the actions of the Defendants *or* their agents, and were made with the intention of preventing [Plaintiff] from filing suit."  *Id.* ¶ 65 (emphasis added).

Plaintiff's new allegations, like the rest of her complaint, are entirely false.   Even if the newly manufactured allegations were true, however, they would not be sufficient to meet the standard for equitable tolling of the statute of limitations.

**a.      Supposed Threats Made *By* Plaintiff's "Aunt."**

To begin, Plaintiff's allegation that "Ms. Gebreyesus made several calls to [Plaintiff's] family asking about [Plaintiff's] whereabouts and intentions at the Defendants' behest or as the result of the actions of the Defendants or their agents, and were made with the intention of

preventing [Plaintiff] from filing suit" is insufficient to establish that Plaintiff is entitled to equitable tolling under Va. Code § 8.01-229(D).  *Id.* ¶ 65.

To be clear, Plaintiff does not allege that Ms. Gebreyesus communicated any explicit threat to her or her family.  Rather she alleges that Ms. Gebreyesus, "a friend of Ms. Tekle's mother" and a woman "Ms. Tekle has long referred to . . . as her 'aunt,'" Am. Compl. ¶ 11, called Ms. Tekle's mother "every few weeks . . . [to] inquir[e] about Ms. Tekle" after Ms. Tekle abruptly left Defendants' home and her host family without so much as a "goodbye,"  Am. Compl. ¶ 58.  These calls, Plaintiff alleges, "continued, with slightly *less* frequency over time."  *Id.* (emphasis added).  Essentially, Plaintiff alleges that she is entitled to equitable tolling of her otherwise time-barred claim because her "aunt" called sporadically to check for news regarding her "niece" who, having just left Defendants' home, was presumably alone and unemployed in a foreign country, the national language of which she (allegedly) did not speak.  Inexplicably, Ms. Tekle claims she was "terrified" by these calls.  Am. Compl. ¶ 58.

Plaintiff's allegation is plainly insufficient to establish that Defendants' conduct had the effect of "debarring or deterring the plaintiff from [her] action," *Newman,* 618 S.E.2d at 339, or that it could have had the effect of deterring any reasonable person from filing a claim under similar circumstances.  As *Culpeper National Bank v. Tidewater Improvement Co.*, 89 S.E. 118 (Va. 1916) demonstrates, the standard for equitable tolling is not a subjective one.  *Id.* at 121 (applying a precursor to Va. Code § 8.01-229(D) and stating that "[c]oncealment of a cause of action preventing the running of the statute of limitations must consist of some trick or artifice preventing inquiry, or calculated to hinder a discovery of the cause of action *by the use of ordinary diligence*" (emphasis added)).  Even in the implausible event that Plaintiff was genuinely "terrified" by her "aunt's" worried inquiries, that would only constitute a basis for equitable tolling if it were

objectively reasonable to view such inquiries as an affirmative threat, by the Defendants, that something would happen to Plaintiff if she filed a lawsuit.  And those inquiries would only toll the statute of limitations for as long as it were objectively reasonable to view them as a threat.  *Id.* ("Where, however, a debtor by actual fraud keeps his creditor in ignorance of the cause of action, the statute does not begin to run until the creditor had knowledge, o*r was put upon inquiry with means of knowledge*, that such cause of action had accrued." (emphasis added)).  At bottom, Plaintiff does not offer any evidence that the "threat" from her "aunt's" inquiries would be perceived as such by an objectively reasonable person or had anything to do with her filing this lawsuit.  *See Grimes*, 551 S.E.2d at 646 ("A plaintiff who seeks to rely upon the tolling provision in Code § 8.01-229(D) must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action.").

If Plaintiff's subjective, but unreasonable, concerns were deemed to be a valid basis for equitable tolling, then virtually any plaintiff could avoid application of the statute of limitations. A plaintiff could *always* assert that she had a subjective fear of retaliation in response to her lawsuit.  Here, the situation is even further attenuated.   The grounds for equitable tolling are not even actions purportedly committed by the Defendants.  Rather, the supposed communications were conveyed by a quasi-family member of the Plaintiff.  The most Plaintiff can claim is that "on information and belief"—i.e., she speculates—that the "aunt's" communications were undertaken at the behest of the Defendants.  She cites no reason for that "information and belief," because there is none.  It simply cannot be the law that a plaintiff can evade the statute of limitations by pleading that she did not timely file her lawsuit because she had suspicions that the defendants were trying to intimidate her, and her evidence is that one of her family members asked other members of her family whether they had any news of her.

b.      **Supposed Threats Made *Against* Plaintiff's "Aunt."**

Next, in direct contradiction to her portrayal of Ms. Gebreyesus as the *perpetrator* of the threats, Plaintiff claims that she was precluded from filing her lawsuit because Ms. Gebreyesus was the *victim* of threats.  Significantly, Plaintiff does not allege knowledge of any specific threat. Rather, the Court is invited, once again, to credit Plaintiff's subjective concerns, which apparently stem solely from the fact that Ms. Gebreyesus's employer (who is *not* a defendant in this lawsuit), had engaged in "verbal[] and physical[] abuse" of Ms. Gebreyesus at some distant point in the past.  Am. Compl. ¶ 56.

Plaintiff's failure to identify any specific threat is problematic from a legal standpoint. There are numerous perfectly natural actions that members of the Defendants' family could have taken in response to Plaintiff's conduct that would have been well within their rights.  They could have "threatened" to fire Ms. Gebreyesus for recommending to them someone who would abandon her contractual duties and leave her host family in the lurch without so much as a "goodbye."  They did not.  They could have altered Ms. Gebreyesus' job responsibilities to reflect their diminished faith in her judgment.  They did not.  In any event, Plaintiff has failed to identify any threat, legitimate or otherwise, made against Ms. Gebreyesus.  Nor has she identified any action taken by the Defendants that would make them complicit in any such threats.

As set forth above, Plaintiff must identify "an affirmative act" undertaken by the defendants "designed . . . to obstruct the plaintiff's right to file her action."  *Grimes*, 551 S.E.2d at 646.  Plaintiff's subjective concern that it was possible Ms. Gebreyesus *could* be threatened— without any evidence that such threats were, in fact, made, falls woefully short of the standard for equitable tolling.

Even the allegations Plaintiff has chosen to include in the Amended Complaint demonstrate the objective unreasonableness of Plaintiff's purported fear that her "aunt" had been subjected to threats.  As Plaintiff concedes in the Amended Complaint, she was aware, throughout the five-year limitations period, that Ms. Gebreyesus contentedly continued to work for her allegedly "abusive" employer.  Am. Compl. ¶ 56.  Plaintiff was also aware that Ms. Gebreyesus frequently returned home to Eritrea during this period.  Am. Compl. ¶ 60.  These facts, which Plaintiff freely concedes, completely undercut the objective reasonableness of any belief by the Plaintiff that only Plaintiff's forbearance in filing a lawsuit was saving Ms. Gebreyesus from some horrible fate.[1]

As with the supposed "threats" made *by* Ms. Gebreyesus, Plaintiff has pled no objectively reasonable basis upon which to believe that Ms. Gebreyesus was the *victim* of any threat, and has failed utterly to plead any facts that would demonstrate Defendants' complicity in any such conduct.[2]

**2.     Even If the Newly Alleged Bases For Equitable Tolling Were Sufficient To Toll The Statute Of Limitations, The Statute Would Not Be Tolled Beyond January of 2013.**

Even if the Court finds that the applicable statute of limitations was tolled as a result of the Defendants' newly alleged conduct, the limitations period would not be tolled beyond January of 2013, when Plaintiff filed a complaint with the United States Department of Homeland Security ("DHS") and the DHS began investigating Plaintiff's claims of involuntary servitude.

---

[1] Ms. Gebreyesus's work for the family has continued to the present day.  She has endured no repercussions as a result of Plaintiff's filing of this lawsuit.

[2] The genuineness of Plaintiff's fear of retaliation is further undercut by the fact that she has now filed the lawsuit. Puzzlingly, Plaintiff has not suggested a change in circumstances that made her fear that her "aunt" would suddenly disappear. Presumably, the Court is to believe that Plaintiff had such a fear, and had a reasonable basis for it, until one (unspecified) day when she woke up and no longer had the fear, allowing her to proceed with her lawsuit.  There is a reason none of this was alleged by Plaintiff until *after* the Defendants' raised a statute of limitations defense in response to the Original Complaint.  It is, like the underlying allegations, simply made up.

Last month, counsel for Plaintiff produced Department of Homeland Security Form I-914 to defense counsel in connection with this lawsuit.  Plaintiff's DHS Form I-914 reveals that DHS began an investigation into these allegations on January 14, 2013, based on Plaintiff's report, more than five years before Plaintiff brought her claim.  If, as this document demonstrates, Plaintiff was not deterred from filing a complaint with DHS alleging that Defendants were involved in the slave trade—or from participating in an interview with the Department of Justice, which could have resulted in *criminal* charges against the al Sauds—then she should not be permitted to argue that she was deterred, in some way, from bringing this *civil* lawsuit.  Through her own actions, Plaintiff has admitted that she did not (even subjectively) fear for Ms. Gebreyesus's safety, or for her own safety at the hands of Ms. Gebreyesus.  As such, she is not entitled to equitable tolling beyond the time she reported the matter to the DHS, and thus her time-barred breach of contract claim should be dismissed with prejudice.  After all, "any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result," not where Plaintiff admits that Defendants' alleged conduct did not deter her from coming forward in time.  *See Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000).

**C.     Plaintiff's Breach Of Contract Claim Should Also Be Dismissed Because Plaintiff Does Not Plead, and Cannot Prove, the Elements of a Breach of Contract Claim.**

Plaintiff alleges that Defendants breached the employment contract between Plaintiff and Defendants by (1) failing to pay Plaintiff the contracted wage, (2) forcing Plaintiff to work more than eighty hours per week, (3) forcing Plaintiff to complete tasks not specified in the contract, (4) subjecting Plaintiff to harsh working conditions, and (5) refusing to allow Plaintiff to take time off.  Am. Compl. ¶ 94.  Plaintiff, however, admits that the contract she signed, "was in Arabic, a language that [she] could not read."  *Id.* ¶ 19.  Plaintiff further admits that she "never received a

copy of the contract." *Id.*  In other words, Plaintiff did not read the contract when she received it, has not since read the contract, and has not had the contract read to her.  Plaintiff thus admits that she has no idea what the written contract actually said.

An essential element of Plaintiff's breach of contract claim is that she was in compliance with her obligations under the contract at the time of Defendants' breach.  *See Parr v. Alderwoods Grp., Inc.,* 604 S.E.2d 431, 435 (Va. 2004) ("[T]he first party to materially breach the contract cannot enforce the provisions of the integrated contract.").  Similarly, another essential element of Plaintiff's breach of contract claim is the identification of a specific contractual obligation that Defendants did not fulfill.  Because Plaintiff, by her own admission, has no idea what her contractual obligations were, or what those of the Defendants' were, she cannot meet her burden of sufficiently pleading a cause of action for breach of contract.

Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In this case, Plaintiff has not sufficiently pled a cause of action for breach of contract.  Because Plaintiff never had or read the contract, she could not possibly know the scope of the contract—or what provision Defendants allegedly breached.  *See Adkins v. Bank of Am.*, No. 1:14–cv–563 (GBL/JFA), 2014 WL 3615876, at *4 (E.D. Va. July 18, 2014) (granting the defendant's motion to dismiss a breach of contract claim because the plaintiff did not provide the court with the contract and did not have "any factual evidence to support th[e] claim"); *see also Morris v. Ocwen Loan Servicing, LLC*, No. 0:16-cv-01772-JMC, 2017 WL 1035944, at *6 (D.S.C. Mar. 17, 2017) (granting the defendant's motion to dismiss a breach of contract claim because the plaintiff could not identify "a particular provision breached" and thus the claim was not "plausible on [its] face"); *Cincinnati Ins. Co. v. Cost Co.*,

No. 5:10CV7, 2010 WL 1902995, at *2-3 (N.D. W.Va. May 11, 2010) (granting the defendant's motion to dismiss a breach of contract claim because the plaintiff admitted it did "not have a copy of a written contract" and did "not offer factual support for its claims").

Plaintiff's recitation of the negotiations leading up to the execution of the contract, Am. Compl. ¶¶ 1, 18, 26, 69, are unavailing. The written employment contract that Plaintiff signed was a binding integrated agreement. Indeed, Plaintiff does not even allege that the written contract did not constitute a final expression of the terms of the agreement. Restatement (Second) of Contracts § 209 (Am. Law Inst. 1981) ("Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression."). Under the parol evidence rule, Plaintiff's testimony about oral communications and/or negotiations between the parties prior to execution of the written contract would be inadmissible as evidence of the contractual terms. And under Federal Rule of Evidence 602, Plaintiff's testimony about the terms of the written contract that she has never read would be inadmissible. *Id.* ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has *personal knowledge* of the matter." (emphasis added)) . Here, Plaintiff admits that she has *no knowledge* of what was written in her employment contract. Because there is no way for Plaintiff to allege either that she fulfilled her obligations under the contract, or that Defendants failed to fulfill their obligations to her, the Court should dismiss the breach of contract claim (Fifth Claim).

### III.    CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court dismiss the Fifth

Claim of Plaintiff's Amended Complaint with prejudice, and award Defendants such other and

further relief that the Court may deem appropriate.

Dated: July 6, 2018                                           Respectfully submitted,

                                                              /s/ John L. Brownlee
                                                              John L. Brownlee (VSB# 37358)
                                                              Stuart G. Nash (*pro hac vice*)
                                                              David L. Haller (*pro hac vice*)
                                                              HOLLAND & KNIGHT LLP
                                                              1650 Tysons Boulevard, Suite 1700
                                                              Tysons, VA  22102
                                                              Telephone: 703.720.8600
                                                              Facsimile: 703.720.8610
                                                              Email: John.Brownlee@hklaw.com
                                                              Email: Stuart.Nash@hklaw.com
                                                              Email: David.Haller@hklaw.com

                                                              *Counsel for Defendants Nouf bint Nayef*
                                                              *Abul-Aziz al Saud and Mohammad bin*
                                                              *Abdullah al Saud*

## CERTIFICATE OF SERVICE

I certify that on this 6th day of July, 2018, a true copy of the foregoing was served via

electronic case filing to:

Nicholas Cooper Marritz
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

Jonathan A. Langlinais
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
jalanglinais@jenner.com

Le'ake Fesseha
Le'ake Fesseha Law Office
901 S. Highland Street, Suite 312
Arlington, VA 22204
leakef@hotmail.com

Sarah Linnell Bessell
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
sbessell@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

Richard F. Levy
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
rlevy@jenner.com

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
afryszman@cohenmilstein.com

Martina Elizabeth Vandenberg
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
mvandenberg@htlegalcenter.org

/s/ John L. Brownlee
John L. Brownlee