UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| SIMRET SEMERE TEKLE | ) | |
| | ) | |
|    *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18-cv-00211-TSE-JFA |
| | ) | |
| NOUF BINT NAYEF ABUL-AZIZ AL SAUD and | ) | |
| MOHAMMAD BIN ABDULLAH AL SAUD | ) | |
| | ) | |
|    *Defendants*. | ) | |
| _____ | ) | |

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO DISMISS

**I.    INTRODUCTION**

Defendants submit this Reply Memorandum in Support of their Motion to Dismiss, ECF 31, and in response to Plaintiff's Opposition Brief. ECF 39.

As set forth in Defendants' initial motion, Plaintiff's breach of contract claim should be dismissed both because it is time-barred, and because Plaintiff does not, and cannot, allege necessary elements of a breach of contract cause of action.

Plaintiff seeks to avoid a straightforward application of the statute of limitations by attempting to argue that the limitations period should be equitably tolled. Yet even accepting Plaintiff's allegations as true (allegations that conveniently appeared in the Amended Complaint only after Defendants filed their Motion to Dismiss this count in the Original Complaint), Plaintiff has fallen far short of establishing a basis for equitable tolling. Even with the advantage of having seen Defendants' original Motion to Dismiss (and with the latitude to fashion her Amended Complaint apparently unconstrained by the actual truth), Plaintiff is unable to identify *any* action

undertaken by Defendants to deter her lawsuit. Plaintiff's response makes clear that when Plaintiff alleges "on information and belief" that "threats were made [to deter her lawsuit] . . . at the Defendants' behest or as the result of the actions of the Defendants or their agents," that Plaintiff has no *knowledge* of such threats. Rather, as demonstrated below, the Plaintiff justifies this conclusory statement by an attenuated chain of unsupported and implausible inferences that are precisely the type of allegations that run afoul of the *Iqbal/Twombly* standard.

Similarly, Plaintiff struggles to respond to Defendants' claim that she cannot properly bring a breach of contract claim without knowing, and identifying, the actual provisions of the contract that have allegedly been breached. Once again, Plaintiff's argument appears to be that even though she has never read the contract, or learned of its written terms in any other fashion, the Court can simply infer the terms of the contract, either from prior negotiations between the parties, or through the operation of federal law. As demonstrated below, both inferences are flawed. Once again, *Iqbal/Twombly* instructs that the only inferences that the Court is permitted to make are reasonable ones, and conclusory allegations unsupported by factual allegations are not entitled to the presumption of truth.

Because Plaintiff has made it clear that the survival of her breach of contract claim is dependent on the Court indulging a series of unsupported and implausible inferences, Plaintiff's breach of contract claim should be dismissed on both of the grounds asserted in the Defendants' Motion to Dismiss.

## II. ARGUMENT

### A. Plaintiff Has Not Sufficiently Alleged Any Basis for Equitable Tolling To Save Her Otherwise Time-Barred Breach of Contract Claim.

#### 1. Plaintiff Tacitly Admits That Her Allegations About Defendants' Obstruction Are Insufficient to Avoid Dismissal.

To begin, Plaintiff's consistent and repeated mischaracterization of her own allegations about Defendants' alleged obstruction are a tacit admission that she has failed to allege enough to entitle her to equitable tolling after she left the Defendants' home in April of 2012. Her mischaracterizations are legion.

First, Plaintiff mischaracterizes her allegations about how often Ms. Gebreyesus called Plaintiff's family. In her Opposition Brief, Plaintiff states that she has "alleged that Defendants' caused Ms. Gebreyesus to call Ms. Tekle's family *incessantly* to complain that she had been threatened, to learn Ms. Tekle's whereabouts, how to contact her and 'what she planned to do.'" Pls.' Mem. Opp'n Defs.' Mot. Dismiss 15, ECF 39 (citing Am. Compl. ¶ 58, ECF 28). Paragraph 58 of the Amended Complaint, which Plaintiff cites for this statement, proves that it is false. In the Amended Complaint, Plaintiff alleges that Ms. Gebreyesus initially called Plaintiff "every few weeks" and then with "less frequency". Am. Compl. ¶ 58, ECF 28. To buttress her implausible claim of obstruction, however, the Court is now told, in Plaintiff's Opposition Brief, that Ms. Gebreyesus called Plaintiff "incessantly." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 15, ECF 39.

Second, Plaintiff mischaracterizes her allegations about what Ms. Gebreyesus said when she called Plaintiff's family. In the Amended Complaint, Plaintiff alleges that Ms. Gebreyesus frequently called to ask "what Ms. Tekle planned to do, where Ms. Tekle was living, with whom Ms. Tekle was living, how to contact Ms. Tekle, what Ms. Tekle was doing, and whether Ms. Tekle had been in contact with Ms. Tekle's family." Am. Compl. ¶ 58, ECF 28. In her Opposition Brief, Plaintiff again cites the Amended Complaint and states that "Defendants caused Ms. Gebreyesus to call Ms. Tekle's family incessantly *to complain that she had been threatened*." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 15, ECF 39. Paragraph 58, which Plaintiff cites for this statement, does not once refer to any threats. *See* Am. Compl. ¶ 58, ECF 28. But once her

3

allegations about Defendants' obstruction were met with a motion to dismiss, Plaintiff felt the need to add allegations to her Oppositon Brief that are not actually in the Amended Complaint.

Third, Plaintiff mischaracterizes her allegations about Ms. Gebreyesus's demeanor during her calls to Plaintiff's family. In her Opposition Brief, Plaintiff states that "[s]oon after Ms. Tekle's escape, Ms. Gebreyesus began making *frantic* calls to Ms. Tekle's family from Saudi Arabia." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 4, ECF 39 (emphasis added). Plaintiff does not cite any allegation from the Amended Complaint for this statement because there are none to support it. Indeed, in the Amended Complaint, there was nothing noteworthy about Ms. Gebreyesus's demeanor during her calls with Plaintiff's family. But when faced with a motion to dismiss, Ms. Gebreyesus's calls became "frantic." *Id.* Plaintiff's mischaracterizations of her allegations about Ms. Gebreyesus's demeanor do not stop there. In the Amended Complaint, Plaintiff alleged that Ms. Gebreyesus "*asked* what Ms. Tekle planned to do, where Ms. Tekle was living, with whom Ms. Tekle was living" and a number of other questions any aunt would ask had her niece gone missing in a foreign country. Am. Compl. ¶ 58, ECF 28 (emphasis added). In the Opposition Brief, however, Plaintiff states that Ms. Gebreyesus did not ask, but rather "demand[ed] to know" answers to her questions. Pls.' Mem. Opp'n Defs.' Mot. Dismiss 4, ECF 39.

Finally, Plaintiff mischaracterizes her allegations about Ms. Gebreyesus's behavior before Plaintiff left Defendants' home. Plaintiff states, citing Paragraph 58 of the Amended Complaint, that Ms. Gebreyesus "had never asked for that type of information about Ms. Tekle before." *Id.* at 20 (citing Am. Compl. ¶ 58, ECF 28). As with Plaintiff's other statements made to mischaracterize the allegations in her Amended Complaint, this statement is entirely unsupported. Neither Paragraph 58, nor any other paragraph of the Amended Complaint alleges that Ms.

4

Gebreyesus was inquiring about Ms. Tekle any differently than she or any other family member had in the past. *See generally* Am. Compl., ECF 28.

Plaintiff would not have consistently mischaracterized the allegations in her Amended Complaint if she thought they were sufficient to entitle her to equitable tolling beyond when she left Defendants' home in April of 2012. The Court should be mindful of the mischaracterizations in Plaintiff's Opposition Brief as it considers whether Plaintiff has alleged, in its Amended Complaint, enough "factual content [to] allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 536 U.S. 662, 678 (2009).

> 2. **Based On Plaintiff's Actual, Well-Pleaded Allegations, It Is Unreasonable To Infer That Defendants' Actions Toward Ms. Gebreyesus Were Designed Or Intended To Obstruct Plaintiff's Right To File Her Action.**
>
>> a. **Supposed Threats Against Ms. Gebreyesus**

Plaintiff argues that her allegations about Defendants' actions that entitle her to equitable tolling "are not the type of conclusory allegations or 'naked assertions' that are not entitled to the assumption of truth." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 15-16, ECF 39 (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Quite the contrary. Plaintiff's allegations, particularly those with regard to whether Defendants "undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action," *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001), which are necessary to secure tolling for any amount of time, are exactly the type of conclusory allegations not entitled to the assumption of truth.

With regard to the alleged "threats" against Ms. Gebreyesus, it is essential to understand precisely what Plaintiff does and does not allege. Plaintiff makes two key allegations about Defendants' supposed "threats" against Ms. Gebreyesus. First, Plaintiff alleges that "shortly after

Ms. Tekle's escape, Ms. Gebreyesus called Ms. Tekle's family . . . [and] said that the Defendants' family blamed her, had lost trust and faith in her, and had threatened her, all because Ms. Tekle—whom Ms. Gebreyesus had recommended to them—had escaped." Am. Compl. ¶ 57, ECF 28. Second, Plaintiff alleges that "[o]n information and belief, threats were made against Ms. Gebreyesus at the Defendants' behest or as the result of the actions of the Defendants or their agents, and were made with the intention of preventing Ms. Tekle from filing this lawsuit." *Id.* ¶ 64. That's it. Plaintiff does not allege anything about what Ms. Gebreyesus was "threatened" with. She does not allege whether Ms. Gebreyesus was "threatened" with a reduction in pay for recommending someone who would abandoned her host family when they needed her most, whether Ms. Gebreyesus was "threatened' with altered job responsibilities to reflect a diminished faith in her judgment, or whether Ms. Gebreyesus was "threatened" with any of the innumerable other perfectly natural and legal actions Defendants' family could have taken in response to Plaintiff's conduct.¹ Plaintiff also does not allege that Defendants asked, encouraged, or in any way influenced Ms. Gebreyesus to communicate these alleged "threats" to Plaintiff, Plaintiff's family, or anyone else. Indeed, Plaintiff alleges that "Ms. Gebreyesus made several calls to Ms. Tekle's family asking about Ms. Tekle's *whereabouts and intentions* at the Defendants' behest," Am. Compl. ¶ 65, ECF 28 (emphasis added), but not calls communicating Defendants' alleged threats,² *id.* ¶¶ 57, 64.

---

¹ In fact, Ms. Gebreyesus states that she was never threatened in any way by the Defendants or anyone else in the family, and that she suffered no adverse employment actions as a consequence of the Plaintiff's irresponsible flight. Defendants recognize, however, that for the purposes of the Motion to Dismiss, the Court is bound to accept as truthful the allegations in the Amended Complaint, however lacking they may be in evidentiary support.

² Recognizing this fatal flaw, Plaintiff attempts to mischaracterize her allegations in her Opposition Brief, stating that "Defendants caused Ms. Gebreyesus to call Ms. Tekle's family to incessantly *to complain that she had been threatened*." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 15, ECF 39

So Plaintiff alleges that Ms. Gebreyesus was "threatened" with something—action, inaction, or otherwise—the legality of which we have no way of knowing, and does not allege that anyone asked, encouraged, or in any way influenced Ms. Gebreyesus to communicate that "threat" to anyone. *Id.* ¶¶ 57, 65. Plaintiff then alleges that "threats were made against Ms. Gebreyesus . . . *with the intention of preventing Ms. Tekle from filing suit.*" *Id.* ¶ 64 (emphasis added). These allegations do not entitle Plaintiff to tolling beyond April of 2012 for two reasons. First of all, Plaintiff's allegation about Defendants' intent is exactly the kind of conclusory allegation *not* entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678. It is a legal conclusion. And "[a]lthough for the purposes of a motion to dismiss [the Court] must take all of the factual allegations in the complaint as true, [it] '[is] not bound to accept as true a *legal conclusion couched as a factual allegation.*'" *Id.* (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In fact, Plaintiff's only allegation about Defendants' intent is a legal conclusion—nothing more than a "[t]hreadbare recital[] of the elements" of Virginia's equitable tolling statute as interpreted by the Virginia Supreme Court. *Id.*; *Grimes*, 551 S.E.2d at 646 (A plaintiff who seeks to rely on Va. Code 8.01-229(D) "must establish that the defendant undertook an affirmative act *designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action.*") (emphasis added). Second, one cannot reasonably infer from Plaintiff's other relevant allegations—namely that Defendants, Defendants' family, or Defendants' agents "threatened" Ms. Gebreyesus with something and then did nothing to influence Ms. Gebreyesus to communicate that "threat" to anyone—that Defendants undertook an affirmative act intended to obstruct Plaintiff from filing her action. While the alleged "threats" may be "consistent with"

---

(emphasis added). That allegation does not appear in the Amended Complaint. *See generally* Am. Compl., ECF 28.

an affirmative act intended to obstruct Plaintiff from filing her action, they "d[o] not plausibly suggest" such an act because they are "not only compatible with, but indeed [are] more likely explained by [a] lawful" response to Ms. Gebreyesus's recommendation of a runaway employee, entirely unrelated to Plaintiff's lawsuit. *Iqbal*, 556 U.S. at 680 (outlining and endorsing *Twombly's* "construction of Rule 8").

### b. Supposed Threats By Ms. Gebreyesus

Recognizing that her allegations about her "aunt" calling to check-in on her are insufficient, even if accepted as true, to establish that a reasonable person would have been obstructed from filing a lawsuit, Plaintiff adds allegations in her Opposition Brief and asks the Court to draw inferences therefrom. This Court should decline to do so. But even if it did, Plaintiff has still not alleged enough to entitle her to equitable tolling past April of 2012.

Plaintiff alleges in her Amended Complaint that initially "every few weeks" and then with "less frequency," Am. Compl. ¶ 58, ECF 28, Ms. Gebreyesus called to inquire about her "niece's" "whereabouts and intentions," *id.* ¶ 65. So Plaintiff alleges that after Ms. Gebreyesus's "niece" had left her host family and was presumably alone and unemployed in a foreign country, the national language of which she allegedly did not speak, Ms. Gebreyesus called her "niece's" family to check in on her "niece" about once a month. Realizing that these are the actions of any loving family member concerned about a relative potentially at risk, Plaintiff begins adding allegations in her Opposition Brief—allegations that the Court cannot consider for purposes of the Motion to Dismiss. In order to mischaracterize Ms. Gebreyesus's check-in calls as "bizarre behavior," Plaintiff alleges, for the first time, that "Ms. Gebreyesus . . . had never asked for that type of information before." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 20, ECF 39. Even if she had never asked for that type of information before, it would have been perfectly natural to ask for it upon

8

learning that her "niece" was alone and unemployed in a foreign country. Then, in an attempt to render reasonable the inference that her "aunt's" check-in calls meant that Defendants "would be waiting for her should she decide to file a public lawsuit," Plaintiff alleges, again for the first time, that "Defendants (and their agents) were the only individuals aware that Ms. Tekle fled Defendants' compound." *Id.* 19-20. Desperate to bolster her Opposition Brief with allegations not in the Amended Complaint, Plaintiff must have forgotten the allegations that are actually in it. Not only could Ms. Gebreyesus have learned that her "niece" was at risk from Plaintiff herself, but also from Plaintiff's relatives in Northern Virginia who "encouraged her to leave and offered her refuge," Am. Compl. ¶ 52, ECF 28, who "gave [her] their address," *id.* ¶ 54, and whose home she "fled to . . . in a taxi," *id.* As much as Plaintiff would like to describe the entirely innocuous allegations about Ms. Gebreyesus as reflecting "bizarre behavior," they do not. See Pls.' Mem. Opp'n Defs.' Mot. Dismiss 19, ECF 39. And as much as Plaintiff would like the Court to believe that only if Ms. Gebreyesus had "somehow intuited that Ms. Tekle had escaped the compound at the precise moment that she did," *id.* at 20, could the Defendants not have been involved, Plaintiff's own allegations make clear that is just not true. Even if the Court considered these new allegations, Defendants' alleged conduct would not be enough to save her otherwise time-barred claim. Ms. Gebreyesus's check-in calls simply would not have obstructed any reasonable person from filing suit. *See Culpeper Nat'l Bank, Inc. v. Tidewater Improvement Co.*, 89 S.E. 118 (Va. 1916) (considering a precursor to Va. Code § 8.01-229(D) and applying an objective standard for equitable tolling).

Again, as with the allegations about threats made *against* Ms. Gebreyesus, Plaintiff is left with nothing more than the conclusory allegation that "Ms. Gebreyesus made several calls to Ms. Tekle's family . . . *with the intention of preventing Ms. Tekle from filing suit*." Am. Compl. ¶ 65,

ECF 28. Because an allegation parroting back the elements of Virginia's equitable tolling statute as interpreted by the Virginia Supreme Court is not entitled to the presumption of truth, *Iqbal*, 556 U.S. at 678, and the reasonable inference from Plaintiff's other allegations is that Ms. Gebreyesus's actions are "not only compatible with, but indeed [are] more likely explained by" her concern for a loved-one in a foreign land, Plaintiff's breach of contract claim should be dismissed as time-barred. *Id.* at 680.

        **B.     Plaintiff's Own Actions Make Clear That Equitable Tolling Does Not Save Her Otherwise Time-Barred Breach of Contract Claim.**

Plaintiff criticizes Defendants for "improperly attempt[ing] to limit the scope of tolling by alleging new facts in their Rule 12(b)(6) Motion." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 21, ECF 39. Defendants did nothing more than point out the obvious—that Plaintiff concealed from the Court the fact that the human trafficking claims were first reported to federal law enforcement officers in *January* of 2013, rather than April of 2013, as asserted by Plaintiff in order to avoid dismissal of her clearly time-barred breach of contract claim.

As a basis for her claim of equitable tolling, Plaintiff cites, once in her First Amended Complaint, (Am. Compl. ¶ 59, ECF 28) and six times in her Opposition Brief (Pls.' Mem. Opp'n Defs.' Mot. Dismiss 4, 17, 18, 21, ECF 39), that she interviewed with federal law enforcement officers in April 2013. Plaintiff has thus already alleged that federal law enforcement was investigating her human trafficking claims and that she was interviewed as part of that investigation in April of 2013.

As proof that this interview took place, Plaintiff's counsel furnished to the defense a Department of Homeland Security Form which memorializes the interview. The document provided by the plaintiff clearly states that the investigation was initiated, not in April 2013, but rather on January 14, 2013. It is difficult to see why Plaintiff should be entitled to rely on the

document as proof that the interview occurred, but be permitted to misrepresent to the Court the date that the alleged conduct was first reported to the authorities.

Plaintiff's own authority reveals that, on these facts, Plaintiff is not entitled to equitable tolling past January of 2018. Plaintiff inexplicably cites *Kiwanuka v. Bakilana*, 844 F. Supp. 2d 107 (D.D.C. 2012), in support of her argument that "Ms. Tekle's complaint [was] timely filed under Virginia law." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 21, ECF 39. In *Kiwanuka*, plaintiff alleged that, even when plaintiff was not living with defendants, "defendants took affirmative steps to prevent [plaintiff] from initiating legal proceedings to vindicate her rights—including confiscating her identity documents and passport and keeping her in isolation"—allegations not at issue here. 844 F. Supp. 2d at 119-20. The Court still refused to toll the statute of limitations beyond when plaintiff "was free from the defendants' control and able to assert her legal rights in July 2009, when her first contact with the FBI took place." *Id.* at 120. The *Kiwanuka* Court's holding is based on an undeniable truth: once a plaintiff is able to file a complaint against defendants that may result in *criminal* prosecution, there is certainly nothing preventing a plaintiff from filing *civil* claims against those same defendants. Indeed, at that point, there is no longer any basis for equitable tolling. *Id.*

### C. Plaintiff's Breach of Contract Claim Should Also Be Dismissed Because She Has No Basis To Allege The Elements Of, And Cannot Prove, Her Breach of Contract Claim.

Plaintiff mischaracterizes Defendants' argument about the sufficiency of her allegations concerning Defendants' alleged breach of contract. Defendants do not "insist on arguing that there was no binding contract between Ms. Tekle and the Defendants," Pls.' Mem. Opp'n Defs.' Mot. Dismiss 2, ECF 39. Rather, Defendants argue that Plaintiff, having never read nor received a copy of the contract, has no basis to know, and therefore no basis to allege (1) the terms of the contract, (2) whether Plaintiff fulfilled all of her obligations under the contract, and (3) which of the

contractual provisions Defendants breached. As Defendants' argued in their Memorandum in Support of Their Motion to Dismiss, all three of these are essential elements of a breach of contract claim. Plaintiff must be able to allege the terms of the contract. *See Adkins v. Bank of Am.*, 2014 WL 3615876, at *4 (E.D. Va. July 18, 2014) (granting the defendant's motion to dismiss a breach of contract claim because the plaintiff did not provide the court with the contract and did not have "any factual evidence to support th[e] claim"). Plaintiff must be able to allege that she fulfilled all of her obligations under the contract. *See Parr v. Alderwoods Grp., Inc.*, 604 S.E.2d 431, 435 (Va. 2004) ("[T]he first party to materially breach the contract cannot enforce the provisions of the integrated contract."). And Plaintiff must be able to identify which provision of the contract Defendants breached. *See Morris v. Ocwen Loan Servicing, LLC*, 2017 WL 1035944, at *6 (D.S.C. Mar. 17, 2017) (granting the defendant's motion to dismiss a breach of contract claim because the plaintiff could not identify "a particular provision breached" and thus the claim was not "plausible on [its] face").

> **1. The Court Should Not Infer The Terms Of The Contract From Inadmissible Evidence And, Even If It Did, Plaintiff Could Not Offer That Evidence To Prove Her Claim.**

In response to Defendants' actual argument, Plaintiff asks the Court to infer from her allegations about contractual terms discussed in negotiations prior to the execution of the written contract, that those contractual terms *are* the terms of the written contract. Essentially, Plaintiff asks the Court to ignore the parol evidence rule and its implications on Plaintiff's ultimate ability to prove her case. Setting aside, for the moment, the fact the Plaintiff has no basis to know, and therefore no basis to allege the terms of the contract or Defendants' breach thereof, the parol evidence rule does not even permit the Court to consider evidence of the prior agreements Plaintiff

would like it to when presented with a "binding integrated agreement."[3] *See* Restatement (Second) of Contracts § 213 (Am. Law Inst. 1981) cmt. a (The parol evidence rule "renders inoperative prior written agreements as well as prior oral agreements."). But Plaintiff would still have the Court infer that the "prior oral agreements" here *are* the "binding integrated agreement." *See id.*

The Court should decline Plaintiff's request to infer that the terms discussed in negotiations prior to the execution of the written contract are the terms of the written contract for the same reason that the parol evidence rule was adopted in the first place. That is—contrary to Plaintiff's suggestion that the only way the terms of a written contract could differ from those orally negotiated beforehand is through fraud[4]— people orally negotiate contracts every day that, when eventually reduced to writing, reflect terms different from those negotiated. Despite the innumerable attempts to introduce evidence of prior or contemporaneous oral agreements, courts have for centuries prohibited the admission of such evidence where it would "add to, vary, modify, or contradict the terms of a writing which the parties intend to be a final, complete, and exclusive statement of their agreement." 11 Williston on Contracts § 33:1 (4th ed.) (citing cases). Indeed, even if the Court chose to infer that the alleged terms of the orally negotiated contract were the terms of the written contract, Plaintiff would not be permitted to prove any of those alleged terms through evidence of oral negotiations. *Id.*

    **2. Even If The Court Infers That, Because Of Federal Requirements, The Contract Contained Certain Terms, Plaintiff Has Still Not Sufficiently Pled A Claim For Breach Of Contract.**

---

[3] Plaintiff does not even allege that the written contract she executed was other than an "integrated agreement." Restatement (Second) of Contracts § 209 (Am. Law. Inst. 1981) ("Where the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement, it is taken to be an integrated agreement unless it is established by other evidence that the writing did not constitute a final expression.").

[4] Pls.' Mem. Opp'n Defs.' Mot. Dismiss 7, ECF 39 ("Defendants presumably will not contend that they materially altered the agreed-upon terms or used Ms. Tekle's limited knowledge of Arabic to conceal terms from her.").

Plaintiff makes much of the federally mandated terms of any contract between an employer and an A-3 visa recipient and how, assuming those terms are part of the contract at issue here, she has sufficiently alleged a breach of contract claim. She has not.

First, even if the Court is willing to infer that the written contract included an agreement "not to withhold the . . . employment contract," 8 U.S.C. § 1375c(b)(2) (2012), Plaintiff never even alleges that she asked for a copy of it. *See* Am. Compl. ¶ 19, ECF 28. Certainly, Defendants could not have violated a contract "not to *withhold* the . . . employment contract" simply by not voluntarily producing a copy of the contract to Plaintiff without any indication that she wanted to see it. 8 U.S.C. § 1375c(b)(2).

Second, even if the Court is willing to infer that the written contract contained "an agreement by the employer not to withhold the passport . . . of the employee," *id.*, Plaintiff has not alleged that the Defendants ever did anything to withhold her passport. Although Plaintiff alleges that "[o]n one later occasion, [she] asked an agent of the Defendants to see her passport, but the Defendants' agent refused," Am. Compl. ¶ 23, ECF 28 (emphasis added), she has not alleged that Defendants ever directed, endorsed, or even knew about their alleged agent's alleged action. Plaintiff makes no allegation that she ever, even once, asked the Defendants for access to her passport. *See generally* Am. Compl, ECF 28. Surely, even if the Court indulges the Plaintiff's speculative inference as to the provisions of this contract, an employer cannot breach "an agreement by the employer not to withhold the passport . . . of the employee" without, even allegedly, taking any action to withhold the passport or even knowing that it was withheld. 8 U.S.C. § 1375c(b)(2).

Third, although the minimum wage in the United States and Virginia is higher than the "less than $2 per hour," Am. Compl. ¶ 36, ECF 28, Plaintiff alleges Defendants' paid her in cash,

neither the Fair Labor Standards Act ("FLSA") nor Virginia law prevents employers from crediting the value of food, housing, or other facilities toward wages paid to employees, *see* 29 U.S.C. § 203(m). In fact, the FLSA defines "wages" as "includ[ing] the reasonable cost, as determined by the Administrator, to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging or other facilities are customarily furnished by such employer to his employees." *Id.*; *see also* U.S. Dep't Labor, Home Care, https://www.dol.gov/whd/homecare/credit_wages_faq.htm#1 (last visited July 26, 2018) ("Section 3(m) of the FLSA allows an employer to count the value of food, housing, or other facilities provided to employees towards wages under certain circumstances."). The value of the food and housing furnished to Plaintiff, both when "Defendants resided at 1034 Aziza Court in Great Falls, Virginia," Am. Compl. ¶ 6, ECF 28—a home currently on the market for $3,950,000[5]—and when "[t]he family frequently traveled," *id.* ¶ 31, could easily have exceeded the difference between what Plaintiff alleges she was paid and what Plaintiff alleges she was entitled to. Indeed, it is perfectly legal for an employer to satisfy his entire minimum wage obligation through the provision of food, housing, and other facilities.[6] But Plaintiff's Amended Complaint makes no mention of these costs because they directly contradict her claim that "Ms. Tekle has alleged that Defendants failed to abide by their promise to obey state and federal law, including state and federal labor laws" by "pa[ying] her a wage of less than $2 per hour." Pls.' Mem. Opp'n Defs.' Mot. Dismiss 9-10, ECF 39. That allegation alone, unaccompanied by any

---

[5] Property Details for 1034 Aziza Ct., Realtor.com, https://www.realtor.com/realestateandhomes-detail/1034-Aziza-Ct_Great-Falls_VA_22066_M55692-10986 (last visited July 26, 2018).
[6] *See* U.S. Dep't Labor, Home Care, https://www.dol.gov/whd/homecare/credit_wages_faq.htm#1 (last visited July 26, 2018) ("Q. Are employers required to pay a cash wage if they are claiming the 3(m) credit, if the credit covers the federal minimum wage rate? A. No. The section 3(m) credit may be the sole payment an employee receives, provided it is sufficient to cover the employer's minimum wage obligation.").

statement about the value of the food, housing, and other facilities that Plaintiff admits Defendants provided her throughout her stay, is insufficient to establish that Defendants failed to pay Plaintiff in accordance with the contract.[7]

As much as Plaintiff would like to, she simply cannot escape the fact that she has no basis to know the terms of the contract, and thus cannot meet her burden to plead, in the complaint, that she fulfilled her own obligations under the contract, or which specific provisions of the contract Defendants allegedly breached. Accordingly, the Court should dismiss her breach of contract claim.

## III. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court dismiss the Fifth Claim of Plaintiff's Amended Complaint with prejudice, and award Defendants such other and further relief that the Court may deem appropriate.

Dated: July 26, 2018

Respectfully submitted,

/s/ John L. Brownlee
John L. Brownlee (VSB# 37358)
Stuart G. Nash (*pro hac vice*)
David L. Haller (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, VA  22102
Telephone: 703.720.8600
Facsimile: 703.720.8610
Email: John.Brownlee@hklaw.com

---

[7] Once again, the evidence that will demonstrate that Plaintiff was actually paid thousands of dollars in excess of the minimum wage, including a $10,000 lump sum payment in cash, above and beyond her normal salary, just weeks before she left. Defendants recognize, however, that the Court is bound to credit the factual allegations in the Amended Complaint, no matter how lacking they may be in evidentiary support. Defendants do not, and would not, condone paying any of their employees less than $2 per hour. But to operate within the fantasy-world created by Plaintiff's allegations in the Amended Complaint, Defendants are compelled to substantiate to the Court that, under the circumstances presented here, such a wage would be entirely valid under federal law, and thus cannot, even by inference, be the basis of a breach of contract claim.

Email: Stuart.Nash@hklaw.com
Email: David.Haller@hklaw.com

*Counsel for Defendants Nouf bint Nayef Abul-Aziz al Saud and Mohammad bin Abdullah al Saud*

## CERTIFICATE OF SERVICE

I certify that on this 26th day of July, 2018, a true copy of the foregoing was served via electronic case filing to:

Nicholas Cooper Marritz
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

Jonathan A. Langlinais
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
jalanglinais@jenner.com

Le'ake Fesseha
Le'ake Fesseha Law Office
901 S. Highland Street, Suite 312
Arlington, VA 22204
leakef@hotmail.com

Sarah Linnell Bessell
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
sbessell@htlegalcenter.org

Richard F. Levy
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
rlevy@jenner.com

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
afryszman@cohenmilstein.com

Martina Elizabeth Vandenberg
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

/s/ John L. Brownlee
John L. Brownlee