**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| SIMRET SEMERE TEKLE | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.:    1:18-cv-00211 |
| | ) | |
| NOUF BINT NAYEF ABDUL-AZIZ AL SAUD | ) | |
| and MOHAMMAD BIN ABDULLAH AL SAUD | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud ("Defendants"), by and through undersigned counsel, submit this memorandum in support of their motion to dismiss the Fifth Claim in the Second Amended Complaint (Dkt. 53).

Defendants assert categorically that *all* of Plaintiff's claims are false and without merit. However, only one of Plaintiff's claims is legally deficient, and subject to dismissal at this preliminary stage of the proceedings.  For the reasons set forth below, Plaintiff's Fifth Claim (Breach of Contract) is time-barred under the applicable statute of limitations, and, accordingly, should be dismissed with prejudice.  In addition, Plaintiff's Fifth Claim (Breach of Contract) is legally deficient because Plaintiff does not, and cannot, plead essential elements of a breach of contract claim.

## I.    BACKGROUND

By order dated September 7, 2018, the Court dismissed Plaintiff's First Amended Complaint ("FAC"), finding that the Plaintiff had not alleged an adequate basis to invoke equitable

tolling of the statute of limitations. Plaintiff has now filed a Second Amended Complaint ("SAC") in a futile attempt to remedy the defects that the Court identified in the FAC.

In order for the Court to fully appreciate the defects in Plaintiff's SAC, it is necessary for Defendants to provide the Court with a short procedural history of the case, tracking the evolution of Plaintiff's claims.

In April 2018, Defendants were served with Plaintiff's original Complaint, alleging that Defendants had enslaved Plaintiff in their home and breached their employment contract with her. Defense counsel immediately began an investigation of the allegations, which included locating and interviewing the large number of domestic employees who lived and worked in Defendants' home at the same time as Plaintiff. Although it is not relevant to the instant motion, the Court should be aware that every one of the dozen or more individuals interviewed by defense counsel has forcefully refuted Plaintiff's claims. What is relevant to the procedural history of this case is that, during the course of the investigation, several of the individuals interviewed produced contemporaneous photographs and videos that visually refuted many of Plaintiff's claims.

In light of the overwhelming evidence demonstrating that Plaintiff's claims were without any factual basis, defense counsel requested a meeting with Plaintiff's counsel, in an attempt to spare everyone the expense of this frivolous litigation. Although discovery had not yet formally begun, defense counsel shared the compilation of photographs and videos with Plaintiff's counsel, and asked them to reconsider the veracity of their client's representations. Defense counsel reasonably expected that, having seen with their own eyes the visual refutation of their client's uncorroborated allegations, Plaintiff's counsel would apologetically withdraw their suit. Remarkably, Plaintiff's counsel took a different course. Plaintiff's counsel took advantage of the

opportunity afforded by Federal Rule of Civil Procedure 15(a) to amend their original Complaint without leave of the Court.

Plaintiff's FAC withdrew those allegations that were most plainly refuted by the video evidence.  Thus, stricken from the original Complaint were allegations that:

> • "Defendants imprisoned Ms. Tekle in their compound." Complaint, ¶ 2 (refuted by video showing Plaintiff in dozens of locations outside the home).

> • "She worked non-stop on the family's vacations."  Complaint, ¶ 26 (refuted by video showing Plaintiff, among other things, lounging on a chaise by a pool in Florida, sightseeing in New York City and Paris, and enjoying private ski lessons provided to her by the Defendants in Jackson Hole, Wyoming).

> • "Defendants' agents instructed Ms. Tekle not to look the Defendants in the eye or approach them without being summoned." Complaint, ¶ 32 (refuted by video showing multiple interactions between Plaintiff and Defendants inconsistent with those described in the Complaint).

> • "Defendants knowingly obtained Ms. Tekle's forced and coerced labor through a . . . pattern . . . [of] physical restraint."  Complaint, ¶ 56 (again, refuted by video showing Plaintiff freely moving about in dozens of locations outside the home).[1]

At the same time defense counsel was sharing the photographic and video evidence with Plaintiff's counsel in an effort to get them to voluntarily dismiss their frivolous lawsuit, defense counsel were also obliged under the Rules to file a pleading responsive to the original Complaint. Accordingly, on June 8, 2018, Defendants filed a motion to dismiss Plaintiff's state law contract claim on the basis of the applicable statute of limitations.

---

[1] There were multiple instances  in which Plaintiff, in her FAC, retracted allegations that had been made in the original Complaint.  These are representative of just some of the modifications Plaintiff made to her initial allegations, in light of the irrefutable visual evidence with which she was confronted.

Plaintiff's counsel did not respond to Defendants' motion to dismiss, but instead withdrew the original Complaint and filed the FAC.  In the FAC, Plaintiff not only retracted the numerous allegations that had been flatly disproven by the video evidence, but Plaintiff also took the opportunity to add *new* factual allegations responsive to Defendants' statute of limitations defense, which Plaintiff had the benefit of seeing raised in connection with the original Complaint.  Thus, twelve new paragraphs (¶¶ 15, 50-59) were added to the FAC, informing the Court for the first time, *inter alia*, that:

> • Plaintiff "was afraid to file a civil suit against the Defendants," either because she was afraid *for* the safety of her family friend, Ms. Gebreyesus or, alternatively, because she was afraid of threats made *by* Ms. Gebreyesus.  (FAC, ¶¶ 56, 58).[2]

> • Plaintiff's fear was purportedly reasonable, because years previous, Plaintiff had witnessed "[p]ublic executions and physical punishments of convicted criminals [on television] in Saudi Arabia, and she had once seen a member of Defendants' family (who is not a party to this lawsuit) "throw a glass at Ms. Gebreyesus in anger." (FAC, ¶¶ 15, 56).[3]

On July 6, 2018, Defendants re-filed their motion to dismiss, noting that, to establish a ground for equitable tolling, Plaintiff bears the burden of showing an affirmative act, *by the Defendants*, that was designed to, and had the effect of, obstructing the filing of an action.  As the Court is aware, the Defendants' motion to dismiss was the subject of a hearing before the Court on September 7, 2018.  At the conclusion of the hearing, the Court granted Defendants' motion

---

[2] To this day, Plaintiff has still not resolved for the Court whether she was purportedly afraid *for* Ms. Gebreyesus, or *of* Ms. Gebreyesus.

[3] As with Plaintiff's initial allegations, defense counsel conducted a thorough investigation of these new allegations.  And, as with the initial allegations, all relevant witnesses, including Ms. Gebreyesus, flatly denied Plaintiff's assertions.  Defense counsel are aware that, for purposes of this motion, Plaintiff's allegations, no matter how lacking in evidentiary support, must be accepted as truthful.

and dismissed Count V, on the ground that Plaintiff had failed to specifically identify any act *by the Defendants* that deterred or obstructed her lawsuit.

Plaintiff has now filed her SAC.  As with the FAC, the difference between the iterations of the complaints is striking, not in terms of the legal claims advanced (which have remained constant in all three versions of the complaint), but rather as to the underlying facts, which have, throughout the process, fluidly morphed to meet the needs of the occasion.   Following are some of the more egregious changes made in the SAC:

> • FAC:  "[An] aide gave Ms. Tekle a contract to sign.  The contract was in Arabic, a language that Ms. Tekle could not read."  FAC, ¶ 19  (FAC contained no allegation that Ms. Tekle had ever learned, by any means, the terms of the written contract.).
>
> • SAC:  "[A] U.S. Embassy official reviewed the employment contract with Ms. Tekle to make sure that she understood the terms. The contract was in a language Ms. Tekle could not read, so the Defendants' agent summarized the terms of the contract aloud to Ms. Tekle in Arabic, which she understood."  SAC, ¶ 23.
>
> *          *          *
>
> • FAC:  "Ms. Tekle was . . . reprimanded if she spoke with a man." FAC, ¶ 38
>
> • SAC:  no comparable provision – allegation was flatly refuted by evidence shared with Plaintiff's counsel.
>
> *          *          *
>
> • FAC:  Plaintiff was told "that her activities would be closely monitored at all times."  FAC, ¶ 43.
>
> • SAC:  omits allegation that monitoring occurred "at all times" – allegation was untenable in light of photographic and video evidence showing Plaintiff's daily existence in the absence of such "monitoring."  SAC, ¶ 51.

Most glaring of all are the factual changes Plaintiff has made to the allegations pled in support her equitable tolling claim.  In that regard, the Court should recall that at the hearing in this matter, the Court specifically asked Plaintiff's counsel if there were additional facts, relevant

to the issue of equitable tolling, that counsel could plead if given a second opportunity to revise

the complaint.   The response of Plaintiff's counsel seemed, at the time, refreshingly candid:   "We

would need discovery to do that . . . ."   Transcript of September 7, 2018 Hearing at 21.

Unfortunately, in retrospect, the response was the opposite of candid.   As it turns out, the SAC is

replete with newly invented allegations related to equitable tolling:

> • FAC:   "Ms. Gebreyesus [called] Ms. Tekle's family frequently—
> every few weeks—inquiring about Ms. Tekle."  FAC, ¶ 58.
>
> • SAC:   "Ms. Gebreyesus called Ms. Tekle's family . . .
> approximately twice a week."  SAC, ¶ 70.
>
> *     *     *
>
> • FAC:  nothing regarding whether Ms. Gebreyesus was calling at
> her own initiative, or on at the behest of someone else.
>
> • SAC:  "Ms. Tekle's family could hear, over the phone, that Ms.
> Gebreyesus was not alone, [rather, they] could hear a woman's voice
> speaking in Arabic to Ms. Gebreyesus."  SAC, ¶¶ 73-74.
>
> *     *     *
>
> • FAC:  nothing regarding Ms. Gebreyesus' demeanor on the calls.
>
> • SAC:  "Ms. Gebreyesus was angry on these calls.  She demanded
> to know where Ms. Tekle was."  SAC, ¶ 76.

The most flagrant alteration of Plaintiff's factual averments goes to the very heart of the

equitable tolling claim.   In the original Complaint, of course, none of these supposed threats were

even mentioned.  In the FAC, the alleged post-employment communications with Plaintiff's family

were asserted for the first time, but there was no indication that the *purpose* of such

communications had ever been expressly stated.  Ms. Gebreyesus was alleged to have asked

Plaintiff's family whether they had news regarding Plaintiff's whereabouts (which, as Defendants

pointed out, was entirely consistent with a genuine concern over Plaintiff's welfare).   The Court

was explicitly asked by Plaintiff's counsel to *infer* that the purpose of the alleged communications

was to dissuade Plaintiff from bringing a lawsuit.  *See, e.g.*, Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 4 ("Ms. Tekle reasonably understood that these efforts were made to deter her from filing suit against Defendants . . . .")  (citations omitted).

Now, magically, it is no longer a matter of inference.  The Court is no longer asked to determine whether Ms. Tekle's suppositions about Ms. Gebreyesus' intentions were reasonable. Now, in the third iteration of Ms. Tekle's story, it turns out that Ms. Gebreyesus was actually explicit all along about what her intentions were.  Thus, the SAC pleads, for the first time, "Ms. Gebreyesus said that Ms. Tekle should not "go to any court or claim any rights or they will attack me." SAC, ¶ 77.  Just so the point is not lost on the Court, Plaintiff claims, a couple of paragraphs later, "Ms. Gebreyesus told Ms. Tekle's family members that if Ms. Tekle did 'anything' against the Al Sauds that she (Ms. Gebreyesus) would lose her job, be put in prison, or be deported."  SAC, ¶ 79 (inexplicably, this paragraph omits the allegation made above, that Ms. Gebreyesus—a woman in her late 70s—would be "attacked" by members of the Saudi royal family).

It might be expected that such allegations, if true, would have been pled the first time the Plaintiff attempted to establish a basis for equitable tolling.  It appears that when Plaintiff's counsel advised the Court, at oral argument, that no further factual allegations would be possible, she severely underestimated her client's capacity to "recall" such opportune facts.

## II.    ARGUMENT

Defense counsel recognize the Court's obligation, at this stage of the proceedings, to accept the truthfulness of Plaintiff's allegations, even in light of the circumstances presented here.

However, the foregoing factual summary, highlighting the remarkable "elasticity" of Plaintiff's relationship to the truth, provides an important context from which to view this fundamental point: even with the apparent freedom to plead whatever she wants, untethered to the

actual truth, Plaintiff has *still* not managed to put before the Court a single affirmative act, *undertaken by the Defendants*, to deter or obstruct Plaintiff from filing her now time-barred claim. Thus, the very deficiency identified by the Court in dismissing Plaintiff's contract claim remains every bit as problematic now as when the Court first dismissed the claim.

In the course of dismissing this same claim from the FAC, the Court stated, "I think the arguments [defense counsel] makes have some force. . . .  [Y]ou've got to tie this to some extent to the Defendants.  I don't think tolling would be warranted if she [the Plaintiff] were just frightened of somebody who was threatening her, unrelated to the Defendants.  That's [defense counsel's] point.  But if you have facts, I need to know them."  Transcript of September 7, 2018 Hearing at 31.

In response to the Court's inquiries, Plaintiff's counsel mused that she might be able to "allege more specificity about the threats that were made."  *Id.* at 20.   But when pressed by the Court as to what facts, if any, counsel could plead about who was responsible for the threats, counsel conceded, "we would need discovery to find out *whether the defendants directed those threats*"—in other words, counsel did not, at that time, have *any* information that the Defendants were responsible for the supposed threats.  *Id.* at 21 (emphasis added).  In light of this admission, the Court quite properly dismissed Plaintiff's claim as time-barred.

Now, despite the numerous and liberal amendments to her FAC as detailed above, Plaintiff has *still* pled no new facts suggesting that any of the alleged threats were directed by the Defendants, condoned by the Defendants, that the Defendants had knowledge of any such threats, or that the alleged threats were "tied" in any way to the Defendants.  For the reasons articulated by the Court at the September 7 hearing, the state law contract claim must once again be dismissed, this time with prejudice.

### A.      Plaintiff's Fifth Claim Is Barred By Va. Code § 8.01-246(2).

Plaintiff's Fifth Claim is time-barred due to Virginia's statute of limitations for breach of contract actions, which allows parties five years within which to bring their claims.  *Id.*  Under Virginia law, "actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, [must be brought] within five years whether such writing be under seal or not."  *Id.*  Plaintiff alleges that the employment contract was in writing and signed by both Plaintiff and (presumably) "the part[ies] to be charged" under the contract in this action.  SAC, ¶ 24.

Plaintiff's Fifth Claim accrued, at the latest, when she left Defendants' home in April of 2012.  Under Va. Code § 8.01-230, "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run . . . when the breach of contract occurs in actions ex contractu[.]"  § 8.01-230; *see also Hanback v. DRHI, Inc.*, 94 F. Supp. 3d 753, 759 (E.D. Va. 2015) ("[A] cause of action for breach of contract accrues and the limitation period commences to run from the date of the alleged breach.") (internal quotation marks and citation omitted).  Any alleged breach in this case could have occurred no later than April of 2012.  Indeed, "Plaintiff's cause of action accrued no later than [April of 2012], because it was on that date that the [employment] contract was effectively terminated . . . ."  *See Cruz v. Maypa*, 981 F. Supp. 2d 485, 489 (E.D. Va. 2013), *rev'd on other grounds*, 773 F.3d 138 (4th Cir. 2014).

Under Va. Code § 8.01-246(2), Plaintiff had until April of 2017, five years after she left Defendants' home, to bring her breach of contract claim.  But Plaintiff filed her claim in February of 2018.  Plaintiff is nearly a year too late.  Accordingly, her Fifth Claim is time-barred and should be dismissed with prejudice.

### B.      Equitable Tolling Does Not Save Plaintiff's Claim.

Plaintiff states in her Complaint that "[a]ny statute of limitations relating to the causes of action alleged in this complaint on behalf of [Plaintiff] has been suspended and tolled for the period during which [Plaintiff] was held in forced labor and involuntary servitude and for a reasonable time period following her escape." SAC, ¶ 99.  Plaintiff's Fifth Claim is still time-barred.  Under Va. Code § 8.01-229(D), "[w]hen the filing of an action is obstructed by a defendant's . . . using any . . . direct or indirect means to obstruct the filing of an action, then the time that such obstruction has continued shall not be counted as any part of the period within which the action must be brought." § 8.01-229(D).  A plaintiff who seeks to rely on Va. Code § 8.01-229(D) "must establish that the defendant undertook an affirmative act designed or intended, directly or indirectly, to obstruct the plaintiff's right to file her action." *Grimes v. Suzukawa*, 551 S.E.2d 644, 646 (Va. 2001).  To relieve the bar of the statute of limitations, a plaintiff must also establish that the defendant's conduct "ha[d] the effect of debarring or deterring the plaintiff from his action." *Newman v. Walker*, 618 S.E.2d 336, 339 (Va. 2005) (citation omitted); *see also Mulvey Constr. Inc. v. Bituminous Cas. Corp.*, 571 F. App'x. 150, 156 (4th Cir. 2014) (unpublished) (In order for Virginia's statute of limitation to be tolled when a defendant misleads a plaintiff into delayed filing . . . "there must be some affirmative act or representation designed to prevent, and which does prevent, the discovery of the cause of action.") (citations omitted).

The Supreme Court of Virginia has held that, "[i]n light of the policy that surrounds statutes of limitation, the bar of such statutes should not be lifted unless the legislature makes unmistakably clear that such is to occur in a given case." *Burns v. Bd. of Supervisors*, 315 S.E.2d 856, 859 (Va. 1984).  "Where there exists any doubt, it should be resolved in favor of the operation of the statute of limitations." *Id.*

By Order dated September 7, 2018, this Court dismissed Count V of the Complaint because Plaintiff had not identified any affirmative act undertaken by the Defendants that deterred or obstructed Plaintiff from filing her lawsuit.   The SAC, notwithstanding Plaintiff's remarkable ability to "recall" all manner of new facts tangentially bearing on the equitable tolling issue, *still* fails to identify an affirmative act undertaken by the Defendants that deterred or obstructed Plaintiff from filing her lawsuit.  The Court's disposition now should be what it was then, dismissal of Count V of the SAC.[4]

Plaintiff will undoubtedly attempt to recycle the same argument now that the Court rejected at oral argument—that she has pled, "upon information and belief" that "Ms. Gebreyesus acted on Defendant's behalf," (SAC, ¶ 96) and that the Court is compelled to assume the truth of that allegation.  As Defendants argued at the hearing, and as the Court ruled at that time, Defendants' involvement in any of Ms. Gebreyesus' communications with Plaintiff's family, is asserted in the FAC, and now in the SAC, in an entirely conclusory fashion.  While many facts have been pled regarding the fact that communications supposedly *took place* between Ms. Gebreyesus and Plaintiff's family, no facts have been pled that suggest those communications were *directed* or *condoned* by the Defendants, or indeed that Defendants *even had knowledge of* such communications.

As this Court has already held, conclusory statements of this nature, when unsupported by any facts, are *not* entitled to a presumption of truth under the *Iqbal/Twombly* standard.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-82 (2009) (allegation that Attorney General subjected prisoner to harsh

---

[4] In the September 7 Order, the Court actually provided Defendants with broader relief than was requested, dismissing the entire FAC, rather than just Count V, as requested in the motion.  The discrepancy was immaterial, given Plaintiff's stated intention to file another amended complaint. The instant motion seeks only dismissal of Count V of the SAC.

confinement conditions "on account of [his] religion, race, or national origin" was "conclusory" allegation, "not entitled to be assumed [to be] true."). At oral argument, the Court commented that "information and belief" implies the conjunctive, *i.e.* belief *and* information. Transcript of September 7, 2018 Hearing at 9. Taking her third bite at the apple, Plaintiff has concocted a new batch of allegations, changing some important facts and adding others, all in an attempt to meet the standard for equitable tolling. However, none of those new allegations gets her an iota closer to demonstrating any affirmative act undertaken by the Defendants to obstruct her lawsuit. Instead, the new allegations bring into sharp relief that Plaintiff's "information and belief" consists of all "belief" and no "information."

Finally, Plaintiff has never addressed Defendants' argument that the filing of this lawsuit is itself evidence that Plaintiff never had a genuine fear regarding any supposed retribution that would fall upon her as a consequence of filing suit. Plaintiff's counsel has not suggested any development that suddenly emboldened Plaintiff, in the Spring of 2018, to proceed with this suit. As Plaintiff concedes in her complaint, Ms. Gebreyesus still works for the mother of one of the Defendants, and is still in contact with Plaintiff's family in Eritrea. Thus, if the allegations in the SAC are true (they are not), then Ms. Gebreyesus remains either in jeopardy of harm, or in a position to inflict harm on Plaintiff's family. Yet, without explanation, Plaintiff's "terror" of (or on behalf of) Ms. Gebreyesus has now apparently dissipated, just as it apparently did momentarily in 2013 when Plaintiff was able to secure a visa to remain in the United States by telling a version of the same story to the U.S. immigration authorities. At a minimum, Plaintiff should be required to assert some theory as to how and why her "terror" waxes and wanes depending on her self-interest. Her imagination (or that of her attorneys) seems more than adequate to the task.

C.     **Plaintiff's Breach Of Contract Claim Should Also Be Dismissed Because Plaintiff Does Not Plead, and Cannot Prove, the Elements of a Breach of Contract Claim.**

With respect to the FAC, Defendants moved to dismiss the Count V breach of contract claim, not just on statute of limitations grounds, but also because Plaintiff conceded in the FAC that she had no knowledge of the terms of the contract upon which she was basing her claim.  *See* FAC, ¶ 19 ("[An] aide gave Ms. Tekle a contract to sign.  The contract was in Arabic, a language that Ms. Tekle could not read.  Ms. Tekle never received a copy of the contract.").  The Court did not reach this argument, because it dismissed Plaintiff's claim as time-barred under the statute of limitations.

In the SAC, Plaintiff has now conveniently "recalled" that she *does*, in fact, know the terms of the contract, because, as newly pled in the SAC, "[A] U.S. Embassy official reviewed the employment contract with Ms. Tekle to make sure she understood the terms."  SAC, ¶ 23.  Thus, Plaintiff now claims to have personal knowledge of some of the terms of the contract.  She claims that she recalls, from what the U.S. Embassy officer told her, that she "would work forty hours per week, with two full days off per week, and earn $4500 per month."  *Id.*

 Before proceeding to an analysis regarding whether Plaintiff's secondhand knowledge of the terms of the contract is sufficient to allow her to withstand a motion to dismiss, it is important to focus on certain issues that are manifestly *not* part of Plaintiff's breach of contract claim.

First, this is not a Fair Labor Standards Act ("FLSA") claim.  Plaintiff has not brought an FLSA claim, likely because the statute of limitations for such claims is two years.  Having brought a breach of contract claim, Plaintiff's potential recovery must be based on the terms of the contract.  If, hypothetically, the contract provided wages of $1/hour, then Plaintiff's recovery would be limited to $1/hour.  Plaintiff cannot, in the context of a breach of contract claim, allege that the

contract in question violated the FLSA, and seek higher wages than the contract provided, on the basis of the FLSA.

Second, the scope of Plaintiff's contract claim cannot implicate the conditions of her employment.   Plaintiff has articulated her recollection of the terms of the contract.   That recollection is limited to the terms set forth above: that she "would work forty hours per week, with two full days off per week, and earn $4500 per month."  SAC, ¶ 23.   Later, in pleading her specific contract claim, she attempts to expand the scope of the breach of the contract allegations, claiming that Defendants' supposed breaches of the contract included such items as "forcing her to assume non-contractual duties such as housecleaning" and "confiscating her passport."  SAC, ¶ 128.  These claims can form no part of Plaintiff's breach of contract claim, because Plaintiff does not even purport to have any knowledge as to what the contract had to say about such matters.[5] At this stage of the litigation, Plaintiff has the obligation, at a bare minimum, to identify a specific contractual obligation agreed upon by the parties, and an act or omission by the Defendants undertaken in violation of that obligation.  Defendants cannot be required to defend a breach of contract claim when the terms of the contract are unknown by the Plaintiff and unarticulated in the operative complaint.

Accordingly, what is appropriately before the Court is Plaintiff's claim that she was not paid in accordance with her newly-remembered, secondhand understanding of the contractual terms.  Even this claim must be dismissed.  What Plaintiff does not purport to recall, even in her

---

[5] Plaintiff's claim that her passport was improperly confiscated is the subject of Count Three of the SAC.  While Defendants vigorously dispute the factual accuracy of that claim, they have not moved to dismiss that count, because they concede it has been properly pled as a matter of law. However, the claim is not properly included within the breach of contract claim, because Plaintiff has not asserted any knowledge regarding what, if anything, the contract had to say about who would keep custody of Plaintiff's passport.

third iteration of the complaint, is what credit, if any, the contract contemplated that Defendants would receive for the provision of all of Plaintiff's daily living needs.  Food, lodging, medical care, transportation, utilities, cellular telephone service, cable television, and maid service were all provided to Plaintiff at the Defendants' expense.  Thus, the simplistic formula espoused by Plaintiff—that she was promised a certain sum under the contract, and she received cash payments totaling a lesser sum—is not sufficient, even accepting the allegations as true, to establish a contractual breach.  Without any knowledge as to what the contract had to say about what portion of Plaintiff's compensation would be in cash, and what portion would be in non-cash benefits, it is impossible for Plaintiff to assert that Defendants have breached the contract.  That is precisely why, in breach of contract actions, it is customary for the Plaintiff to either cite the language of the contract itself, or to at least be in a position to present competent evidence as to the contractual terms.  In this case, Plaintiff cannot do either of these things.[6]

Plaintiff's breach of contract claim must be dismissed—not because there was no enforceable contract in this case—but because Plaintiff has failed, as a matter of pleading, to identify any specific terms of the contract that were breached by Defendants' actions.

## III.    CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court dismiss the Fifth Claim of Plaintiff's Second Amended Complaint with prejudice, and award Defendants such other and further relief that the Court may deem appropriate.

---

[6] Nor can plaintiff properly plead that she performed her own obligations under the contract. Without knowing what the contract said about her contractual duties (other than that she was required to work 40 hours per week), any assertion that she fully performed under the contract is entirely conclusory, and thus fails to meet the *Iqbal/Twombly* standard.

Dated: October 11, 2018

Respectfully submitted,

/s/ John L. Brownlee
John L. Brownlee (VSB# 37358)
Stuart G. Nash (*pro hac vice*)
David L. Haller (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, VA  22102
Telephone: 703.720.8600
Facsimile: 703.720.8610
Email: John.Brownlee@hklaw.com
Email: Stuart.Nash@hklaw.com
Email: David.Haller@hklaw.com

*Counsel for Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 11th day of October, 2018, a true copy of the foregoing was served via

electronic case filing to:

Nicholas Cooper Marritz,
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

Richard F. Levy
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
rlevy@jenner.com

Jonathan A. Langlinais
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
jalanglinais@jenner.com

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
afryszman@cohenmilstein.com

Le'ake Fesseha
Le'ake Fesseha Law Office
901 S. Highland Street, Suite 312
Arlington, VA 22204
leakef@hotmail.com

Martina Elizabeth Vandenberg
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
mvandenberg@htlegalcenter.org

Sarah Linnell Bessell
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
sbessell@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

/s/ John L. Brownlee
John L. Brownlee