**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| SIMRET SEMERE TEKLE | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.:    1:18-cv-00211 |
| | ) | |
| NOUF BINT NAYEF ABDUL-AZIZ AL SAUD | ) | |
| and MOHAMMAD BIN ABDULLAH AL SAUD | ) | |
| | ) | |
| *Defendants*. | ) | |

## DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Nouf bint Nayef Abdul-Aziz al Saud and Mohammad Bin Abdullah al Saud ("Defendants"), by and through undersigned counsel, answer the Second Amended Complaint filed by Plaintiff Simret Semere Tekle ("Plaintiff") on September 27, 2018 as follows:

## INTRODUCTION

1.     Defendants admit the allegations in the fourth sentence of Paragraph 1. Defendants deny the remaining allegations contained in Paragraph 1.

2.     Defendants deny the allegations contained in Paragraph 2.

## PARTIES

3.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3 and, therefore, deny those allegations.

4.      Defendants admit the allegations in the first sentence of Paragraph 4 to the extent that Defendant Mrs. al Saud is a citizen of Saudi Arabia.  Defendants admit the allegations in the second sentence of Paragraph 4.  Defendants deny the remaining allegations contained in Paragraph 4.

5.      Defendants admit the allegations in the first sentence of Paragraph 5 to the extent that Defendant Mr. al Saud is a citizen of Saudi Arabia.  Defendants admit the allegations in the second sentence of Paragraph 5.   Defendants deny the remaining allegations contained in Paragraph 5.

6.      Defendants admit the allegations in the first and third sentences of Paragraph 6. Defendants admit the allegations in the second sentence of Paragraph 6 to the extent that they were her employers from in or about September 2011 to in or about April 2012.  Defendants deny the remaining allegations contained in Paragraph 6.

## JURISDICTION AND VENUE

7.      Paragraph 7 is a statement of jurisdiction and a legal conclusion to which no response is required.  To the extent Paragraph 7 is deemed to contain facts, Defendants deny such facts.

8.      Paragraph 8 is a statement of jurisdiction and a legal conclusion to which no response is required.  To the extent Paragraph 8 is deemed to contain facts, Defendants deny such facts.

9.      Paragraph 9 is a statement of venue and a conclusion of law to which no response is required.  To the extent Paragraph 9 is deemed to contain facts, Defendants deny such facts.

## FACTUAL ALLEGATIONS

10.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 10 and, therefore, deny those allegations.

11.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained the first and fifth sentences of Paragraph 11 and, therefore, deny those allegations.  Defendants admit the allegations contained in the second sentence of Paragraph 11 to

the extent that she worked for the Saudi royal family for several decades.  Defendants admit the allegations in the third and fourth sentences Paragraph 11.

12.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 12 and, therefore, deny those allegations.  Defendants deny the remaining allegations contained in Paragraph 12.

13.     Defendants admit the allegations contained in Paragraph 13.

14.     Defendants deny the allegations contained in Paragraph 14.

15.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 15 and, therefore, deny those allegations.

16.      Defendants admit the allegations in the first sentence of Paragraph 16.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in second and third sentences of Paragraph 16 and, therefore, deny those allegations.

17.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 17 and, therefore, deny those allegations.

18.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18 and, therefore, deny those allegations.

19.     Defendants admit the allegations in the first sentence of Paragraph 19.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in fourth, fifth, sixth, and seventh sentences of Paragraph 19 and, therefore, deny those allegations. Defendants deny the remaining allegations contained in Paragraph 19.

20.     Defendants admit the allegations contained in Paragraph 20.

21.     Defendants admit the allegations contained in Paragraph 21.

22.     Defendants admit the allegations in the second sentence of Paragraph 22. Defendants deny the remaining allegations contained in Paragraph 22.

23.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and, therefore, deny those allegations.

24.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and, therefore, deny those allegations.

25.     Paragraph 25 is a conclusion of law to which no response is required.  To the extent Paragraph 25 is deemed to contain facts, Defendants deny such facts.

26.     Defendants admit the allegations contained in Paragraph 26.

27.     Paragraph 27 contains conclusions of law to which no response is required. Defendants admit the allegations in the first sentence of Paragraph 27 to the extent that from the time Plaintiff signed the contract until Defendants' filed their motion to dismiss Plaintiff's First Amended Complaint—a period of time spanning approximately seven years—Plaintiff never asked for nor received a copy of the contract.  Defendants deny the remaining allegations contained in Paragraph 27.

28.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, third, and fourth sentences of Paragraph 28 and, therefore, deny those allegations.  Defendants deny the remaining allegation contained in Paragraph 28.

29.     Defendants deny the allegations contained in Paragraph 29.

30.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in sentences of Paragraph 30 and, therefore, deny those allegations.

31.     Defendants deny the allegations in the first sentence of Paragraph 31.  Defendants admit the allegations in the second sentence of Paragraph 31 to the extent that, excluding Plaintiff, they employed at least two domestic workers and six nannies.

32.     Defendants admit that allegations in the first sentence of Paragraph 32 to the extent that Mrs. al Saud's personal aides occasionally asked Plaintiff to assist them or the Defendants.

Defendants admit the allegations in the second sentence of Paragraph 32.  Defendants deny the remaining allegations contained in Paragraph 32.

33.     Defendants admit the allegations in the first sentence of Paragraph 33 to the extent that Plaintiff did some work in Defendants' home.  Defendants deny the remaining allegations contained in Paragraph 33.

34.     Defendants deny the allegations contained in Paragraph 34.

35.     Defendants admit the allegations contained in Paragraph 35 to the extent that Ms. Tekle lived in the Defendants' home.  Defendants deny the remaining allegations contained in Paragraph 35.

36.     Defendants admit the allegations contained in the first and fourth sentences of Paragraph 36.  Defendants deny the remaining allegations contained in Paragraph 36.

37.     Defendants deny the allegations contained in Paragraph 37.

38.     Defendants deny the allegations contained in Paragraph 38.

39.     Defendants deny the allegations contained in Paragraph 39.

40.     Defendants deny the allegations contained in Paragraph 40.

41.     Paragraph 41 is a legal conclusion to which no response is required.  To the extent Paragraph 41 is deemed to contain facts, Defendants deny such facts.

42.     Defendants deny the allegations contained in Paragraph 42.

43.     Defendants deny the allegations contained in Paragraph 43.

44.     Defendants deny the allegations contained in Paragraph 44.

45.     Defendants deny the allegations contained in Paragraph 45.

46.     Defendants deny the allegations contained in Paragraph 46.

47.     Defendants deny the allegations contained in Paragraph 47.

48.     Defendants deny the allegations contained in Paragraph 48.

49.     Defendants deny the allegations contained in Paragraph 49.

50.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 65 and, therefore, deny those allegations. Defendants deny the remaining allegation contained in Paragraph 50.

51.     Defendants deny the allegations contained in Paragraph 51.

52.     Defendants deny the allegations contained in Paragraph 52.

53.     Defendants admit the allegations in the first sentence of Paragraph 53 to the extent Plaintiff would, upon occasion, leave the house to attend church services.  Defendants deny the remaining allegations contained in Paragraph 53.

54.     Defendants deny the allegations contained in Paragraph 54.

55.     Defendants deny the allegations contained in Paragraph 55.

56.     Defendants deny the allegations contained in Paragraph 56.

57.     Defendants deny the allegations contained in Paragraph 57.

58.     Defendants deny the allegations contained in Paragraph 58.

59.     Defendants deny the allegations in the first sentence of Paragraph 59.  Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second and third sentences of Paragraph 59 and, therefore, deny those allegations.

60.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 60 and, therefore, deny those allegations.  Defendants deny the allegations in the third sentence of Paragraph 60.

61.     Defendants deny the allegations contained in Paragraph 61.

62.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 62 and, therefore, deny those allegations.

63.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 63 and, therefore, deny those allegations.

64.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 64 and, therefore, deny those allegations.

65.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 65 and, therefore, deny those allegations.

66.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 66 and, therefore, deny those allegations.

67.     Defendants admit the allegations contained in Paragraph 67 to the extent that Plaintiff left Defendants' home before they were scheduled to return to Saudi Arabia and Defendants returned to Saudi Arabia as scheduled.  Defendants deny the remaining allegations contained in Paragraph 67.

68.     Defendants deny the allegations contained in Paragraph 68.

69.     Defendants deny the allegations in the first sentence of Paragraph 69.  Defendants admit the allegations in the second sentence of Paragraph 69.

70.     Defendants deny the allegations contained in Paragraph 70.

71.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 71 and, therefore, deny those allegations.

72.     Defendants deny the allegations contained in Paragraph 72.

73.     Defendants deny the allegations contained in Paragraph 73.

74.     Defendants deny the allegations contained in Paragraph 74.

75.     Defendants deny the allegations contained in Paragraph 75.

76.     Defendants deny the allegations contained in Paragraph 76.

77.     Defendants deny the allegations contained in Paragraph 77.

78.     Defendants deny the allegations contained in Paragraph 78.

79.     Defendants deny the allegations contained in Paragraph 79.

80.     Defendants deny the allegations contained in Paragraph 80.

81.     Defendants deny the allegations contained in Paragraph 81.

82.     Defendants deny the allegations contained in Paragraph 82.

83.     Defendants deny the allegations contained in Paragraph 83.

84.     Defendants deny the allegations contained in Paragraph 84.

85.     Defendants deny the allegations contained in Paragraph 85.

86.     Defendants deny the allegations contained in Paragraph 86.

87.     Defendants deny the allegations contained in Paragraph 87.

88.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 88 and, therefore, deny those allegations.  Defendants deny the remaining allegations contained in Paragraph 88.

89.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 89 and, therefore, deny those allegations. Defendants deny the remaining allegations contained in Paragraph 89.

90.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 90 and, therefore, deny those allegations.

91.     Defendants deny the allegations contained in Paragraph 91.

92.     Defendants deny the allegations contained in Paragraph 92.

93.     Defendants admit the allegations contained in Paragraph 93.

94.     Defendants deny the allegations contained in Paragraph 94.

95.     Defendants deny the allegations contained in Paragraph 95.

96.     Defendants deny the allegations contained in Paragraph 96.

97.     Defendants deny the allegations contained in Paragraph 97.

98.     Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first, second, and third sentences of Paragraph 98 and, therefore, deny those allegations.  Defendants deny the remaining allegations contained in Paragraph 98.

## SUSPENSION OF STATUTES OF LIMITATIONS

99.     Defendants deny the allegations contained in Paragraph 99.

## FIRST CLAIM FOR RELIEF

**Trafficking with Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor in Violation of 18 U.S.C. § 1590**

100.    Paragraph 100 merely repeats and incorporates by reference all prior allegations and thus does not require another response.

101.    Defendants deny the allegations contained in Paragraph 101.

102.    Defendants deny the allegations contained in Paragraph 102.

103.    Defendants deny the allegations contained in Paragraph 103.

104.    Defendants deny the allegations contained in Paragraph 104.

## SECOND CLAIM FOR RELIEF

**Forced Labor in Violation of 18 U.S.C. § 1589**

105.    Paragraph 105 merely repeats and incorporates by reference all prior allegations and thus does not require another response.

106.    Defendants deny the allegations contained in Paragraph 106.

107.    Defendants deny the allegations contained in Paragraph 107.

108.    Defendants deny the allegations contained in Paragraph 108.

109.    Defendants deny the allegations contained in Paragraph 109.

110.    Defendants deny the allegations contained in Paragraph 110.

111.    Defendants deny the allegations contained in Paragraph 111.

112.    Defendants deny the allegations contained in Paragraph 112.

### THIRD CLAIM FOR RELIEF

**Unlawful Conduct with Respect to Documents in Furtherance of Trafficking, Peonage, Slavery, Involuntary Servitude, or Forced Labor in Violation of 18 U.S.C. § 1592**

113.   Paragraph 113 merely repeats and incorporates by reference all prior allegations and thus does not require another response.

114.   Defendants deny the allegations contained in Paragraph 114.

115.   Defendants deny the allegations contained in Paragraph 115.

116.   Defendants deny the allegations contained in Paragraph 116.

### FOURTH CLAIM FOR RELIEF

**Involuntary Servitude in Violation of 18 U.S.C. § 1584**

117.   Paragraph 117 merely repeats and incorporates by reference all prior allegations and thus does not require another response.

118.   Defendants deny the allegations contained in Paragraph 118.

119.   Defendants deny the allegations contained in Paragraph 119.

120.   Defendants deny the allegations contained in Paragraph 120.

121.   Defendants deny the allegations contained in Paragraph 121.

122.   Defendants deny the allegations contained in Paragraph 122.

123.   Defendants deny the allegations contained in Paragraph 123.

### FIFTH CLAIM FOR RELIEF

**Breach of Contract**

124.   Paragraph 124 merely repeats and incorporates by reference all prior allegations and thus does not require another response.

125.   Defendants deny the allegations contained in Paragraph 125.

126.   Defendants deny the allegations contained in Paragraph 126.

127.   Defendants deny the allegations contained in Paragraph 127.

128.   Defendants deny the allegations contained in Paragraph 128.

129.    Defendants deny the allegations contained in Paragraph 129.

130.    Defendants deny the allegations contained in Paragraph 130.

## PRAYER FOR RELIEF

Paragraphs 131-137 characterize Plaintiff's prayer for relief, to which no response is required.

## JURY DEMAND

Plaintiff demands a jury trial, to which no response is required.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST DEFENSE

The Second Amended Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### SECOND DEFENSE

The Second Amended Complaint, in whole or in part, is barred by the statute of limitations.

### THIRD DEFENSE

Because Plaintiff materially breached the contract by leaving the al Sauds' home during the middle of her term of employment, Defendants were excused from future performance of their contractual obligations from the time of her departure.  As the party who first committed a material breach, Plaintiff cannot enforce the contract.  *See Horton v. Horton*, 487 S.E.2d 200, 203 (Va. 1997).

### FOURTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches because Plaintiff delayed asserting her rights for an unreasonable amount of time and Defendants have been prejudiced thereby.  Plaintiff's six year delay in asserting her claims warrants the presumption that she abandoned them.

**FIFTH DEFENSE**

Defendants never knowingly recruited, harbored, transported, provided, or obtained by any means, Plaintiff for labor or services in violation of federal law.

**SIXTH DEFENSE**

Defendants never provided nor obtained Plaintiff's labor or services by means of force, threats of force, physical restraint, threats of physical restraint, serious harm, threats of serious harm, abuse of law or legal process, threatened abuse of law or legal process or any scheme, plan, or pattern intended to cause Plaintiff to believe that, if she did not perform labor or services, that she or someone else would suffer serious harm or physical restraint.

**SEVENTH DEFENSE**

Defendants never destroyed, concealed, removed, confiscated, or possessed any actual or purported passport or immigration document, or any other actual or purported government identification document of Plaintiff's (1) in the course of violating federal law, (2) with the intent to violate federal law, or (3) to prevent or restrict or attempt to prevent or restrict Plaintiff's liberty to move or travel, in order to maintain her labor or services.

**EIGHTH DEFENSE**

Defendants never held Plaintiff to involuntary servitude or sold Plaintiff into any condition of involuntary servitude.

**NINTH DEFENSE**

Defendants never forced Plaintiff to work more than her contractual hours, never forced Plaintiff to assume more than her contractual duties, never failed to pay Plaintiff her contractual wage, never subjected Plaintiff to harsh or abusive working conditions, never refused to permit Plaintiff to leave, never refused to permit Plaintiff to take time off, never confiscated Plaintiff's passport, and never withheld a copy of Plaintiff's contract.

## ADDITIONAL DEFENSES

Defendants reserve the right to assert additional defenses as discovery proceeds and reveals facts not currently known or available.

WHEREFORE, having fully answered the allegations contained in the Complaint, Defendants respectfully request the following:

1. A judgment dismissing the Second Amended Complaint with prejudice;

2. A judgment awarding costs, including attorneys' fees; and

3. Such other and further relief as the Court may deem just and proper.

## COUNTERCLAIM

### Defamation

Defendants/Counter-Claimants Mohammed bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud, for their counterclaim against Plaintiff/Counter-Defendant, Simret Semere Tekle, allege as follows:

## INTRODUCTION

1.      This is a defamation action brought by Mohammed bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud against their former domestic employee, Simret Semere Tekle, for her false and defamatory statements alleging that Defendants/Counter-Claimants subjected her to human trafficking and held her in a state of involuntary servitude.

2.      Defendants/Counter-Claimants are citizens of Saudi Arabia who, most recently, lived in the United States from 2008 to 2013.  During their stay in the United States, Plaintiffs employed a large domestic staff.

3.      Plaintiff/Counter-Defendant  came to the United States from Saudi Arabia to work as a member of the Defendants/Counter-Claimants' domestic staff.  Plaintiff/Counter-Defendant was not a United States citizen when she traveled to the United States to join Defendants/Counter-

13

Claimants' domestic staff.   The entry visa issued by the United States Government to Plaintiff/Counter-Defendant provided that Plaintiff/Counter-Defendant's right to remain in the United States was conditioned on her continuing employment by the Defendants/Counter-Claimants.

4.    Although Defendants/Counter-Claimants treated Plaintiff/Counter-Defendant with respect, kindness, and generosity throughout her employment, Plaintiff/Counter-Defendant, without warning, left Defendants/Counter-Claimants' home a short time before she and Defendants/Counter-Claimants were scheduled to return to Saudi Arabia.

5.    When Plaintiff/Counter-Defendant left Defendants/Counter-Claimants' employ, she no longer possessed a valid visa to live and/or work in the United States.

6.    A provision of U.S. immigration law provides that a non-citizen may obtain a visa to remain in the United States if the non-citizen claims to have been the victim of human trafficking.  A visa obtained under this provision is commonly referred to as a "T Visa."

7.    The Immigrant Legal Resource Center ("ILRC") describes the T Visa as "one of the most generous . . . in all of immigration law."  The ILRC further states that "T Visas may be more widely, and more quickly, available than other forms of immigration relief."

8.    Following her departure from the Defendants/Counter-Claimants' home, Plaintiff/Counter-Defendant applied for, and obtained, a T Visa, allowing her to remain in the United States.

9.    In the course of applying for, and obtaining, a T Visa, Plaintiff/Counter-Defendant made knowingly false statements to federal law enforcement officials about her treatment by Defendants/Counter-Claimants while she was in their employ, and in the periods immediately before and after her employ.

10.     In the Spring or Summer of 2018, Plaintiff/Counter-Defendant or her agents communicated false and defamatory statements about Defendants/Counterclaimants to a reporter at the Washington Post, including the substance of her false statements to federal law enforcement officials.

11.     On September 7, 2018, the Washington Post ran a newspaper story reporting that the federal government had certified Plaintiff/Counter-Defendant as a "victim of a severe form of trafficking in persons," and identifying Defendants/Counter-Claimants as the purported perpetrators of that trafficking.

12.     By disseminating, or causing to be disseminated, to the Washington Post her false, defamatory, and malicious accusations that Defendants/Counter-Claimants had subjected her to human trafficking and involuntary servitude, Plaintiff/Counter-Defendant has caused Defendants/Counter-Claimants damages, including suffering severe reputational harm and emotional distress.

## PARTIES AND JURISDICTION

13.     Defendants/Counter-Claimants are citizens and residents of Saudi Arabia.

14.     On information and belief, Plaintiff/Counter-Defendant is a resident of Virginia.

15.     The matter in controversy in Defendants/Counter-Claimants' defamation counterclaim exceeds the sum of $75,000.

16.     Defendants/Counter-Claimants' counterclaim also arises out of the transaction or occurrence that is the subject matter of Plaintiff's claim and does not require adding another party over whom the court cannot acquire jurisdiction.  Fed. R. Civ. P. 13.  Therefore, this Court has supplemental jurisdiction over Defendants/Counter-Claimants' counterclaim.  28 U.S.C. § 1367. This Court is a proper venue for Defendants/Counter-Claimants' action because it is the judicial

district in which the only defendant resides and the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  28 U.S.C. § 1391.

## STATEMENT OF FACTS

17.     In 2011, Defendants/Counter-Claimants and their children traveled from Saudi Arabia to the United States.  Defendants/Counter-Claimants remained in the United States for approximately two years.

18.     During their stay in the United States, Defendants/Counter-Claimants employed a large domestic staff.  Plaintiff/Counter-Defendant was a member of Defendants/Counter-Claimants' domestic staff for approximately seven months, from in or about September 2011 to in or about April 2012.

19.     At all times during her stay in Defendants/Counter-Claimants' home, Defendants/Counter-Claimants treated Plaintiff/Counter-Defendant with respect, kindness, and generosity.

20.     Defendants/Counter-Claimants never victimized Plaintiff/Counter-Defendant through the commission of violations of 18 U.S.C. § 1546's prohibition against fraud and misuse of visas, permits, and other documents.

21.     Defendants/Counter-Claimants never victimized Plaintiff/Counter-Defendant through the commission of violations of 18 U.S.C. § 1589's prohibition against forced labor.

22.     Defendants/Counter-Claimants never instructed Plaintiff/Counter-Defendant that she was prohibited from leaving their residence, that she was prohibited from taking breaks, or that she was not allowed to speak with anyone outside the residence.

23.     Defendants/Counter-Claimants never instructed Plaintiff/Counter-Defendant that Americans would attack her if she went outside.

24.     Defendants/Counter-Claimants   never   called   Plaintiff/Counter-Defendant   a "whore," a "donkey" or "colored."

25.     Defendants/Counter-Claimants did not constantly monitor Plaintiff/Counter-Defendant by video surveillance or confiscate her passport when she entered the United States.

26.     Nevertheless, Plaintiff/Counter-Defendant, in a meeting with federal law enforcement officials from the U.S. Department of State, the U.S. Department of Homeland Security, and the U.S. Department of Justice, falsely and maliciously alleged that Defendants/Counter-Claimants took all of the actions aforementioned in Paragraphs 20 through 25—all of them detestable and many of them criminal.  As a result of making these allegations, Plaintiff/Counter-Defendant was able to obtain a visa that permitted her to remain in the United States.  On information and belief, before Plaintiff/Counter-Defendant met with federal law enforcement officials, they were not conducting an investigation into whether Defendants/Counter-Claimants had engaged in human trafficking.  Indeed, on information and belief, Plaintiff/Counter-Defendant's false and malicious statements initiated the federal investigation into Defendants/Counter-Claimants' conduct.

27.     Defendants/Counter-Claimants did not learn that Plaintiff/Counter-Defendant made these false and defamatory statements to federal law enforcement officials until Plaintiff/Counter-Defendant's counsel sent Defendants/Counter-Claimants' counsel a copy of her Department of Homeland Security Form I-914 ("Form I-914") on June 26, 2018.  A copy of the Plaintiff/Counter-Defendant's Form I-914 is attached as Exhibit A.  The Form I-914 contains a summary of the statements Plaintiff/Counter-Defendant made to federal law enforcement officials.

28.     On June 26 2018, Defendants/Counter-Claimants learned, for the first time, that Plaintiff/Counter-Defendant had made numerous false and defamatory statements about them.

17

29.     Plaintiff/Counter-Defendant's Form I-914 reveals that Plaintiff/Counter-Defendant "participated in an interview with officials from the US Department of State-Diplomatic Security Service, Homeland Security Investigations, and the US Department of Justice."  Exhibit A at 3.

30.     Plaintiff/Counter-Defendant's Form I-914 also contains a summary of the false and malicious allegations Plaintiff/Counter-Defendant made to federal law enforcement officials. Federal law enforcement officials recorded Plaintiff/Counter-Defendant's statements as follows: "Tekle was victimized through the commission of violations of 18 USC 1546, Visa Fraud and 18 USC 1589, Forced Labor when she was trafficked into the US.  When Tekle arrived in the US she was instructed by her employer that she was prohibited from leaving the residence, she was prohibited from taking breaks, and she was not allowed to speak with anyone outside the residence. Tekle was also told by her employer that Americans would attack her if she went outside.  Tekle said she was called a 'whore,' 'colored' and a 'donkey' by her employer.  Tekle said she was constantly monitored by video surveillance and her passport was confiscated by her employer when she entered the US."  Exhibit A at 2.

31.     Although Plaintiff/Counter-Defendant's Form I-914 does not refer to Defendants/Counter-Claimants by name, Plaintiff/Counter-Defendant was surely speaking about Defendants/Counter-Claimants and federal law enforcement officials surely knew that she was speaking about Defendants/Counter-Claimants because, prior to Plaintiff/Counter-Defendant's interview with federal law enforcement, Defendants/Counter-Claimants were Plaintiff/Counter-Defendant's only employers in the United States.

32.     In the Spring or Summer of 2018, Plaintiff/Counter-Defendant or her agents communicated to a reporter at the Washington Post the substance of her above-noted false statements to federal law enforcement officials, including, upon information and belief,  providing

the reporter with a copy of the Form I-914, containing the summary of Plaintiff/Counter-Defendant's false and defamatory statements to federal law enforcement officials.

33.     At about the same time, a Washington Post reporter contacted Defendants/Counter-Claimants' counsel and stated that he was going to publish a story about the Plaintiff/Counter-Defendant's allegations.   In conversations with Defendants/Counter-Claimants' counsel, the Washington Post reporter made it apparent that he was aware of the information contained in Plaintiff/Counter-Defendant's Form I-914.

34.     At the time these conversations took place, Plaintiff/Counter-Defendant's Form I-914 was not accessible to the general public.

35.     Plaintiff/Counter-Defendant, however, had access to her Form I-914, as demonstrated by the fact that Plaintiff/Counter-Defendant's agents sent her Form I-914 to Defendants/Counter-Claimants' counsel on June 26, 2018.

36.     The reporter informed Defendants/Counter-Claimants' counsel that he had multiple conversations with Plaintiff/Counter-Defendant's attorneys.

37.     On September 7, 2018, the Washington Post ran a newspaper story reporting that the federal government had certified Plaintiff/Counter-Defendant as a "victim of a severe form of trafficking in persons," and identifying Defendants/Counter-Claimants as the purported perpetrators of that trafficking.

38.     As a result of Plaintiff/Counter-Defendant making false and defamatory statements to federal law enforcement officials, Defendants/Counter-Claimants have been damaged, and suffered severe reputational harm and emotional distress.

39.     As a result of Plaintiff/Counter-Defendant or her agents communicating to a reporter at the Washington Post the substance of her false statements to federal law enforcement officials, knowing such false and defamatory statements would likely be published by the

Washington Post as a natural consequence of her acts, Defendants/Counter-Claimants have been damaged, and suffered severe reputational harm and emotional distress.

## COUNT I

### (Defamation Per Se)

40.     Defendants/Counter-Claimants restate and incorporate by reference the allegations of Paragraphs 1 through 39 of the Counterclaim as if fully set forth herein.

41.     Plaintiff/Counter-Defendant's statements about Defendants/Counter-Claimants reflected in her Form I-914 and noted above in paragraph 30 were false when originally made and false when Plaintiff/Counter-Defendant or her agents communicated them to a Washington Post reporter.  Moreover, Plaintiff/Counter-Defendant knew the statements about Defendants/Counter-Claimants were false when she or her agents communicated them to the Washington Post in the Spring or Summer of 2018 and Plaintiff/Counter-Defendant acted willfully and maliciously toward Defendants/Counter-Claimants when doing so.

42.     Plaintiff/Counter-Defendant's statements about Defendants/Counter-Claimants reflected in her Form I-914 and which were subsequently published in September 2018 by the Washington Post as a natural consequence of her act are defamatory per se and tend to injure Defendants/Counter-Claimants' reputations in Virginia because they allege the commission of serious criminal offenses.

43.     Plaintiff/Counter-Defendant or her agents communicating her statements about Defendants/Counter-Claimants to the Washington Post proximately caused Defendants/Counter-Claimants damages in the form of severe injury to their reputations in Virginia.

44.     Plaintiffs have suffered reputational damages in an amount to be proven at trial, but not less than $75,000.

45.     In communicating statements to the Washington Post which she knew to be false and defamatory, Plaintiff/Counter-Defendant acted with actual malice and under circumstances amounting to a willful and wanton disregard of the Defendants/Counter-Claimants' rights, justifying an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Defendants/Counter-Claimants Mohammed bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud respectfully pray and request that the Court enter judgment in their favor and award Defendants/Counter-Claimants compensatory damages of at least $75,000 and punitive damages of $350,000 as well as such other and further non-monetary relief that the Court may deem appropriate, or as to which Defendants/Counter-Claimants may show they are entitled at trial.

## JURY DEMAND

Defendants/Counter-Claimants demand a trial by jury on all issues triable as of right.


Dated: February 15, 2019                          Respectfully submitted,

                                                  /s/ John L. Brownlee
                                                  John L. Brownlee (VSB# 37358)
                                                  Stuart G. Nash (*pro hac vice*)
                                                  David L. Haller (*pro hac vice*)
                                                  HOLLAND & KNIGHT LLP
                                                  1650 Tysons Boulevard, Suite 1700
                                                  Tysons, VA  22102
                                                  Telephone: 703.720.8600
                                                  Facsimile: 703.720.8610
                                                  Email: John.Brownlee@hklaw.com
                                                  Email: Stuart.Nash@hklaw.com
                                                  Email: David.Haller@hklaw.com

                                                  *Counsel for Defendants Nouf bint Nayef*
                                                  *Abdul-Aziz al Saud and Mohammad bin*
                                                  *Abdullah al Saud*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 15th day of February, 2019, a true copy of the foregoing was served

via electronic case filing to:

Nicholas Cooper Marritz,
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

Richard F. Levy
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
rlevy@jenner.com

Jonathan A. Langlinais
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
jalanglinais@jenner.com

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
afryszman@cohenmilstein.com

Le'ake Fesseha
Le'ake Fesseha Law Office
901 S. Highland Street, Suite 312
Arlington, VA 22204
leakef@hotmail.com

Martina Elizabeth Vandenberg
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
mvandenberg@htlegalcenter.org

Sarah Linnell Bessell
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
sbessell@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

/s/ John L. Brownlee
John L. Brownlee