**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

SIMRET SEMERE TEKLE,

        *Plaintiff*,

    v.

NOUF BINT NAYEF ABDUL-AZIZ AL
SAUD MOHAMMAD BIN ABDULLAH AL
SAUD

      *Defendants*.

Case No.: 1:18-cv-211

**<u>PLAINTIFF SIMRET SEMERE TEKLE'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION TO STRIKE
DEFENDANTS' AFFIRMATIVE DEFENSES AND TO COMPEL DEFENDANTS'
COOPERATION IN DISCOVERY</u>**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ............................................................................................................................. 5

    I.     Legal Standard. .......................................................................................................... 5

    II.    Defendants Should be Compelled to Comply with the Pleading and
          Discovery Rules ...................................................................................................... 6

        A.     This Court Should Strike Defendants' Affirmative Defenses or
              Compel a Response to RFP 36........................................................................... 6

        B.     This Court Should Compel Defendants to Consent to a FOIA
              Request for the Employment Contract............................................................. 8

        C.     This Court Should Compel Defendants to Respond to
              Interrogatories 2 and 3......................................................................................11

        D.     This Court Should Compel Defendants to Respond to Plaintiff's
              Discovery into Tax Records and Financial Information..................................11

           1.    The requested discovery is relevant to Plaintiff's breach of
                   contract and trafficking claims...................................................................13

           2.    The requested documents will provide information about Defendants'
                   net worth, which is relevant to Plaintiff's claims for punitive
                   damages......................................................................................................15

        E.     This Court Should Compel Defendants to Produce Employment
              Contracts and Payment Records for Defendants' Other Employees...............16

CONCLUSION......................................................................................................................... 17

# TABLE OF AUTHORITIES

CASES

*Am. Angus Ass'n v. Sysco Corp.*,
    158 F.R.D. 372, 374 (W.D.N.C. 1994)....................................................................................17

*Bethel v. City of Norfolk*,
    No. 2:15CV501, 2017 WL 2874686, at *3 (E.D. Va. Jan. 13, 2017). ...................................5

*Capital One Bank (USA) N.A. v. Hess Kennedy Chartered, LLC*,
    No. 3:08CV147, 2008 WL 4467160, at *2 (E.D. Va. Sept. 30, 2008)...............................6, 15

*Cappetta v. GC Servs. Ltd. P'ship*,
    No. CIV. A. 3:08CV288, 2008 WL 5377934, at *2 (E.D. Va. Dec. 24, 2008).......................6

*Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*,
    334 F.3d 390, 402 (4th Cir. 2003).....................................................................................5, 17

*Castle v. Jallah*,
    142 F.R.D. 618, 620 (E.D. Va. 1992).................................................................................5-6

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247, 270 (1981)....................................................................................................15

*Doe v. Old Dominion Univ.*,
    289 F. Supp. 3d 744, 749 (E.D. Va. 2018)...........................................................................5

*Francisco v. Verizon S., Inc.*,
    No. 3:09CV-737, 2010 WL 2990159, at *6 (E.D. Va. July 29, 2010)....................................6

*Gibbs v. Plain Green, LLC*,
    331 F. Supp. 3d 518, 529 (E.D. Va. 2018)...........................................................................5

*Groove Digital, Inc. v. United Bankshares, Inc.*,
    No. 3:17CV794, 2018 WL 3543055, at *5 (E.D. Va. July 23, 2018).......................................5

*Hayne v. Green Ford Sales, Inc.*,
    263 F.R.D. 647, 650 (D. Kan. 2009)....................................................................................7

*Hickman v. Taylor*,
    329 U.S. 495, 500 (1947)....................................................................................................5

*Pacific Mut. Life Ins. Co. v. Haslip*,
    499 U.S. 1, 21-22 (1991)...................................................................................................15

*TXO Production Corp. v. Alliance Resources Corp.*,
    509 U.S. 443, 462 n. 28 (1993).........................................................................................15

**STATUTES**

8 U.S.C. § 1202(f)..................................................................................................4, 9

William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008,
    Pub. L. No. 110-457, § 203(b)(1)(A), 121 Stat. 5044..........................................10

**REGULATIONS**

22 CFR § 171.11(n)(4)..................................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(a)(1)(B)............................................................................................11

Fed. R. Civ. P. 12(f)......................................................................................................6

Fed. R. Civ. P. 26(b)..................................................................................................5, 15

Fed. R. Civ. P. 26(b)(1)........................................................................................13, 14, 15

Fed. R. Civ. P. 34(b)(2)(A)............................................................................................3

Fed. R. Evid. 401................................................................................................13, 14, 15

9 FAM 402.3-9(B)(3)(a)................................................................................................10

L.R. 6(d).........................................................................................................................2

L.R. 34(b)(2)(A).............................................................................................................2

L. R. 26(B).....................................................................................................................11

U.S. Citizenship and Immigration Services, *Petitioner*,
    https://www.uscis.gov/tools/glossary/petitioner (last visited Mar. 22, 2019)..............10

U.S. Citizenship and Immigration Services, *Beneficiaries*,
    https://www.uscis.gov/tools/glossary/beneficiaries (last visited Mar. 22, 2019)..........10

8 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2015 (3d ed.).........................................17

Plaintiff Simret Semere Tekle respectfully moves under Federal Rule of Civil Procedure 12(f) for an order striking Defendants' affirmative defenses.  Ms. Tekle also moves under Federal Rule of Civil Procedure 37 for an order compelling Defendants Nouf bint Nayef Abul-Aziz Al Saud and Mohammad Bin Abdullah Al Saud to comply with their discovery obligations and produce certain documents Ms. Tekle has repeatedly and properly sought from Defendants.

## PRELIMINARY STATEMENT

Defendants' continued refusal to comply with their discovery obligations and with applicable pleading standards requires this Court's intervention.  Notably, Defendants have refused to produce dispositive documents without meeting their burden to justify such refusal.  One example of these key documents is Ms. Tekle's employment contract with Defendants, the very terms of which are in material dispute.  Ms. Tekle alleges that the written contract, which Defendants have admitted to submitting to the U.S. Government as part of Ms. Tekle's visa application, provided that she would be paid $4500 per month, but that she was not even paid $4500 in total during the seven-month term of her employment.  Not only have Defendants failed to produce the contract, they have also thwarted Ms. Tekle's efforts to obtain the contract through a Freedom of Information Act ("FOIA") request to the State Department.  As another example, while Defendants have given indications that they kept no employment or pay records, they have refused to produce any tax records that could illuminate critical information about Defendants' payment to their employees, including Ms. Tekle.  As these and the numerous other examples below demonstrate, Defendants have run afoul of this Court's procedural requirements.  The Court should therefore grant an order to compel Defendants' compliance.  Counsel have met and conferred pursuant to Local Rule 37(E).  *See* Declaration of Agnieszka M. Fryszman, Ex. C.

1

## RELEVANT FACTUAL BACKGROUND

Plaintiff brought this action in February 2018.  Dkt. 1.  In her operative Second Amended Complaint, Plaintiff alleges (i) that Defendants brought her to the United States from Saudi Arabia and held her in involuntary servitude and forced labor, in violation of 18 U.S.C. § 1590; (ii) that she was forced and coerced into labor through a scheme, plan, pattern, and practice of physical and psychological abuse, enforced isolation, threats of serious harm, and threatened abuse of legal process, in violation of 18 U.S.C. § 1589; (iii) that Defendants withheld her travel documents, including her passport, in furtherance of their human trafficking scheme, in violation of 18 U.S.C. § 1592; (iv) that Defendants held her in involuntarily servitude for a period of seven months without permitting her to leave, in violation of 18 U.S.C. § 1584; and (v) that Defendants breached the terms of the parties' contract by failing to pay Plaintiff the agreed sums and by forcing her to work more than forty hours per week.  Dkt. 53.  Plaintiff alleges that her period of forced labor lasted from September 2011 through April 2012.

After multiple rounds of motions, the Court denied Defendants' third motion to dismiss on February 5, 2019.  Dkt. 65.  Discovery in this matter opened on that same day, February 5, 2019. *See* Order, Dkt. 64 at 1.  Ten days later, on February 15, 2019, Defendants filed their Answer and a Counterclaim for defamation *per se*.  Dkt. 69.  On March 8, 2019, Plaintiff filed a motion to dismiss that counterclaim.  Dkt. 70.

Plaintiff served her first Requests for Production ("RFPs") on February 6, 2019, the day after discovery opened.  Declaration of Nicholas Cooper Marritz ("Maritz Decl."), Ex. A.  While Defendants' production was due on March 11, 2019, Plaintiff received no production from Defendants until March 18, 2019.  *See* L.R. 6(d) & 34(b)(2)(A); *see also* Declaration of Nicholas Cooper Marritz ("Maritz Decl."), Exs. H, I.  When Defendants finally produced, they provided a

mere 11 photos and 37 videos, which ranged from seven seconds to several minutes in length.  In other words, Defendants failed to produce even a single written document.  In a March 15, 2019 cover letter preceding the March 18, 2019 production, Defendants promised another production the week of March 25, 2019.  *See* Marritz Decl., Ex. H.  In their email, Defendants failed to explain the undue delay in production.  Notably, the week of March 25, 2019 comes six weeks after Plaintiff served her RFPs and after the time permitted by the Federal Rules.  Fed. R. Civ. P. 34(b)(2)(A).  Defendants similarly provided no explanation for what kind of information or documents Plaintiff should expect in the production.

On February 13, 2019, Plaintiff served her first Requests for Admission ("RFAs").  *See* Marritz Decl., Ex. B.  Plaintiff served her first set of Interrogatories on February 20, 2019.  *See* Marritz Decl., Ex. C.  Defendants timely filed objections to both of these requests.  On March 12, 2019, counsel met and conferred about Defendants' myriad objections to Plaintiff's RFPs, RFAs, and Interrogatories.

Defendants' unsupportable objections to Plaintiff's RFPs reveal their justification for the scant production.  For example, Defendants have flatly refused to produce—on the basis of attorney-client privilege—*any* documents supporting their nine affirmative defenses.  These defenses include Defendants' assertions that Plaintiff materially breached her contract and that Defendants paid Plaintiff her contractually required wage.  Defendants have provided no explanation for how documents supporting these defenses—such as Plaintiff's employment contract and Defendants' payroll records—are privileged.

Ms. Tekle's employment contract with Defendants is a key document in this matter.  Ms. Tekle has alleged that Defendants never gave her a copy of her employment contract, Second Amended Compl, ¶ 27, and has requested Defendants to produce it.  RFPs ¶ 3.  Defendants claim

they do not have a copy of this contract. September 7, 2018 Hearing Tr. at 27:23-5 ("MR. NASH: I don't have a copy of the contract. We've asked our clients for the copy of the contract. They don't have a copy of the contract."). Despite this claim, Defendants have admitted to submitting this contract to the U.S. Government as part of Ms. Tekle's visa application. Marritz Decl., Ex. F, Defs.' Resp. to Pl.'s RFAs ¶ 17.

Still, Ms. Tekle has pursued other avenues to attain a copy of her employment contract. On August 23, 2017, months before filing this action, Ms. Tekle attempted to obtain her employment contract through a Freedom of Information Act ("FOIA") request to the State Department. The State Department refused to release a copy of the contract without authorization from Defendants, citing the confidentiality provisions of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), which require both parties' consent to the release of the contract.[1] While Ms. Tekle has consented to the release of her contract through FOIA, she still needs Defendants' consent for the same. Ms. Tekle's counsel requested Defendants' authorization to the FOIA release by letters of September 11, 2018 and September 14, 2018. *See* Declaration of Richard F. Levy, Ex. A, Declaration of Agnieszka M. Fryszman, Ex. A. Defendants refused to provide the necessary authorization, although in their responses to Plaintiff's Request for Admission, Defendants assert they would have given Ms. Tekle a copy of the contract in question if she had only requested it. Defs.' Resp. to Pl.'s RFAs ¶ 18; *see also* Fryszman Decl., Ex. B ("Our clients

---

[1] The State Department's denial was based on statutory grounds and not subject to legal challenge. The State Department stated that, "we are permitted to release only those documents which were submitted or received by the applicant/requestor or others who have provided written authorizations for release of their documents." Declaration of Martina E. Vandenberg, Ex. A, Letter from Anteron P. Herbert to Martina Vandenberg (Nov. 14, 2017). At a prior motion to dismiss hearing, the Court "urge[d] [Ms. Tekle] to exercise the time limits that are imposed by law on the Department of State to produce documents." *Id*. at 31:24-5. In an effort to comply with the Court's urging, Ms. Tekle sought to re-submit a FOIA request for her employment contract with the required signatures from Defendants.

respectfully decline to engage in one-sided early discovery or waive their rights of confidentiality."). Ms. Tekle's counsel renewed their request during a meet and confer phone call on March 12, 2019. *See* Vandenberg Decl. ¶ 3. Defendants first said that they would respond by March 15, 2019. *See id.* They failed to do so.

## ARGUMENT

### I.     Legal Standard

The Federal Rules "contemplate the broadest discovery possible in the search of the truth." *Doe v. Old Dominion Univ.*, 289 F. Supp. 3d 744, 749 (E.D. Va. 2018) (quoting *Kline v. Martin*, 345 F. Supp. 31, 32 (E.D. Va. 1972)). Under the Federal Rules, discovery "is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003); *see also Hickman v. Taylor*, 329 U.S. 495, 500 (1947) (noting that the purpose of discovery is to allow "the parties to obtain the fullest possible knowledge of the issues and facts before trial"). Federal Rule of Civil Procedure 26(b) establishes the parameters for permissible discovery. These parameters must be "given a broad and liberal construction." *Bethel v. City of Norfolk*, No. 2:15CV501, 2017 WL 2874686, at *3 (E.D. Va. Jan. 13, 2017). Moreover, "[d]iscovery under the Federal Rules of Civil Procedure is generous in scope and freely permitted, and district courts have broad discretion in their resolution of discovery problems that arise in cases pending before them." *Gibbs v. Plain Green, LLC*, 331 F. Supp. 3d 518, 529 (E.D. Va. 2018) (internal quotations omitted), *appeal dismissed*, No. 18-1908, 2018 WL 7223994 (4th Cir. Sept. 13, 2018); *see also Groove Digital, Inc. v. United Bankshares, Inc.*, No. 3:17CV794, 2018 WL 3543055, at *5 (E.D. Va. July 23, 2018).

Here, Defendants bear the burden to show that the requested discovery is improper because they are the party refusing to engage in discovery. *See Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D.

Va. 1992); *see also Capital One Bank (USA) N.A. v. Hess Kennedy Chartered, LLC*, No. 3:08CV147, 2008 WL 4467160, at *2 (E.D. Va. Sept. 30, 2008); *Finley v. Trent,* 955 F. Supp. 642, 648 (N.D. W. Va. 1997).  "The burden is on the party resisting production to show 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant.'"  *Cappetta v. GC Servs. Ltd. P'ship*, No. CIV. A. 3:08CV288, 2008 WL 5377934, at *2 (E.D. Va. Dec. 24, 2008) (quoting *Roesberg v. Johm-Manville Corp.*, 85 F.R.D. 292, 296 (E.D. Pa. 1980)).  Defendants have ignored and not met their burden, thereby warranting this Court's intervention.

## II.     Defendants Should be Compelled to Comply with the Pleading and Discovery Rules.

Plaintiff requests that this Court: (1) strike Defendants' affirmative defenses or compel Defendants to produce documents supporting the affirmative defenses; (2) compel Defendants to sign a FOIA request to obtain the employment contract; (3) compel Defendants to respond to the Interrogatories about their counterclaim; (4) compel Defendants to produce tax records and financial information; and (5) compel Defendants to produce records of contracts and payments for other employees who worked during the same time period.

### A.     This Court Should Strike Defendants' Affirmative Defenses or Compel a Response to RFP 36.

Plaintiff requests that this Court strike Defendants' affirmative defenses for insufficiency. Fed. R. Civ. P. 12(f).  In this jurisdiction, the *Twombly–Iqbal* standard applies to a defendant's pleading of affirmative defenses.  *Francisco v. Verizon S., Inc.*, No. 3:09CV-737, 2010 WL 2990159, at *6 (E.D. Va. July 29, 2010).  Affirmative defenses pled in a shotgun manner without distinguishing among multiple claims fall short.  *See id.* at *6.  Affirmative defenses must not only be responsive to specific claims, but it must be clear which defense is responsive to which claim. *See id.*  A conclusory affirmative defense is insufficient because like the plaintiff, a defendant also

must plead sufficient facts to demonstrate a plausible affirmative defense.  *See Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 (D. Kan. 2009).

Defendants asserted nine affirmative defenses in answering Plaintiff's Second Amended Complaint.  Dkt. 69 at 11-12.  In so doing, Defendants made no effort to plead facts that support their affirmative defenses.   Instead, Defendants provided bare and unsupported conclusions, including that Ms. Tekle breached her contract and that Defendants did not violate federal law.  Dkt. 69 at 11-12.  Defendants provide no supporting facts for any of their defenses.  *See, e.g.*, *id.* at 11 (asserting nothing more than "Defendants never held Plaintiff to involuntary servitude or sold Plaintiff into any condition of involuntary servitude" as an affirmative defense).   The insufficiency of these affirmative defenses is exacerbated by the alleged non-existence of any unprivileged documents that Defendants intend to rely on to support them.  Defs.' Resp. to Pl.'s RFPs ¶ 36.  And importantly, it is unclear from Defendants' pleadings which defenses go to which claims.  Accordingly, this Court should strike Defendants' nine affirmative defenses.

In the alternative, Plaintiff requests the Court to compel Defendants to produce documents responsive to Plaintiff's RFP 36.  The RFP in question sought the production of documents Defendants intend to rely on in support of their nine defenses.  Pl.'s First RFPs ¶ 36.  Defendants refused outright to produce a single document that they intend to use, hiding under the guise of attorney–client privilege.  However, the attorney–client privilege does not—and indeed cannot—protect all documents responsive to this request.   Notably, Defendants assert as affirmative defenses that Plaintiff materially breached her contract and that Defendants paid Plaintiff her contractually-required wage.  It is difficult to fathom how all documents that would support these defenses—including contracts and payroll records—are privileged.   Nor have Defendants produced any kind of privilege log to support their claim that all responsive documents are

privileged.  In consequence, Plaintiff requests that this Court enter an order compelling Defendants

to respond in full to Plaintiff's RFP 36, including the production of an adequate privilege log.

**B.      This Court Should Compel Defendants to Consent to a FOIA Request for the Employment Contract.**

It is in the interest of both parties to attain a copy of the employment contract between

Defendants and Ms. Tekle.  Both sides claim the other side breached contractual terms.  Defendants

also claim full compliance with the contractual terms.  While there is no dispute that this written

contract exists and was at some point in Defendants' possession, Marritz Decl., Ex. F, Defs.' Resp.

to Pl.'s RFAs ¶¶ 17-18, Defendants insist on blocking every effort by Ms. Tekle to obtain a copy

of the contract.  Although Defendants claim that they have insufficient information about the

employment contract to respond to RFP 8 about whether they entered into that contract, they then

admit in RFP 17 that they submitted that same contract to the U.S. Government as part of Ms.

Tekle's visa application.  Defs.' Resp. to Pl.'s RFAs ¶¶ 8, 17.  In their response to RFA 8,

Defendants state that "[h]ad Ms. Tekle asked Defendants for a copy of her employment contract,

Defendants would have given Ms. Tekle a copy of the contract."  Defs.' Resp. to Pl.'s RFAs ¶ 18.

These two responses amount to an admission that an employment contract *does* exist between

Defendants and Ms. Tekle.  Unless an employment contract existed, Defendants *could not have*

submitted a copy to the U.S. Government or proffered Ms. Tekle a copy.  Defendants contradict

themselves again in their response to RFP 15, in which they deny applying for a visa for Ms. Tekle,

even though they submitted an employment contract "as part of Ms. Tekle's visa application."

Defs.' Resp. to Pl.'s RFAs ¶¶ 15, 17.

Defendants' refusal to participate in discovery by failing to provide their authorization for

the U.S. Government pursuant to a FOIA request warrants the Court's intervention.  The Court has

already described Defendants' failure to provide Ms. Tekle with a copy of the contract as

"troublesome" and unfair.  Dkt. 55, September 7, 2018 Hearing Tr. at 31:21; *see also id.* at 27:6-10 ("THE COURT: Did you ever provide the plaintiff with a copy of the contract? MR. NASH: Not to my knowledge. I don't know. THE COURT: Golly, Pete, does that strike you as fair?").  An order from this Court is necessary to ensure that Defendants produce this authorization for release of the contract without delay.  Given that neither party has produced a copy of the contract, the only means of accessing this critical document is through a renewed FOIA request to the State Department that includes the written authorization of both parties to the contract.  This is extremely time-sensitive; Plaintiff requested this authorization from Defendants in September 2018, more than six months ago.  Defendants flatly refused to cooperate to obtain this piece of evidence.  Now that discovery has begun, they continue to stall.

FOIA exempts the disclosure of records pertaining to the issuance or refusal of visas.  8 U.S.C. § 1202(f).  However, "[o]ther information found in the visa file, such as information submitted as part of the application and information not falling within section 222(f) or another FOIA exemption may be provided. . . . In order to gain maximum access to any visa records that exist, attorneys or other legal representatives requesting visa information on behalf of a represented individual *should submit a statement signed by both the petitioner and the beneficiary authorizing release of the requested visa information to the representative*.  Alternatively, the Department's form, DS-4240, may be used to certify the identity of the requester and to provide authorization from the petitioner and the beneficiary to release the requested information to the legal representative."  22 CFR § 171.11(n)(4) (emphasis added).

U.S. Citizenship and Immigration Services defines a "petitioner" as "[a] person who files an immigration petition or application"[2] and a visa "beneficiary" as "[a]liens on whose behalf a U.S. citizen, legal permanent resident, or employer have filed a petition for such aliens to receive immigration benefits from the U.S. Citizenship and Immigration Services. . ."[3]

As Ms. Tekle's employers and visa petitioners, Defendants' written authorization is necessary for a FOIA release of the employment contract.  There is good reason to believe that the Department of State has the contract in the files.  Federal law requires that an executed employment contract be included in an application for an A-3 nonimmigrant visa.  9 FAM 402.3-9(B)(3)(a) ("Post must scan the employment contract and, as applicable, an English translation of the contract, and attach the scanned document to the application record in NIV."); William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. No. 110-457, § 203(b)(1)(A), 121 Stat. 5044 ("The Secretary may not issue . . . an A-3 visa . . . unless . . . the applicant has executed a contract with the employer or prospective employer . . . .").

In refusing to provide their written authorization, Defendants display continued unwillingness to cooperate with a legitimate discovery request.  Given how much of this litigation is driven by the terms of the employment contract, Defendants' refusal to comply is astounding, and, as this Court has pointed out, unfair.  *See* September 7, 2018 Hearing Tr. at 27:6-10.  The logical inference is that the contract includes the terms Plaintiff describes, hence Defendants' reluctance to obtain the document.  Ms. Tekle respectfully requests this Court to order Defendants to provide their authorization to the FOIA release request.

---

[2] U.S. Citizenship and Immigration Services, *Petitioner*,
https://www.uscis.gov/tools/glossary/petitioner (last visited Mar. 22, 2019).
[3] U.S. Citizenship and Immigration Services, *Beneficiaries*,
https://www.uscis.gov/tools/glossary/beneficiaries (last visited Mar. 22, 2019).

### C.       This Court Should Compel Defendants to Respond to Interrogatories 2 and 3.

Plaintiff requests that this Court compel Defendants to respond in full to Plaintiff's Interrogatories 2 and 3.  Defendants have refused to respond to these interrogatories based on a legal fiction that the interrogatories were premature.  *See* Marritz Decl., Ex. G, Defs.' Objections to Pl.'s First Interrogatories ¶¶ 2-3.  Defendants insist they are not obligated to engage in discovery and respond to these interrogatories because Plaintiff had not filed an Answer to the Counterclaim due to Plaintiff's then-pending Motion to Dismiss.   On March 22, 2019, Defendants filed an Amended Counterclaim.  Dkt. 75.  Under the Federal Rules, Plaintiff's response to the Amended Counterclaim is not due until April 12, 2019, a mere six weeks before the close of discovery.  Fed. R. Civ. P. 12(a)(1)(B); Dkt. 68.  Defendants fail to provide any basis for this argument.

Discovery in this matter opened on February 5, 2019.  Dkt. 64.  Defendants have not filed any motion—and this Court has not granted any order—to stay discovery in this matter.  *See generally* Dkts. 1-76.  The Local Rules of the Eastern District of Virginia require a party to submit in writing to the Court any requests related to discovery.  *See* Ed. Va. L. R. 26(B).  Therefore, despite Defendants' insistence to the contrary, discovery in this matter continues.  Defendants cannot unilaterally and without the Court's permission stay their discovery obligations. Accordingly, this Court should compel Defendants to fulfill their discovery obligations by responding to Plaintiff's Interrogatories 2 and 3.

### D.       This Court Should Compel Defendants to Respond to Plaintiff's Discovery into Tax Records and Financial Information.

Defendants have flatly refused to respond to any of Plaintiff's discovery into Defendants' financial information or tax records.  Because this information is highly relevant to Plaintiff's claims, Plaintiff requests that this Court compel Defendants to respond to Plaintiff's Requests for Production 5, 12, and 13; Interrogatories 16, 17, 18, and 19; and Requests for Admission 30, 32,

34, 36, 37, 39, 41, 43, and 48.  Defendants have objected to and refused to respond to each of these requests on relevance grounds.  *See* Marritz Decl., Exs. D, E, G.  Through these requests, Plaintiff seeks information on Defendants' employment tax records and other tax records directly relevant to taxes paid on behalf of Ms. Tekle, as well as information on Defendants' financial status for purposes of Plaintiff's claim for punitive damages.

Plaintiff seeks to compel Defendants to respond to the following RFPs:

| RFP 5 | All tax records related to any payments made by You to Ms. Tekle. |
|---|---|
| RFP 12 | All tax records related to payments made by You to the employees identified by the description in request 10. |
| RFP 13 | All tax documents indicating payment of payroll taxes for Your employees in the United States from January 1, 2008, through December 31, 2012, including Schedule HH to Form 1040 to report 'household employment taxes' to the IRS. |

Pl.'s RFPs ¶¶ 5, 12, 13.

Plaintiff seeks to compel Defendants to respond to the following Interrogatories:

| ROG 16 | Identify all current sources of income for You including any allowances, wages, salaries, pensions, retirement benefits or other benefits You are receiving, as well as any assets off of which you are currently living. |
|---|---|
| ROG 17 | Identify all assets owned by You (or jointly owned), wherever located, and their current value including but not limited to all bank or credit union accounts, investment accounts, retirement accounts, real estate, and other tangible property with a value over $5,000. In doing so, please provide a list of all account numbers and bank/financial institution names for each of the following: retirement accounts, pension funds, 401k plans, Roth savings plans, savings accounts, investment accounts of any type, checking accounts, CDs, and all other financial instruments. This includes any accounts held jointly with other individuals. |
| ROG 18 | Identify any inheritance that You received or expect to receive, and state the value of that inheritance. |
| ROG 19 | Identify the dates of all payroll taxes paid to the IRS or the State of Virginia, the dates of all tax filings for household employees, and the amounts paid to the IRS or the State of Virginia. |

Pl.'s First Set of Interrogatories ¶¶ 16-19.

Plaintiff seeks to compel Defendants to respond to the following Requests for Admission:

| RFA 30 | Admit that You did not pay employer-side federal employment taxes for Ms. Tekle. |
|---|---|

| RFA 32 | Admit that You did not withhold taxes from Ms. Tekle's wages. |
| RFA 34 | Admit that You did not remit employer-side payroll taxes to the IRS for Ms. Tekle. |
| RFA 36 | Admit that You paid taxes in the United States. |
| RFA 37 | Admit that You filed a Schedule H (Form 1040) with Your taxes filed in the United States. |
| RFA 39 | Admit that You did not remit Commonwealth of Virginia payroll taxes for Ms. Tekle. |
| RFA 41 | Admit that You did not file payroll taxes in the Commonwealth of Virginia. |
| RFA 43 | Admit that You were required to pay into Social Security for Ms. Tekle anytime between September 1, 2011, and December 31, 2012. |
| RFA 48 | Admit that You did not pay into Social Security for Ms. Tekle anytime between September 1, 2011, and December 31, 2012. |

Pl.'s RFAs ¶¶ 31, 32, 34, 36, 37, 39, 41, 43, 48.

The heart of this dispute is that Defendants, exploiting Plaintiff's immigration status, did not pay her the monies they owed her for her labor. The requested documents, interrogatories, and admissions are relevant to at least two distinct issues in this lawsuit. Each of these bases for relevance is independently sufficient for Plaintiff to obtain the requested discovery from Defendants. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . ."). The Federal Rules of Evidence indicate that information is relevant, and therefore discoverable, if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; Fed. R. Civ. P. 26(b)(1).

## 1.   The requested discovery is relevant to Plaintiff's breach of contract and trafficking claims.

The requested tax records will show how much Defendants paid to their employees in a given year (at a minimum, to the extent Defendants reported employees for tax purposes). The RFAs will establish whether any relevant tax records even exist, resolving the dispute over them if they do not exist. In addition, Defendants claim that they may have compensated Plaintiff with

housing and food in addition to monetary wages, and these tax forms will show whether Defendants reported any such employee benefits. *See* Defs.' Mem. in Supp. of Defs.' MTD, Dkt. 57 at 14-15. Because these documents will show the compensation and benefits Defendants provided, which are of consequence to Plaintiff's breach of contract and trafficking claims, these documents are relevant and should be produced. *See* Fed. R. Evid. 401; Fed. R. Civ. P. 26(b)(1).

Further, the tax records are imperative because Defendants have produced no employment records, or *any other record of payment* to Ms. Tekle or other employees. On the contrary, Defendants have given several indications suggesting they kept no employment records despite employing a robust staff. First, Defendants have not turned over any such documents. Second, Defendants have responded that they are not withholding any documents responsive to Plaintiff's request for such documents (RFP 4, RFP 20). Third, Defendants have responded that they do not have enough information to respond to Plaintiff's RFAs 45 and 46 concerning whether Defendants have employment records or payment receipts. *See* Marritz Decl., Ex. D, Defs.' Responses to Pl.'s First RFPs; Marritz Decl., Ex. E, Defs.' Objections to Pl.'s First RFAs. Thus, Defendants have made unavailable to Plaintiff any relevant information about payments made to Plaintiff or other employees during the same period.

Defendants' employment tax records are likely to contain discoverable evidence. Thus tax records would show how much they paid their employees, including Ms. Tekle during the time of her employment. Defendants have indicated in their filings that their other employees at the time do not have the same complaints as Plaintiff alleges and were treated well. Indeed, they claim that they "do not, and would not, condone paying any of their employees less than $2 per hour," and that Plaintiff received "a $10,000 bonus." Defs.' Reply Mem. in Supp. of Defs.' MTD, Dkt. 41 at 16 n. 7. Thus, the amounts paid to other employees, especially other similarly situated employees,

is relevant or likely to lead to the discovery of relevant information explaining any discrepancies in how Plaintiff was treated and how other employees were treated.  Fed. R. Civ. P. 26(b).

> **2.     The requested documents will provide information about Defendants' net worth, which is relevant to Plaintiff's claims for punitive damages.**

As provided for under the applicable statutes, Plaintiff seeks punitive damages from Defendants.  *See* Second Am. Complaint, Dkt. 53 ¶¶ 133, 134.  Courts have long held that the financial status of the defendant is relevant to determining punitive damages.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270 (1981) (the defendant's "wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); *see also TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 462 n. 28 (1993) ("Under well-settled law, however, factors such as [net worth] are typically considered in assessing punitive damages."); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21-22 (1991) (approving consideration of defendant's "financial position" in determining whether punitive damages award is excessive); *Capital One Bank*, 2008 WL 4467160, at *2 ("As Capital One has sought punitive damages in the instant action, the 'request is both related to the subject of the action and reasonable.'" (quoting *Vanguard Military Equip. Corp. v. David B. Finestone Co., Inc.*, 6 F. Supp. 2d 488, 495 (E.D. Va. 1997))).  When punitive damages are at issue, the defendants' financial records are discoverable in advance of trial.  *See Capital One*, 2008 WL 4467160, at *2 (granting a motion to compel the defendants to produce tax returns because such documents were relevant to the defendant's financial condition and the assessment of punitive damages).  Plaintiff in this case has properly pled punitive damages.  Because these tax records will bear on the net worth of each Defendant, which are facts of consequence to determining punitive damages, these documents are relevant and should be produced.  *See* Fed. R. Evid. 401; Fed. R. Civ. P. 26(b)(1).

**E.      This Court Should Compel Defendants to Produce Employment Contracts and Payment Records for Defendants' Other Employees.**

Plaintiff requests that this Court compel Defendants to produce documents responsive to Plaintiff's requests for records, contracts, and payments that Defendants made to employees other than Ms. Tekle during the relevant time period of her employment with Defendants, RFPs 10, 11 and 14.  Through these RFPs, Plaintiff seeks the following information:

| RFP 10 | All employment contracts entered into between You and any person employed at Your residence at 1034 Aziza Court, Great Falls, VA at any time between September 1, 2011, and December 31, 2012, including security personnel, nannies, domestic workers, kitchen staff, maintenance and janitorial staff, and drivers or chauffeurs. |
|---|---|
| RFP 11 | All documents related to payments made by You to the employees identified by the description in request 10. |
| RFP 14 | All contracts entered into between You and any service provider who provided staffing of any kind at Your residence at 1034 Aziza Court, Great Falls, VA at any time between September 1, 2011, and December 31, 2012, including any cleaning service, security service, or landscaping service. |

Defendants have refused to produce any responsive documents, asserting that these requests are overly broad, irrelevant, and disproportional to the needs of the case.  They claim contracts with and payments made to other employees or contractors are not relevant.  Plaintiff seeks records or other documents of payments made by Defendants to employees or contractors, as well as employment contracts, for the same reasons discussed above with respect to the request for tax documents.  Such records and contracts are relevant as they would show how much Defendants paid their employees, including those similarly situated to Ms. Tekle, during the relevant time period.  Whether Plaintiff was treated differently than other employees, had different terms of employment, and was paid in a different manner or a different amount are relevant questions that might be answered by the requested documents.  Moreover, Defendants have not produced any contract, employment records, or payment records for Ms. Tekle's employment.  Thus, contracts and records of other employees at the time, might by the only documentary

16

evidence containing information detailing how Defendants paid their employees, possibly including Ms. Tekle, or detailing what Defendants' employee or contractor policies were. These documents squarely fit within the "broad" scope of discovery contemplated by Rule 26(b). *Carefirst of Md., Inc.*, 334 F.3d at 402.

Moreover, Defendants have indicated in their initial disclosures that many of these employees might be witnesses in this matter. The amount these employees were paid by Defendants and the terms of their employment contracts would also be relevant as potential impeachment evidence. *See, e.g.*, *Am. Angus Ass'n v. Sysco Corp.*, 158 F.R.D. 372, 374 (W.D.N.C. 1994), 8 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 2015 (3d ed.) ("Discovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition. . . . Information showing that a person having knowledge of discoverable facts may not be worthy of belief is always relevant to the subject matter of the action. . . . Inconsistent statements, . . . proof of bias, and similar material, being themselves admissible evidence, cannot be excluded from the scope of discovery.").

## CONCLUSION

For the reasons stated above, Ms. Tekle requests that the Court enter an order compelling Defendants to provide responses to the above-requested Requests for Production, Requests for Admission, and Interrogatories, and compelling Defendants to provide their written authorization to the State Department for release of a copy of Ms. Tekle's employment contract.

Dated: March 22, 2019

Richard F. Levy (*pro hac vice*)
Jonathan A. Langlinais (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654

Respectfully submitted,

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607

17

(312) 923-2648                                    nicholas@justice4all.org
rlevy@jenner.com

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street, NW #104B
Washington, DC 20005
(202) 716-8485
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

18

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SIMRET SEMERE TEKLE, | Case No.: 1:18-cv-211 |
| *Plaintiff*, | |
| v. | |
| NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, MOHAMMAD BIN ABDULLAH AL SAUD | |
| *Defendants*. | |

## CERTIFICATE OF SERVICE

I certify that I uploaded Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion to Compel Defendants' Cooperation in Discovery to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.

March 22, 2019

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

19