**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| SIMRET SEMERE TEKLE<br><br>*Plaintiff*,<br><br>v.<br><br>NOUF BINT NAYEF ABDUL-AZIZ AL SAUD and MOHAMMAD BIN ABDULLAH AL SAUD<br><br>*Defendants*. | ) | Case No.: 1:18-cv-00211 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OBJECTIONS AND MOTION TO SET ASIDE A PORTION OF THE MAGISTRATE JUDGE'S MARCH 29, 2019, DISCOVERY ORDER**

Pursuant to Federal Rule of Civil Procedure 72(a), Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud ("Defendants"), by and through undersigned counsel, submit this memorandum in support of their motion to set aside that portion of Judge Anderson's March 29, 2019, order compelling Defendants' to waive confidentiality protections afforded them under federal law and to endorse Plaintiff's Freedom of Information Act ("FOIA") request to the United States Department of State. ECF 99.

## BACKGROUND

On February 5, 2019, the Court, pursuant to 28 U.S.C. § 636, referred "all future matters, including consideration of all dispositive motions" to United States Magistrate Judge John F. Anderson. ECF 66. On March 22, 2019, after Plaintiff and Defendants were unable to agree on the extent of Defendants' obligations to comply with certain of Plaintiff's discovery requests, Plaintiff filed a motion to compel Defendants' cooperation in discovery. ECF 77. On March 29, 2019, Judge Anderson granted in part, and denied in part, Plaintiff's motion to compel, stating his

rulings from the bench. ECF 87. Defendants have since complied with all aspects of Judge Anderson's March 29, 2019, order, with one exception. As to that exception, Defendants believe that the Magistrate Judge's decision is contrary to the law and, accordingly, bring this motion to set aside that portion of his decision.

**FACTS**

In 2011, Plaintiff was working in Saudi Arabia as a domestic employee for Defendant Nouf bint Nayef's mother. In the summer of 2011, while Defendants were visiting Saudi Arabia from their temporary residence in the United States, Defendants offered Plaintiff a position working as a domestic employee for them in the United States. Plaintiff accepted the position. Defendants returned to the United States while Plaintiff obtained the necessary visa. Employees of the Saudi royal family assisted Plaintiff in obtaining her visa. Plaintiff alleges, and Defendants do not dispute, that a step in the process involved Plaintiff submitting an employment contract to the U.S. consulate in Saudi Arabia. Plaintiff alleges that this was done and, while Defendants had no personal involvement in the process, Defendants are aware of no information that suggests that it was not done.

Plaintiff alleges that she first became aware of the existence of the written contract when she arrived at the U.S. consulate to obtain her visa. Her initial allegations related to the contract were limited to the fact that it was "in a language that [she] could not read," and that she "did not receive a copy of the contract." Compl., ¶ 14. Defendants subsequently moved to dismiss the contract claim on various grounds, including on the ground that Plaintiff had conceded in her Complaint that she had no knowledge regarding the contractual provisions and thus had no basis for claiming a breach. The Court granted the motion to dismiss (on statute of limitations grounds), but gave Plaintiff an opportunity to amend her complaint. In her Second Amended Complaint

("SAC"), Plaintiff alleged, for the first time, that "[at the consulate,] Defendants' agent summarized the terms of the contract aloud to Ms. Tekle." SAC, ¶ 23.

What is undisputed in the various iterations of Plaintiff's story is that: (a) she never requested a copy of the contract (which is not surprising since it was in a language she concedes she could not read); and (b) that the Defendants, who were half a world away, never had the contract in their possession. The Defendants, for their part, have consistently asserted throughout this litigation that they have no recollection of ever possessing or reviewing the contract.

Plaintiff proceeded to obtain her visa and to travel to the United States, at Defendants' expense, to work for the Defendants. She worked for the Defendants for less than seven months, at which time she left their employment without notice or explanation. At no point in the seven months she worked for Plaintiffs did she request a copy of her employment contract. (Although Defendants still did not have a copy of the contract, they presumably could have reached out and obtained a copy from the private affairs office in Saudi Arabia that handled such matters for Mrs. al Saud's family; that office was closed after the death of Mrs. al Saud's father in 2012.)

Defendants moved back to Saudi Arabia in 2013. As Plaintiff concedes, Defendants had no contact with Plaintiff for nearly six years after Plaintiff left their employment. The first awareness Defendants had that Plaintiff was back in their lives was in April of 2018, when they were alerted that a copy of this lawsuit had been taped to the front gate of a home where they had once lived in Virginia.

In discovery, it has become apparent that Plaintiff has been contemplating a civil lawsuit against Defendants at least as far back as 2014 (a fact that Plaintiff's counsel did not disclose during briefing and arguments on the statute of limitations, at which time Plaintiff's counsel asserted that Plaintiff was too "terrified" to contemplate bringing this lawsuit). As it turns out,

Plaintiff was represented by attorneys throughout this period, and those attorneys (one of whom still represents her): (1) in 2014, advised the immigration authorities that she should not be deported because she would lose access to the U.S. civil justice system for the purpose of bringing this lawsuit; and (2) in 2016, filed a demand letter with the Saudi embassy aimed at Defendants, referencing these exact contractual claims (a letter of which Defendants never received notice of). At no point, in the six years following her voluntary termination of her employment, did Plaintiff—*or her counsel who were actively threatening a lawsuit*—ever request from Defendants a copy of the contract.

Now, six years later, well after the five-year statute of limitations would presumptively have expired, Plaintiff has requested a copy of the contract from Defendants in discovery. Defense counsel informed Plaintiff's counsel that Defendants do not presently have a copy of the contract, and do not recall ever having, or seeing, a copy of the contract. Defendants have conducted a diligent search for the contract among their own records. Defendants have requested the contract from each of their employees who handled their business affairs and might reasonably be expected to have the contract. Not surprisingly, none of these employees have a copy of the contract at this remote point in time. Defendants have attempted to contact the office that once handled these matters for the royal family. As noted, there has been a royal succession since the events in question and, after substantial turnover in personnel, Defendants have been unable to locate a copy of the contract after a diligent search at that office.

Having first filed a breach of contract claim without possessing a copy of the contract (or ever even having read the contract), and then having failed to obtain a copy of the contract through the traditional means of discovery, Plaintiff proposed an extraordinary form of relief to the Magistrate Judge. Plaintiff requested that the Magistrate Judge order Defendants to affirmatively

endorse Plaintiff's FOIA request to the U.S. Department of State, in the hope that the U.S. Consulate in Saudi Arabia has maintained a copy of the contract in their files. Despite the fact that Plaintiff cited no authority for her extraordinary request, the Magistrate Judge accepted Plaintiff's invitation and, citing no authority of his own, announced that "we'll make new law here today," and ordered Defendants to sign paperwork addressed to the U.S. Department of State waiving their statutory confidentiality interests, and endorsing Plaintiff's FOIA request, which the U.S. government had previously denied on the basis of those selfsame confidentiality concerns.

**ARGUMENT**

Under Fed. R. Civ. P. 72(a), upon receiving timely objections to a magistrate judge's decision on "a pretrial matter not dispositive of a party's claim or defense," "[t]he district judge in the case must consider [those] objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Under Fed. R. Civ. P. 34, "[a] party may serve on any other party a request within the scope of Rule 26(b) . . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's *possession, custody, or control*." (emphasis added).

Defendants object to the Magistrate Judge's March 29, 2019, order because they do not have "possession, custody, or control" of documents in the possession of the U.S. government. Defendants have met their discovery obligations by conducting a thorough search of their own records, and by requesting that their employees and other agents conduct a thorough search of their records. The applicable law does not require more.

There is no valid argument that the document in question is in the "possession" or "custody" of the Defendants. Although not explicit in his reasoning, the Magistrate Judge's decision must be logically premised on a finding that the document is somehow in the "control"

of Defendants. In reaching his decision, the Magistrate Judge erroneously analogized requiring Defendants to endorse Plaintiff's FOIA request to a more routine discovery scenario, in which the requested documents are in the possession of an agent or affiliate of the litigant, such as a litigant's bank records in the possession of a bank. In such scenarios, according to the Magistrate Judge, he has routinely ordered a litigant to order its agent (the bank) to produce relevant documents. Defendants do not dispute this principle, as applied to agents or affiliates of the litigants, and had, in fact, already, at the time this issue was presented to the Magistrate Judge, requested that all their employees and agents conduct a thorough search for responsive documents, including the contract.

What Defendants dispute is the validity of the Magistrate Judge's analogy as applied to entities—like the U.S. government—that plainly are not agents or affiliates of the litigant. The Magistrate Judge cited no authority for that proposition and, in fact, there is none. *C.f. Flame S.A. v. Indus. Carriers,* 2014 U.S. Dist. LEXIS 56452 (E.D. Va. 2014) (litigant corporation found to have practical control over documents of its "sister corporation"); *E.I. DuPont de Nemours & Co. v. Kolon Indus.*, 286 F.R.D. 288 (E.D. Va. 2012) (litigant found to have "practical ability" to obtain documents from its corporate affiliates). In all relevant cases Defendants have located in which a party is required to produce the documents in the possession of a non-party, there is a corporate affiliation or agency relationship between the litigating party and the non-party holder of the documents. As the *Flame* court phrased it, "[i]t is well established that a district court may order the production of documents in the possession of a *related* nonparty entity under Rule 34(a)." *Flame*, 2014 U.S. Dist. LEXIS 56452 at *3 (emphasis added).[1]

[1] In a follow-up ruling, the *Flame* Court enumerated the factors that courts have traditionally applied in determining whether to order discovery from a non-party: "(1) the corporate structure of the party/non-party, (2) the non-party's connection to the transaction at issue in the litigation, (3) the degree that the non-party will benefit from the outcome of the case; (4) whether the related entities exchange documents in the ordinary course of business; (5) whether the nonparty has

Once litigants are responsible for obtaining documents outside the control of themselves and their agents and affiliates, what reasonable limits exist? If Plaintiff had not initiated a FOIA request on her own, would Defendants be responsible for initiating their own FOIA request in order to obtain and produce the document? Are foreign litigants, like these Defendants, not only responsible for attempting to obtain documents in the possession the U.S. government, but also responsible for attempting to obtain documents in the possession of their own governments?

Equally troubling is the manner in which the Magistrate Judge disposed of the confidentiality interests of the Defendants, which are explicitly protected by the FOIA. In this case, the U.S. Department of State denied Plaintiff's FOIA request for the express reason that the release of the documents would "breach [the] confidentiality" of the Defendants as established by the applicable statutes. The Magistrate Judge (relying on his flawed bank analogy) found that the confidentiality concerns could be overcome by Defendants simply signing a waiver, but he made no effort to explain whether it was *appropriate* to require such a waiver. Various privileges, such as the doctor-patient privilege or the attorney-client privilege, establish common law zones of confidentiality similar to the statutory zone of confidentiality accorded to the Defendants in connection with the documents that were submitted to the U.S. Consulate. As in the current case, those privileges *could* be made simply to disappear if the litigant were required by a court to sign a waiver directed to his doctor or his attorney. Courts would typically never even consider

participated in the litigation; (6) common relationships between a party and its related non-party entity; (7) the ownership of the non-party; (8) the overlap of directors, officers, and employees; (9) the financial relationship between the entities; (10) the relationship of the parent corporation to the underlying litigation; and (11) agreements among the entities that may reflect the parties' legal rights or authority to obtain certain documents." *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 759 (E.D. Va. 2014). This recitation of factors shows just how removed this line of cases is from the Magistrate's ruling in this case—that Defendants are responsible for production of a document in the possession, not of a corporate affiliate, but of *the U.S. government*.

requiring a litigant to sign such a waiver, thereby coercing the litigant into abandoning his or her privilege. In this case, the Magistrate Judge apparently did not recognize the issue, much less engage in any weighing of equities to determine whether Defendants' rights should be overborne.

To date, Plaintiff has not identified, the Magistrate Judge has not cited, and defense counsel have not located, a single decision requiring a party to produce in discovery documents that are in the possession, custody, and control of the U.S. government, much less that the party sign away his or her rights under the FOIA in order to do so. To the best of defense counsel's knowledge, no court has taken the extraordinary step that Judge Anderson took when he stated that "we'll make new law here today" and ordered Defendants to endorse Plaintiff's FOIA request to the U.S. Department of State.

As such, Defendants respectfully submit that Judge Anderson's order is contrary to law.

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court set aside that portion of Judge Anderson's order compelling them to endorse Plaintiff's FOIA request and to waive their rights of confidentiality.

Dated: April 9, 2019

Respectfully submitted,

/s/ John L. Brownlee
John L. Brownlee (VSB# 37358)
Stuart G. Nash (*pro hac vice*)
David L. Haller (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, VA 22102
Telephone: 703.720.8600
Facsimile: 703.720.8610
Email: John.Brownlee@hklaw.com
Email: Stuart.Nash@hklaw.com
Email: David.Haller@hklaw.com

*Counsel for Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud*

**CERTIFICATE OF SERVICE**

I certify that on this 9th day of April 9, 2019, a true copy of the foregoing was served via electronic case filing to:

Nicholas Cooper Marritz
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

Jonathan A. Langlinais
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
jalanglinais@jenner.com

Le'ake Fesseha
Le'ake Fesseha Law Office
901 S. Highland Street, Suite 312
Arlington, VA 22204
leakef@hotmail.com

Sarah Linnell Bessell
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
sbessell@htlegalcenter.org

Richard F. Levy
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
rlevy@jenner.com

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
afryszman@cohenmilstein.com

Martina Elizabeth Vandenberg
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
mvandenberg@htlegalcenter.org

Andrew B. Cherry
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
acherry@jenner.com

*Counsel for Plaintiff Simret Semere Tekle*

/s/ John L. Brownlee
John L. Brownlee