# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

**Simret Semere Tekle**,

        *Plaintiff*,

   v.

**Nouf bint Nayef Abdul-Aziz Al Saud** and
**Mohammad bin Abdullah al Saud**,

        *Defendants*.

Case No.: 1:18-cv-211

Hearing: May 3, 2019

## Plaintiff's Memorandum in Opposition to Defendants' Motion to Set Aside the Magistrate Judge's Discovery Order

### Introduction

Plaintiff Simret Semere Tekle has sued her employers, the al Sauds, for breach of her employment contract.[1] The al Sauds deny breaching the contract, and in fact accuse Ms. Tekle of breaching it.[2] The only known copy of the contract is held by the U.S. State Department. But despite the obvious central importance of the contract to both parties' claims and defenses, the al Sauds refuse to join Ms. Tekle's Freedom of Information Act request asking the State Department to release the contract—and unless they do so, the Department will not release it. Magistrate Judge Anderson, recognizing the inherent unfairness of the al Sauds' conduct, granted Ms. Tekle's motion to compel and ordered the al Sauds to take the minimal steps necessary to allow the Department to release the contract. The al Sauds now object to the Magistrate Judge's

---

[1] Second Amended Complaint, ECF No. 53 at 22–23. The complaint also includes claims for labor trafficking, forced labor, and involuntary servitude.

[2] Answer and Counterclaim, ECF No. 69 at 11–12.

order, claiming that (1) the contract is not in their control and that (2) its release would jeopardize their interest in keeping the contract confidential.

These arguments are specious: with regard to "control," the al Sauds can authorize the release of the contract with the stroke of a pen. As for confidentiality, Congress requires employers like the al Sauds to keep a copy of their domestic workers' labor contracts on file with the government in order to protect those workers from exploitation—not to protect the employers against claims of mistreatment.

Finally, there is no reasonable alternative means for Ms. Tekle to get the contract from the State Department. The Immigration and Nationality Act prohibits the Department from releasing visa-related records (like this contract) without written authorization from all parties. Neither a FOIA lawsuit nor a Rule 45 subpoena can overcome this statutory mandate. The al Sauds' written consent is the only way that the contract will be released.

For these reasons, the Court should sustain Magistrate Judge Anderson's ruling and order the al Sauds to authorize the release of Ms. Tekle's employment contract.

## FACTS

In August 2017, Ms. Tekle sent the U.S. State Department a request under the Freedom of Information Act, seeking documents that the al Sauds had submitted to the State Department in order to bring Ms. Tekle to the United States: her A-3 visa application and a copy of her work contract.[3] The Department responded that it was holding 7 responsive documents totaling 13 pages, but that it could only release documents as to which all necessary parties had given their

---

[3] Ms. Tekle's FOIA request accompanies this brief as Exhibit A.

consent in writing.[4] Thus, the Department released just one document in Ms. Tekle's file—a

"DS-160 Report"[5]—because written authorization had been provided for that document only.[6]

Ms. Tekle then asked the al Sauds to give their consent for the State Department to release the

contract as well.[7] The al Sauds refused and are continuing to block the contract's release.

## ARGUMENT

**I.   Ms. Tekle's work contract is in the al Sauds' "control" because they have the practical ability to get the contract from the State Department.**

Federal Civil Rule 34 requires parties to produce responsive documents in their

"possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Here, the contract is within the al

Sauds' "control." As the very cases cited by Defendants make clear, "control" under Rule 34

"does not require that the party have legal ownership or actual physical possession of the

documents at issue, but rather 'the right, authority or *practical ability* to obtain the documents

from a nonparty to the action.'" *Flame S.A. v. Indus. Carriers, Inc.*, 39 F. Supp. 3d 752, 759

(E.D. Va. 2014), quoting *E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288,

292 (E.D. Va. 2012) (emphasis added).[8]

---

[4] U.S. Department of State, Response to FOIA Request, ECF No. 78-18.

[5] The "DS-160" is the State Department's Online Nonimmigrant Visa Application Form. The DS-160 visa application form from Ms. Tekle's file accompanies this brief at Exhibit B.

[6] U.S. Department of State, Response to FOIA Request, *supra* n.4.

[7] Letter from R. Levy, ECF No. 78-16; follow-up letter from A. Fryszman, ECF No. 78-12.

[8] Some district-court decisions from within the Fourth Circuit (including at least one from this Court) have found that "control" requires "the legal right" to obtain the document from the third party on demand. *See, e.g.*, *Hatfill v. New York Times Co.*, 242 F.R.D. 353, 355 (E.D. Va. 2006) (O'Grady, J.) (newspaper not required to produce notes that one of its former reporters took with him when he left the paper). However, the Fourth Circuit has not interpreted the phrase "possession, custody or control," *id.*, and the more recent decisions of this Court— including those cited by the al Sauds in their brief—apply the "practical ability" standard.

3

Here, the al Sauds have the "practical ability" to get the contract from the State Department, because the Department will presumably release the contract if the al Sauds ask for it in writing. True, the Immigration and Nationality Act creates a FOIA exemption for records "pertaining to the issuance or refusal of visas."[9] However, as the Department's FOIA regulations make clear:

> "Other information found in the visa file, such as information submitted as part of the application and information not falling within [INA] Section 222(f) or another FOIA exemption may be provided. … In order to gain maximum access to any visa records that exist, attorneys or other legal representatives requesting visa information on behalf of a represented individual *should submit a statement signed by both the petitioner and the beneficiary authorizing release of the requested visa information to the representative.* Alternatively, the Department's form, DS-4240, may be used[.]"[10]

This process is also described in the September 2018 FOIA Ombuds Observer, published by the Office of Government Information Services:

> "The Department of State will release only those documents that were submitted or received by the applicant/requester or others who have provided written authorizations for release of their documents. *Example: The Petitioner provided the I-130 Form in an immigrant visa application case. If there is no authorization from the petitioner, then the State Department will not release the I-130 to the beneficiary.*").[11]

---

[9] 8 U.S.C. § 1202(f).

[10] 22 C.F.R. § 171.11(n)(4) (emphasis added). The State Department's standard release form is available at https://foia.state.gov/_docs/DS-4240.pdf and accompanies this brief as Exhibit C.

[11] FOIA Ombuds Observer, No. 18-01, Companion, Sept. 26, 2018, "Using FOIA to Access Immigration Records: Questions and Answers," https://www.archives.gov/ogis/resources/foia-ombuds-observer/18-01-companion (emphasis added).

In sum: Ms. Tekle, the beneficiary of the al Sauds' visa petition,[12] has already authorized

the release of her employment contract through her FOIA request. The al Sauds, as the

petitioners,[13] need only give their written consent for the contract to be released. If that is not the

"practical ability" to get a document from a third party, it would be hard to imagine what is.

The al Sauds counter that a document held by a third party is in a person's "control" only

if the third party is the person's agent or corporate affiliate.[14] The Court should decline the al

Sauds' invitation to impose this kind of arbitrary restriction on Rule 34, and the case law does

not support it. In *Benisek v. Lamone*, for example, Republican voters sued various members of

the Maryland State Board of Elections, challenging the constitutionality of the state's

congressional redistricting map. 320 F.R.D. 32 (D. Md. 2017). The voters asked the Board to

produce documents that were used in the creation and enactment of the map—many of which

were held by other government entities, including the Maryland governor's office and the

Maryland General Assembly. *Id.* at 35. The Board objected to the request, stating that documents

held by other government entities were not within the Board's "control" under Rule 34. *Id.* The

*Benisek* court disagreed, finding that the other entities had a history of voluntarily cooperating

with Board requests for documents in the past. *Id.* Thus, the court held that even though there

was no corporate or agency relationship between the Board and the other entities, the Board

nonetheless had the "practical ability" to obtain the documents and ordered the Board to produce

---

[12] U.S. Citizenship and Immigration Services: Glossary: "*Beneficiaries*: Aliens on whose behalf a U.S. citizen, legal permanent resident, or employer have filed a petition for such aliens to receive immigration benefits[.]" https://www.uscis.gov/tools/glossary/beneficiaries.

[13] U.S. Citizenship and Immigration Services: Glossary: "*Petitioner*: A person who files an immigration petition or application." https://www.uscis.gov/tools/glossary/petitioner. The visa application form already released by the State Department lists "HRH Prince Mohammed Bin Abdullah Al Saud" as Ms. Tekle's employer, making him the visa "petitioner." (*See* Ex. B.)

[14] *See* Defendants' Brief, ECF No. 100 at 6.

them. *See id.*[15] The al Sauds likewise have the practical ability to get Ms. Tekle's contract from the State Department: they need only sign the Department's standard release form, and the Court should require them to do so.

* * *

At the end of the day, the al Sauds cannot credibly argue that Ms. Tekle's employment contract is not within their control. If they give their consent in writing, the State Department has given every indication that Ms. Tekle's FOIA request will be honored and the contract released. Magistrate Judge Anderson rightly required the al Sauds to make the minimal effort necessary to obtain a document critical to both parties' claims and defenses. This was a common-sense and eminently fair decision, and the Court should affirm it.

## II.   Congress's concerns about labor exploitation and human trafficking trump Defendants' purported concerns about confidentiality.

Despite the central and undisputed importance of the contract to this case, the al Sauds insist that they should not have to request the contract from the State Department because they would have to waive their "confidentiality interests" under the FOIA. But whatever their interests may be, they cannot justify blocking Ms. Tekle from accessing an employment contract to which both she and the al Sauds are a party.

Congress requires diplomats, ministers, and other powerful employers like the al Sauds to create written contracts containing detailed, specific protections for their domestic workers—and to keep a copy of those contracts on file with the government—in order to protect those workers from exploitation and trafficking, not to make it impossible for the workers to access the

---

[15] The Supreme Court has granted certiorari in *Benisek*, but the questions before it do not include this discovery ruling. *See* Supreme Court of the United States, Case No. 18-726, "Questions Presented," https://www.supremecourt.gov/qp/18-00726qp.pdf.

contract. After all, Congress imposed these mandatory contract requirements as part of the

Trafficking Victims Protection Reauthorization Act of 2008.[16] Section 203(b) of the TVPRA,

where the contract requirement has its origin, is helpfully titled "Protections and remedies for

A-3 and G-5 nonimmigrants."[17] Congress was concerned that State Department guidance on the

matter did not go far enough toward protecting domestic servants,[18] and so it strengthened and

codified these employment-contract provisions in the TVPRA to give them the force of law. It is

thus fully in keeping with Congress's purpose to require the al Sauds to sign the State

Department's standard authorization form for release of documents, which will allow the

Department to produce the contract.

Finally, the al Sauds cannot credibly argue that there is anything especially "confidential"

about an agreement that they unquestionably would have to produce had they kept a copy of it in

their possession. As Magistrate Judge Anderson observed, "If there is an employment contract

and this lawsuit involves the employment contract, there is nothing confidential about that

document."[19] The al Sauds, perhaps recognizing the weakness of their position, have also argued

that they shouldn't have to sign the release because the State Department cannot be trusted to

---

[16] William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. 110–457, December 23, 2008.

[17] 8 U.S.C. § 1375c(b)(2) ("Mandatory contract").

[18] *See* U.S. Government Accountability Office, Report to the Subcommittee on Human Rights and the Law, Committee on the Judiciary, U.S. Senate, "*U.S. Government's Efforts to Address Alleged Abuse of Household Workers by Foreign Diplomats with Immunity Could Be Strengthened*" (July 2008), https://www.gao.gov/assets/280/278797.pdf.

[19] Hearing Transcript, Plaintiff's Motion to Compel, March 29, 2019, at 19:9–11 (Ex. D).

locate the contract in Ms. Tekle's visa file and might accidentally produce documents that *are* confidential.[20]

This supposed concern is meritless; State Department officials should be presumed competent to do their jobs, and in any case the contract on file must be in English[21] and so should be easy to identify. Magistrate Judge Anderson even ordered that any document obtained from the State Department will be "held by counsel under the terms of attorney's eyes only" until the parties can verify that it is indeed the employment contract.[22]

* * *

Ultimately, the INA protects visa-related records in order to keep sensitive personal information away from the prying eyes of *the general public. See Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741–42 (D.C. Cir. 1983). But it cannot and should not be used as a shield to protect powerful employers from charges of abuse by their domestic servants. The Court should sustain Magistrate Judge Anderson's order and require the al Sauds to allow the contract's release.

### III.    Ordering the al Sauds to sign the State Department's authorization form is the only reasonable means of getting the contract.

At an earlier hearing, the Court implied that Ms. Tekle could simply file a FOIA lawsuit against the State Department in order to get the contract.[23] Such a lawsuit would be futile. In its

---

[20] *Id.* at 18:5–12.

[21] U.S. Dep't. of State, "Visas for Diplomats and Foreign Government Officials," https://travel.state.gov/content/travel/en/us-visas/other-visa-categories/visas-diplomats.html

[22] Ex. D, Hearing Tr., *supra* n.19 at 19:23–20:2.

[23] ECF No. 55, Hearing Transcript of Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint, September 7, 2018, at 32:12–16.

letter denying Ms. Tekle's FOIA request, the Department cited *Medina-Hincapie v. Dep't of State*, 700 F.2d 737 (D.C. Cir. 1983). There, the D.C. Circuit upheld a district court's dismissal of just such a lawsuit, holding that the FOIA "precludes visa applicants from circumventing the INA's directive [protecting visa-related records from public access] by the use of a FOIA request." 700 F.2d at 744.

Nor can a Rule 45 subpoena can overcome the INA's statutory mandate. Unlike a FOIA request, the State Department can ignore a third-party subpoena entirely if it wishes. *See COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999). Ms. Tekle's only recourse would then be to seek review of that decision under the "arbitrary or capricious" standard of the Administrative Procedure Act. *Id.* Given the INA's statutory prohibition, however, an APA lawsuit would likely fare no better than a FOIA lawsuit; it seems neither "arbitrary" nor "capricious" to for the Department to deny a subpoena seeking documents that, by statute, the Department cannot release.[24] Thus, the al Sauds' written consent remains the only way that the contract will ever see the light of day.

\* \* \*

The State Department has made clear that it will not release records related to visa applications—no matter what means a person uses to request them—without a written authorization from both the petitioner and the beneficiary. 22 C.F.R. § 171.11(n)(4). Thus, Ms. Tekle's already-pending FOIA request is the most straightforward means of getting the contract,

---

[24] Ms. Tekle has in fact sent a Rule 45 subpoena to the State Department, seeking testimony and documents related to this case. (Ex. E). In an attempt to make every possible effort to obtain it, the subpoena includes a request for Ms. Tekle's work contract. But as explained above, this request is highly likely to be denied, and the Court should not use it as a reason to allow the al Sauds to continue to thwart the release of a document well within their control.

and the Court should sustain Magistrate Judge Anderson's order requiring the al Sauds to sign

the authorization form necessary to obtain it.[25]

## IV.     Defendants should be required to pay Plaintiff's attorneys' fees incurred in litigating this motion to compel.

Under Federal Civil Rule 37, if a party brings a motion to compel and wins, the court

must award the movant its reasonable attorneys' fees. Fed. R. Civ. P. 37(a)(5). The only

exceptions are if the movant filed the motion without first making a good-faith effort to get the

discovery without the court's help; if the opposing party's conduct was substantially justified, or

if other circumstances would make an award of fees unjust. *Id.* No such concerns apply here: Ms.

Tekle has made every effort to get the contract without the court's help; the al Sauds'

recalcitrance is not remotely justified; and no other circumstances would make a fee award

unjust. Ms. Tekle thus respectfully requests her attorneys' fees, both for this motion and for the

previous successful motion to compel production of the contract.

**<u>CONCLUSION</u>**

As Magistrate Judge Anderson observed:

> This case is going to have to get decided at some point on the merits, and one of the claims is the employment contract. And if there is— it says she is supposed to get $4,000 a month, you know, that's a claim. If it doesn't say how much she is supposed to get paid a month, doesn't have a term in it, if it doesn't have those kinds of things, everybody needs to know that.[26]

He is absolutely right, and thus the Court should require the al Sauds to

sign off on Ms. Tekle's request to the Sate Department.

---

[25] *See* Ex. D, Hearing Tr., *supra* n.19 at 21:17–22.

[26] *Id.* at 19:9–11.

10

Dated: April 23, 2019

Richard F. Levy (*pro hac vice*)
Andrew B. Cherry (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2648
rlevy@jenner.com

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street, NW #104B
Washington, DC 20005
(202) 716-8485
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

Respectfully submitted,

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| **Simret Semere Tekle**, | |
| *Plaintiff*, | |
| v. | Case No.: 1:18-cv-211 |
| **Nouf bint Nayef Abdul-Aziz Al Saud** and **Mohammad bin Abdullah al Saud**, | |
| *Defendants*. | |

## <u>CERTIFICATE OF SERVICE</u>

I certify that I uploaded Plaintiff's Memorandum in Opposition to Defendants' Motion to Set Aside the Magistrate Judge's Discovery Order to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.

April 23, 2019

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org