# Exhibit D

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF VIRGINIA
                         Alexandria Division




------------------------------------:
                                    :
SIMRET SEMERE TEKLE,                :
              Plaintiff,            :
                                    :
     -vs-                           :    Case No. 1:18-cv-211
                                    :
                                    :
NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, :
et al.,                             :
              Defendants.           :
                                    :
------------------------------------:




                          HEARING ON MOTIONS

                           March 29, 2019

          Before:  John F. Anderson, U.S. Mag. Judge
```

APPEARANCES:

Nicholas C. Marritz, Andrew B. Cherry, and
Martina E. Vandenberg, Counsel for the Plaintiff

Stuart G. Nash, David L. Haller, and John L. Brownlee,
Counsel for the Defendants

1 above-captioned matter.

2 That just -- I mean, that document request just
3 standing by itself seems to be very, very broad. I am not so
4 sure -- I mean, if it was, you know, all documents on which you
5 will rely to support your defense that, you know, the plaintiff
6 breached the contract first or something like that, that's the
7 kind of specificity that I think is required when you're asking
8 a discovery request.

9 Just as I generally strike a request for every
10 request for admission that you have denied, you know, state X,
11 Y, and Z. Because, you know, I think sometimes it has to be a
12 two-step process and you being direct --

13 So I'm -- given the representation from the defendant
14 as to what they have done on the search issues, that they're
15 not withholding any documents and that there is not an issue
16 having to do with the need to produce a privilege log, which is
17 another issue that if in fact they were withholding documents
18 based on attorney/client privilege and work product, they would
19 need to produce a privilege log, I am going to deny the motion
20 to compel a response to document request number 36.

21 On the FOIA request issue, my understanding -- and
22 again, you know, I'm just -- you all are much more in tune with
23 what's going on in this case. You have made the FOIA request.
24 You've gotten a response that they have 13 pages of documents.
25 They didn't identify what those documents were.

1           Your request, as I understand it, is to have the
2   defendants sign a waiver that would allow only the employment
3   contract to be produced, if I read that waiver -- it is not the
4   entire file, 13 pages, it may include something other than the
5   employment contract.  But the waiver that you've asked them to
6   file or to sign does appear to only seek that they disclose the
7   employment contract; is that right?
8           MR. CHERRY:  Yes, that's what we're focussed on.
9           THE COURT:  And what -- what would happen if in fact
10  they then were required to sign that waiver?
11          MR. CHERRY:  Well, we would go back to the State
12  Department FOIA officer and we would give them the waiver.  How
13  the FOIA rules work in this situation is the State Department
14  can give over to documents only to the person that are about, a
15  specific person in this context, only to the person who asks
16  for them.
17          So by asking for them, our client gave her own waiver
18  to release documents related to her and -- but a document such
19  as an employment contract, which would be signed by our client
20  and signed by the defendants, they need defendants'
21  authorization to release that in order to release it.
22          THE COURT:  All right.  Well, let me hear from Mr.
23  Nash as to -- I mean, obviously the employment contract is
24  relevant.  It's necessary.  You say she breached it.  She says
25  you breached it.  Your argument that she breached it is that,

1   you know, she was left in the middle of a term.  You don't have
2   a document that says what the term is.
3            So, you know, if you're going to rely on a breach of
4   contract, you need to have some evidence that supports that it
5   had a time limit in it.
6            You know, I'm at a little bit of a loss as to why,
7   since the release is only limited to releasing the contract --
8   and, you know, the language did seem to be pretty clear to me.
9   And if it needs to be tightened up, then we can have it
10  tightened up.
11           But what's the objection for having the State
12  Department produce only the contract, if they have the
13  contract, in the file?
14           MR. NASH:  Your Honor, I think it would be an
15  unprecedented form of relief for this Court to order.  The law
16  is clear that the discovery obligations of our client are to
17  those documents over which we have possession, custody, or
18  control.
19           There is no allegation that we have possession of
20  these.  We have asserted that we don't have possession.  We
21  never had possession of that contract.
22           THE COURT:  Well, obviously you -- someone, your
23  client or its agent, had possession of it.  If it's in
24  existence and your client signed it, they would have had to
25  have had possession of it at the point that they signed it.

16

1    MR. NASH:  We have conceded -- there was a request
2 for admission as to whether such a contract existed.  And we
3 admitted that we have reason to believe that the contract
4 existed based on the -- purely the logical progression.  Which
5 is, our inquiry has suggested that in order to get the type of
6 visa that Ms. Tekle got, she -- the consulate in Saudi Arabia
7 would have needed to have been shown a copy of a contract.  She
8 got that visa and came to the United States.
9    And based on that -- on those two facts, we didn't
10 feel like we were in a position to deny that a contract
11 existed.  But our clients have no recollection of signing a
12 contract.  No recollection of ever seeing the contract.  No
13 recollection of ever having the contract in their possession.
14 And no basis, other than, you know, purely that logical
15 deduction, to believe that a contract existed.
16    So, you know, we have no idea based on what the
17 plaintiff has asserted that the contract is in the possession
18 of the State Department.  The State Department said, we have
19 got 13 pages.  We don't know what those 13 pages are.
20    But what we do know under the law is that we don't
21 have possession, custody, or control of that document.
22    THE COURT:  Well, you do have -- tell me why you
23 don't think you have control if all you have to do is sign a
24 piece of paper.
25    And you say this is unprecedented.  And my

1   experience, I have not infrequently ordered a party to a
2   lawsuit to request documents from a bank when they say, I don't
3   have my bank statements.
4           MR. NASH:  Absolutely.
5           THE COURT:  And so, you know, it's not within their
6   possession, it's not within their custody.
7           MR. NASH:  Right.
8           THE COURT:  But by requesting or signing something --
9   and the same with medical records.
10          MR. NASH:  Absolutely.  And that's commonplace, and I
11  concede that.  But the significant difference is that the bank
12  was an agent of -- of the party to the lawsuit.  All of the --
13  all of the examples in all of the cases, the -- the individual
14  -- the party to the lawsuit was in a position to control the
15  actions of their agent.
16          You know, I can't say, well, I can't get that
17  document, Your Honor, because my banker has it and you want --
18  you have got to go to my banker.  Obviously, I have to give my
19  banker authorization.
20          This is entirely different.  We don't have -- the
21  federal government does not work for our clients.  The federal
22  government keeps these documents for their own purposes.  And
23  there is a statute that provides confidentiality protections to
24  us about what uses the government is going to make of those
25  documents.

1        And what you're asking us to do, without any showing
2   that what is actually there is an employment contract --
3        THE COURT:  Well, if it isn't in there, the response
4   will be, we don't have it and we're not producing anything.
5        MR. NASH:  Well, but you're asking us to trust the
6   State Department to -- to go through their files and identify
7   what they -- what they think is responsive to -- to our waiver.
8   You know, once -- once they've produced it, whatever they've
9   produced is out of the bag.
10       And I don't have confidence that the State Department
11  is going to go through there and pick out the document that the
12  plaintiff has in mind from those -- from those pages.  All I
13  know is the State Department has said the documents that are in
14  our possession are confidential, and the Al Saud family has
15  confidentiality interests in those documents.
16       And this -- you know, if Your Honor were require us
17  to file -- or to sign a waiver, that is -- that's comparable to
18  you making an affirmative injunction requiring our clients to
19  -- enjoining them to do something, an affirmative act, sign
20  their confidentiality interests away.  And the plaintiffs
21  haven't cited any authority for any court ever requiring a
22  waiver of FOIA confidentiality protections in the context of a
23  discovery dispute.
24       And we've searched, we haven't found any such case,
25  and I do believe that it would be unprecedented if Your Honor

```
 1  were to order them.
 2          THE COURT:  Okay.  Well, we'll make new law here
 3  today.  I mean, I think under the facts and circumstances of
 4  this case where both parties have represented to the Court that
 5  it's important that this document be a part of their case, that
 6  the procedure as outlined by the plaintiff is not unduly
 7  burdensome.  It's not going to be anything that will release
 8  anything that is confidential.
 9          If there is an employment contract and this lawsuit
10  involves the employment contract, there is nothing confidential
11  about that document.
12          MR. NASH:  Your Honor, could I ask, would Your Honor
13  be agreeable to the entry of a protective order that keeps
14  whatever is produced from the State Department as attorney's
15  eyes only until such time that we can verify that it is the
16  contract that is at issue so that something that is
17  confidential --
18          THE COURT:  Yeah.  I mean, I think that is
19  appropriate.  And I think you all can work together on that.
20          I mean, and I understand -- I can't imagine what
21  would be in these 13 pages that could be of any really
22  sensitive, confidential information.  But in order to protect
23  that, I will have that whatever gets produced will be produced
24  and held by counsel under the terms of attorney's eyes only.
25          You all then meet, look at it, decide what's in it.
```

1 If it is the employment contract, obviously, that then isn't
2 going to be attorney's eyes only information.  Once that's done
3 --
4         MR. NASH:  Your Honor, Mr. Brownlee has suggested I
5 think an even better way to proceed that I -- well, let me
6 propose to you.
7         Since it is our confidentiality interests that are at
8 stake --
9         THE COURT:  Well, hers as well.  The plaintiff has
10 the same confidentiality protection as your client has.
11         MR. NASH:  Would you -- would Your Honor consider
12 allowing us to file the FOIA request and allow them to waive
13 their confidentiality interests so that the document comes to
14 us, we'll review it and then --
15         THE COURT:  I'm not so sure that you would be as
16 prompt in doing it as they would, given what I've heard about
17 this case.  I'm not concerned that they are going to disclose
18 this information beyond what we're talking about as attorney's
19 eyes only.
20         MR. NASH:  All right.
21         THE COURT:  I mean, I -- you know --
22         MR. NASH:  Your Honor, it concerns --
23         THE COURT:  I don't know why -- why you think I
24 should trust you more than I should trust them.
25         MR. NASH:  Well, your comment concerns me because the

1   plaintiffs have made some allegations in connection with the
2   discovery and how the discovery proceeded in this case.
3           We have made some -- we responded to those
4   allegations.  And if Your Honor is persuaded that we have been
5   dilatory at all in this process, then we need to have a
6   discussion to --
7           THE COURT:  Well --
8           MR. NASH:  -- disabuse you of that notion because
9   that's simply not true.
10          THE COURT:  Well I -- I know when document requests
11  were served.  I know when documents first started being
12  produced.  You've represented here today that you still haven't
13  finished the document production.  And they were served on you
14  on February 6.
15          MR. NASH:  All right.
16          THE COURT:  So, you know, that now is well beyond the
17  30 days in which you would have had to produce documents.  They
18  have already sent a FOIA request.  They already have that put
19  into the mix.
20          MR. NASH:  Your Honor --
21          THE COURT:  Following up on their FOIA request seems
22  like it would be the most efficient way to do it.  The idea
23  that I shouldn't trust the plaintiff's lawyers and I should
24  trust you more than them, I find to be a little bit difficult
25  for you to make that argument.  And, I mean, in essence that's

1  what you're saying, right?

2          MR. NASH:  Well, the State Department has not
3  asserted that the plaintiff has any confidentiality interest in
4  those documents.  The State Department has asserted that our
5  client has confidentiality interests in those documents.

6          I don't know what those documents are.  But it seems
7  appropriate, given that the State Department has identified our
8  interests, that we be the one to take a look at that document
9  and to make sure that it's what plaintiff believes it is
10 without even having made any showing that in fact they have an
11 employment contract.

12         And as to the timing, Your Honor, when you say they
13 have already filed the FOIA request, they filed the FOIA
14 request in 2017 when our clients were in Saudi Arabia unaware
15 that -- that Ms. Tekle had made any allegations whatsoever
16 against our clients.

17         So to say that as -- you know, when we became aware
18 of this lawsuit in April of 2018 and responded, to hold it
19 against us that they had done all this -- this background, you
20 know, homework and prepared and got their ducks in a row before
21 they filed a lawsuit and we were entirely unaware that these
22 allegations even exist, doesn't seem -- doesn't seem entirely
23 fair.

24         THE COURT:  Well, again, coming to the point of
25 whatever document the State Department may provide, however

1    many pages of these 13 pages of the seven total documents, they
2    are going to have it.  We will keep it as attorney's eyes only.
3    They'll contact you as soon as it arrives, arrange a time for
4    you to come see it.  You can look at it.  And then you all can
5    decide whether it is or isn't the employment contract.
6             If it isn't the employment contract, then we can come
7    back and you can -- you know, we'll have a discussion as to
8    whether it should be destroyed or whatever.
9             But, you know, we just need to get the employment
10   contract.  And trying to put up barriers and timeframes and
11   things like that -- they already have a case control number
12   that they can use in referencing and say, you know, you
13   indicated we needed to do this, here it is.  This is the case
14   control number.  As opposed to, you know, starting with a new
15   request and to -- I don't know how long it's going to take.  I
16   hope it can be done efficiently and quickly because everybody
17   ought to just have the employment contract and decide what it
18   says.
19            This case is going to have to get decided at some
20   point on the merits, and one of the claims is the employment
21   contract.  And if there is -- it says she is supposed to get
22   $4,000 a month, you know, that's a claim.  If it doesn't say
23   how much she is supposed to get paid a month, doesn't have a
24   term in it, if it doesn't have those kinds of things, everybody
25   needs to know that.

1              So I'm going to grant the motion to compel as it
2    requires the defendants to sign a -- the form that requests or
3    authorizes the disclosure of the contract.
4              And again, you all can work on the wording, but I
5    thought the wording was pretty specific.  But if you need to
6    say, you know, only the contract, say it two or three times, or
7    put it in bold, or something like that, then, you know, that's
8    the only thing that you're going to be agreeing that the State
9    Department can produce.
10             Interrogatories 2 and 3.  Mr. Nash, I assume you're
11   providing that information based on the opposition; is that
12   right?
13             MR. NASH:  Yes, Your Honor, I am.
14             THE COURT:  All right.  Help me about -- so -- and I
15   take it that one is -- I can deny that one as moot; is that
16   right, that issue?
17             All right.  Document request number 5.  Mr. Nash, let
18   me just ask you about that one.  That's the one that any
19   documents that relate to payments made to the plaintiff in this
20   case.  Well, it includes any tax -- any documents relating --
21   all tax records related to any payments made by you to Ms.
22   Tekle.
23             MR. NASH:  Right.  So -- so we had a meet and confer
24   on this motion, obviously.  And in the meet and confer our
25   offer to the plaintiffs was we would provide them with all tax