**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **Simret Semere Tekle**,    *Plaintiff*,  v.  **Nouf bint Nayef Abdul-Aziz Al Saud** and **Mohammad bin Abdullah al Saud**,    *Defendants*. | Case No.: 1:18-cv-211 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR ORDER OF EXAMINATION
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 35 AND
MODIFICATION OF REBUTTAL EXPERT DISCLOSURE DEADLINE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

FACTUAL BACKGROUND ..................................................................................................1

LEGAL STANDARD ...............................................................................................................2

ARGUMENT .............................................................................................................................3

    A.    Defendants Have A Heavy Burden To Justify An Intrusive Rule 35 Examination. ......................................................................................................3

    B.    Defendant Have Failed to Meet their Heavy Burden to Justify a Rule 35 Examination. ......................................................................................................4

        1.    Defendants Have Failed to Show that Ms. Tekle's Mental Condition is in Controversy. ..........................................................................4

        2.    Defendant Have Failed to Show Good Cause For the Rule 35 Examination. ..................................................................................................7

    C.    The Court Should Deny Defendants' Untimely Attempt to Reschedule Discovery. ..........................................................................................................9

CONCLUSION .......................................................................................................................13

**TABLE OF AUTHORITIES**

**CASES**

*Blakeney v. Norfolk Southern Railway Co.*, No. 1:17CV563, 2019 WL 937843 (M.D.N.C. Feb. 26, 2019) ................................................................................................ 3, 7

*Cody v. Marriott Corp.*, 103 F.R.D. 421 (D. Mass. 1984) .......................................................... 4, 5

*Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412 (S.D. Tex. 2012) ............................................ 10

*EEOC v. Maha Prabhu, Inc.*, No. 3:07-CV-111-RJC, 2008 WL 2559417 (W.D.N.C. June 23, 2008) ....................................................................................... 3, 4, 5, 7, 8

*Gonzales v. Marshall University Board of Governors*, No. 3:18-CV-00235, 2019 WL 1560887 (S.D.W. Va. Apr. 10, 2019) ............................................................ 2, 9, 10

*Guilford National Bank of Greensboro v. Southern Railway Co.*, 297 F.2d 921 (4th Cir. 1962) ............................................................................................................... 3, 7, 8

*Hughes v. Groves*, 47 F.R.D. 52 (W.D. Mo. 1969) ........................................................................ 9

*Jackson v. United States*, No. 3:14-15086, 2016 WL 502056 (S.D.W. Va. Feb. 8, 2016) ................................................................................................................................ 3

*Javeed v. Covenant Medical Center, Inc.*, 218 F.R.D. 178 (N.D. Iowa 2001) ............................... 6

*Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2013 WL 718767 (E.D.N.C. Feb. 27, 2013) ............................................................................................................... 2

*LeFave v. Symbios, Inc.*, No. CIV.A. 99–Z–1217, 2000 WL 1644154 (D. Colo. Apr. 14, 2000) .................................................................................................................... 4

*Machie v. Manger*, No. CIV.A. AW-09-2196, 2012 WL 2092814 (D. Md. June 7, 2012) ................................................................................................................................ 4

*Montgomery v. Anne Arundel County*, 182 F. App'x 156 (4th Cir. 2006) .................................... 2

*Petition of Trinidad Corp.*, 238 F. Supp. 928 (E.D. Va. 1965) ..................................................... 8

*Ragge v. MCA*, 165 F.R.D. 605 (C.D .Cal. 1995) ........................................................................ 5

*Samirah v. Sabhnani*, 772 F. Supp. 2d 437 (E.D.N.Y. 2011) ................................................... 7, 8

*Schlagenhauf v. Holder*, 379 U.S. 104 (1964) ...................................................................... 2, 3, 7

*Shumaker v. West*, 196 F.R.D. 454 (S.D.W. Va. 2000) ..................................................... 2, 7, 9, 10

*Silva v. Potter*, No. 8:04CV2542T17EAJ, 2005 WL 3636944 (M.D. Fla. Nov. 23, 2005) ...................................................................................................................................5

*Stratford v. Brown*, No. 2:17-CV-03963, 2018 WL 4623656 (S.D.W. Va. Sept. 26, 2018) ..............................................................................................................2, 3, 9, 10, 12

*Tomlin v. Holecek*, 150 F.R.D. 628 (D. Minn. 1993) .................................................................5, 6

*Turner v. Imperial Stores*, 161 F.R.D. 89 (S.D. Cal. 1995).....................................................4, 5, 8

*Winstead v. Lafayette County Board of County Commissioners*, 315 F.R.D. 612 (N.D. Fla. 2016) ......................................................................................................6, 9

*Zinaman v. Kingston Regional Senior Living Corp.*, No. 1:11–CV–388, 2014 WL 282633 (N.D.N.Y. Jan. 23, 2014) ...........................................................................6

**OTHER AUTHORITIES**

Local Civ. Rule E.D. Va. 30 ........................................................................................................11

Fed. R. Civ. P. 35 ...........................................................................................................................2

Plaintiff Simret Semere Tekle ("Plaintiff"), by and through undersigned counsel, hereby opposes the motion to submit to an independent psychiatric examination and the request to extend past the close of discovery the deadline for expert disclosures, ECF No. 103, which Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud ("Defendants") filed on April 19, 2019.

**FACTUAL BACKGROUND**

Defendants moved this Court to order Ms. Tekle to submit to an independent psychiatric examination pursuant to Federal Rule of Civil Procedure 35 ("Rule 35"). Defs.' Rule 35 Motion (ECF No. 103). Defendants also asked this Court to push their expert disclosure deadline to May 31, 2019 because Defendants' psychiatrist expert is unavailable until May 27, 2019. Joint Discovery Plan (ECF No. 67) ¶ 7; Defs.' Rule 35 Brief (ECF No. 104) at 7 & at 5 n.2.

Defendants timely received the report of Plaintiff's expert Florence Burke on March 25, 2019.[1] Defs.' Rule 35 Brief at 1. Ms. Burke's report was based, *inter alia*, on her extensive human trafficking expertise and an interview with Ms. Tekle. Ms. Burke is not licensed as a clinical psychologist and did not claim to be so licensed in her expert report. She did not examine Ms. Tekle's medical history or medical records when proffering her expert opinion. Ms. Burke did not administer the psychological testing now sought by Defendants. *See* Dkt. 104 at 2. Ms. Burke did not conduct the Davidson Trauma Scale, Hamilton Rating Scale for Depression (HAM-D), the Diagnostic and Statistical Manual of Mental Disorders (DSM) IV and V Criteria for PTSD, the

---

[1] While Defendants misidentify May 3, 2019 as the operative deadline for their expert disclosures, the Joint Discovery Plan plainly states, "Defendant's expert disclosures shall be due on April 23, 2019." Joint Discovery Plan ¶ 7. May 3, 2019 is in fact the deadline for the submission of rebuttal expert reports. *Id*. The May 3, 2019 deadline is in place to allow Plaintiff to submit a rebuttal report after Defendants disclose their experts. Defendants mischaracterize this expert report as a rebuttal report to Ms. Burke's report. But this is not a rebuttal report. It is a psychiatric expert report that should have been provided to Plaintiff on April 23, 2019.

1

Mini-Mental Scale Examination, the Mental Status Examination, the Minnesota Multiphasic Personality Inventory (MMPI), or the Beck Depression Scale.

With Ms. Burke's report in hand, Defendants idled for nearly one month and took no responsive action. Then, four days before their expert disclosure deadline, Defendants demanded this Court grant them an independent medical examination of Ms. Tekle. Defs.' Rule 35 Brief at 1. At the same time, they sought a 38-day extension of their expert disclosure deadline. *Id.* at 7. Defendants' baseless and untimely request prejudices Plaintiff, who must file rebuttal reports by May 3, 2019, faces a May 24, 2019 deadline to depose Defendants' expert(s), and must file her dispositive motions by June 4, 2019. Joint Discovery Plan ¶¶ 7, 9; Scheduling Order (ECF No. 64) at 1.

## LEGAL STANDARD

To succeed on a motion pursuant to Rule 35, the movant bears the burden to show good cause for an independent medical examination of an individual whose medical condition is in controversy. Fed. R. Civ. P. 35; *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). The Fourth Circuit has indicated a greater showing of need is required under Rule 35 than under the other discovery rules. *E.g.*, *Shumaker v. West*, 196 F.R.D. 454, 456-57 (S.D.W. Va. 2000) (citing *Gilford Nat'l Bank of Greensboro v. Southern Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962))

To modify a standing scheduling order or discovery plan, a party must also show good cause. *Gonzales v. Marshall University Board of Governors*, No. 3:18-CV-00235, 2019 WL 1560887, at *2 (S.D.W. Va. Apr. 10, 2019); *Johnson v. City of Fayetteville*, No. 5:12-CV-456-F, 2013 WL 718767, at *4 (E.D.N.C. Feb. 27, 2013). In the Fourth Circuit, such good cause hinges on the moving party's diligence. *Montgomery v. Anne Arundel Cty.*, 182 F. App'x 156, 162 (4th Cir. 2006); *Stratford*, 2018 WL 4623656, at *2. No good cause exists if a party "has not acted diligently

to comply with the schedule." *Id.* (quotation marks omitted); *see also Jackson v. United States*, No. 3:14-15086, 2016 WL 502056, at *2 (S.D.W. Va. Feb. 8, 2016).

The record shows in this matter that the Defendants have not acted diligently. Rather, Defendants have dawdled, failing to book an expert in time to meet any of the Court's deadlines. Defendants now ask this Court to excuse this failure.

## ARGUMENT

**A. Defendants Have A Heavy Burden To Justify An Intrusive Rule 35 Examination.**

"Under Rule 35, the invasion of the individual's privacy by a physical or mental examination is so serious that a strict standard of good cause, supervised by the district courts, is manifestly appropriate." *Guilford Nat'l Bank of Greensboro v. S. Ry. Co.*, 297 F.2d 921, 924 (4th Cir. 1962).[2] Good cause does not exist where the movant could have obtained the desired information through less invasive tools of discovery. *Schlagenhauf*, 379 U.S. at 118; *E.E.O.C. v. Maha Prabhu, Inc.*, No. 3:07-CV-111-RJC, 2008 WL 2559417, at *2-3 (W.D.N.C. June 23, 2008); *Blakeney v. Norfolk S. Ry. Co.*, No. 1:17CV563, 2019 WL 937843, at *5 (M.D.N.C. Feb. 26, 2019) (no good cause or necessity because defendant did not show that existing discovery, testimony and records are insufficient to show plaintiff's condition at trial).

Garden variety allegations by a plaintiff of emotional distress are insufficient to put the mental condition of the plaintiff in controversy within the meaning of Rule 35. *Maha Prabhu, Inc.*, 2008 WL 2559417, at *3. Instead, federal courts consider five factors to determine whether a medical condition is in controversy: 1) a cause of action for intentional or negligent infliction of

---

[2] Defendants cite an out-of-jurisdiction district court case to argue that Rule 35 should be construed liberally in favor of granting discovery, Defs.' Rule 35 Brief at 2, but both the Supreme Court and the Fourth Circuit have held that Rule 35, unlike the other discovery rules, contains a separate good cause limitation that "is not a mere formality" and therefore a greater showing is required. *Schlagenhauf*, 379 U.S. at 118; *Guilford Nat'l Bank of Greensboro,* 297 F.2d at 924.

3

emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) a plaintiff's offer of expert testimony to support a claim of emotional distress; and 5) a plaintiff's concession that her mental condition is in controversy. *Machie v. Manger*, No. CIV.A. AW-09-2196, 2012 WL 2092814, at *6 (D. Md. June 7, 2012); *Maha Prabhu, Inc.*, 2008 WL 2559417, at *4 ("Feelings of isolation, humiliation, anxiety, and stress are not unique to [the plaintiff]… the fact-finder can assess the credibility of her condition without expert testimony."); *Cody v. Marriott Corp.*, 103 F.R.D. 421, 423 (D. Mass. 1984); *see also Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995).

### B. Defendants Have Failed to Meet Their Heavy Burden to Justify a Rule 35 Examination.

1. <u>Defendants Have Failed to Show that Ms. Tekle's Mental Condition is in Controversy.</u>

Defendants have not met their burden to show that Ms. Tekle's mental condition is "in controversy." Ms. Tekle's garden-variety and generalized feelings of emotional distress are not in controversy within the meaning of Rule 35. As courts have routinely found, "[t]his case is similar to those in which courts have refused mental examinations in that there is no claim of specific psychiatric injury, but rather generalized feelings of distress." *Maha Prabhu, Inc.*, 2008 WL 2559417, at *3 (W.D.N.C. June 23, 2008); *LeFave v. Symbiosis*, 2000 WL 1644154, at *4 (D. Colo. 2000) (claims for emotional distress damages do not place mental condition "in controversy" within meaning of Rule 35).

None of the relevant factors weigh in favor of granting Defendants' request for an invasive and intrusive examination of Ms. Tekle by a doctor she has never met. *See supra*, at 3; *see also Maha Prabhu, Inc.*, 2008 WL 2559417, at *2 (listing factors); *LeFave v. Symbiosis*, 2000 WL 1644154, at *4 (D. Colo. April 14, 2000) (listing factors).

4

- First, Ms. Tekle has no cause of action for intentional or negligent infliction of emotional distress. Second Amended Complaint (ECF No. 53).

- Second, Ms. Tekle has not alleged a specific mental or psychiatric injury or disorder. Instead, she has described generalized emotional distress symptoms stemming from Defendants' conduct. Second Amended Complaint (ECF No. 53) at 18-22. Such allegations are insufficient to merit a Rule 35 examination. *Maha Prabhu, Inc.*, 2008 WL 2559417, at *3 (no specific psychiatric injury found where plaintiff described difficulty sleeping, anxiety and stress, lack of desire to interact with others, and feeling like an outcast); *Cody v. Marriott Corp.*, 103 F.R.D. at 423 (absence of specific psychiatric disorder requiring ongoing psychiatric or psychological counseling prevents an independent examination); *Turner*, 161 F.R.D. at 97 (condition not in controversy when plaintiff claimed compensatory damages in excess of one million dollars for "humiliation, mental anguish, and emotional distress").[3]

- Third, Ms. Tekle has not claimed unusually severe emotional distress. On the contrary, as Defendants point out, Ms. Tekle has exhibited the very symptoms—such as fear, stress, distrust, and sleep disturbance—that would logically accompany human trafficking and involuntary servitude. *See* Defs.' Rule 35 Brief at 3. Such symptoms are insufficient to tip the scale in the favor of conducting a Rule 35

---

[3] The inapposite case law Defendants cite is unhelpful to their argument. For example, Defendants cite *Silva v. Potter*, where the plaintiff claimed the military discharged her due to a specific psychiatric disorder. No. 8:04CV2542T17EAJ, 2005 WL 3636944, at *1 (M.D. Fla. Nov. 23, 2005); *see also* Defs.' Rule 35 Brief at 5. The plaintiff there alleged that her employers exacerbated her disorder when they took discriminatory and other wrongful actions against her. *Id*. But this case is inapplicable because Ms. Tekle has alleged no specific psychiatric disorder. Defendants also cite *Tomlin v. Holecek*, where the plaintiff sought to recover damages exclusively for "severe and permanent physical and emotional injuries" and alleged unusually severe symptoms such as sexual dysfunction. 150 F.R.D. 628, 629 (D. Minn. 1993). Again, Ms. Tekle has not alleged unusual symptoms – she has described feelings of generalized distress that would be expected of an individual who has experienced human trafficking. Similarly, in *Ragge v. MCA*, 165 F.R.D. 605 (C.D. Cal. 1995), the Plaintiff did not oppose the Rule 35 exam, but sought to attach conditions.

5

examination. *Winstead v. Lafayette Cty. Bd. of Cty. Comm's*, 315 F.R.D. at 615 (N.D. Fla. 2016) (finding no unusually severe symptoms because anxiety, depression, and insomnia are "(1) the type of psychological injuries one would expect to occur as the result of workplace discrimination and (2) somewhat vague terms that have both clinical and non-clinical meanings"); *see also Zinaman v. Kingston Reg'l Senior Living Corp.*, No. 1:11–CV–388, 2014 WL 282633, at *2 (N.D.N.Y. Jan. 23, 2014) ("garden variety emotional distress refers to anxiety, humiliation, shame, embarrassment, mental suffering, and distress that may flow naturally from an event that is an affront to one's dignity"); *cf. Javeed v. Covenant Med.Ctr., Inc.*, 218 F.R.D. 178, 180 (N.D. Iowa 2001), (alleged symptoms of emotional distress exceeded garden-variety emotional distress where plaintiff testified that she experienced rashes and diarrhea); *cf. Tomlin v. Holecek*, 150 F.R.D. 628, 629 (D. Minn. 1993) (unusual symptoms found when plaintiff alleged sexual dysfunction stemming from "severe and permanent physical and emotional injuries").

- Fourth, Ms. Tekle has offered no expert testimony to support her allegations of emotional distress. Defendants misrepresent the purpose and scope of Ms. Burke's expert testimony to argue that a Rule 35 exam is warranted. *See* Defs.' Rule 35 Brief at 6 nn. 3-4. Ms. Burke is not a clinical psychologist or a medical doctor. Nor will Ms. Tekle rely on Ms. Burke's report to substantiate her emotional distress damages. Instead, Ms. Tekle will rely on Ms. Burke's expertise on human trafficking, including her experience with the dynamics between domestic workers and their employers; the climate of fear as an element of coercion; the difficulty in escaping forced labor and involuntary servitude; and the obstacles facing survivors. To the extent four

paragraphs of Ms. Burke's report (the paragraphs quoted in Defendants' brief) constitute commentary about Ms. Tekle's mental condition, Ms. Tekle agrees to exclude those four paragraphs from the report. Accordingly, there can be no question that Ms. Tekle has not offered any expert testimony to support her claim for damages due to emotional distress. Because a reasonable lay person can understand Ms. Tekle's symptoms of emotional distress, there is no need for a Rule 35 exam.

- Fifth, Ms. Tekle has not conceded that the mental condition is in controversy.

In the absence of even a single factor to suggest Ms. Tekle's mental condition is in controversy, the Court should deny Defendants' motion.

2. <u>Defendants Have Failed To Show Good Cause For The Rule 35 Examination.</u>

Defendants have not met their burden to show good cause for a Rule 35 examination. Showing relevance is not enough. *Guilford Nat'l Bank of Greensboro*, 297 F.2d at 925 (all Circuits to consider this question have agreed that relevance does not satisfy good cause requirement); *Shumaker* 196 F.R.D. at 457. A finding of good cause hinges on necessity. *Schlagenhauf*, 379 U.S. at 118-19; *Blakeney v. Norfolk S. Ry. Co.*, No. 1:17CV563, 2019 WL 937843, at *5 (M.D.N.C. Feb. 26, 2019) (no good cause or necessity because Defendant did not show that existing discovery, testimony and records are insufficient to show plaintiff's condition at trial); *Maha Prabhu, Inc.*, 2008 WL 2559417, at *2 (W.D.N.C. June 23, 2008) ("[N]ecessity ... is the element that separates the procedures involving independent medical examinations and other tools of discovery.").

Defendants' reliance on *Samirah v. Sabhnani* is unpersuasive to show good cause. *See* Defs.' Rule 35 Brief at 4. The court in that case denied a Rule 35 examination as to the issue of liability but granted the Rule 35 examination as to the issue of damages. *Samirah v. Sabhnani*, 772 F. Supp. 2d 437 (E.D.N.Y 2011). The court found that *any* assertion of damages based on a medical

condition warrants a Rule 35 exam. *Id*. This inapplicable holding contradicts the law in the Fourth Circuit, the district courts in the Fourth Circuit, and district courts in sister circuits. *See e.g.*, *Guilford Nat'l Bank of Greensboro* 297 F.2d at 924 (4th Cir.1962) (denying Rule 35 exam when plaintiff damages sought based on medical condition because defendant could obtain information about condition through other means); *Petition of Trinidad Corp.*, 238 F. Supp. 928, 930 (E.D. Va. 1965) (denying Rule 35 exam when damages were sought for permanent disability because the petitioner failed to demonstrate necessity); *Maha Prabhu, Inc.*, 2008 WL 2559417, at *1, 3 (denying Rule 35 exam and rejecting Defendants' argument that plaintiff placed mental condition in controversy by seeking damages for emotional distress); *Turner*, 161 F.R.D. at 97 (denying Rule 35 exam when plaintiff claimed compensatory damages for humiliation, mental anguish, and emotional distress).

Defendants have had and continue to have ample opportunity to obtain information regarding Ms. Tekle's emotional distress through methods other than a Rule 35 medical examination. Indeed, Defendants deposed Ms. Tekle for fourteen hours without asking her a single question about her emotional distress allegations. This fact alone should preclude their request for a Rule 35 examination. Defendants have Ms. Tekle's medical records. Defendants have noticed Ms. Burke's deposition and may—if they so choose—ask her questions about her expert report. Defendants argue that a psychiatric exam is necessary to place the parties on equal footing. But here, Plaintiff has not conducted a psychiatric exam and has not put forward an expert psychiatrist. Indeed, Plaintiff's expert did not conduct any of the tests the Defendants say their expert will conduct. *Supra* p. 2. Ms. Burke did not conduct the Davidson Trauma Scale, the Hamilton Rating Scale for Depression (HAM-D), the Diagnostic and Statistical Manual of Mental Disorders (DSM) IV and V Criteria for PTSD, the Mini-Mental Scale Examination, the Mental Status Examination,

8

the Minnesota Multiphasic Personality Inventory (MMPI), or the Beck Depression Scale. The proposed Rule 35 exam will not, in fact, put the parties on equal footing.

Defendants currently have access to the same information that Plaintiff possesses: the witness' testimony and her medical records. They have not shown a Rule 35 exam is necessary. *Winstead*, 315 F.R.D. 612, 616 (N.D. Fla. 2016) (denying Rule 35 exam where party had other discovery tools, including access to medical records); *Hughes v. Groves*, 47 F.R.D. 52, 57 (W.D. Mo. 1969) ("once discovery is had of medical reports, 'good cause' may be absent for an order to submit to an examination under Rule 35"). Defendants' request to subject Ms. Tekle to an intrusive examination by a stranger is without merit. The Court should deny Defendants' request for the Rule 35 examination because Defendants have not met their burden to demonstrate "good cause."

### C. The Court Should Deny Defendants' Untimely Attempt to Reschedule Discovery.

A Rule 35 examination must be performed in accordance with the movant's expert disclosure deadline. District courts in the Fourth Circuit read Federal Rules of Civil Procedure 26 and 35 in conjunction with each other when determining the proper timing for a Rule 35 examination and report. *Shumaker v. West*, 196 F.R.D. 454, 456-57 (S.D.W. Va. 2000); *see also Stratford v. Brown*, No. 2:17-CV-03963, 2018 WL 4623656, at *3 (S.D.W. Va. Sept. 26, 2018) ("[T]he Court is persuaded that Rules 26 and 35 act in tandem when determining whether to permit a Rule 35 examination requiring subsequent disclosure of the related report."). "[W]hen the independent medical examination is performed for the purpose of providing, developing, or supplementing expert opinions, then courts tend to agree that the witness and report are subject to the Rule 26(a)(2) deadlines." *Gonzales*, 2019 WL 1560887, at *1. "[The] ripple effect necessarily caused by a Rule 35 examination ordered after Rule 26 disclosure deadlines" adds undue delays to litigation and prompts additional discovery. *Stratford*, 2018 WL 4623656, at *3.

9

As in *Schumaker*, "Defendant's belated attempt to seek a Rule 35 examination days before his expert disclosures were due fails to comply with Rule 26" and should be denied. 196 F.R.D. at 456-57; *see also Gonzales* 2019 WL 1560887, at *1; *Stratford*, 2018 WL 4623656, at *3; *Shumaker* 196 F.R.D. at 456-57); *see also Diaz v. Con-Way Truckload, Inc.*, 279 F.R.D. 412, 419 (S.D. Tex. 2012) (Denying request as untimely because "Defendant… showed a lack of diligence by seeking a Rule 35 examination after the Rule 26 deadline to designate experts and produce reports.").

Defendants timely received the report of Plaintiff's expert. Defs.' Rule 35 Brief at 1. Defendants have had Ms. Burke's report in hand for a month, one of three expert reports produced by Plaintiff to Defendants on time in accordance with the jointly agreed discovery plan. Despite the death of her spouse on March 16, 2019, Ms. Burke submitted on March 25, 2019. Plaintiff did not seek to modify the discovery schedule even in light of these extraordinary circumstances.

Defendants have apparently retained Dr. Khin Khin, who is unavailable until May 27, 2019, well after the deadline for Defendants' reports. *Compare* Joint Discovery Plan (ECF No. 67) ¶ 7 *with* Defs.' Rule 35 Brief at n.3. The Joint Discovery Plan, entered on February 13, 2019, made the deadlines utterly plain. Upon learning of this expert's scheduling conflicts, the better course of action would have been to identify a new expert who could have completed a report by the court's deadline. Instead, Defendants now ask this court for an extension.

Defendants' request for this extension upends the entire discovery schedule, with downstream effects that Defendants fail to acknowledge. Defendants argue their requests are for the "limited purpose" of allowing Dr. Khin Khin to examine Ms. Tekle and rebut Ms. Burke's report. Defs.' Rule 35 Brief at 6. Defendants additionally assert that granting their motion will "not have any effect on the parties' ability to comply with the existing deadline for filing

10

dispositive motions." Defs.' Rule 35 Brief at 7 n.5. But Defendants ignore that discovery in this matter closes on May 24, 2019. Scheduling Order at 1. Defendants also overlook that on or before that date, Ms. Tekle must complete her depositions of Defendants' expert(s). This would require Ms. Tekle to analyze the doctor's findings, decide whether a deposition is appropriate, and then provide at least eleven days' notice to the doctor. Local Civ. Rule E.D. Va 30.

What Defendants are effectively asking for – unless they are also seeking to block the possibility of an expert deposition – is an extension of the discovery deadline to at least eleven days after Dr. Khin Khin finalizes her report. The absolute earliest possible date range for that deposition is June 7, 2019 to June 11, 2019.[4] That is over two weeks *after* the current discovery deadline and three to seven days *after* dispositive motions are due on June 4, 2019.[5] Scheduling Order at 1. Notably, Defendants have assumed without conferring with Ms. Tekle that Ms. Tekle will be available for examination during the five-day window between when Dr. Khin Khin becomes available on May 27, 2019 and May 31, 2019, Defendants' proposed extension deadline.

More importantly, Defendants ignore the deadline for the submission of rebuttal reports. The standing Joint Discovery Plan states, "Defendant's expert disclosures shall be due on April 23, 2019. Any rebuttal expert reports shall be due on May 3, 2019." Defendants' proposal forecloses Plaintiff's ability to submit a rebuttal report, unless that deadline is also pushed back. The interconnectedness of operative discovery deadlines defeats Defendants' proclamations about the

---

[4] Defendants' expert's earliest availability is May 27, 2019. Assuming the expert examines Ms. Tekle and submits her report on that same day, *and* assuming that Ms. Tekle decides to notice the expert on that same day, the deposition will take place on June 7, 2019. This outcome is *highly* improbable. It is much more probable Defendants' expert will submit her report on May 31, 2019, the final date of the requested extension. If Ms. Tekle decides to notice the expert that same day, the deposition will take place on June 11, 2019.
[5] This timeline would be pushed back even further if Ms. Tekle takes several days to analyze the doctor's report before deciding to notice the doctor for deposition, which would be entirely reasonable and which Ms. Tekle would have had the opportunity to do if Defendants had complied with the Joint Discovery Plan and Standing Order.

11

"limited" nature of their request. Defendants' request clearly affects other deadlines and affects Ms. Tekle's ability to engage in proper discovery.

The totality of these circumstances places an undue burden on Ms. Tekle, who complied with the Scheduling Order and Joint Discovery Plan and gave Defendants ample opportunity to do the same. Neither Ms. Tekle nor this Court should have to bear the practical consequences of Defendants' disregard for deadlines negotiated by the Parties and approved by the Court. And while Defendants assert their motion is for a limited purpose, the effects of granting it would expansive and prejudicial to Ms. Tekle. Therefore, the Court should avoid the inevitable ripple effect of granting Rule 35 examinations after expert disclosures are due and deny Defendants' motion in accordance with Fourth Circuit law.

The Court should similarly reject Defendants' straw man argument to modify the Joint Discovery Plan and Scheduling Order for lack of good cause. In the Fourth Circuit, good cause to change discovery deadlines hinges on the moving party's diligence. *Stratford*, 2018 WL 4623656, at *2. No good cause exists if a party "has not acted diligently to comply with the schedule." *Id*. Defendants only attempt at justifying their 38-day extension request is an argument that Ms. Tekle did not produce her medical records until April 15, 2019.[6] Defs.' Rule 35 Brief at 7. But this argument falls flat because Defendants provide no justification for why Dr. Khin Khin, a board-certified psychiatrist, would need from April 15, 2019 until May 31, 2019 to review the approximately 60 pages of medical records Ms. Tekle produced. If Dr. Khin Khin can examine

---

[6] Defendants also note the produced medical records were partially redacted. Plaintiff's redactions were limited to sensitive test results from Ms. Tekle's OB/GYN concerning her gynecological health. The redacted testing was done in 2018, well after Plaintiff left Defendants' employ. No psychiatric information was redacted. Plaintiff's counsel offered to produce the unredacted medical records subject to a modified protective order to allow a "highly confidential" designation "for attorney's eyes only" for this medical information only. Had Defendants requested that a medical expert have access to these documents, Plaintiff's counsel would have included the expert in the ambit of attorneys' eyes only. Despite discussing this with Plaintiff's counsel on April 11, Defendants have taken no steps whatsoever to sign onto the modified protective order that Plaintiff provided.

Ms. Tekle and finalize an expert report in five days, she can surely review Ms. Tekle's medical records in less than 45 days.

Moreover, Ms. Burke did not have access to and therefore did not rely on Ms. Tekle's medical records when proffering her expert opinion on Ms. Tekle's trafficking and involuntary labor. Therefore, if the "limited purpose" of Defendants' extension request is—as they assert—to equip Dr. Khin Khin with the tools to rebut Ms. Burke's opinions, examination of medical records is unnecessary altogether. Simply stated, Plaintiff provided Defendants Ms. Burke's report and all information she relied on within the timeline the parties agreed to in the Joint Discovery Plan. Defendants had from March 25, 2019 until April 23, 2019 to act but they chose not to.

The more logical justifications for Defendants' request to push back the deadline are Dr. Khin Khin's teaching and travel obligations, which make her unwilling to examine Ms. Tekle until May 27, 2019. Defs.' Rule 35 Brief at n. 3-4. While these are understandable obligations, they do not pass muster under a "good cause" showing for modifying a scheduling order or discovery plan. After all, Defendants could certainly have found another psychiatrist to timely serve as their expert after receiving Ms. Burke's expert report on March 25, 2019.[7] The deadline the Parties agreed to and the Court ordered should stand.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court deny Defendants' Motion for Order of Examination Pursuant to Fed. R. Civ. P. 35 and Modification of Expert Disclosure Deadline.

---

[7] Defendants cite no qualifications beside a board certification and therefore provide no indication that Dr. Khin Khin is uniquely situated to serve as the expert in this case.

13

14

Dated: April 24, 2019

Richard F. Levy (*pro hac vice*)
Andrew B. Cherry (*pro hac vice*)
Sati Harutyunyan (*pro hac vice pending*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2648
rlevy@jenner.com

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

*Counsel for Plaintiff Simret Semere Tekle*

Respectfully submitted,

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street, NW #104B
Washington, DC 20005
(202) 716-8485
mvandenberg@htlegalcenter.org

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SIMRET SEMERE TEKLE,<br><br>  *Plaintiff*,<br><br> v.<br><br>NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, MOHAMMAD BIN ABDULLAH AL SAUD<br><br>  *Defendants*. | Case No.: 1:18-cv-211 |

## CERTIFICATE OF SERVICE

I certify that I uploaded the foregoing document to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.

April 24, 2019

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

15