**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | |
|---|---|
| **Simret Semere Tekle**, *Plaintiff*, v. **Nouf bint Nayef Abdul-Aziz Al Saud** and **Mohammad bin Abdullah al Saud**, *Defendants*. | Case No.: 1:18-cv-211<br><br>Hearing Date: May 10, 2019 |

**PLAINTIFF'S MEMORANDUM IN SUPPORT
OF PLAINTIFF'S MOTION TO COMPEL THE DEPOSITIONS OF
NOUF BINT NAYEF ABUL-AZIZ AL SAUD
AND MOHAMMAD BIN ABDULLAH AL SAUD
TO TAKE PLACE IN THE EASTERN DISTRICT OF VIRGINIA
OR IN A NEUTRAL THIRD LOCATION**

Pursuant to Local Civil Rules 30(A) and 37(A), Plaintiff Simret Semere Tekle ("Ms. Tekle") moves this Court, by and through undersigned counsel, to compel the depositions of Nouf Bint Nayef Abul-Aziz Al Saud and Mohammad Bin Abdullah Al Saud ("Counterclaimants") to take place in the Eastern District of Virginia or, alternatively, in a neutral third location.

## PRELIMINARY STATEMENT

Counterclaimants' insistence that their depositions be taken in Saudi Arabia requires the Court's intervention. Counterclaimants, who are Virginia homeowners and frequent travelers to the United States and other countries worldwide, have refused to appear for deposition in the Eastern District of Virginia as required by Local Rule 30(A). Instead, Counterclaimants have insisted on sitting for their depositions in Saudi Arabia despite profound safety risks set forth in State Department advisories and logistical hurdles associated with travel to Saudi Arabia. Counterclaimants have also rejected Ms. Tekle's proposed compromise to hold the depositions in London, United Kingdom, where counsel for Ms. Tekle and counsel for Counterclaimants have offices, or in another mutually agreeable neutral third location. The Court should therefore order Counterclaimants to submit to deposition in the Eastern District of Virginia, or in the alternative, in a neutral third location.

## LEGAL STANDARD

"The decision of where a deposition should occur is ultimately an exercise in the vast discretion a district court has in supervising discovery." *Buckner v. United Parcel Serv., Inc.*, No. 5:09-CV-00411-BR, 2011 WL 6748522, at *8 (E.D.N.C. Dec. 22, 2011) (quotation marks omitted), *aff'd*, 489 F. App'x 709 (4th Cir. 2012); *see also Swimways Corp. v. Zuru, Inc.*, 2014 WL 12603190 at *2 (E.D. Va. June 6, 2014) (Magistrate judges exercise their "discretion to determine the appropriate location for a deposition and may attach conditions as [they find]

1

appropriate." including the payment of expenses.) (ellipsis and quotation marks omitted); *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. 2010).

There are a number of factors that may "persuade the Court to require the deposition to be conducted in the forum district or some other place. Ultimately, the Court must consider each case on its own facts and the equities of the particular situation." *Turner v. Prudential Ins. Co. of Am.*, 119 F.R.D. 381, 383 (M.D.N.C. 1988) (internal citation omitted); *see also Connell v. Biltmore Sec. Life Ins. Co.*, 41 F.R.D. 136, 137 (D.S.C. 1966) ("The factual situations and considerations vary by the number of cases and the matter rests inevitably in the sound discretion of the court."). Relevant factors include: safety and other risks; costs and expenses; logistical efficiencies; the possibility of proper court supervision; and the deponents' engagement in frequent travel. *Swimways Corp.*, 2014 WL 12603190 at *2 (E.D. Va. June 6, 2014); *Juniper Networks, Inc. v. Bahattab*, No. CV 07-1771 (PLF)(AK), 2009 WL 10696665, at *2 (D.D.C. Apr. 2, 2009); *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D. 547, 550 (S.D.N.Y. 1989); *Armsey v. Medshares Mgmt. Servs., Inc.*, 184 F.R.D. 569, 571 (W.D. Va. 1998); *Turner*, 119 F.R.D. at 383. Any presumption that a defendant should be deposed at his or her district of residence is "merely a decision rule that facilitates determination when other relevant factors do not favor one side over the other." *Khashoggi*, 124 F.R.D. at 550.

## ARGUMENT

**A. The Plain Language of Local Rule 30(A) Requires Counterclaimants to Submit to Deposition in Virginia.**

The Court observed at the March 29, 2019 hearing, "[h]aving filed a counterclaim here in the United States" the parties should begin discussing "dates for the defendants' depositions here in the United States." Tr. of March 29, 2019 Hearing at 42:19-21. As this Court explained, "the

Local Rule . . . requires a party who files an affirmative claim in this case to come to the United States to be deposed in this district." Tr. at 42:21-24. As this Court observed, Local Civil Rule 30(A) requires all non-excepted parties to submit to a deposition within the Eastern District of Virginia. Local Civil Rule 30(A). The Rule expressly states that "[a] defendant, who becomes a counterclaimant, cross-claimant, or third-party plaintiff, shall be considered as having filed an action in this Court for the purpose of this Local Rule." *Id.* The rule does not differentiate between permissive and compulsory counterclaims. Instead, the rule exempts *only two kinds of parties*: involuntary plaintiffs and interpleader plaintiffs. *Id.* Counterclaimants are neither involuntary plaintiffs nor interpleader plaintiffs. *See* Fed. R. Civ. P. 19 (involuntary plaintiffs); Fed. R. Civ. P. 22 (interpleader plaintiffs). Under the unambiguous text of the Local Rule, by virtue of bringing a counterclaim in this action, Counterclaimants are bound to submit to a deposition within the Eastern District of Virginia.

**B. Counterclaimants Should Submit to Deposition in Virginia or in a Neutral Third Location Because it is Unsafe and Unreasonable to Require Plaintiff's Counsel to Travel to Saudi Arabia.**

Alternatively, this Court should order Counterclaimants to submit to deposition in the Eastern District of Virginia, or in a neutral third location per Ms. Tekle's offer to compromise, such as London, because it is unsafe and unreasonable for Ms. Tekle's counsel to travel to Saudi Arabia. Magistrate judges have vast discretion "to determine the appropriate location for a deposition and may attach conditions as [they] find appropriate." *Swimways Corp.*, 2014 WL 12603190 at *2 (ordering deposition to occur in a neutral "foreign jurisdiction," Hong Kong, when deponent's desired location destination was China, where different laws applied); *see also Khashoggi*, 124 F.R.D. at 550 (ordering defendant who resided in Saudi Arabia to travel to litigation forum for deposition); *see also New Medium Techs. LLC v. Barco N.V.*, 242 F.R.D. 460, 466 (N.D. Ill. 2007)

3

(compelling depositions in forum because deponents were frequent travelers to forum and because deponents' desired location precluded court supervision). Here, warnings by the United States Department of State and all relevant factors—including the safety of Ms. Tekle's attorneys, travel burdens and efficiency, and costs—weigh against holding the depositions in Saudi Arabia.

The unique circumstances and equities in this case make clear that Saudi Arabia is not an appropriate location. *See Swimways*, 2014 WL 12603190 at *2 (relevant burdens and "a risk of arrest, detention or deportation of the American attorneys and other participants" warranted deposition in neutral third location) (internal quotation marks omitted); *Connell*, 41 F.R.D. at 137 (D.S.C. 1966) (ordering deposition in forum state when deponents resided in another state to "serve the interests of justice"); *Sharif v. Int'l Dev. Grp.*, No. 02 C 5430, 2003 WL 21995166, at *1 (N.D. Ill. Aug. 21, 2003), *aff'd*, 399 F.3d 857 (7th Cir. 2005) (cost, convenience, and litigation efficiency key factors in compelling member of Saudi royal family to sit for deposition in neutral third location); *Khashoggi*, 124 F.R.D. at 550-51 (considering cost, convenience, litigation efficiency, and criminal liability of indicted defendant when compelling him to appear for deposition in forum).

   1. **<u>Safety Issues and Saudi Arabia</u>**

As information from the Department of State makes clear, Saudi local law and the political situation in Saudi Arabia make it unsafe for Ms. Tekle's attorneys to travel to Saudi Arabia at this time. The United States Department of State has issued a Level 2 travel advisory for Americans traveling to Saudi Arabia. U.S. Dep't of State, *Saudi Arabia Travel Advisory*, Travel.State.Gov (February 21, 2019), https://travel.state.gov/content/travel/en/traveladvisories/ traveladvisories/saudi-arabia-travel-advisory.html ("State Department Travel Advisory"). The State Department has also warned of oppressive local laws, which Americans are subject to by

4

merely entering Saudi Arabia. U.S. Dep't of State, *Saudi Arabia: Travel Information*, Travel.State.Gov (last updated May 1, 2019), https://travel.state.gov/content/travel/en/ international-travel/International-Travel-Country-Information-Pages/SaudiArabia.html ("*State Department Saudi Travel Information*").

Attorneys from the United States must be able to take oral depositions without "a risk of arrest, detention or deportation." *Swimways Corp. v*, 2014 WL 12603190 at *2. If applicable local laws effectively prohibit attorneys from safely taking depositions in the deponent's residence or place of business, the deposition must take place elsewhere. *Id*. Local laws and safety concerns in Saudi Arabia preclude it as an option for the depositions.

    a. **Restrictions on Women Under Saudi Arabian law**

All but one of Ms. Tekle's attorneys who would travel to Saudi Arabia for the depositions are female. Local laws applicable to women, including American women, present acute risks. Once in Saudi Arabia, "married women, including non-Saudis, require their husband's permission to depart the country, while unmarried women and children require the permission of their father or male guardian." *State Department Saudi Travel Information*, *supra*. Moreover, "[m]any areas of life in Saudi Arabia are segregated by sex to ensure that unrelated men and women have no possibility of mingling (a punishable crime). Some *mutawwa* (religious police) try to enforce this by asking for proof that a couple is married or related. Women who are arrested for socializing with a man who is not a relative may be charged with prostitution." *Id.* In addition, to secure business visas to the Kingdom, Ms. Tekle's attorneys would need to obtain—among other documents—invitation letters from a Saudi Arabian sponsor. *See id.* For the women, the same sponsor would need to greet the visa recipient at the airport in Saudi Arabia. *See id.*; *see also U.S.*

*Department of Commerce's International Trade Administration, Saudi Arabia - Business Travel*, https://www.export.gov/article?id=Saudi-Arabia-Business-Travel.

Thus, under local law in Saudi Arabia, Ms. Tekle's female attorneys would be prohibited from being seen with or communicating with their male counterparts in public or from leaving Saudi Arabia without the permission of their husband, father, or male guardian. Violations of these local laws could result in these attorneys being expelled, arrested, or imprisoned. Ms. Tekle's attorneys—by virtue of traveling with a non-relative male—would risk violating local laws. Moreover, the requirement for fathers, husbands, or other "male guardians" to authorize the departure of female attorneys from Saudi Arabia calls into question counsel's ability to safely return to the United States.

### b. Prohibition on Criticism of the Royal Family

Saudi law prohibits criticism of Saudi royal family members, such as Counterclaimants. *See* U.S. Dep't of State, *Saudi Arabia 2018 Human Rights Report*, at 14, https://www.state.gov/documents/organization/160475.pdf; Freedom House, *Saudi Arabia Freedom in the World 2019 Report*, https://freedomhouse.org/report/freedom-world/2019/saudi-arabia; *see also* Human Rights Watch, *World Report 2018: Saudi Arabia* (2018), https://www.hrw.org/world-report/2019/country-chapters/saudi-arabia ("judges and prosecutors can convict people on a wide range of offenses under broad, catch-all charges such as 'breaking allegiance with the ruler' or 'trying to distort the reputation of the kingdom.'"). According to the State Department, even an unknowing violation of Saudi law may result in being "expelled, arrested, imprisoned, held without trial for lengthy periods of time; interrogated without counsel; subject to corporal punishments, including lashings; or executed." *State Department Saudi Travel Information*, *supra*. The State Department has also reported on the prevalence of arbitrary arrests

6

and detentions for violations of this law. *Saudi Arabia 2018 Human Rights Report*, at 13. Counterclaimants are members of the royal family, and Ms. Tekle has alleged that they engaged in illegal employment practices and human trafficking. Deposition questions on these topics would undoubtedly amount to criticism of members of the royal family. Counsel's travel to Saudi Arabia thus stems from and is intrinsically intertwined with profound criticism of the royal family. After all, Counterclaimants themselves have described Ms. Tekle's claims as accusing them of "detestable" and "criminal" activities. Amended Counterclaim, Dkt. 75 ¶ 26. Surely claims resulting in Counterclaimants having "suffered *severe* reputational harm and emotional distress," as alleged in the Counterclaim, amount to serious criticism of the royal family. *Id.* ¶ 44 (emphasis added).

### c. Terrorist Activity and Elevated Danger

The State Department has recently advised Americans against traveling to Saudi Arabia because of increased terrorist activity in the Kingdom. *See State Department Travel Advisory*, *supra*. There is presently a Level 2 travel advisory in place for Saudi Arabia. *Id.* The State Department warned travelers that "[t]errorists may attack with little or no warning, targeting tourist locations, transportation hubs, markets/shopping malls, and local government facilities." *Id.* The State Department has warned that Jeddah, the proposed deposition location, is particularly dangerous. The State Department expressly cautioned, "[m]issile attacks have targeted major cities such as Riyadh and Jeddah." *Id.* In addition, just yesterday, the State Department issued an additional warning about elevated danger during Ramadan. In a "Message for U.S. Citizens: Information for U.S. citizens during Ramadan" concerning Saudi Arabia issued on May 1, 2019, the State Department reiterated that "U.S. citizens are strongly encouraged to maintain a high level of vigilance and take appropriate steps to increase their security awareness when traveling as

terrorist attacks, political upheaval, and violence often take place without any warning." U.S. Dep't of State, *Message for U.S. Citizens: Information for U.S. citizens during Ramadan*, U.S. Embassy & Consulates in Saudi Arabia (May 1, 2019), https://sa.usembassy.gov/message-for-u-s-citizens-information-for-u-s-citizens-during-ramadan/. The government of the United Kingdom has issued similar warnings, along with a lengthy list of recent terrorist activity in Saudi Arabia, including that "further attacks are likely."[1] These safety risks, which are only exacerbated by Saudi Arabia's ongoing war with its neighbor, Yemen, render Saudi Arabia an inappropriate deposition location at this time. While no country is immune from terrorism, there is a heightened risk of attack in Saudi Arabia. In light of this unnecessary risk, the Court should require the depositions to take place at a location outside of Saudi Arabia.

**d.    Limitations on Ability to Take Depositions During Ramadan**

Counterclaimants' depositions are presently scheduled to take place during the Islamic holy month of Ramadan. The State Department has warned of additional factors that will make taking the depositions in Jeddah difficult during Ramadan. *See Message for U.S. Citizens: Information for U.S. citizens during Ramadan*, *supra*. For example, the State Department warns that "[e]xpectations of conservative public behavior and dress are heightened during Ramadan." *Id.* Even though Ms. Tekle's attorneys would not be required to fast, during Ramadan "it is against Saudi law for anyone to eat, drink, or smoke in public between sunrise and sunset," and doing so "are grounds for arrest." *Id.* In addition, "Saudi government ministries and institutions will follow a reduced work schedule of six hours per day," and "[s]ome government offices and retail

---

[1] Gov.UK Foreign Travel Advice: Saudi Arabia. The terrorism section highlights several recent attacks and terrorist attacks during Ramadan in 2016. *Available at* https://www.gov.uk/foreign-travel-advice/saudi-arabia/terrorism.

businesses may not provide full staffing." *Id.* The truncated hours, more limited services, and other restrictions threaten to make the deposition logistics significantly more challenging.

   **2. Travel Burdens and Litigation Efficiency**

The consideration of travel burdens and litigation efficiency weigh unequivocally against holding Counterclaimants' depositions in Saudi Arabia. Whether counsel will be able to travel to a deposition location is a relevant factor. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 941 F. Supp. 2d 513, 519 (D.N.J. 2005) (refusing to order deposition in Saudi Arabia when deposing attorneys were Jewish, had traveled to Israel, and would potentially be denied travel visa on that basis). Whether deponents travel frequently, particularly to the location where they are resisting deposition, is also a relevant factor. *See Turner*, 119 F.R.D. at 383-84 (ordering deposition in forum because deponents would have no difficulty travelling there); *Armsey*, 184 F.R.D. 569, 571 (ordering deposition to occur in forum because deponents traveled there frequently).

Ms. Tekle's lawyers will face significant challenges in traveling to Saudi Arabia. In addition to the local laws and safety concerns discussed above, leading members of Ms. Tekle's legal team are Jewish and have traveled to Israel, which further diminishes the prospects of those attorneys obtaining a visa to travel to Saudi Arabia. *See Exxon Mobil Corp.*, 941 F. Supp. 2d at 519.

On the other hand, Counterclaimants own a home in Virginia and frequently travel to the United States. *See Sonista, Inc. v. Hsieh*, No. 5:04-CV-4080 RMW(RS), 2005 WL 2045802, at *2 (N.D. Cal. Aug. 25, 2005) (ordering deposition of Taiwanese resident to take place in California in part because "he owns a home in California"). Counterclaimants, by their own account, use a private jet to travel to locations of their choosing around the world. *See, e.g.*, Ex. G to Amended Counterclaim, Dkt. 75-7. Despite this, Counterclaimants insist they must be deposed in Jeddah.

9

The burdens associated with travels to Saudi Arabia, particularly when lawyers for both parties are located in Virginia, greatly exceed the burdens on Counterclaimants to travel to Virginia, where they own a home.[2]

Moreover, should disputes arise the parties need to be able to consult the Court, which further weighs in favor of holding the depositions in Virginia. *Khashoggi*, 124 F.R.D. at 551 ("Holding [deposition in forum] would accelerate the resolution of these disputes and minimize the risk that any deposition will be interrupted for a significant period."); *Juniper Networks Inc.*, 2009 WL 10696665, at *2. Given the time difference between Virginia and Saudi Arabia, the Court would be unable to assist the parties. *See New Medium Techs.*, 242 F.R.D. at 467 (recognizing that the Court's ability to intervene should problems arise is compromised when the deposition is taken many time zones away). Conducting the depositions in Saudi Arabia also make it extremely difficult for Ms. Tekle's counsel to consult with her—or for her to witness the deposition, even remotely.

### 3. Costs of Taking Counterclaimants' Deposition in Saudi Arabia

Cost considerations—including which party is in a better position to bear costs—are also relevant for compelling a deponent to travel to the forum district for a deposition. *See, e.g.*, *Turner*, 119 F.R.D. at 383 (court considered "disparity in the inconvenience and financial burden on the parties" to order defendant to sit for deposition in forum when defendant resided elsewhere); *Sharif v. Int'l Dev. Grp.*, 2013 WL 21995166, at *1 (considering costs and ordering deposition in neutral third location when defendant was member of Saudi royal family); *Doe I v. Karazdic*, 1997 WL 45515, * 3 (S.D.N.Y. Feb. 4 1997) (costs of disposing Bosnia-resident defendant in Bosnia was factor in favor of holding deposition in New York) (*report and recommendation adopted by* 1997

---

[2] There are no logistical burdens associated with travel to the United Kingdom because all counsel can travel there without visas.

WL 746512 S.D.N.Y. Dec. 3, 1997); *Khashoggi*, 124 F.R.D. at 550 (Saudi-resident defendant ordered to sit for deposition in forum because he was better able to bear the costs of travel).

The consideration of costs suggests Counterclaimants' depositions should be held in Virginia. Ms. Tekle's attorneys represent her on a *pro bono* basis, paying 100% of the costs of this litigation. The disparity in Ms. Tekle's and Counterclaimants' financial positions weighs clearly in favor of depositions being held in Virginia. Depositions in Saudi Arabia would require two legal teams to pay travel expenses, whereas depositions in Virginia would require only the two Counterclaimants to travel to their Virginia home, and would require no travel expenses for either set of counsel.

### 4. **Counterclaimants' Unjustified Rejection of Ms. Tekle's Offer to Compromise**

In the spirit of compromise, to avoid an impasse, Ms. Tekle suggested that the parties agree to hold the depositions in a neutral third location: the United Kingdom.[3] *See* Declaration of Satenik Harutyunyan, filed herewith, Ex. A. In this case, both parties can more easily travel to London. Both parties' counsel have offices there. But Counterclaimants flatly rejected this offer, expressing that they are "not inclined to travel to London, or anywhere else." *See* Declaration of Satenik Harutyunyan, Ex. B. Ms. Tekle is also amenable to taking Counterclaimants' depositions in another neutral location, if Counterclaimants would propose an alternative that does not present the same logistical and safety concerns as does Saudi Arabia. *See* Declaration of Satenik Harutyunyan, filed herewith, Ex. A. Counterclaimants' unwillingness to engage in a productive discussion has left Ms. Tekle no choice but to involve the Court.

The unique circumstances before the Court show that in the interest of safety, equity, and efficiency, Counterclaimants should agree to be deposed in Virginia. Should the Court—in its discretion—determine that a neutral third location is appropriate, it should select London or

---

[3] Before Ms. Tekle offered London as a possible solution, Counterclaimants suggested the possibility of a video deposition. Counterclaimants have deposed Ms. Tekle in person and Ms. Tekle is entitled to the same.

11

another mutually agreeable neutral location, pursuant to Ms. Tekle's offer to compromise. The Court should unequivocally reject depositions in Saudi Arabia, which is not convenient, logistically efficient, safe, or cost effective for Ms. Tekle's *pro bono* counsel.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court grant her motion to compel the depositions of Counterclaimants to take place in the Eastern District of Virginia or in the alternative, in a neutral third location, such as London.

Dated: May 3, 2019

Respectfully submitted,

/s/ Nicholas Cooper Marritz

Richard F. Levy (*pro hac vice*)
Andrew B. Cherry (*pro hac vice*)
Sati Harutyunyan (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2648
rlevy@jenner.com

Nicholas Cooper Marritz, VSB #89795
Simon Sandoval-Moshenberg, VSB #77110
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street, NW #104B
Washington, DC 20005
(202) 716-8485
mvandenberg@htlegalcenter.org

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

*Counsel for Plaintiff Simret Semere Tekle*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SIMRET SEMERE TEKLE,<br><br>    *Plaintiff*,<br><br>    v.<br><br>NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, MOHAMMAD BIN ABDULLAH AL SAUD<br><br>    *Defendants*. | Case No.: 1:18-cv-211 |

## CERTIFICATE OF SERVICE

I certify that I uploaded the foregoing document to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.

May 3, 2019

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org