UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

**Simret Semere Tekle**,

    *Plaintiff*,

v.

**Nouf bint Nayef Abdul-Aziz Al Saud** and **Mohammad bin Abdullah al Saud**,

    *Defendants*.

Case No.: 1:18-cv-211

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUPPLEMENTARY RELIEF AND CROSS-MOTION TO MODIFY PROTECTIVE ORDER**

## I. PRELIMINARY STATEMENT

Defendants contend that Plaintiff Tekle has not complied with this Court's April 5 discovery order on Facebook and medical records. They are mistaken.

**On Facebook**: Plaintiff has searched and completed her production from two Facebook accounts. Defendants contend, without evidence, that there is a third account. There is not. Plaintiff Tekle has denied that there is or was a third account. She does not have any information about this account that would allow recovery, if the account existed at all. Defendants have not provided any information that might be useful in recovering the account they allege existed in the 2011-2012 time frame. Nevertheless, on May 5 and May 6, 2019, Plaintiff Tekle contacted Facebook to request recovery of an account that she does not believe ever existed and cannot access. Plaintiff Tekle submits that her efforts to contact Facebook should moot Defendants' request.

**On Medical Records**: In order to safeguard the privacy of certain reproductive health records dating from an ob-gyn visit in 2018 – long after her escape from Defendants – Plaintiff asked Defendants to keep those records, and those records only, "attorneys' eyes only," a designation that Plaintiff agreed would include access for Defendants' experts. Defendants refused. Plaintiff nonetheless produced those records, redacting certain 2018 reproductive health test results and certain reproductive health information. All other medical records have been produced without redactions. Courts routinely recognize the privacy interest inherent in sensitive medical information, and in reproductive health records particularly, and just as routinely approve production under "attorneys' eyes only" restrictions. Plaintiff Tekle hereby cross moves to modify the protective order to permit her to produce the documents as "attorneys' eyes only" so that these unredacted materials may be provided immediately to Defendants' counsel and their medical expert, a modification that is within this court's discretion to grant.

## II. LEGAL STANDARD

**Facebook:** A party must produce all discoverable documents responsive to a request that are in the party's "possession, custody or control." Fed. R. Civ. P. 34(a)(1). But the Court cannot compel a party to produce documents that do not exist or that are not in that party's possession, custody, or control. *Nix v. Holbrook*, No. 5:13-02173, 2015 WL 733778, at *8 (D.S.C. Feb. 20, 2015) ("court cannot compel Defendants to produce documents they do not possess"); *Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 640 (D. Kan.), on reconsideration in part sub nom. *Sonnino v. Univ. of Kansas Hosp. Auth.*, 221 F.R.D. 661 (D. Kan. 2004). It is sufficient that a party responds to document requests by saying that a document or tangible thing is not in existence. E.g. *Hagemeyer N. Am., Inc. v. Gateway Data Scis. Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) (citing 8A Wright, Miller & Marcus, § 2213). In the face of a denial by a party that it has possession, custody or control of documents, the requesting party must make an adequate

showing to overcome this assertion. *Suh v. HCA Healthcare Co.*, NO: 7:02-CV-166, 2010 WL 11622621, *3 (E.D.N.C. June 8, 2010); *Hagemeyer N. Am.*, 222 F.R.D. at 598.

**Medical Records**: A protective order is always subject to the inherent power of the district court. The decision to modify a protective order is within the district court's discretionary authority, if it determines there is good cause to do so. *In Re Kolon Industries, Inc.*, 479 Fed. Appx. 483, 485-486 (4th Cir. 2012); *United States v. (Under Seal)*, 794 F.2d 920, 928 n.6 (4th Cir. 1986).

## III. ARGUMENT

### A. Facebook

#### 1. Ms. Tekle has contacted Facebook, rendering this motion moot.

Defendants have represented that another employee set up a Facebook account for Ms. Tekle while she resided at the Defendants' home on Aziza Court. (Tr. of Hr'g on Motions, Apr. 5, 2019 at 8:23-25). Defendants also claim that a second employee remembers that Ms. Tekle commented on photographs on that employee's Facebook page. (*Id.* at 9:3-5). But Defendants admitted at the hearing that they have not seen this account or any evidence of its existence. (*Id.* at 24:2-7). The only "evidence" Defendants have that this account allegedly existed is what Defense counsel claims he was told by these two employees, whom Defendants refuse to name. Defendants concede that they are "hard-pressed" to provide any additional information concerning the account. Dkt. 123 at 4.

Ms. Tekle would willingly recover this account, if it ever existed. But Defendants are mistaken. Ms. Tekle has no recollection of maintaining a Facebook account during this period. And even if Defendants' allegations about the account are true, and they are not, Plaintiff Tekle threw away her phone and SIM card when she fled in April 2012, terrified that the phone might be used to track her movements. That phone, abandoned in her April 2012 escape, was Ms.

Tekle's only connection with the life she left behind. After she left Defendants' home, she went into hiding.

Defendants now ask Ms. Tekle to identify an alleged Facebook account for which she does not know the user name, the password, the phone number used create the alleged account, the email address used to set up the alleged account, or even the identity of the person who "helped" create the alleged account.

At the April 5th hearing, this Court instructed Defendants to provide as much information as possible to assist Plaintiff Tekle in identifying this account. (Hr'g Tr. at 24:14-20) Defendants have provided no information whatsoever beyond the vague statements made at the hearing, and simply insist: "Defendants have informed Plaintiff that Plaintiff had a Facebook account." Dkt. 123 at 4. Following the April 5th hearing, Ms. Tekle asked Defendants for the name of the person who claims to have set up the account. Defendants refused to identify the individual and declined to provide more information in their motion. Dkt. 123 at 4.[1] Defendants similarly failed to provide the name of the employee who supposedly remembers Ms. Tekle's comments on Facebook postings. Id.

In an effort to respond to Defendants' concerns, Ms. Tekle has contacted Facebook. On May 5, 2019, Plaintiff wrote to Facebook requesting assistance in recovering the account, as Defendants have requested. Exh. 1. "Request to Recover Account for User", May 5, 2019. In addition, a letter was mailed to Facebook headquarters on May 6, 2019 with a similar, but more detailed request. Exh. 2. At the time of this filing, Ms. Tekle had not received a response to

---

[1] Mr. Nash's comments in the hearing on April 5th indicate that he is not even willing to share the gender of these purported witnesses. (Hr'g. Tr. at 8:23-25; *Id.* at 9:1-5). Defendants have not produced declarations, witness statements, or even access to these individuals to assist Plaintiff Tekle in recovering the alleged account.

4

either request. These communications with Facebook, however, should render this motion moot. Plaintiff Tekle will provide any responsive materials should an account be recovered by Facebook.

### 2. Defendants have not met their burden to show the requested documents in fact exist.

Plaintiff has taken all appropriate steps to obtain additional information about this alleged Facebook account. But even if she had not, a party cannot be compelled to produce documents that do not exist. Defendants have not met their burden to show that Plaintiff, despite her denial, both has possession of and is withholding additional documents. Indeed, courts routinely deny motions to compel in such situations. *E.g., Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 530 (D.S.C. 2018) (court observes there was no evidence before it that party both possessed and was withholding additional documents: "court cannot compel a party to produce documents they do not possess"); *AGV Sports Grp., Inc. v. LeMans Corp.*, No. CIV. GLR-11-0016, 2013 WL 3776954, at *2 (D. Md. July 16, 2013) ("As explained above, this Court cannot compel production of documents simply because their existence is suspected by Plaintiff" even where Plaintiff had produced an e-mail not produced by Defendant as evidence of a deficient search); *Alexander v. F.B.I.*, 194 F.R.D. 305, 311 (D.D.C. 2000) ("Plaintiffs argue that the EOP's response is 'suspicious,' given Thomas McLarty's testimony that he thinks (but is not certain) that he has seen Mrs. Clinton typing on a laptop. As the EOP correctly notes, however, such suspicion is insufficient to support their motion to compel. Plaintiffs must demonstrate that the documents they seek to compel do, in fact, exist and are being unlawfully withheld. Thus, having failed to demonstrate that any documents have been withheld, the plaintiffs' request is denied." (internal citations omitted)).

In the event Defendants seek to argue that Plaintiff did not try hard enough to obtain the alleged Facebook account, Judge Posner, writing for the Seventh Circuit has already explained why that argument is unavailing: "But the fact that a party could obtain a document if it tried hard enough and maybe if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993).

**B.  Plaintiff Tekle is ready to produce remaining highly-sensitive medical records, subject to modification of the protective order to allow designation as "Attorneys' Eyes Only."**

Plaintiff Tekle timely produced all of her medical records, save certain ob-gyn records, for which she cross moves for a modification to the protective order. So that the record is clear: Plaintiff has already produced medical records, including the doctor notes from an examination by a psychologist. The only records at issue are results from a 2018 visit to an ob-gyn – a reproductive health visit that post-dates Plaintiff's employment by seven years. Those documents, highly-sensitive medical records for ob-gyn concerns that long post-date Plaintiff Tekle's employment by the Defendants, should be produced subject to an "Attorneys' Eyes Only" designation, a designation routinely used by the courts for medical records of all kinds. Plaintiff Tekle has already agreed to allow Defendants' medical expert to review her records produced under this designation.

**1.  Plaintiff Tekle sought cooperation with Defendants to produce all medical records, but Defendants refused to agree to a revision of the protective order.**

Defendants could have avoided motions practice entirely had they simply agreed to Plaintiff Tekle's request to designate these materials as "attorneys' eyes only."[2] As noted above,

---

[2] Defendants insist that they did not have an opportunity to discuss the medical records during Plaintiff Tekle's deposition and that Plaintiff's counsel "instructed her not to answer." This mischaracterizes the record. Defendants had two days to depose Plaintiff Tekle.

6

Plaintiff Tekle agreed that Defendants' medical expert is included under this designation. Inexplicably, Defendants' counsel refused to do so, arguing his clients in Saudi Arabia have the right to peruse Plaintiff Tekle's 2018 gynecological records – largely reproductive health test results that post-date her employment by seven years.

On April 16, 2019, Plaintiff Tekle wrote to Defendants:

> We have attached an amended protective order -- designating Plaintiff's ob-gyn medical information as highly confidential – attorney's eyes only"—which we ask that you approve for production of these records. Once this is approved, we will file with the Court. We would be happy to produce the unredacted documents— including the unredacted records of Dr. []— with the "highly confidential – attorneys' eyes only" designation, today, the deadline for production under the Court's order on the motion to compel. Our production will be complete upon production of those records.

Email from Andrew B. Cherry to Stuart Nash (April 16, 2019), Exh. 3.

Defendants had previously informed Plaintiff Tekle's counsel that such a designation would be too "burdensome." *Id.* But beyond the inconvenience of protecting Plaintiff Tekle's privacy, Defendants have offered no valid reason to object to modification of the protective order.

Plaintiff Tekle stands ready to produce the remaining unredacted medical records immediately, subject to modification of the protective order. She has already released her psychological records, dental records, optometrist records, and general physical examination records, as required by the court order. But, as this Court, understanding these privacy concerns, stated at the end of the April 5th hearing, the medical records "aren't going to be disclosed

---

Defendants declined to ask Plaintiff about her emotional distress, any symptoms she alleges, or any doctor visits until five minutes remained of their 14 hours. At that point, Defendants showed Plaintiff her ob-gyn records and asked Plaintiff what had been redacted by her attorneys. Tekle Dep., Exh. 4. at 20:33:46, Apr. 18, 2019. Plaintiff Tekle's counsel pointed out that Defendants had exhausted the time permitted for the deposition and that the time had in fact expired. *Id.* Counsel did not instruct the witness not to answer.

publicly." (Hr'g Tr. at 25:11-12). Plaintiff Tekle is simply taking all appropriate steps to make sure that these records are indeed not disclosed and to safeguard legitimate privacy interests in these most personal health records, records that post-date her employment by seven years.[3]

### 2. Modification of the protective order to permit production as "Attorneys' Eyes Only" is an appropriate – and routine – mechanism for production of medical records and good cause exists to do so here.

The Federal Rules of Civil Procedure provide that a court may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden." Fed. R. Civ. P. 26(c)(1). This may include specifying the terms for the disclosure or discovery and limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1)(B) and (D). "Courts could not function effectively in cases involving sensitive information—trade secrets, medical files and minors, among many others—if they lacked the power to limit the use parties could make of sensitive information obtained from the opposing party by invoking the court's authority." *Bittaker v. Woodford*, 331 F.3d 715, 726 (9th Cir. 2003).

Courts recognize the particular sensitivity and elevated privacy interest parties have in their medical records, particularly in reproductive health records. *E.g. United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 577 (3d Cir. 1980) ("It has been recognized in various

---

[3] In a prior trafficking case litigated in this jurisdiction by Plaintiff's counsel, information about a female plaintiff's reproductive health was publicized, including on social media, by defendants' family members in violation of the protective order in that case. Pl.'s Mem. In Supp. Mot. To Seal Certain Documents Following Disclosure of Confidential Information, *Doe v. Amal et al*, Dkt 36, No. 12-CV-01359 (E.D. Va. Apr. 17, 2014). The District Court took prompt steps to protect the plaintiff in that case by sealing the docket, Order Granting Pl.'s Mot. to Seal Certain Documents Following Disclosure of Confidential Information, *Doe v. Amal et al*, Dkt. 41, No. 12-CV-01359 (E.D. Va. Apr. 28, 2014), but there was no way to remove the information from the internet. Knowing these risks, Plaintiff Tekle's counsel has a duty to take all possible steps to protect her from a repeat of such harassment – conduct that neither the court nor defendant's counsel can prevent or remedy. While Defendants' counsel is subject to ethical rules that prohibit disclosure of these materials, Defendants themselves, and their family members, based in Saudi Arabia, have no such constraints.

8

contexts that medical records and information stand on a different plane than other relevant material."); *Stewart v. Orion Fed. Credit Union*, 285 F.R.D. 400, 402 (W.D. Tenn. 2012) (privacy concerns necessarily exist when medical and mental health records are produced in discovery); *Gordon v. Countryside Nursing & Rehab. Ctr., LLC*, No. 11 C 2433, 2012 WL 2905607, at *2 (N.D. Ill. July 16, 2012) (discovery of medical records raises significant privacy interests); *cf. Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767–68 (1994) (State has a strong interest in protecting a woman's freedom to seek lawful reproductive health care and in medical privacy); *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989) (noting Congress exempted medical files from disclosure under FOIA on grounds such disclosure "would constitute a clearly unwarranted invasion of personal privacy.").

A requirement that a plaintiff produce ob-gyn medical records, including reproductive health test results, without adequate privacy protections falls squarely within the ambit of annoyance, embarrassment, and oppression. Indeed, to shatter a victim's privacy interest in this manner would have a chilling effect on female plaintiffs who turn to the federal courts for justice. Filing a lawsuit in Virginia should not provide Plaintiff's former employers in Saudi Arabia – well outside this court's ability enforce any protective order -- access to Plaintiff's current ob-gyn health and treatment.[4]

Recognizing the privacy interests, courts routinely agree that an "Attorneys' Eyes Only" designation is appropriate for medical records. *E.g, Doe v. Delta Airlines, Inc.,* No. 13 CIV.

---

[4] In wide range of contexts, courts recognize that prevention is more effective than a post-hoc remedy, particularly when personal information can be sent overseas, outside of the court's jurisdiction, or posted on the internet. *E.g*. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1071 (9th Cir. 2000) (permitting use of pseudonyms because court could not plaintiffs or family members overseas); *Wirtz v. Cont'l Fin. & Loan Co. of W. End*, 326 F.2d 561, 563-64 (5th Cir. 1964) (permitting informant to remain anonymous was "most effective protection").

9

6287 PAE, 2015 WL 798031, at *3 (S.D.N.Y. Feb. 25, 2015), *aff'd,* 672 F. App'x 48 (2d Cir. 2016) (ordering production of medical records "solely on an attorneys'-eyes-only basis"); *Kojac v. US Investigations Servs.*, No. 13-62162-CIV, 2014 WL 12600802, at *2 (S.D. Fla. May 22, 2014) (protective order to include "attorney's eyes only" provision for any medical records); *Cappetta v. GC Servs. Ltd. P'ship*, 266 F.R.D. 121, 126–27 (E.D. Va. 2009) (plaintiff's medical records to be designated "Attorneys' Eyes Only" so that "only counsel for Defendant and their legal assistant will view them."); *Stewart* 285 F.R.D. at 402 (W.D. Tenn. 2012) (medical and mental health records to be produced subject to an attorney's and experts' eyes only protective order); *Kessel v. Cook Cty.*, No. 00 C 3980, 2002 WL 398506, at *3 (N.D. Ill. Mar. 14, 2002) (medical records to be produced subject to "attorneys' eyes only" designation"); *Alexander v. F.B.I.*, 186 F.R.D. 54, 58 (D.D.C. 1998) (modifying protective order for medical information as "attorneys' eyes only").

This modification will not impair Defendants ability to litigation their claims. In particular, where "at this stage of the litigation, defendants are unable to demonstrate any actual prejudice from their personal inability to review the information" an "attorneys' eyes only" designation is appropriate. *Alexander*, 186 F.R.D. at 58; *see also Wetzel v. Brown,* No. 1:09–cv–053, 2014 WL 684693, *5 (D.N.D. Feb. 21, 2014) (defense counsel may not disclose medical records to clients without prior permission of court). As in *Alexander*, Defendants may later move to remove the designation, in the unlikely event that any of this material is relevant at trial.

It is important to reiterate that Plaintiff Tekle is not seeking this designation for the entirety of her medical records – which have already been produced – but for a small subset of ob-gyn records from 2018, well after the events in this case. She asks this Court to recognize her legitimate privacy concerns with disclosure of her sensitive reproductive health information and

to order modification of the protective order to encompass "attorneys' eyes only" for this category of material. Plaintiff Tekle has already agreed to allow Defendants' medical expert to review her records produced under this designation.

## CONCLUSION

For the above reasons, Defendants' motion should be denied and Plaintiff's cross-motion for modification of the protective order should be granted.

| | |
|---|---|
| Dated: May 7, 2019 | Respectfully submitted, |
| | /s/Simon Sandoval-Moshenberg |
| Richard F. Levy (*pro hac vice*) | /s/ Simon Sandoval-Moshenberg |
| Andrew B. Cherry (*pro hac vice*) | Simon Sandoval-Moshenberg, VSB #77110 |
| Sati Harutyunyan (*pro hac vice*) | Nicholas Marritz, VSB #89795 |
| JENNER & BLOCK LLP | LEGAL AID JUSTICE CENTER |
| 1099 New York Avenue NW, Suite 900 | 6066 Leesburg Pike, Suite 520 |
| Washington, DC 20001 | Falls Church, VA 22041 |
| (202) 639-6000 | (703) 720-5607 |
| rlevy@jenner.com | nicholas@justice4all.org |

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street, NW #104B
Washington, DC 20005
(202)-716-8485
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| SIMRET SEMERE TEKLE, <br><br> *Plaintiff*, <br><br> v. <br><br> NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, MOHAMMAD BIN ABDULLAH AL SAUD <br><br> *Defendants*. | Case No.: 1:18-cv-211 |

## CERTIFICATE OF SERVICE

I certify that I uploaded Plaintiff's Memorandum in Opposition to Defendants' Motion for Supplementary Relief and Cross-motion to Modify Protective Order to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.

May 7, 2019

/s/ Simon Sandoval-Moshenberg
Simon Sandoval-Moshenberg
VSB #77110
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5605
simon@justice4all.org