**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| SIMRET SEMERE TEKLE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18cv00211 (TSE/JFA) |
| | ) | |
| NOUF BINT NAYEF ABDUL-AZIZ AL SAUD | ) | |
| and MOHAMMAD BIN ABDULLAH AL SAUD, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## <u>DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL</u>

After failing for weeks to diligently engage with Defendants' counsel on the scheduling of Defendants' depositions, Plaintiff files this motion to compel Defendants to relinquish their legal right to be deposed near their place of residence, relying on pretextual safety concerns that are directly contradicted by Plaintiff's counsel's own conduct. Indeed, just two weeks ago, Plaintiff's counsel asked this Court to assist them in securing up to *10 days* of depositions in Saudi Arabia— a place to which they now claim is too dangerous for them to travel. The Court should see through, and reject, Plaintiff's counsel's transparent attempt to avoid the general rule applied in federal courts throughout the country, including in the Eastern District of Virginia, that compulsory counterclaimants, like all other defendants, are entitled to be deposed near their place of residence, absent extraordinary circumstances.

## BACKGROUND

On March 29, 2019, at the hearing on Plaintiff's first motion to compel, the Court informed the parties that they needed to start working on deposition dates. Hr'g Tr. at 42:24. ("You all need to start working on those dates."). On April 1, 2019, the very next working day, Defendants'

counsel heeded the Court's instruction and reached out to Plaintiff's counsel with three sets of dates during which Defendants were available for deposition near their place of residence, Jeddah, Saudi Arabia—May 2-3, May 9-10, and May 16-17.  *See* Exhibit A.  On April 2, 2019, Plaintiff's counsel sent Defendants' counsel a letter citing nothing but E.D.Va. Local Rule 30(a) and stating that "[y]our insistence that Mr. and Mrs. Al Saud's depositions be taken in Jeddah and not in Virginia (or in the District, by agreement), where they lived for many years, seeks an unfair advantage, contrary to applicable rules."  *See* Exhibit B.  Plaintiff's counsel's letter did not mention any safety concerns, *id.*, much less any "profound" ones.  ECF 120 at 2.

On April 4, 2019, Defendants' counsel responded to Plaintiff's counsel's letter citing cases from federal courts throughout the country, including courts in the Eastern District of Virginia applying E.D.Va. Local Rule 30(a), holding that compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business location.  *See* Exhibit C.  Defendants not only provided substantial support for their position that Defendants are entitled to be deposed near their place of residence, but also offered to save all parties the expense of conducting foreign depositions by making themselves available for deposition via videoconference during the Court's normal business hours.

On April 8, 2019, without consulting Defendants' counsel, Plaintiff's counsel noticed Defendants' depositions for "April 23, 2019, for seven hours beginning at 9:00 a.m.," "April 24, 2019, for seven hours beginning at 9:00 a.m.," "April 25, 2019, for seven hours beginning at 9:00 a.m.," and "April 26, 2019, for seven hours beginning at 9:00 a.m.," in Falls Church, Virginia.  *See* Exhibit D.  None of these dates were dates on which Defendants indicated they were available. On April 10, 2019, Defendants' counsel sent Plaintiff's counsel another letter, this time citing (1) binding precedent from the Fourth Circuit holding, on facts strikingly similar to those in this case,

that a defamation counterclaim was compulsory and (2) 11 cases from federal courts throughout the country holding that compulsory counterclaimants are protected from deposition anywhere other than their residence or business location.  *See* Exhibit E.  In their April 10, 2019 letter, Defendants' counsel once again offered to make their clients available for deposition via videoconference during the Court's normal business hours.  On April 12, 2019, Plaintiff's counsel responded to Defendants' offer to make themselves available for deposition, both in person and via videoconference, in Jeddah, Saudi Arabia, by stating that "we are not prepared to agree to take the depositions in Saudi Arabia, as opposed to Virginia," that "the law on this issue in the Eastern District of Virginia is [not] as clear as you state," and that "[w]e will follow up with you next week."  *See* Exhibit F.  Plaintiff's counsel's email again did not mention any safety concerns, *id.*, and Plaintiff's counsel did not follow up the following week.

After Plaintiff's counsel informed Defendants' counsel that Plaintiff's counsel would not agree to take depositions in Saudi Arabia, Plaintiff's counsel waited 14 days to follow up. Plaintiff's counsel did not contact Defendants' counsel or the Court to resolve the issue of Defendants' deposition location for two weeks.  When Plaintiff's counsel finally responded, their April 26, 2019 letter, which Defendants' counsel thought would provide case law in support of Plaintiff's counsel's position, cited but one case, *Swimways Corp. v. Zuru Inc.,* 2014, WL 12603190  (E.D. Va. June 6, 2014), characterizing it as "binding" authority.  *See* Exhibit G.  To Defendants' counsel's surprise, in the one case Plaintiff's counsel cited in support of Plaintiff's position, Judge Leonard applied E.D. Va. Local Rule 30(A) and held that "when a defendant/counterclaimant is determined to be a compulsory counterclaimant, then the defendant remains entitled to protection from deposition anywhere but his or her residence or business location and is not required to submit to a deposition at the place designated by the plaintiff within

the district."[1]   2014 WL 12603190, at *1 (internal quotation marks and citation omitted).

Plaintiff's counsel then, for the first time and just two days after asking the Court to request that

that Kingdom of Saudi Arabia compel five Saudi Arabian citizens to join Plaintiff's counsel for

up to *10 days* of depositions in Saudi Arabia, ECF 109, expressed their "reasonable safety concerns

about traveling to the Kingdom."  Exhibit G at 2.

Defendants oppose Plaintiff's motion to compel because, absent extraordinary

circumstances, they, as compulsory counterclaimants, are entitled to protection from deposition

anywhere other than their residence or business location.  Plaintiff has failed to present any such

circumstances, and Plaintiff's counsel's offer to depose Defendants' in London, England (which

is separated from Jeddah by two time zones and nearly 3000 miles) is far more burdensome than

the offer Defendants' made more than a month ago to make themselves available via

videoconference during the Court's normal business hours.

## ARGUMENT

## I.      Defendants' defamation counterclaim is compulsory.

Defendants' counterclaim against Plaintiff—alleging that Plaintiff defamed Defendants by

communicating to The Washington Post the same false allegations that form the basis of Plaintiff's

complaint—is clearly compulsory.  The Fourth Circuit "has suggested four inquiries to determine

if a counterclaim is compulsory: (1) Are the issues of fact and law raised in the claim and

---

[1] Plaintiff's counsel apparently thought that Judge Leonard's order moving defendant's deposition from Mainland China to the Hong Kong Special Administrative Region of China because "under Chinese law the Rule 30(b)(6) deposition cannot take place [in Mainland China] without permission from the Chinese Government,"  2014 WL 12603190, at *2, supported moving the Defendants' depositions from Jeddah, Saudi Arabia to Falls Church, Virginia.  Because no such law prohibiting depositions exists in Saudi Arabia, Plaintiff's counsel is mistaken.  It should also be noted that, in *Swimways*, Judge Leonard moved defendant's deposition from Guangzhou, China to Hong Kong (also in China) the closest jurisdiction in which the deposition was legally permissible and only approximately 80 miles away.

counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the claim as well as the counterclaim? and (4) Is there any logical relationship between the claim and counterclaim?" *CSR Inc. v. Foster-Bey*, 2017 WL 1929439, at *3 (E.D. Va. May 10, 2017) (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)). "A court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Painter*, 863 F.2d at 331 (4th Cir. 1988). "Rather, the tests are less a litmus, more a guideline." *Id.*

The Fourth Circuit's application of these "guidelines" to a fact pattern nearly identical to that of this case eliminates any doubt about whether Defendants' defamation counterclaim is compulsory. *See Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988) (Wilkinson, J.). In *Painter*, plaintiff filed a federal claim against defendant under 42 U.S.C. § 1983 alleging that defendant, a police officer, had violated her constitutional rights while arresting her. After plaintiff filed her complaint, but before defendant filed his answer, plaintiff made false allegations about defendant before her local town council and to a local newspaper. Defendant counterclaimed for defamation and the district court, finding that the defamation counterclaim was compulsory, exercised ancillary jurisdiction over the counterclaim. The jury returned a verdict for defendant on his defamation counterclaim and awarded him damages of $5,000 and punitive damages of $15,000. Plaintiff appealed on jurisdictional grounds and Judge Wilkinson, writing for the Fourth Circuit, held that, because defendant's defamation counterclaim was compulsory, the district court's exercise of ancillary jurisdiction was appropriate.

In *Painter*, the Fourth Circuit found that all four inquires counseled in favor of finding that defendant's defamation counterclaim was compulsory. The district court's analysis, which the Fourth Circuit affirmed, applies with equal force to the facts of this case. As to the first inquiry,

"[t]he central issue in both the claim and counterclaim is identical: What transpired during [Plaintiff's employment in 2011-2012]? The jury, in essence, [will be] faced with irreconcilably conflicting evidence and [will be] required to choose which version to accept or reject." *Id.* at 331-32. As to the second inquiry, "[e]xamining the facts here, one finds that [a] jury verdict against [Plaintiff] on her [human trafficking] claim[s] necessarily determine[s] the issue of what happened during her [employment]. Thus, in subsequent state action she could well face an issue preclusion bar as to relitigating those facts." *Id.* at 332. As to the third inquiry, "[a]ll of the witnesses, except the newspaper editor and witnesses testifying to damages, [will] limit[] their testimony to a single factual issue—what transpired during [Plaintiff's employment]? It is hard to imagine a case in which the evidence bearing on the two claims is so closely identical." *Id.* And, as to the fourth inquiry, "the truth of [Defendants'] version of the events of [Plaintiff's employment with Defendants], is the central issue of fact in both the claim and counterclaim. They are inextricably and logically connected." *Id.* Given the factual similarities between *Painter* and this case, *Painter* controls this Court's decision on the issue of whether Defendants' defamation counterclaim is compulsory. As in *Painter*, this Court should find that Defendants' defamation counterclaim is compulsory. Indeed, Plaintiff does not appear to contest that point.

## II.    As compulsory counterclaimants, Defendants are entitled to protection from deposition anywhere other than their residence or business location.

The general rule applied in federal courts throughout the country is that when a defendant files a compulsory counterclaim, like Defendants' defamation counterclaim, he remains entitled to protection from deposition anywhere other than his residence or business location. *See, e.g.,* *Smartgene, Inc. v. Advanced Biological Labs. SA*, 2012 WL 13046338, at *2 (D.D.C. Feb. 6, 2012) ("If a counterclaim is compulsory, a defendant corporation remains entitled to protection from deposition anywhere but at its principal place of business, but if a counterclaim is permissive, a

defendant-counter plaintiff may be deposed in the forum where the suit is pending.") (citation omitted); *DeGeer v. Gillis*, 2010 WL 3732132, at *2 (N.D. Ill. Sept. 17, 2010) ("Finally, DeGeer has not argued that Defendants' counterclaim is permissive. So, the fact that Defendants filed a counterclaim is not sufficient to require them to travel to Chicago for their depositions.") (citation omitted); *Gering v. Fraunhofer USA, Inc.*, 2008 WL 4427608, at *1 (E.D. Mich. Sept. 30, 2008) ("Because the counterclaim is compulsory, [defendant counter-claimant] remains in the position of a defendant for purposes of the location of depositions.") (citation omitted); *Pub. Works Supply Co. v. Soleno, Inc.*, 2008 WL 11389371, at *2 n.2 (D. Mass. May 22, 2008) ("If a counterclaim is compulsory, a defendant remains entitled to protection from deposition anywhere but his or her residence or business location.") (internal quotation marks and citation omitted); *Lending Sols., Inc. v. Mortg. Now, Inc.*, 2008 WL 11407375, at *1 (N.D. Ga. Jan. 7, 2008) ("The *Gibbs* court reviewed these two cases, and summarized them by saying '[b]oth courts . . . held that filing a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) did not strip a defendant of that protection [not being compelled to appear in the forum state].'") (alterations in original); *Kuest Corp. v. Aitrol, Inc.*, 2006 WL 3592941, at *1 (W.D. Tex. Dec. 8, 2006) (Defendant's "filing of what likely is a compulsory counterclaim, does not serve to displace the general rule concerning the location of the corporate deposition."); *Gibbs v. National Railroad Passenger Corp.*, 170 F.R.D. 452 (N.D. Ind. 1997) ("Both district judges acknowledged the general rule that a defendant could not be compelled to appear in the forum state for a deposition. Both courts also held that filing a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) did not strip a defendant of that protection."); *Sears v. Am. Entm't Grp., Inc.*, 1995 WL 66411, at *2 (N.D. Ill. Feb. 13, 1995) ("However, if the counterclaim is compulsory, the defendant/counter plaintiff remains entitled to protection from deposition anywhere but for his or her residence or business

location.") (citation omitted); *Fortune Mgmt., Inc. v. Bly*, 118 F.R.D. 21, 22 (D. Mass. 1987) ("All sides also concede that the filing of a permissive counterclaim results in a defendant counterplaintiff being treated as a party plaintiff for purposes of any depositions, *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982), and that, in general, the principle that the deposition of a defendant should be taken at his or her residence or place of business holds true when a compulsory counterclaim is filed.") (citation omitted); *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982) ("If a counterclaim is compulsory, a defendant remains entitled to protection from deposition anywhere but his or her residence or business location; on the other hand, if a counterclaim is permissive, a defendant-counterplaintiff may be deposed at the place of trial.") (citation omitted); *Wisconsin Real Estate Inv. Tr. v. Weinstein*, 530 F. Supp. 1249, 1253 (E.D. Wis. 1982) ("The parties agree that in general a defendant is entitled to protection from deposition anywhere except at his place of business or residence, and that a defendant who brings a counterclaim does not lose that protection if the counterclaim is compulsory but is put in the position of a plaintiff if the counterclaim is permissive and may be deposed at the place of trial.") (citation omitted); *Pinkham v. Paul*, 91 F.R.D. 613, 615 (D. Me. 1981) ("While the court may order a defendant to appear at any convenient place, case law indicates that 'it will be presumed that the defendant will be examined at his residence or place of business or employment.' 4 Moore's Federal Practice s 26.70 (1-3), at 26-514. This is so regardless of whether the defendant has asserted a counterclaim, provided it is a compulsory counterclaim.") (citation omitted); *Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp. of Am.*, 71 F.R.D. 697, 700 (W.D. Okla. 1976) ("If the Counterclaim is a compulsive counterclaim pursuant to Rule 13(a), Fed. Rules Civ. Proc., then Defendant should not be considered to be in the same position as a party plaintiff which selected the forum.").

The established case law that compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business location is not only applied by courts throughout the country, but specifically by courts in the Eastern District of Virginia applying E.D.Va. Local Rule 30(a).  Indeed, although E.D.Va. Local Rule 30(a) provides that "[a]ny party, or representative of a party (e.g., officer, director, or managing agent), filing a civil action in the proper division of this Court must ordinarily be required, upon request, to submit to a deposition at a place designated within the division" and that "[a] defendant, who becomes a counterclaimant, cross-claimant, or third-party plaintiff, shall be considered as having filed an action in this Court for the purpose of this Local Rule," courts in the Eastern District of Virginia do not require compulsory counterclaimants to make themselves available for deposition in the district.  For example, in *Swimways Corp. v. Zuru, Inc.*, 2014 WL 12603190 (E.D. Va. June 6, 2014), the court applied E.D.Va. Local Rule 30(a) and held that "when a defendant/counterclaimant is determined to be a compulsory counterclaimant, then the defendant remains entitled to protection from deposition anywhere but his or her residence or business location and is not required to submit to a deposition at the place designated by the plaintiff within the district." *Id.* at *1 (internal quotation marks and citation omitted).[2]  As the case law in the Eastern District of Virginia and throughout the country makes clear, Defendants/Compulsory Counterclaimants in this case are entitled to be deposed near their place of residence, Jeddah, Saudi Arabia.

---

[2] As previously noted, in *Swimways*, the Court only ordered defendant's deposition to take place in the Hong Kong Special Administrative Region of China, rather than Mainland China, because "under Chinese law, the Rule 30(b)(6) deposition cannot take place [in Mainland China] without permission from the Chinese Government."  2014 WL 12603190, at *2.  No such law exists in Saudi Arabia.

III.   **Defendants/Counterclaimants are entitled to the same presumption as any defendant—that they will be deposed near their place of residence—and there are no circumstances justifying deviating from that presumption in this case.**

"[C]ourts have held that defendant-deponents located outside the forum district's subpoena power should ordinarily be deposed near their place of residence absent exceptional or unusual circumstances." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010) (Ellis, J.). [3] "[T]his presumption applies with no less force when the defendant is domiciled in another country" *id.*, or when the defendant is a compulsory counterclaimant, *Swimways*, 2014 WL 12603190, at *1.[4]  In fact, "insofar as a foreign defendant may be more inconvenienced by having to travel to the United States than a defendant who merely resides in another state or in another judicial district, the presumption that the deposition should occur at a foreign defendant's place of residence may be *even stronger*." *Outsidewall*, 267 F.R.D. at 471 (emphasis added).[5]  And, while the presumption that a foreign defendant's deposition should occur at the foreign defendant's place of residence

---

[3] Plaintiff cites *Swimways* in support of its position that unique circumstances exist making it clear that Defendants' place of residence is not an appropriate location for their depositions.  But in *Swimways*, the Court agreed to accept defendant's proposal to move its deposition 80 miles to the southeast (from Ganzhou, China to Hong Kong, China) because Plaintiff's counsel could be "arrest[ed], de[tained] or deport[ed]" *just for taking defendant's deposition* in Mainland, China. No such risk exists in Saudi Arabia.

[4] Plaintiff also cites *Connell v. Biltmore Sec. Life Ins. Co.*, 41 F.R.D. 136 (D.S.C. 1966) in support of its position that unique circumstances exist rebutting the presumption that Defendants' depositions should take place near their place of residence.  In *Connell*, however, the court ordered defendant's corporate representative to make himself available in the forum state, in part, because it was not certain that the corporation's principal place of business was other than South Carolina. *See Connell*, 41 F.R.D. 136 at 137 ("Though the affidavits supporting and opposing the notice of taking are in accord as to the citizenship of the defendant corporation there is conflict in the affidavits regarding the principal place of business of the defendant and the location of its books and records.").

[5] Plaintiff further cites *Mill-Run Tours, Inc. v. Khashoggi*, 124 F.R.D 547 (S.D.N.Y 1989) in support of her position that the presumption that the Defendants should be deposed near their place of residence should be overcome.  In *Khashoggi*, however, the court ordered defendants to make themselves available in the United States, in part, because the court was not satisfied that defendants actually lived outside of the United States. *Id.* at 551 ("Indeed, considerable doubt has been cast on the accuracy of these representations.").  In this case, there is no doubt as to whether Defendants live in Saudi Arabia.  They do. *See* Exhibits K and L.

can be overcome, the presumption can only be overcome "where circumstances exist distinguishing the case from the ordinary run of civil cases." *Id.* at 472. [6]

After reviewing a variety of cases in which the presumption that a foreign defendant should be deposed at his residence or business location was overcome, Judge Ellis observed that "the presumption is overcome where the record presents unique or distinctive circumstances demonstrating either (i) that taking the depositions at the [defendant's residence or business location] would be unduly burdensome, or (ii) that, by virtue of the [defendant's] regular course of activity in the alternative location, the burden of requiring the [defendant] to be deposed there is minimal and the savings to the deposing party are substantial." *Id.* at 473. This case presents neither of those circumstances.

## A.   Taking Defendants' depositions near their place of residence would not be unduly burdensome.

### 1.   Plaintiff's counsel have manufactured "profound" safety concerns for purposes of their motion.

Plaintiff's counsel's supposed concerns about Saudi Arabia, including "safety issues," "[r]estrictions on women," "prohibition[s] on criticism of the royal family," and "terrorist activity and elevated danger," are all manufactured for purposes of overcoming the strong presumption that Defendants should be deposed near their place of residence. In their April 2, 2019 letter to

---

[6] Plaintiff finally cites *Sarif v. Int'l Dev. Grp.*, 2003 WL 21995166 (N.D. Ill. Aug. 21, 2003) in support of its position that this Court should set aside the strong presumption in favor of Defendants' depositions taking place near their place of residence. First of all, despite Plaintiff's counsel's representation to the contrary, it is quite clear that the Seventh Circuit Court of Appeals did not affirm the district court's decision with regard to deposition location, but rather the district court's merits decision granting summary judgment for the defendants. The word "deposition" does not even appear in the Seventh Circuit's decision. *See Sarif v. Int'l Dev. Grp.*, 399 F.3d 857 (7th Cir. 2005). And second, the district court's one-page order contains no analysis. It simply states "[u]nder the unusual circumstances of this case, the court believes that the depositions of defendants should be held in a third country, other than Saudi Arabia or the United States, agreed upon by the parties." *See Sarif*, 2003 WL 21995166, at *1.

Defendants' counsel regarding Defendants' deposition location, Plaintiff's counsel did not mention any of these concerns.  In their April 12, 2019 email to Defendants' counsel regarding Defendants' deposition location, Plaintiff counsel did not mention any of these concerns.  And, crucially, Plaintiff's counsel did not mention any of these concerns when, on April 24, 2019, they asked this Court to "request international assistance to compel the appearance of Her Royal Highness Princess Maha bint Mohammed bin Ahmad Al Sudairi, Okba Gebreyesus, Alaa Hamid, Nelien Okba, and Necitas Megbanua Dmailig, (collectively, "the Witnesses"), at an interview conducted by counsel for the Plaintiff in the above-captioned matter, not to exceed at period of seven hours if in English or 14 hours if translation is required, at a time and place convenient for the Witnesses sometime before May 24, 2019."  ECF 109-1 at 1.  Indeed, Plaintiff's counsel requested this Court's assistance in securing five depositions, of up to two-days each, for a total of up to 10 days of depositions in the Kingdom of Saudi Arabia.  On April 29, 2019, this Court granted Plaintiff's request and issued Plaintiff's proposed letters rogatory to the Kingdom of Saudi Arabia.  As it stands today, if the Kingdom of Saudi Arabia grants Plaintiff's counsel's request and the witnesses that Plaintiff's counsel seeks to depose require translation, Plaintiff's counsel will be in the Kingdom of Saudi Arabia taking depositions for 10 of the 16 days remaining in the discovery period.

Plaintiff's counsel would not have requested this Court's assistance in securing five potentially 14-hour depositions of Saudi Arabia-based witnesses "at a time and place convenient for the [w]itnesses" if they had any of the concerns they now claim to have.  As to safety issues, were the "local laws and safety concerns in Saudi Arabia [that] preclude it as an option for depositions" now, not applicable on April 24, 2019?  As to restrictions on women, were none Plaintiff's four female attorneys going to participate in the 10 days of depositions they requested

on April 24, 2019?[7]  As to prohibitions on criticism of the royal family, were Plaintiff's counsel unaware that, if this Court issued their proposed letter requesting international assistance to compel the appearance of "*Her Royal Highness Princess* Maha bint Mohammed bin Ahmad Al Sudairi," Plaintiff's counsel would be deposing a member of the royal family?  ECF 109-1 at 1 (emphasis added).[8]  As to terrorist activity and elevated danger, did concerns about "[m]issile attacks" only become serious enough to avoid depositions in Saudi Arabia after Plaintiff's counsel requested five two-day depositions in Saudi Arabia?  ECF 120 at 7.  The request for 10 days of depositions in Saudi Arabia, including of a member of the Saudi Royal Family, is a tacit admission that Plaintiff's counsel does not genuinely have any of the concerns they now argue should cause this Court to overcome the strong presumption in favor of defendants being deposed near their residence or business location.  Because this Court has already assisted Plaintiff's counsel in their attempt to secure depositions in Saudi Arabia for the majority of the days remaining in the discovery period, Plaintiff's counsel should not be heard to argue that the location for those 10 days of depositions is now too dangerous.

Plaintiff's counsel's lack of candor runs even deeper.  Not only has Plaintiff's counsel requested that this Court order that Saudi Arabia is too dangerous and too burdensome a jurisdiction in which to conduct depositions after requesting 10 days of depositions in Saudi Arabia, but Plaintiff's counsel made such a request while openly soliciting representations requiring travel to, and the provision of legal services in, Saudi Arabia.  Four members of

---

[7] Agnieszka Fryszman, Martina Vandenberg, and Sarah Bessell all appear on Plaintiff's Motion to Issue Letters Rogatory to the Kingdom of Saudi Arabia.

[8] Plaintiff's counsel may have had no reservations about deposing Princess Maha bin Ahmad Al Sudairi, a women Plaintiff claims threw her down a flight of stairs, because they know that asking questions is not "criticism," ECF 120 at 7, and certainly not "breaking allegiance with the ruler" *id.* (citing Human Rights Watch, World Report 2018: Saudi Arabia (2018), https://www.hrw.org/world-report/2019/country-chapters/saudi-arabia).

Plaintiff's nine-member legal team are attorneys at the law firm of Jenner & Block: Richard Levy, Jonathan Langlinais, Andrew Cherry, and Satenik Harutyunyan.  To this day, Jenner & Block's website, in an effort to acquire clients in need of legal services in particular jurisdictions around the world, boasts as follows:

> "Our FCPA practice literally spans the globe.  We have conducted dozens of FCPA investigations, compliance reviews and due diligence counseling for major corporate clients in jurisdictions across the world, including Afghanistan, Algeria, Argentina, Azerbaijan, Austria, Albania, Belgium, Bolivia, Brazil, Cambodia, Colombia, China, Croatia, Czech Republic, Democratic Republic of Congo, Ecuador, England, Equatorial Guinea, Egypt, France, Gabon, Germany, Ghana, Greece, India, Indonesia, Iraq, Japan, Korea, Kuwait, Mexico, Myanmar, Nepal, the Netherlands, the Philippines, Romania, the Russian Federation, ***Saudi Arabia***, Slovenia, Switzerland, Taiwan, Thailand, United Arab Emirates, United States, Uzbekistan, Venezuela and Zimbabwe."

*See* Exhibit H at 2.  In fact, Jenner & Block's Investigations, Compliance and Defense Practice Group even provides a map of the jurisdictions in which it regularly practices, which happens to include the Kingdom of Saudi Arabia.  *See* Exhibit I.  And, two of the four co-chairs of that practice group are women.  *See* Exhibit J at 1.[9]  When its convenient for Plaintiff's counsel's to have concerns about providing legal services in Saudi Arabia, such as between the Court's granting of

---

[9] Perhaps Plaintiff's counsel's colleagues, Christine Braamskamp and Katya Jestin, do not hesitate to solicit clients in need of legal services in Saudi Arabia because they know that Plaintiff's counsel's representations about the State Department's Saudi Arabian travel information is misleading at best.  For example, Plaintiff's counsel quotes from the State Department's website when it states that "Women who are arrested for socializing with a man who is not a relative may be charged with prostitution."  Neither that sentence nor the word "prostitution" appear on the State Department's website.  Plaintiff's counsel's representations about the State Department's travel warning are also misleading.  The State Department has advised Americans not to travel "[w]ithin 50 miles of the border of Yemen."  https://travel.state.gov/content/travel/en/international -travel/International-Travel-Country-Information-Pages/SaudiArabia.html.  Jeddah is more than 450 miles from the border of Yemen.  And while Jeddah is one of the two main cities in Saudi Arabia and thus a target for any terrorist group with which Saudi Arabia is at war, arguing that depositions should not take place in Jeddah and Riyadh because Saudi Arabia is at war with Yemen is akin to arguing that depositions should not take place in New York or Washington, DC because the United States is at war with Afghanistan.  No federal court would countenance such an argument.

the Motion for Letters Rogatory (a scant two weeks ago) and now, they have them.  Otherwise,

Plaintiff's counsel and their colleagues do not for a second hesitate, and, in fact, frequently take

affirmative steps to secure the opportunity to provide legal services in the Kingdom of Saudi

Arabia.  *See* ECF 109; Exhibit H; Exhibit I.  This Court should see through, and reject, Plaintiff's

counsel's attempt to manufacture concerns in order to deprive Defendants of their right, absent

extraordinary circumstances, to be deposed near their place of residence.

> **2.    Conducting Defendants' depositions near their place of residence, would not frustrate any of Plaintiff's legitimate discovery-related objectives.**

Saudi Arabian law does not prohibit Defendants' depositions from occurring or in any way

frustrate Plaintiff's "legitimate discovery-related objectives." *Id.* at 472.   Unlike the illustrative

cases Judge Ellis cited when he outlined the circumstances necessary to overcome the presumption

that defendants are to be deposed near their residence or business location, Saudi Arabian law

permits American lawyers to take depositions in Saudi Arabia.  *See Fausto v. Credigy Svcs. Corp.*,

251 F.R.D. 427, 430 (N.D. Cal. 2008) (ordering four officers of a Brazilian corporation to make

themselves available for deposition in the United States because "according to the U.S. Department

of State, *it apparently is illegal for American lawyers to take depositions in Brazil*") (emphasis

added); *see also Swimways*, 2014 WL 12603190, at *2 (ordering a corporate representative from

a Mainland China corporation to make himself available for deposition in the Hong Kong Special

Administrative Region of China because "*under Chinese law, the Rule 30(b)(6) deposition cannot

take place [in Mainland China] without permission from the Chinese Governme*nt") (emphasis

added).  Not only does Saudi Arabian law permit American lawyers to take depositions in Saudi

Arabia, but a number of services are readily available to provide "everything [Plaintiff] need[s]

for a successful deposition in Saudi Arabia," including court reporters, legal videographers, and

interpreters.[10]   *See, e.g.*, Optima Juris, The International Deposition Agency, https://www.optimajuris.com/location/saudi-arabia-court-reporters/.  Moreover, in order to reduce any potential impediment Plaintiff's counsel may face in conducting depositions in Saudi Arabia, Defendants have already offered to assist Plaintiff's counsel in securing sponsors for any member of her nine-member legal team who may be conducting or attending Defendants' depositions in Saudi Arabia.[11]   Plaintiff's "legitimate discovery-related objectives" would not, in any way, be frustrated by Saudi Arabian law.

Neither the law of Saudi Arabia nor its geographic location create any impediments to Plaintiff achieving her legitimate discovery-related objectives.[12]   While there is a "time difference between [Saudi Arabia] and Virginia," for this Court to order that Defendants' depositions will take place in other than Saudi Arabia, it must consider whether "disputes *requiring judicial intervention* are likely" and "whether defendants' willingness to conduct the depositions in [Saudi Arabia] during normal business hours in Virginia could mitigate such concerns."   *Outsidewall,* 267 F.R.D. at 474 (emphasis in original).  As to the first inquiry, Defendants have not, at any point in this litigation, exhibited "uncooperative or obstructionist discovery behavior and the assertion

---

[10] Defendants will not need the assistance of an interpreter to conduct their depositions in English. That Defendants' are fluent in English and willing to conduct their depositions in English, is yet another reason why Defendants' offer to make themselves available, via videoconference, for depositions during the Court's normal business hours is imminently reasonable.

[11] Plaintiff's nine-member legal team includes the following attorneys: (1) Nicholas Marritz, (2) Agnieszka Fryszman, (3) Richard Levy, (4) Martina Vandenberg, (5) Jonathan Langlinais, (6) Sarah Bessell, (7) Andrew Cherry, (8) Satenik Harutyunyan, and (9) Le'ake Fesseha.

[12] Plaintiff cites three cases in support of its argument that the Court's limited ability to supervise potential disputes during depositions in Saudi Arabia counsels in favor of overcoming the presumption.  Judge Ellis' opinion in *Outsidewall* shows why all of Plaintiff's authority is inapposite.  First, in none of Plaintiff's cases did the court find that defendants engaged in "uncooperative or obstructionist discovery behavior and the assertion of meritless or near-frivolous objections."  *Id.* at 474.  And, in none of Plaintiff's cases did the court consider "whether defendants' willingness to make themselves available for the depositions [many time zones away] during normal business hours in [the forum district] could mitigate such concerns."  *Id.*

of meritless or near-frivolous objections"—the "type of conduct warrant[ing] the forecast that disputes will arise in the course of the depositions that will likely require judicial intervention." *Id.* As to the second inquiry, in order to save all parties the expense of conducting foreign depositions, Defendants have offered to make themselves available for deposition via videoconference[13] during the Court's normal business hours, thereby eliminating the cost of conducting foreign depositions and any concern about the parties' ability to seek judicial intervention during the foreign depositions. *Id.* (vacating a magistrate's order for failure to consider "whether defendants' willingness to conduct the depositions in Dubai during normal business hours in Virginia could mitigate such concerns.").[14] Neither of the "chief" factors considered in analyzing whether the usual presumption regarding deposition location should be overcome, counsels in favor of moving Defendants' depositions from their place of residence. *Id.* at 473.

---

[13] Although Plaintiff may argue that the issues involved in Defendants' depositions are too complicated to examine via videoconference, they are not. The central issue in this case is simply whether the Plaintiff worked for the Defendants voluntarily or involuntarily. That issue can be adequately explored in person or via videoconference.

[14] Plaintiff's counsel's delay, of over a month, in responding to Defendants' proposed dates for their depositions has resulted in the unavoidable consequence that Defendants depositions will need now to occur during the Muslim observance of Ramadan, which extends from now until June 4. While at home in Jeddah, Defendants are confident that they would be able to handle the resulting logistical issues, and make themselves available for their depositions, while still meeting their religious obligations. But traveling internationally, and accommodating their religious obligations while away from home (particularly in a non-Muslim country), are considerably more difficult during Ramadan, and will likely pose logistical issues that may affect their ability to be available, at a single sitting, for the block of time necessary to conduct the depositions. Thus, Defendant's religious obligations, coupled with Plaintiff's counsel's delay in addressing this issue, have combined to create yet an additional reason for these depositions to occur near Defendants' home in Jeddah.

**B.      Defendants' regular course of activity in the Eastern District of Virginia does not render the burden of requiring Defendants to be deposed there minimal.**

Despite Plaintiff's counsel's inaccurate representation to the Court,[15] Defendants are not "frequent travelers to the United States." ECF 120 at 2. Defendants have not traveled to the United States in years. *See* Exhibit K; Exhibit L. Indeed, Defendants have not been to the United States since 2017, before this litigation began. Plaintiff's counsel still makes this baseless representation to the Court and does so without even directing it at the appropriate inquiry. "[T]he correct inquiry is not whether a deponent is, without more, a frequent traveler; a requirement to travel to a place where one does not do business or typically visit is likely to be at least as inconvenient for the frequent traveler as for the occasional traveler. Rather, the correct inquiry is whether the deponent frequently travels to *the forum district or the proposed deposition situs*." *Outsidewall*, 267 F.R.D. at 473 (emphasis added). That Defendants frequently travel to the *country* of the United States (they do not) has nothing to do with whether a court should compel them to attend a deposition in the Eastern District of Virginia.

Setting this erroneous representation aside,  Defendants do not "regularly conduct business" in or "frequently" travel to the Eastern District of Virginia. *Outsidewall*, 267 F.R.D. at 473. Therefore, the burden of requiring the Defendants to be deposed there is far from "minimal." *Id.* In fact, the burden to Defendants of being deposed in the Eastern District of Virginia is greater than what Plaintiff would bear were Defendants deposed in Saudi Arabia. If Defendants are required to be deposed in the Eastern District of Virginia, they will have to secure travel and accommodations for at least three individuals, each of the Defendants and at least one security officer.  If Defendants are deposed in Saudi Arabia, Plaintiff need only secure travel and

---

[15] Plaintiff places much emphasis on the fact that Defendants own a home in Virginia.  Of course, "home ownership" is not part of the test for whether holding a deposition in a particular jurisdiction is appropriate.

accommodations for one individual, the attorney conducting Defendants' depositions. Because

the burden of requiring Defendants to be deposed in the Eastern District of Virginia is substantial,

and greater than the burden Plaintiff would bear were Defendants deposed in Saudi Arabia,[16] this

Court should not deviate from the presumption that defendants are to be deposed near their place

of residence.

**CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court deny Plaintiff's

motion to compel and enter a protective order providing that Defendants, as compulsory

counterclaimants, are entitled to protection from deposition anywhere other than their residence or

business location.

Dated: May 8, 2019                    Respectfully submitted,

                                      */s/ John L. Brownlee*
                                      John L. Brownlee (VSB #37358)
                                      Stuart G. Nash (*pro hac vice*)
                                      David L. Haller (*pro hac vice*)
                                      HOLLAND & KNIGHT LLP
                                      1650 Tysons Boulevard, Suite 1700
                                      Tysons, VA  22102
                                      Telephone: 703.720.8600
                                      Facsimile: 703.720.8610
                                      Email: John.Brownlee@hklaw.com
                                      Email: Stuart.Nash@hklaw.com
                                      Email: David.Haller@hklaw.com

---

[16] Because she is being represented *pro bono* by nine attorneys from five organizations (just two of which have a combined annual revenue of over $450 million), Plaintiff would not actually bear any cost were Defendants' depositions conducted in Saudi Arabia. Indeed, without any mention of the financial burden, Plaintiff's counsel have already traveled to Africa in the course of prosecuting this case and are apparently planning to travel to Saudi Arabia for up to 10 days of depositions pursuant to the Letter Rogatory. ECF 109. In fact, if the Saudi Arabian courts grant Plaintiff's counsel's request, Plaintiff's counsel will be spending the majority of the rest of the discovery period in Saudi Arabia and, therefore, would only be required to expend minimal additional resources to depose Defendants in Saudi Arabia.

*Counsel for Defendants Mohammad bin
Abdullah al Saud and Nouf bint Nayef
Abdul-Aziz al Saud*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 8th day of May 2019, a true copy of the foregoing was served via

electronic case filing to:

| | |
|---|---|
| Nicholas Cooper Marritz | Richard F. Levy |
| Legal Aid Justice Center | Jenner & Block LLP |
| 6066 Leesburg Pike, Suite 520 | 1099 New York Avenue NW, Suite 900 |
| Falls Church, VA 22041 | Washington, DC 20001 |
| nicholas@justice4all.org | rlevy@jenner.com |
| | |
| Jonathan A. Langlinais | Agnieszka M. Fryszman |
| Jenner & Block LLP | Cohen Milstein Sellers & Toll PLLC |
| 1099 New York Avenue NW, Suite 900 | 1100 New York Avenue NW, Fifth Floor |
| Washington, DC 20001 | Washington, DC 20005 |
| jalanglinais@jenner.com | afryszman@cohenmilstein.com |
| | |
| Le'ake Fesseha | Martina Elizabeth Vandenberg |
| Le'ake Fesseha Law Office | The Human Trafficking Legal Center |
| 901 S. Highland Street, Suite 312 | 1030 15th Street NW, Suite 1048 |
| Arlington, VA 22204 | Washington, DC 20005 |
| leakef@hotmail.com | mvandenberg@htlegalcenter.org |
| | |
| Sarah Linnell Bessell | Andrew B. Cherry |
| The Human Trafficking Legal Center | Jenner & Block LLP |
| 1030 15th Street NW, Suite 1048 | 1099 New York Avenue NW, Suite 900 |
| Washington, DC 20005 | Washington, DC 20001 |
| sbessell@htlegalcenter.org | acherry@jenner.com |
| | |
| Satenik Harutyunyan | |
| Jenner & Block | |
| 1099 New York Avenue NW, Suite 900 | |
| Washington, DC 20001 | |
| sharutyunyan@jenner.com | |

*Counsel for Plaintiff Simret Semere Tekle*

*/s/ John L. Brownlee*
John L. Brownlee (VSB No. #37358)