# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | | |
|---|---|---|
| SIMRET SEMERE TEKLE | ) | |
| *Plaintiff*, | ) ) ) | |
| v. | ) ) | Case No.: 1:18-cv-00211 |
| NOUF BINT NAYEF ABDUL-AZIZ AL SAUD and MOHAMMAD BIN ABDULLAH AL SAUD | ) ) ) | |
| *Defendants*. | ) ) ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO COMPEL PLAINTIFF'S AND PLAINTIFF'S COUNSEL'S TESTIMONY

Pursuant to Federal Rule of Civil Procedure 37, Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud ("Defendants"), by and through undersigned counsel, submit this memorandum in support of their Motion to Compel Plaintiff's and Plaintiff's counsel's testimony regarding unprivileged communications essential to establishing Defendants' counterclaim.

## BACKGROUND

On March 22, 2019, Defendants filed their First Amended Counterclaim against Plaintiff for the defamatory statements that she or her lawyers made about Defendants' to the Washington Post. Defendants' First Amended Counterclaim describes the false statements that Plaintiff made about Defendants to federal law enforcement officials and that are contained in Plaintiff's Department of Homeland Security Form I-914.[1] Defendants' then allege that "[i]n the Spring or

---

[1] First Am. Compl. ¶30 ("Tekle was victimized through the commission of violations of 18 USC 1546, Visa Fraud and 18 USC 1589, Forced Labor when she was trafficked into the US. When Tekle arrived in the US she was instructed by her employer that she was prohibited from leaving

Summer of 2018, Plaintiff/Counter-Defendant or her agents communicated to a reporter at the Washington Post the substance of her above-noted false statements to federal law enforcement officials, including, upon information and belief, providing the reporter with a copy of the Form I-914, containing the summary of Plaintiff/Counter-Defendant's false and defamatory statements to federal law enforcement officials." First Am. Compl. ¶32. In Plaintiff's Answer to Defendants' First Amended Counterclaim, Plaintiff "admits that her counsel provided a reporter at the Washington Post with a copy of her Form I-914," ECF 98 at 4, which contains at least nine of Plaintiff's false and defamatory statements about Defendants.

Having established, through Plaintiff's admission, that Plaintiff's lawyers published Plaintiff's false and defamatory statements to a third party (the Washington Post), Defendants sought discovery on the issue of whether Plaintiff knew about, accepted, or directed her lawyers' publication. At Plaintiff's deposition, Defendants' counsel asked Plaintiff whether she "ha[d] discussions with [her] lawyers about what information [her] lawyers should share with the Washington Post about [her] employment situation." Dep. Tr. at 452:3-6. Plaintiff's counsel objected and instructed Plaintiff not to answer. *Id.* at 452:7-13 ("MS. FRYSZMAN: Objection to the extent it calls for information that she discussed with her lawyers, which is protected under the attorney-client privilege. MR. NASH: Are you instructing her not to answer? MS. FRYSZMAN: I am."). Plaintiff heeded Plaintiff's counsel's instruction and refused to answer Defendants' counsel's question.

---

the residence, she was prohibited from taking breaks, and she was not allowed to speak with anyone outside the residence. Tekle was also told by her employer that Americans would attack her if she went outside. Tekle said she was called a 'whore,' 'colored' and a 'donkey' by her employer. Tekle said she was constantly monitored by video surveillance and her passport was confiscated by her employer when she entered the US."

In their discovery requests, Defendants asked for, among other things, "[a]ll communications, including, but not limited to, emails, text messages, social media messages, and voice messages, between Plaintiff or her agents and any employees of The Washington Post related to the allegations contained in Plaintiff's Second Amended Complaint." Plaintiff objected that "this request calls for information protected by the attorney-client privilege, attorney work product doctrine, or other applicable privilege, and documents prepared in anticipation of litigation" and stated that she "will only search for communications to or from any employees of the Washington Post relating to Ms. Tekle and/or the Defendants."

Defendants have served deposition subpoenas on, and intend to take the depositions of, three members of Plaintiff's counsel—Agnieszka Fryszman, Le'ake Fesseha, and Martina Vandenberg—on the week of May 20. Defendants anticipate that Plaintiff's counsel will make the same objection during their depositions that they made during Plaintiff's deposition and thereby prevent Defendants from discovering information essential to establishing that Plaintiff is liable for her lawyers' subsequent publication of her false and defamatory statements about Defendants. Defendants file this motion to (1) compel Plaintiff to answer all of Defendants' counsel's questions about her public relations communications with Plaintiff's counsel and (2) compel Plaintiff's counsel to answer all of Defendants' counsel's questions about their public relations communications with Plaintiff.

**ARGUMENT**

In the Fourth Circuit, "[t]he attorney-client privilege applies only if: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney

3

was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either *(i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding*, and not (d) *for the purpose of committing a crime or tort;* and (4) the privilege has been (a) claimed and (b) not waived by the client." *Morrison v. Cty. of Fairfax, Virginia*, 2014 WL 12527237, at *1 (E.D. Va. June 19, 2014) (citing *Under Seal v. United States*, 415 F.3d 333, 338 (4th Cir. 2005) (emphasis added). Attorney-client communications "address[ing] the issue of media exposure and public relations, not law," are not protected by the attorney-client privilege. *See id.* at 3 (Anderson, J.) (explaining that "Local Union 2068 *appropriately* did not claim a privilege based on attorney work product or attorney-client communication" over a document that "addresses the issue of media exposure and public relations, not law") (emphasis added). Indeed, "a media campaign is not a litigation strategy." *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 2003 WL 21998674, at *3 (S.D.N.Y. Aug. 25, 2003). And although "[s]ome attorneys may feel it is desirable at times to conduct a media campaign, . . . that decision does not transform their coordination of a campaign into legal advice." *Id.* "[T]he work product doctrine [also] does not extend to public relations activities even if they bear on the litigation strategy because the purpose of the rule is to provide a zone of privacy for strategizing about the conduct of litigation itself, not for strategizing about the effects of the litigation on the client's customers, the media, or on the public generally." *Egiazaryan v. Zalmayev*, 290 F.R.D. 421, 435 (S.D.N.Y. 2013) (citation omitted).

> **A.** **Defendants' seek to discover Plaintiff's and Plaintiff's counsel's public relations communications, none of which are privileged.**

With their discovery requests and their deposition questions to Plaintiff, Defendants sought information about public relations communications that is clearly outside the ambit of the attorney-client privilege. Defendants simply do not seek any communications between Plaintiff and

Plaintiff's counsel concerning legal advice. Defendants are entitled to investigate whether Plaintiff knew about, accepted, or directed Plaintiff's counsel's publication of Plaintiff's false statements about Defendants. Defendants intend to seek information about public relations communications during the upcoming depositions of Plaintiff's counsel. Indeed, in order to prove that Plaintiff knew about, accepted, or directed Plaintiff's counsel's publication to the Washington Post of Plaintiff's false and defamatory statements about Defendants, Defendants will need to know what was said between Plaintiff and Plaintiff's counsel about Plaintiff's media campaign.

> **B. The communications Defendants' seek fall outside the protection of the attorney-client privilege not just because they are public relations communications, but because they were for the purpose of committing the tort of defamation.**

"The elements of defamation are (1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 285 Va. 476, 737 S.E.2d 890, 892 (2013) (internal quotation marks and citation omitted). "Furthermore, the author or originator of a defamation is liable for a republication or repetition thereof by third persons, provided it is the natural and probable consequence of his act, or he has presumptively or actually authorized or directed its republication." *Wuchenich v. Shenandoah Mem'l Hosp.*, 215 F.3d 1324, *14 (4th Cir. 2000) (unpublished). Plaintiff's Form I-914 contains nine of Plaintiff's false statements about Defendants. Plaintiff admits that she published those statements to federal law enforcement and Plaintiff's counsel admits that they published those statements to the Washington Post. If, after making her Form I-914 available to Plaintiff's counsel, Plaintiff exchanged communications making clear that (1) she "presumptively or actually authorized or directed its republication" by Plaintiff's counsel or (2) the republication by Plaintiff's counsel was the "natural and probable consequence of [her] act," Plaintiff's communications are part of her tortious conduct and, thus, not covered by the attorney-client privilege.

Moreover, at the time that Plaintiff's counsel republished this defamatory information to the Washington Post, Plaintiff's counsel had overwhelming reason to believe that the defamatory information was false. Plaintiff's counsel had been shown video and photographic evidence that demonstrated that Plaintiff was not prohibited from leaving the residence, prohibited from taking breaks, or prohibited from interacting with people outside the residence. Plaintiff's counsel had conducted no independent investigation of their client's allegations, as evidenced by the fact that, to this day, they have not identified a single eyewitness who can corroborate Plaintiff's allegations regarding her treatment in the home (in contrast to the 20+ witnesses who are prepared to refute those allegations). Indeed, when they communicated with the Washington Post, Plaintiff's counsel had already amended Plaintiff's original complaint, retracting many of the most incendiary allegations, in tacit acknowledgement that those allegations (which mirrored those in the Form I-914 shared with the Washington Post) were no longer tenable in light of the contemporaneous visual evidence. Because Plaintiff's counsel were aware of the untruthfulness of the information shared with the Washington Post, they were complicit in the defamation, and communications with their client about the public relations campaign are not subject to the privilege for the independent reason that they fall within the crime-tort exception.

### C. This Court should not allow Plaintiff to prevent Defendants from discovering information essential to establishing their right to relief on their defamation counterclaim by asserting the attorney-client privilege over communications to which it does not apply.

Thus far, Plaintiff's counsel have (1) instructed Plaintiff not to answer questions about what was said between Plaintiff and Plaintiff's counsel about Plaintiff's efforts to influence media coverage of this case, Dep. Tr. at 452:7-13, and (2) refused to fully respond to Defendants' discovery requests aimed at such communications. Because Plaintiff has twice asserted the attorney-client privilege over tortious public relations communications, which are not subject to

the privilege, Defendants anticipate that the same objections will surface in Plaintiff's counsel's depositions as well. If, at their depositions, Plaintiff's counsel assert Plaintiff's attorney-client privilege, Plaintiff will have trice thwarted Defendants' efforts to discover information essential to establishing that Plaintiff is liable for Plaintiff's counsel's admitted publication of false and defamatory statements to the Washington Post. This Court should not allow Plaintiff to prevent Defendants from proving their case by asserting the attorney-client privilege over communications to which it does not apply.

## CONCLUSION

Based on the foregoing and to ensure that Defendants have an opportunity to prove their defamation counterclaim, Defendants respectfully request (1) that Plaintiff's deposition be continued for 60 minutes so that she may answer questions about her public relations communications with Plaintiff's counsel, and (2) that Plaintiff's counsel—Agnieszka Fryszman, Le'ake Fesseha, and Martina Vandenberg—be compelled to answer questions about their public relations communications with Plaintiff during their upcoming depositions.

Dated: May 10, 2019

Respectfully submitted,

/s/ John L. Brownlee
John L. Brownlee (VSB# 37358)
Stuart G. Nash (*pro hac vice*)
David L. Haller (*pro hac vice*)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, VA 22102
Telephone: 703.720.8600
Facsimile: 703.720.8610
Email: John.Brownlee@hklaw.com
Email: Stuart.Nash@hklaw.com
Email: David.Haller@hklaw.com

*Counsel for Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud*

**CERTIFICATE OF SERVICE**

I certify that on this 10th day of May, 2019, a true copy of the foregoing was served via electronic case filing to:

Nicholas Cooper Marritz
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

Jonathan A. Langlinais
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
jalanglinais@jenner.com

Le'ake Fesseha
Le'ake Fesseha Law Office
901 S. Highland Street, Suite 312
Arlington, VA 22204
leakef@hotmail.com

Sarah Linnell Bessell
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
sbessell@htlegalcenter.org

Satenik Harutyunyan
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
sharutyunyan@jenner.com

Richard F. Levy
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
rlevy@jenner.com

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
afryszman@cohenmilstein.com

Martina Elizabeth Vandenberg
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
mvandenberg@htlegalcenter.org

Andrew B. Cherry
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
acherry@jenner.com

*Counsel for Plaintiff Simret Semere Tekle*

/s/ John L. Brownlee
John L. Brownlee