UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| **Simret Semere Tekle**, <br><br>    *Plaintiff*, <br>  v. <br><br>**Nouf bint Nayef Abdul-Aziz Al Saud** and **Mohammad bin Abdullah al Saud**, <br><br>    *Defendants*. | Case No.: 1:18-cv-211 <br><br> Hearing Date: May 17, 2019 |

### PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HER MOTION FOR A PROTECTIVE ORDER TO PREVENT HER COUNSEL FROM BEING DEPOSED IN THIS MATTER

Much of Defendants' opposition repeats the arguments Defendants made in their motion to compel the depositions of Plaintiff's attorneys. Thus, Plaintiff incorporates the arguments she made in her memorandum in opposition to Defendants' motion to compel the depositions of Plaintiff's counsel (Dkt. 153). As explained in that opposition, conversations between Plaintiff and her counsel about this matter and about the potentially devastating impact that a news article in the Washington Post would have on her legal rights, including her immigration status, are core communications protected by the attorney-client privilege. That opposition also explains that the crime-fraud exception to attorney-client privilege does not apply here, where Defendants have made no prima facie showing in support of their defamation claim—and indeed, cannot make such a showing.

## I. Defendants have not justified deposing Plaintiff's counsel.

The "drastic measure" of deposing Plaintiff's counsel is not appropriate here. *Hughes v. Sears, Roebuck & Co.*, No. 2:09-CV-93, 2011 WL 2671230, at *4 (N.D.W. Va. July 7, 2011). Defendants have not justified the major disruption that deposing three of Plaintiff's litigation counsel during the final week of discovery. This is the week when four other depositions and Plaintiff's Independent Medical Examination are scheduled, and when responses to Defendants 1,994 RFAs are also due. Defendants' aggressive stance on deposing Plaintiff's counsel is particularly unwarranted where Defendants have resisted sitting for their own depositions in this case. Defendants have met none of the factors detailed in *Shelton v. American Motors Co.*, 805 F.2d 1323, 1327 (8th Cir. 1987). Subjecting three members of Plaintiff's litigation counsel to depositions in this matter is not warranted.

### A. Other means exist for Defendants to obtain the information they seek.

Defendants cannot show that "no other means exist to obtain the information than to depose opposing counsel," because Plaintiff has already provided Defendants with the requested information. *Shelton*, 805 F.2d at 1327. As detailed in her motion for a protective order, Plaintiff has already answered Defendants' interrogatories about her and her counsel's communications with the Washington Post. Dkt. 142. The only information not contained in these discovery responses are privileged communications between Plaintiff and her counsel. Defendants argue that they need to oppose Plaintiff's counsel to determine "what false statements about Defendants, *in addition to those included in Plaintiff's Form I-914*, Plaintiff's counsel made to the Washington Post." Dkt. 155, Opp. Br. at 5 (emphasis added). But the Amended Counterclaim is based solely upon the Form I-914, not on other statements made by Plaintiff's counsel. It would be a blatant abuse of the discovery process to permit Defendants to

depose three members of Plaintiff's litigation counsel team in attempt to search for new, speculative bases for defamation claims.

Moreover, it would be a waste of time. Plaintiff has already produced all emails between her counsel and the Washington Post reporter that relate to the parties in this matter. She has also answered Defendants' interrogatories, describing all oral interactions between her counsel and the Washington Post reporter that relate to the parties in this matter. And she sat for a fourteen hour deposition over two days, during which she was questioned extensively about the communications with the Washington Post.[1]

Defendants' claim that "[i]t is hard for Defendants to imagine information more relevant to their defamation claim than (1) the nature of the false statements about Defendants that Plaintiff's counsel communicated to the Washington Post (including on the many phone calls Plaintiff's counsel had with the Washington Post) and (2) whether Plaintiff authorized Plaintiff's counsel to make those false statements." *Id.* As Plaintiff has already explained, *see* Dkt. 142,

---

[1] Moreover, in addition to their ability to obtain this information from Plaintiff during her deposition, Defendants have made no showing that they attempted to obtain this evidence by other less intrusive means than deposing Plaintiff's counsel. Defendants had many other avenues open to them to find this information during the discovery period. They did not do so. They failed to depose any other parties who might have had relevant information. They have now missed their window to do so and instead seek to harass Plaintiff's counsel. Defendants' lack of diligence in pursuing other sources of information should not be countenanced. *See Moody v. City of Newport New*, No. 4:14-CV-99, 2016 WL 9000275, at *2 (E.D. Va. Jan. 20, 2016) ("The Defendant does not need to depose Mr. Clancy to determine what state or federal prosecutors told Mr. Clancy, when the Defendant can ask the state or federal prosecutors themselves and not intrude into the unfavored realm of deposing opposing counsel."); *id.* ("Defendant provided no facts or statements indicating she attempted to obtain the information from other sources and was unsuccessful in doing so, and thus did not meet the exhaustion requirement with respect to any non-privileged communications of opposing counsel."); *Buyer's Direct Inc. v. Belk, Inc.*, No. 5:10–CV–65–H, 2012 WL 3278928, at *3 (E.D.N.C. Aug. 10, 2012) (indicating that if there are other persons with knowledge of the information sought, counsel should first seek the information through that path); *see also Asbury*, 2009 WL 973095, at *2 ("Defendant has not asserted that it tried and failed to obtain the information it now seeks from counsel, and, as a consequence, defendant fails to establish a basis for deposing plaintiffs' counsel.").

3

Dkt. 153, *supra*, she has already identified and described the nature of the alleged false statements her counsel made to the Washington Post through written discovery. Depositions would thus be unnecessary to obtain this information. And Defendants already expressly asked Plaintiff whether she authorized her counsel to provide this information to the Washington Post at Plaintiff's deposition.[2] See Dkt. 153 (citing Tr. 454:11-12, 451:19 – 452:2, 458:1 – 22, 467:1 – 4). Thus, not only do other means exist for Defendants to gain the information they seek through these depositions, they have in fact already pursued these means. Defendants' efforts to depose Plaintiff's counsel seem designed more to harass and intimidate than to seek discoverable information.

### B. The information Defendants seek is not "crucial" to their case.

Further, this information is not "crucial" to establish Defendants' defamation counterclaim. *Shelton*, 805 F.2d at 1327. The question posed by the defamation counterclaim is whether providing the Form I-914, Supplement B to the Washington Post reporter, which Plaintiff admits her counsel did—indeed she even produced the email transmitting this document to the Washington Post reporter—constitutes defamation. This claim turns on the content of the Supplement B form and the statements accompanying that form, all of which Defendants now possess. The question is whether the statements within that form are false, whether they are defamatory, and whether Defendants have been harmed by those statements. Those are factual issues, given that 1) (at Plaintiff's request) the reporter did not publish the form or the allegedly defamatory statements from therein in his article, and 2) the reporter had already been familiar

---

[2] Defendants need do nothing more than read the Washington Post article in question to dispel any "doubts" they may have "about Plaintiff's contention that she did not communicate any false or defamatory statements to the Washington Post," as the article states that Plaintiff herself declined multiple interview requests. Terrence McCoy, *Saudi royals, a mansion in a quiet D.C. suburb — and allegations of mistreating a servant*, Wash. Post (Sept. 7, 2018).

4

with every one of these statements because he had already read Plaintiff's Complaint. Indeed, the article quotes none of the purportedly defamatory statements that Defendants protest, but cites hearing testimony and the Complaint itself for the allegations in this case.

Indeed, in their opposition Defendants reveal the real reason they noticed these attorney depositions: to go on a fishing expedition to explore all of Plaintiff's communications with her counsel, presumably to gain insight into Plaintiff's litigation strategy. In attempting to justify these depositions, Defendants argue that they "must understand not just what was said between Plaintiff and Plaintiff's counsel but all of the circumstances surrounding Plaintiff's publication of her false and defamatory statements to Plaintiff's counsel." Dkt. 155 at 8. To do this, they claim they "will need to know from Plaintiff's counsel, not just Plaintiff, all of the circumstances surrounding Plaintiff's publication to Plaintiff's counsel as well as *all instances in which Plaintiff provided a statement or document to Plaintiff's counsel and that statement or document was ultimately published in the process of advocating on Plaintiff's behalf, either in the courts* or in the media." Dkt. 155 at 10 (emphasis added).

Plaintiff's communications to her counsel that were used and published in court for counsel's courtroom advocacy on Plaintiff's behalf goes to the very heart of the justification for the attorney-client privilege. *See Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128, 141 (1992) ("Confidential communications between attorney and client made during the course of the relationship and that relate to the subject matter of the attorney's employment are privileged from disclosure."). This broad scope means Defendants seek all statements and documents that Plaintiff's counsel relied on in making filings in court. That would cover nearly every aspect of counsel's litigation strategy.

5

### C. Permitting Defendants to depose *three* members of Plaintiff's litigation counsel would unnecessarily burden and prejudice Plaintiff.

Finally, Defendants have no explanation for how, even if they are entitled to take the deposition of one of Plaintiff's attorneys—which they are not—they have made the necessary showing to depose *three* members of Plaintiff's litigation counsel. Defendants can and have obtained written discovery detailing all communications Plaintiff's counsel had with the Washington Post. And the privileged information Defendants seek is not crucial to their case, which turns on the alleged falsity of the statements that Plaintiff admits her counsel made to the Washington Post reporter. Thus, Defendants unnecessary request to depose three members of Plaintiff's counsel is improper, harassing, and burdens her counsel.

Defendants claim that the depositions of Plaintiff's counsel are necessary "to supplement" Plaintiff's testimony "so that Defendants have a clear picture of Plaintiff's interactions with Plaintiff's counsel and whether those interactions are actionable as defamation under Virginia law" because there were many instances in Plaintiff's deposition in which Plaintiff answered with some variation of "I don't remember." Dkt. 155 at 9. But, the vast majority of these 90 instances were as to other topics in the deposition. As Defense counsel conceded during the deposition, when it came to the questions about the counterclaim, Plaintiff Tekle's answers were responsive. *See* Tr. 466:20-22 ("MR. NASH: Unlike some issues, I don't believe the witness is being purposely obstructive today at this juncture."). Deposing Plaintiff's counsel on the same topics that Plaintiff testified to, to get counsel's "version of events" is improper. *See Cooper v. Omni Ins. Co.*, No. 4:14-CV-706-RBH, 2015 WL 1943802, at *7 (D.S.C. Apr. 29, 2015) ("Defendant then argues that if it were to depose these other individuals, it would only get 'their version of events,' and the only way to get Attorney Mullis's 'version' is to depose her. The Court reiterates, however, that this is not the applicable analysis.

The Court's task is to determine whether the facts and circumstances surrounding the negotiations were peculiarly within Attorney Mullis's knowledge. As the communications involved multiple parties, the Court finds that none of the information sought falls into that category. The mere fact that Defendant desires to get Attorney Mullis's 'version of events' is not enough to meet Defendant's burden.").

It is no surprise that Defendants seek to bolster their weak defamation claim, which is completely unsupported by evidence. But the weakness of Defendants' claim has nothing to do with their (in)ability to tie to Plaintiff an email sent by Plaintiff's counsel. Instead, as Plaintiff explained in her opposition to Defendants' motion to compel on this issue (Dkt. 153), the evidence supports Plaintiff's claims, and is rebutted by nothing but defense counsel's promises that there are many witnesses prepared to testify against Plaintiff—none of whom have submitted a single declaration or document in this case.

Moreover, Defendants have failed to demonstrate that "the necessity for such discovery in the circumstances of the case [balances] against its potential to oppress the adverse party and to burden the adversary process itself." *Asbury v. Litton Loan Servicing, LP*, No. CIV.A. 3:07-0500, 2009 WL 973095, at *3 (S.D.W. Va. Apr. 9, 2009) (citing *Johnston Dev. Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990)). In this area, Defendants clearly seek these depositions to harass Plaintiff's counsel and take up immense amounts of their time during the final week of discovery. Here, the Court should find that "the balance weighs against allowing the depositions given the availability of the most of the information from other sources, the lack of necessity of the depositions, and the undue burden it will place upon Plaintiff[]…." *Id.*

7

### II. Alternatively, there are less intrusive ways for Defendants to obtain this information.

In the alternative, if the Court decides that the information Defendants seek does not violate the attorney-client privilege and are entitled to obtain it, it should not order the depositions of three of Plaintiff's litigation counsel. Defendants fail to explain how even if this Court determines additional discovery is necessary, they need to depose three separate counsel to obtain that information. If all Defendants truly want to know whether or not counsel was acting pursuant to Plaintiff's authorization when the Form I-914 was sent to the Washington Post reporter, there is no need for any depositions. This information could be answered by an interrogatory, a much less intrusive option. If the Court were to determine that this information was not privileged, it should order that, instead of having three of her counsel sit for depositions, Plaintiff could respond to an interrogatory on this question.

### Conclusion

For the foregoing reasons, the Court should grant Plaintiff's motion for a protective order to prevent her counsel from being deposed.

Dated: May 16, 2019

Richard F. Levy (*pro hac vice*)
Jonathan A. Langlinais (*pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654
(312) 923-2648
rlevy@jenner.com

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600

Respectfully submitted,

/s/ Simon Sandoval-Moshenberg
Simon Sandoval-Moshenberg, VSB #77110
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5605
simon@justice4all.org

afryszman@cohenmilstein.com

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street, NW #104B
Washington, DC 20005
(202) 716-8485
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SIMRET SEMERE TEKLE,<br><br>*Plaintiff*,<br><br>v.<br><br>NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, MOHAMMAD BIN ABDULLAH AL SAUD<br><br>*Defendants*. | Case No.: 1:18-cv-211 |

# **CERTIFICATE OF SERVICE**

I certify that I uploaded Plaintiff's Reply Memorandum in Support of Her Motion for a Protective Order to Prevent Her Counsel from Being Deposed in this Matter to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.

May 16, 2019

/s/ Simon Sandoval-Moshenberg
Simon Sandoval-Moshenberg, VSB #77110
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5605
simon@justice4all.org