# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

SIMRET SEMERE TEKLE,

          Plaintiff,

    v.

NOUF BINT NAYEF ABDUL-AZIZ AL
SAUD, et al.,

          Defendants.

Case No. 1:18-cv-0211 (TSE/JFA)

## PLAINTIFF'S MOTION TO COMPEL
## PRODUCTION OF DOCUMENTS

### Introduction

A party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P 26(b).  Relevant considerations include the parties' relative access to the information.  *Id*. Yet even now, a week before the close of discovery, Defendants' document production remains incomplete.

The Defendants in this case have not produced a single e-mail, text, message or written post from any of the Defendants or their household staff. Defendants have not produced any correspondence to or from any Embassy regarding the visa application they filed for Plaintiff or any other correspondence related to the claims or defenses in this case.  Defendants' production has largely been limited to a carefully curated set of photographs and video snippets.  Defendants have also produced an incomplete set of security camera footage, with some camera views plainly blacked out and documents from some family trips, which include each room service

receipt for Plaintiff but – strangely – no receipts or records that include the names of the missing witnesses, household staff pictured in photographs holding Defendants' children but whose names and contact information Defendants have conveniently forgotten.

Specifically, Plaintiffs move to compel production on the document requests described below.

## BACKGROUND

Plaintiff received Defendants' Objections to Plaintiff's Second Requests for Production of Documents on Thursday, May 9, 2019. Ex. A, Pl.'s Second Req. for Produc. of Doc.; Ex. B, Ds.' Obj. to Pl.'s Second Req. for Produc. of Doc. On Monday, May 13, 2019, the parties met and conferred regarding Defendants' objections. Plaintiff suggested several areas for compromise and clarified several definitions to which Defendants had objected. Defendants said that they would get back to us on these proposed compromises, but did not do so.

On May 15, 2019, Plaintiff sent Defendants a summary of the meet and confer, along with a reminder of their promise to respond to Plaintiff's proposed solutions to respond to Defendants' objections to our discovery. Ex. C, Email from M. Vandenberg to S. Nash, "Meet & Confer Summary and Req. for Responses," May 15, 2019. Specifically, the message requested that Defendants respond no later than May 16, 2019 at 3pm. *Id.* Defendants did not respond. Plaintiff asked Defendants for a response on Friday, May 17, while at the courthouse. Defendants were unable to provide a response.

This motion follows.

## **ARGUMENT**

**Defendants' Discovery Objections are Inadequate**

As an initial matter, Defendants' Objections to do not comply with the Federal Rules, because they do not indicate whether documents are being withheld pursuant to their objections. *See* Fed .R. Civ. P. 34(b)(2)(C).

**Documents Relevant to Defendants' Statute-of-Limitations Defense**

**RFP 1(c) and RFP 5**

Plaintiff requested "all documents related to any travel to Eritrea by any Agent" (RFP 5) and "all documents reflecting any travel to Eritrea by any Potential Witness" (RFP 1(e)). Defendants objected to RFP 5 on relevance grounds because as originally drafted, it could encompass an employee's vacation travel (which was not intended). In response to Defendants' concerns, Plaintiff amended the request at their meet and confer to "All documents related to any travel to Eritrea by any Agent in which the Agent met any member of Plaintiff's family." Ex. C. Defendants did not object to Request 1(c), which requests travel by Potential Witnesses, on relevance grounds, but objected to that request on the grounds that the information is in the possession, custody, or control of third parties or work product.

As amended, this request is plainly relevant to Plaintiff's claims and Defendants' statute of limitations defense. As part of their argument for tolling, Plaintiff alleged that Defendants threatened and intimidated Plaintiff's family. *E.g.* Second Amended Complaint ¶¶ 68 – 87. Plaintiff specifically alleged that "In addition to the calls from Saudi Arabia, two Eritrean women who lived in Saudi Arabia came to the Tekle family's home four times. On each visit, they demanded to know Ms. Tekle's address, her whereabouts, and her phone number. Ms. Tekle's mother did not provide them with this information. Ms. Tekle's mother had never met these Eritrean women before;

they were strangers to the Tekle family." *Id.* ¶ 87.  Thus, travel by Defendants' agents to Eritrea, where the agent met any member of Plaintiff's family is well within the scope of discovery and supports Plaintiff's' claim to tolling.   In addition, two Eritrean women recently traveled to Eritrea and, with a hidden camera, video-taped a conversation with Ms. Tekle's brother on behalf of Defendants.  That hidden camera video has been produced in discovery.  Documents related to that travel are also relevant to Plaintiff's claims as the second visit tends to support Plaintiff's claims on tolling.

To the extent these documents are in the hands of third parties, Defendants must request them, as described in more detail below.

**Documents related to Defendants' counterclaim damages**

**RFP 22 (a) & (b)**:

Plaintiff requested all documents relating to Defendants counterclaim including, specifically: documents that support Defendants' request for reputational damages and punitive damages.  RFP 22(a) & (b).  Defendants have refused to provide these documents on the grounds they "do not have all or know which of the documents" support their requests for damages. Defendants cannot maintain a claim for damages for defamation without producing evidence of damages. Plaintiff should not be sandbagged with additional documents that should have been produced as part of Defendants' Rule 26 production, if there are documents upon which Defendants intend to rely to prove their damages.  *E.g. Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.p.A.*, No. CV09-601 ADS AKT, 2009 WL 3757054, at *5 (E.D.N.Y. Nov. 9, 2009) ("the issue of damages, including the method by which they were computed, is fully discoverable"); *McLelland v. City of N. Myrtle Beach*, No. 4:08-CV-3430-TLW-TER, 2009 WL 10678153, at *3 (D.S.C. Sept. 4, 2009) (granting motion to compel on information relevant to

claimed damages).  Late disclosure of damages information is not harmless.  *AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 79 (D. Mass. 2008) (late disclosure "leaves Cabot without the means to explore and challenge the basis of the recent calculations").


**Defendants or their counsel's public statements relevant to claims and counterclaim**

<u>**RFPs 16 - 20**</u>

Plaintiff served a number of Requests related to Defendants' communications with the Washington Post.

Material provided to the Washington Post that contains any statement on the claims or defenses at issue, Defendants' opinion on the merits of this litigation, or about Plaintiff is plainly relevant (apart from its relevance to the counterclaim).  That material is not protected by any privilege and may reveal Defendants' own statements about the facts in dispute as they relate to the trafficking and forced labor claim. Those documents must be produced.

In addition, as to the Counterclaim, Defendants have alleged that Plaintiff/Counter-Defendant acted with malice.  First Amended Counterclaim, Dkt. 75, ¶ 46.  These requests are directly relevant to Plaintiff's defense, that Plaintiff did not act with malice but was responding to an insidious campaign to generate negative press coverage and unwarranted immigration consequences.  *E.g. Williams v. Am. Int'l Grp., Inc*., No. 2:15-CV-554-JDW-GMB, 2016 WL 2759306, at *1 (M.D. Ala. May 12, 2016) (granting motion to compel because notes "have at least some relevance to Defendants' intent and to the propriety and amount of punitive damages"); *Parsons v. Jefferson-Pilot Corp*., 141 F.R.D. 408, 416 (M.D.N.C. 1992) (finding plaintiffs conduct relevant and permitting discovery "based upon assertions that plaintiff has acted in a manipulative manner to further her own interests").

**Documents related to witnesses**

<u>**RFP 1**</u>

Plaintiff requested a number of documents regarding "Potential Witnesses," a term defined in and not objected to in their requests.  "Potential Witness" includes, for example, persons identified in the interrogatories and disclosures served by the parties. Ex. A, ¶ 5.

Plaintiff moves to compel on a subset of RFP 1 requests: RFP 1(a), (b), (c), (d) and (f). Because the requests were inadvertently mis-lettered, they are set out below to avoid confusion:

> For all Potential Witnesses,
> (a)     All statements by any Potential Witness concerning the claims, defenses, or subject matter of this litigation, regardless of date;
> (b)     All statements by any Potential Witness concerning the Plaintiff, regardless of date;
> (c)     All communications or correspondence between You and any Potential Witness concerning the Plaintiff and/or the claims, defenses, or subject matter of this litigation, regardless of date;
> (d)     All communications or correspondence between any Potential Witness and Plaintiffs' family members, regardless of date;
> (f)     All communications or correspondence between any Potential Witness and any government (including any agency, branch, commission, department, investigative body, legislature, legislative body or committee, court or administrative body, foreign or domestic), government official, non-governmental organization, international organization, the news media, or any third party related to the Plaintiffs and/or the claims, defenses, or subject matter of this litigation, regardless of date;

Defendants objected to these requests only on the ground that the information sought is in the possession, custody or control of third parties and on work product grounds.[1]

---

[1] Plaintiff is not moving on the subparts of the request to which Defendants other objection applies. The subparts subject to this motion are plainly relevant: Communications, for example, between Defendants and Ms. Gebreysus, the person who allegedly prevented Plaintiff from bringing suit are plainly relevant, as are statements by Potential Witnesses about the allegations in this case.

As to documents held by third parties, if Defendants have ability to request the documents, they must do so.  The Federal Rules of Civil Procedure require production of documents "under the possession, custody or control" of a party. Fed. R. Civ. P. 34.  Courts universally hold that documents are within the possession, custody or control of a party if the party has a right, authority or practical ability to obtain the documents from a non-party upon request.  *Goodman v. Praxair Servs., Inc*., 632 F. Supp. 2d 494, 515 (D. Md. 2009) (documents are considered to be under a party's control when the party has the right, authority, or practical ability to obtain the documents from a non-party); *Terry v. Modern Inv. Co*., No. 3:04-CV-00085, 2006 WL 2434264, at *6 (W.D. Va. Aug. 21, 2006) (noting "Defendants have not shown that they made any attempt to obtain documents related to the HandelsFinanz account, or even intimated that these documents are beyond their control"); *Bank of New York v. Meridien BIAO Bank Tanzania Ltd*., 171 F.R.D. 135, 146 (S.D.N.Y. 1997). Put another way, "Rule 34 performs the salutary function of creating access to documentation in an economical and expeditious fashion by requiring a party to produce relevant records not in its physical possession when the records can be obtained easily from a third-party source." *Ice Corp. v. Hamilton Sundstrand Corp*., 245 F.R.D. 513, 517 (D. Kan. 2007).

Generally, documents held by employees and even former employees are discoverable. *See, e.g*, *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 430 (M.D. Fla. 2018) (relationships that evidence a legal right to obtain a document from nonparty include an employer from current employees); *In re Folding Carton Antitrust Litig*., 76 F.R.D. 420, 423 (N.D. Ill. 1977) ("At the very least, defendants should make inquiry of such former employees. This is especially true where, as here, defendants do not assert that the former employees are unwilling or unable to cooperate … In the meantime, we assume that, if defendants contact their

former employees who still receive compensation from them, they will secure the requested documents and can produce them for plaintiffs."); *Herbst v. Able*, 63 F.R.D. 135, 138 (S.D.N.Y. 1972) ("Plaintiffs, consequently, may request Douglas to have its non-defendant employees procure copies of their private testimony before the SEC so that Douglas may give same to plaintiffs. Plainly Douglas' employees are persons within its control.").

At the very least, Defendants must ask their current and former employees for responsive documents, since there is no indication that these employees are unwilling to cooperate with Defendants.  Indeed, Defendants have produced other documents from their staff and former staff, including photographs belonging to, for example, Necitas Dmailig, one of the nannies.  If Defendants' "third party" is the office or "apparatus" of the Al Saud family, those documents must be produced.  In addition, to the extent any documents are housed on a computer or server belonging to a third party, Defendants must take steps to obtain those materials, a step they previously required of Plaintiff.

**RFP 2 & 3**:

Plaintiff has asked for documents related to any benefits provided to Potential Witnesses, including the payment of attorneys fees, bonuses or travel costs.   This information is discoverable.  *E.g. Giraldo v. Drummond Co*., No.: 2:09-CV-1041, 2012 WL 12892789, at *3 (N.D. Ala. March 8, 2012) ("To be sure, Defendants are entitled to know whether Plaintiffs or their representatives offered anything of value to those individuals listed on Plaintiffs' Rule 26 disclosures, and they presumably have been given that information.")

For Request No. 2, which seeks documents related to legal representation, Defendants objected on relevance grounds.  Almost all of the potential witnesses in this case are represented

by the same counsel.  Plaintiff is entitled to explore whether Defendants have obtained and are paying for that counsel, as that is relevant to bias.

For Request No. 3 (which seeks documents related to any benefit, including the payment of attorneys' fees), Defendants did not object on relevance grounds.  Defendants objected that the information was in the possession of third parties – but as shown above, documents in the possession of employees and former employees is considered within a party's control.  Defendants must ask their employees for these documents.  Defendants also objected on overbreadth grounds, so Plaintiff agreed to limit both requests to the time after this lawsuit was filed.  Plaintiff has also agreed to limit these requests to payments beyond the potential witnesses' regular salaries, provided the witness was paid on time – Plaintiffs excluding any offer to pay back wages owed.


**Photographs, video evidence and social media**

**RFPS 12 – 15, 22[2]**

**Video: RFPs 12 - 14**

Defendants produced to Plaintiff in discovery (1) an edited video compilation featuring Plaintiff and (2) a hidden camera video of Plaintiff's brother, apparently taken in Eritrea.  The edited video compilation of Plaintiff was made up of short snippets of video interspersed with photographs and set to music.  Defendants also produced security camera footage, but two of the screens in the footage are blocked out.

Courts routinely hold that parties must provide the full raw video footage, not just edited portions.  *E.g. Felio v. Hyatt*, No. 1:12-CV-4186, 2014 WL 12634467, at *4 (N.D. Ga. Aug.7,

---

[2] There are two requests numbered 22.

2014) (the raw video footage is relevant because it could aid Defendants in ascertaining the context of the televised portions"); *Herbert v. Baker*, No. 09–CV–12314, 2010 WL 5330050, at *2 (E.D. Mich. Dec. 21, 2010) (finding omitted footage from other security cameras to be relevant and granting motion to compel (video was ultimately found not to have been preserved); *see also Iijima v. City of New York*, No. 13 CV 2688 ARR, 2015 WL 1402819, at *2 (E.D.N.Y. Mar. 25, 2015) (plaintiff moved to compel after "only tiny snippets" of video recording produced, court ordered Defendants to confirm that "the copies that have been provided are complete and the only copies available").

Plaintiff requested "all photographs, audio or video recordings" reviewed by Defendants in order to compile the video production produced as DFDS 000181 and 000182. RFP 12.

Defendants did not object to this request on work product or privilege grounds. Defendants objected on burden grounds, but did not substantiate their claimed burden in anyway. Materials already on the cutting room floor are plainly available, and producing them is very little burden. This material is plainly relevant to ascertain the context of the excerpts produced to Plaintiff. *Felio*, 2014 WL 12634467, at *4.

When Plaintiffs first raised this issue, Defendants objected, saying Plaintiff had not requested video that did not specifically include Plaintiff Tekle in the frame. So Plaintiff served additional requests, RFPs 13 -14, to address Defendants' objection. Defendants have argued that Ms. Tekle was included in all family events and activities. Plaintiffs are entitled to rebut this assertion. Defendants also dispute that they never called Plaintiffs certain derogatory words. To the extent, the security camera footage or video captures defendants using these phrases, whether or not Ms.Tekle is in the frame, it would be relevant.

**Photographs : RFP 15**

Plaintiffs requested photograph of Ms. Tekle's bedroom; the children's rooms, bathrooms and play areas; the children's closets; and any laundry room utilized by Ms. Tekle.  Defendants, who kept no time records, dispute the time it took Ms. Tekle to complete her duties. Photographs will plainly assist a trier of fact in assessing the space, the size of the closets,  the amount of furniture and clutter, and to thereby estimate cleaning time.  Photographs will also assist the trier of fact in evaluating Defendants' claims about the amenities provided to Ms. Tekle.

**Social media: RFP 22**

Defendants have objected that their own email accounts, social media accounts, messaging accounts, and email accounts used by their staff or "apparatus" are not in the "possession, custody, or control" of the Defendants.  This objection, which is nothing short of remarkable, perhaps explains why Defendants have not produced a single email or written document from the Defendants to any third party about this case.

It is unfathomable that Defendants, who are clearly sophisticated and educated, have never used email to communicate with anyone about this case.  Defendants have not disclosed what accounts they searched, if any.  Similarly, it is not possible to believe that the Defendants have had no communications whatsoever with their family office or "apparatus" instructing them on the logistics of paying employees in the United States.  Discovery has revealed that a member of Prince Mohammad Al Saud's staff arrived with a suitcase of money to pay Defendants' employees in cash each month.  The idea that no communications exist whatsoever instructing Defendants' staff members on staffing changes, pay rates, and logistics is simply absurd.

Moreover, the Defendants' own discovery responses indicate that all arrangements for Ms. Tekle's travel to the United States were made by the Saudi Arabian Office of Royal Private Affairs.  Yet, Defendants have produced absolutely no correspondence with this office. Defendants' failure to produce any correspondence whatsoever is indicative of an inadequate search, particularly in light of Defendants' own admissions in this Court that members of the royal family, including Princess Maha have an extensive "apparatus" to handle tasks such as paying domestic workers.  Indeed, at the hearing on April 5, 2019, Defendants' counsel stated:

> THE COURT: That's what you said, Mr. Nash.
> MR. NASH: No, it's not what I said, Your Honor. Our client's mother is a member of the Saudi royal family. She does not write checks to her domestic help the way you or I would. She has a support apparatus in place, and that support apparatus was appropriately paying Ms. Tekle consistent with the -- with the agreement that she had to work for my client's mother.
> Tr. 19:3-10

**Additional Requests**

**RFP 4:**

Plaintiff requested all documents related to Plaintiff, her family and/or the claims, defenses or subject matter of this litigation that Defendants provided to any government or news organization.  Defendants objected that the request seeks documents not relevant to any party's claim or defense, which is peculiar as the request itself asks for documents related to any party's claim or defense.  If the Defendants possess documents about Plaintiff or her family, those documents are relevant.  For example, Defendants apparently were in possession of inaccurate information about the visa status of Plaintiff's brother and deposed him on that topic, conceding its relevance.  Indeed, Defendants issued Plaintiffs' brother a subpoena requesting "Yes and the subpoena stated that he must bring "Any and all records related to your application to immigrate

to the United States and your immigration status in the United States" – again, conceding this

Request is relevant.  Defendants objected on work product grounds, but documents provided to a

government or news organization are generally not work product.


**RFP 24:**

Defendants refused to produce communications between themselves and the Embassy of

Saudi Arabia in Washington, DC related to employment of domestic workers, A-3 visas, and

demand letters received by the Embassy. The Defendants object that these documents are not

relevant to any claim or defense.  Defendants are mistaken.  Over the last decade, in response to

severe abuse of domestic workers with A-3 visas, the Department of State has issued multiple

letters and circulars to embassies in Washington, DC, including to the Embassy of Saudi Arabia.

These circulars have included:  1) instructions on employers' responsibilities under the A-3

domestic worker visa system;  2) instructions on minimum wage payments required for A-3 visa

holders; 3) a prohibition on holding passports of A-3 visa domestic workers; 4) requirements for

contracts of A-3 domestic workers; 5) requirements for retaining proof of wage payments; and 6)

requirements for payment of taxes of A-3 domestic workers.  It is difficult to fathom how

documents on domestic workers provided to the Defendants by the Saudi Embassy are not

relevant to the issues in this case.  Some of the documents provided to Defendants may have

included the State Department circulars – all highly relevant to the Defendants' knowledge of

legal requirements to employ an A-3 domestic worker.  In addition, Plaintiff is aware that the

Saudi Embassy received a demand letter from attorneys acting on her behalf in 2016.

Defendants have not produced this letter, nor any communications about the letter.  In addition, it

is surprising that Defendants would object on grounds of relevance to producing documents from

the Saudi Embassy relating to Operation Palm Tree, a federal investigation of multiple Saudi citizens alleged to have abused A-3 domestic workers in the same time frame as the allegations in the Second Amended Complaint.  Indeed, the Defendants were among those under investigation during the entire Operation Palm Tree operation, which began in January 2013.  It strains credulity that these documents are not "relevant" to the case at hand.  Defendants should be compelled to conduct a robust search and to produce any documents received from the Saudi Embassy relating to treatment of domestic workers under U.S. law, including requirements for A-3 domestic workers.

Dated: May 17, 2019

Richard F. Levy (*pro hac vice*)
Andrew B. Cherry (*pro hac vice*)
Sati Harutyunyan (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
(202) 639-6000
rlevy@jenner.com

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER

Respectfully submitted,

/s/ Nicholas Cooper Marritz_____
Nicholas Marritz, VSB #89795
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

14

1030 15th Street, NW #104B
Washington, DC 20005
(202)-716-8485
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| SIMRET SEMERE TEKLE, | |
| *Plaintiff*, | |
| v. | Case No.: 1:18-cv-211 |
| NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, MOHAMMAD BIN ABDULLAH AL SAUD | |
| *Defendants*. | |

**CERTIFICATE OF SERVICE**

I certify that I uploaded Plaintiff's Motion to Compel to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.


May 17, 2019

//s// Nicholas Cooper Marritz
Nicholas Cooper Marritz
VSB #89795
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

16