IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| SIMRET SEMERE TEKLE,<br><br>Plaintiff,<br><br>v.<br><br>NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, et al.,<br><br>Defendants. | Case No. 1:18-cv-0211 (TSE/JFA) |

**PLAINTIFF'S REPLY IN SUPPORT OF HER
MOTION TO COMPEL DOCUMENTS**

Defendants do not explain why they have produced almost no documents in this case, although it is clear that relevant documents exist. For example, at the deposition conducted on Tuesday, Plaintiff learned that an Al Saud employee named Alaa Hamid paid the foreign nationals employed by the Al Saud family in cash once a month kept a record of the payments in a notebook. That notebook as not been produced. Plaintiff knows that two employees of the Al Saud family traveled to visit Plaintiff's brother. Plaintiff knows this because Defendants produced hidden camera video footage of the meeting. Defendants have admitted that their "defense team" – their agents – traveled to Eritrea. But Defendants have not produced any travel documents or paper records of that trip. Other than one email regarding hotel rooms, Defendants in this case have not produced any e-mails to or from the Defendants or their household staff.

In all, Defendants have produced 21 pieces of paper, including random hotel bills, bank records of unknown origin (produced twice), a roster for a private jet flight, and an email reflecting hotel room assignments.[1]

Defendants' brief ignores the compromises proposed by Plaintiff during the meet-and-confer session and largely responds to arguments not made. Defendants also state that they have complied with the Federal Rules because they object to all of the requests in full, but in their brief they say they will be producing documents. *Compare, e.g.*, Dkt. 179 at 22 (stating Defendants object to requests in full), *with* Dkt. 179 at 9 (acknowledging that documents related to Defendants' request for damages are discoverable and noting the deadline for production is Friday). Plaintiffs cannot distinguish what is being produced, if anything, and whether documents are being withheld pursuant to objections. This is precisely the situation the Federal Rules were amended to prevent.

## BACKGROUND

It is undisputed that Plaintiff offered to compromise, including by memorializing the proposals in writing, but that Defendants never bothered to respond. Pltfs' Mem., Dkt. 176 at 2. Defendants now claim that they requested a meet-and-confer "to discuss in part Plaintiffs' summary of its interpretation of the meet and confer." Defs' Resp., Dkt. 179 at 2. The correspondence sent by Defendants, which was not attached to their Response, reads as follows: "We would like to have a meet & confer today on your objections to defendants' third set of interrogatories." Email of John Brownlee, counsel for Defendants, to Nicholas Marritz, counsel for Plaintiff, of 5/17/2019 at 12:47pm, Dkt. 180-3. The email does not mention wishing to

---

[1] The page total excludes the photographs and videos produced. Oddly, not a single document produced by Defendants – with the exception of the bank records – is in Arabic. Presumably, Mr. and Mrs. Al Saud communicated with staff in Saudi Arabia in Arabic.

confer on Plaintiff's Request for Production. The message does not even mention Plaintiff's detailed summary of the May 13 meet-and-confer. The fact is, the parties met and conferred on Monday, May 13, 2019, on Plaintiff's Requests. Plaintiff proposed several compromises. Plaintiff followed up in writing and in person. Defendants declined to respond.

**REQUESTS AND ARGUMENT IN SUPPORT OF PRODUCTION**

I. **Documents Relevant to Defendants' Statute-of-Limitations Defense**

**RFP 1(c) and RFP 5**

Plaintiff proposed limiting this request to "All documents related to any travel to Eritrea by any Agent (or potential witness) in which the Agent (or potential witness) met any member of Plaintiff's family." Dkt 176 at 3. Defendants argue that Plaintiff's request is overbroad and unreasonable, but they fail to respond – or even acknowledge – the compromise proposal. Moreover, Defendants did not object to Request 1(c), which requests travel by Potential Witnesses, on relevance or overbreadth grounds.

As part of their argument on tolling, Plaintiff alleged that Defendants threatened and intimidated Plaintiff's family, including by sending two women to Eritrea to Plaintiff's family home. Second Amended Complaint ¶¶ 68 – 87. Documents related to this travel are plainly relevant. Defendants have not stated whether they are withholding documents on work-product grounds, nor have they explained how these documents constitute work product (as required by the Federal Rules). Defendants have not stated that they are withholding documents that are in the hands of third parties. To the extent these documents are in the hands of third parties, Defendants must request them. Moreover, to the extent that these "third parties" are employed by Defendants and/or serving as their agents, the documents must be produced.

## II. Documents related to Defendants' counterclaim damages

**RFP 22 (a) & (b)**:

Defendants filed their initial counterclaim on February 15, and their amended counterclaim on March 22, claiming over $75,000 in damages. Discovery closes on Friday. Defendants state that while they acknowledge that documents related to damages are discoverable, "Defendants have not at this time identified which documents they will use to support their claim for damages." Dkt. 179 at 9. Defendants cannot maintain a claim for damages without producing documents related to those purported damages.

## III. Defendants' or their counsel's public statements relevant to the claims and counterclaim

**RFPs 16 - 20**

Plaintiff has sought all communications that Defendants or their agents had with any employee of the Washington Post related to: (1) "Simret Semere Tekle, including regarding any alleged investigation of Plaintiff or any allegations that Plaintiff committed immigration or visa fraud;" (2) "Nouf bint Nayef Abdul-Aziz al Saud or Mohammad bin Abdullah al Saud;" (3) "the allegations recorded in Plaintiff's Form I-914, Supplement B, Declaration of Law Enforcement Officer for Victim of Trafficking in Persons;" (4) "the allegations contained in Plaintiff's Second Amended Complaint, the allegations contained in Defendants' Counterclaim, and/or the subject matter of this litigation;" (5) "Plaintiff's April 17, 2013 meeting with Jonathan Stearns, Arrika Drew, and Matthew Grady; Operation Palm Tree; and/or any investigations of Plaintiff or of Defendants." Interrogatories 16 - 20 (ECF No. 176-1 at 9-10). Defendants have refused,

arguing that these communications are not relevant to any claim or defense, because Defendants and not Plaintiff are the ones who have brought a claim for defamation.

These RFPs are directly relevant both to the parties' claims in this matter and to Plaintiff's defenses to the defamation counterclaim. First, Defendants' opinion on the merits of this litigation, or about Plaintiff, is plainly relevant to Plaintiff's claim. Second, Rule 26(b)(1) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or *defense*." (emphasis added). In their amended counterclaim, Defendants expressly allege that their counsel had communications with the Washington Post reporter about this case. The Washington Post article itself, which Defendants rely on in their counterclaim as the basis of their claims to harmed reputation in Virginia, mentions a statement given by Defense counsel to the Washington Post as well as a meeting where Defense counsel showed Washington Post employees a 15-minute video concerning Plaintiff. Plainly, all of these communications identified in the counterclaim are relevant. Yet Defendants refuse to provide these communications.

The communications requested in these RFPs are also directly relevant to Plaintiff's defenses. These communications show that Plaintiff's communication to the Washington Post was in direct response to and as a result of Defendants' campaign to generate negative press coverage and unwarranted immigration consequences for Plaintiff. They directly relate to the reason Plaintiff communicated with the Washington Post. This directly relates to Plaintiff's intent, an element of defamation. Plaintiff's reason for making the communication is also directly relevant to the jury's determination whether and in what amount to award punitive damages, which Defendants seek in their counterclaim. This discovery is needed for Plaintiff, who has already turned over all her communications to the Washington Post, is critically

necessary to show the context in which the allegedly defamatory statements were made. *See Schaecher v. Bouffault*, 290 Va. 83, 93 (2015) ("To determine whether a statement can be reasonably understood as stating or implying actual facts, whether those statements are verifiable, and whether they are reasonably capable of defamatory meaning, we must examine them in context."); *Reynolds v. Pionear, LLC*, No. 3:15CV209, 2016 WL 1248866, at *5 (E.D. Va. Mar. 25, 2016) ("Analyzing the context and general tenor of the statements here requires the Court to review the entirety of the alleged conversation between Pionear and the federal investigator.").

As the Virginia Supreme Court has observed:

> The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call.... Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

*Jordan v. Kollman*, 269 Va. 569, 580–81 (2005) (quoting *St. Amant v. Thompson,* 390 U.S. 727, 732 (1968)). Here, Defendants should be compelled to respond to these RFPs, which are critical to Plaintiff's defenses to the defamation counterclaim.

## IV. Documents related to witnesses

### RFP 1

Plaintiff moves to compel on a subset of RFP 1 requests: RFP 1(a), (b), (c), (d) and (f).[2]

---

[2] Because the requests were inadvertently mis-lettered, they are set out below to avoid confusion: For all Potential Witnesses,
  (a)   All statements by any Potential Witness concerning the claims, defenses, or subject matter of this litigation, regardless of date;
  (b)   All statements by any Potential Witness concerning the Plaintiff, regardless of date;
  (c)   All communications or correspondence between You and any Potential Witness concerning the Plaintiff and/or the claims, defenses, or subject matter of this litigation, regardless of date;
  (d)   All communications or correspondence between any Potential Witness and Plaintiffs' family members, regardless of date; . . .

6

Defendants objected to these requests only on the ground that the information sought is in the possession, custody, or control of third parties or is work product. Defendants did not state whether documents are being withheld on those grounds, which seem inapplicable to at least some of the Requests. For example, request (c), seeks communications by Defendants (not their lawyers) with a person who is now a potential witness and is limited to communications regarding the Plaintiff or the claims or defenses in this case. These communications by Defendants are not work product and should be in Defendants' possession, not the possession, custody or control of third parties. At the very least, Defendants must ask their current and former employees for responsive documents, since there is no indication that these employees are unwilling to cooperate with Defendants.[3]

**RFP 2 & 3**:

Documents concerning benefits provided to Potential Witnesses, including the payment of attorneys' fees or cash, is relevant to bias and therefore to Plaintiff's defenses. This information is discoverable. *E.g. Giraldo v. Drummond Co*., No.: 2:09-CV-1041, 2012 WL 12892789, at *3 (N.D. Ala. March 8, 2012) ("To be sure, Defendants are entitled to know whether Plaintiffs or their representatives offered anything of value to those individuals listed on Plaintiffs' Rule 26 disclosures, and they presumably have been given that information."). At the

---

(f)      All communications or correspondence between any Potential Witness and any government (including any agency, branch, commission, department, investigative body, legislature, legislative body or committee, court or administrative body, foreign or domestic), government official, non-governmental organization, international organization, the news media, or any third party related to the Plaintiffs and/or the claims, defenses, or subject matter of this litigation, regardless of date.

[3] Indeed, this week's deposition demonstrated that the potential witness employees are cooperating closely with Defense counsel.

deposition earlier this week, the witness testified that Defendants' counsel had obtained counsel for him and that he himself was not paying the bill. He also testified that he was being paid close to his full salary ($4,000 out of $4,500 per month) although he was not engaged in his usual duties (driving), as the Defendants are in Saudi Arabia. Plaintiff is entitled to know if Defendants are paying for the attorneys, including the attorneys in Saudi Arabia who have refused to make any witness available voluntarily. Moreover, Plaintiff has the right to know whether payments are being made to potential witnesses.

All this information is relevant to bias. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *U.S. v. Abel*, 469 U.S. 45, 52 (1984). And, when it comes to discovery, "[t]he bias of any witness is always relevant and therefore Defendants should be compelled to provide more thorough and detailed answers to the discovery requests at issue." *Thompson v. Allstate Prop. & Cas. Ins. Co.*, No. 5:18-CV-118, 2019 WL 438367, at *2 (N.D.W. Va. Feb. 4, 2019). Thus, "no intellectually honest argument can be made that the information sought by plaintiff . . . is not relevant to bias/prejudice impeachment, and, therefore, within the scope of discovery permitted by Rule 26(b)(1)." *Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001).

V.  **Photographs, video evidence and social media**

**RFPS 12 – 15, 22[4]**

**Video: RFPs 12 - 14**

---

[4] There are mistakenly two requests numbered 22.

Defendants fail to address Plaintiff's authority holding that parties must provide the full raw video footage, not just edited portions. Dkt. 176 at 9-10 (citing cases). Defendants must produce the raw footage used in the production of their video montage produced in this case, as sought in RFP 12.

**Photographs : RFP 15**

Plaintiff would accept photographs "sufficient to show" Ms. Tekle's bedroom; the children's rooms, bathrooms and play areas; the children's closets; and any laundry room utilized by Ms. Tekle. These were all areas of the house that Plaintiff identified as areas where she lived or worked, in her responses to Defendants' interrogatories and Defendants' questions at deposition. Defendants do not explain why photographs of Plaintiff's living space and work area, taken during the relevant time period, are outside the scope of discovery. These photographs would tend to show Plaintiff's living and working conditions, which are directly relevant to her trafficking claims.

**Social media and Email accounts: RFP 22**

At the hearing on April 5, 2019, on Defendants' motion, this Court required Plaintiff to detail what steps she had taken to collect email and social media accounts. Plaintiff's counsel provided an in-depth account of the efforts to review email and social media accounts. Here, absurdly, Defendants object that a request for a) the account name for their own email accounts, b) the account name for their own social media accounts, c) the account name for their own communications and messaging applications are "not in the possession, custody, or control of the Defendants." Dkt. 179 at 17. Finally, Defendants have emphasized that members of the royal

family have an "apparatus" to handle mundane matters of business, such as paying domestic workers. The objection that Defendants do not have access to "d) any email account used by Your office, apparatus, employees, agents, or household staff" to conduct their own family business is questionable.

Plaintiff asks only that, in light of their paltry production, the Court ask Defendants whether they took steps to do a similar review of all possible sources of responsive material. At a minimum, Plaintiff deserves to know whether Defendants' legal team included an attorney able to review documents in Arabic to assess their responsiveness to Plaintiff's requests. For example, did Defendants' counsel conduct a diligent search for emails and other communications in Arabic concerning Ms. Tekle's employment, her salary, her contract, or her escape? As a practical matter, how was this search conducted? And by whom? Defendants argue that this request is not related to "any party's claim or defense." They are mistaken. This request goes to the integrity of Defendants' entire document production (or lack thereof).

**Additional Requests**

**RFP 4:**

Plaintiff's RFP seeks "[a]ll documents related to Plaintiff, Plaintiff's family, and/or the claims, defenses, or subject matter of this litigation, that were provided to, shared with, or communicated to any government (including any government agency or instrumentality) or any news organization." Dkt. 176-1 at 8. Plainly, documents communicated to any news organization, particularly to the Washington Post, are relevant for the same reasons that Defendants' communications to the Washington Post are relevant (RFPs 16-20). Defendants'

communications about Plaintiff and her allegations to the Government are also plainly relevant, as evidence of Defendants' true views about this case.

Additionally, the Form I-914, Supp. B was issued two years after Plaintiff's meeting with the Government, and indicates that the federal agents conducted an investigation which began before Plaintiff met with the Government, and had not ended at the time the Form I-914 was issued. If Defendants communicated the information about Ms. Tekle that they attached to their counterclaim and contend demonstrates that her claims were false to the Government in response to a Government investigation prior to 2018, it may indicate that Defendants knew about Plaintiff's alleged defamatory statements many years before they brought their defamation claim. This could be directly relevant to Plaintiff's statute-of-limitations defense.

**RFP 24:**

Plaintiff's RFP 24 seeks communications with the Embassy of Saudi Arabia. Again, this request is particularly resonant after the deposition with the Al Saud's employee this week. That employee, a driver, stated that he was instructed by Mr. Al Saud's staff member to take Plaintiff's passport to the Saudi Embassy after Ms. Tekle escaped. It seems likely that the Defendants and the embassy would have communicated about this issue, which falls under "1) the employment of domestic workers or nannies in the United States." RFP 24.

Additionally, in their amended counterclaim, Defendants allege that they learned for the first time, on June 26, 2018, that Plaintiff "had made numerous false and defamatory statements about them." ECF No. 75 ¶ 28. But the meeting with federal agents at which Plaintiff reported her trafficking claims occurred in 2013. Plaintiff's Form I-914, Supplement B was issued in 2015. Defendants in their counterclaim allege that Plaintiff committed defamation by

11

transmitting this Form I-914, which contained what they contend are false statements, in 2018. Plaintiff has raised a statute of limitations defense. In such a case, when Defendants first learned of the statements may be key the application of the statute of limitations. Plaintiff produced a letter her prior counsel sent to the Saudi Arabian embassy in September 2016 detailing her claims. Whether the embassy communicated with Defendants about this letter would be relevant to when Defendants became aware of these claims.

Dated: May 23, 2019

Respectfully submitted,

Richard F. Levy (*pro hac vice*)
Jonathan A. Langlinais (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
(202) 639-6000
rlevy@jenner.com

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)
THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street NW, #104B
Washington, D.C. 20005

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org

(202)-716-8485
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| SIMRET SEMERE TEKLE,<br><br>    *Plaintiff*,<br><br>    v.<br><br>NOUF BINT NAYEF ABDUL-AZIZ AL SAUD, MOHAMMAD BIN ABDULLAH AL SAUD<br><br>    *Defendants*. | Case No.: 1:18-cv-211 |

**CERTIFICATE OF SERVICE**

I certify that I uploaded Plaintiff's Reply in Support of Her Motion to Compel Documents to the Court's CM/ECF system today, which will cause a Notice of Electronic Filing and a link to the document to be sent to all counsel of record.

May 23, 2019

/s/ Nicholas Cooper Marritz
Nicholas Cooper Marritz, VSB #89795
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
(703) 720-5607
nicholas@justice4all.org