**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| SIMRET SEMERE TEKLE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.: 1:18cv00211 (TSE/JFA) |
| | ) | |
| NOUF BINT NAYEF ABDUL-AZIZ AL SAUD | ) | |
| and MOHAMMAD BIN ABDULLAH AL SAUD, | ) | |
| | ) | |
| *Defendants*. | ) | |
| ———————————————————— | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR OBJECTIONS AND MOTION TO SET ASIDE A PORTION OF THE MAGISTRATE JUDGE'S MAY 10, 2019 DISCOVERY ORDER

Pursuant to Federal Rule of Civil Procedure 72(a), Defendants Mohammad bin Abdullah al Saud and Nouf bint Nayef Abdul-Aziz al Saud ("Defendants"), by and through undersigned counsel, submit this memorandum in support of their motion to set aside that portion of Judge Anderson's May 10, 2019 order compelling Defendants' to appear for depositions in the Eastern District of Virginia, as clearly erroneous and contrary to law.  *See* ECF 189.

### BACKGROUND

Defendants are a married couple who live in Saudi Arabia, over 6500 miles from Alexandria, VA.  They have been sued in this jurisdiction for conduct that allegedly occurred over seven years ago.  Plaintiff has no eyewitnesses to testify in support of her claims; she has given multiple conflicting accounts of the relevant events; and she has admitted furnishing false information (or as she calls them "mis-typings") on her visa submissions to the federal government.

Despite the fact that they have not lived in the United States since 2013, and have not visited the United States since 2017, Defendants promptly retained U.S. counsel, and timely commenced the defense of this lawsuit, after their caretaker found a copy of the complaint taped to the front door of their former residence in Great Falls, VA.  They have actively participated in this litigation, meeting all relevant deadlines, despite the fact that they live halfway around the world.

Defendants did not choose to be litigants in the Eastern District of Virginia.  They were, however, (correctly) informed by counsel that, under U.S. law, if they wanted to seek redress for Plaintiff's defamatory conduct (communications outside the context of this lawsuit, which culminated in an article published by the *Washington Post* identifying Defendants as "human traffickers"), such a claim had to be filed in connection with the litigation already pending in the Eastern District of Virginia—that the claim was (in a concept heretofore unknown to them) a "compulsory counterclaim."

Defendants timely filed their compulsory counterclaim, only to be told by the Magistrate Judge that, contrary to the law in every other reported decision on this issue, and contrary to a reported decision from a Magistrate Judge *in this jurisdiction*, the filing of their counterclaim was a choice that they had made, and by exercising this choice they had relinquished their right to be deposed at or near their home.

Defendants bring this appeal because:  (a) the Magistrate Judge's ruling is inconsistent with the existing law; (b) the Magistrate Judge's ruling, if it became the accepted law of this jurisdiction, would establish a different rule than that applicable in any other jurisdiction in the country; and (c) it is fundamentally unfair to make a defendant who may (and in this case, does) live thousands of miles away, make a choice between abandoning a potentially valid cause of action, or

relinquishing the right not to be dragged halfway around the world to sit for a deposition in a jurisdiction they had no role in choosing.

## FACTS

On February 23, 2018, Plaintiff filed her Complaint.  On June 22, 2018, Plaintiff filed her First Amended Complaint.  On September 7, 2019, this Court dismissed the First Amended Complaint, but granted Plaintiff leave to amend.  On September 27, 2018, Plaintiff filed her Second Amended Complaint alleging that Defendants held Plaintiff in involuntary servitude and breached Plaintiff's employment contract.  On April 5, 2019, Defendants filed their Fist Amended Counterclaim alleging they had been defamed by Plaintiff on the basis of communications related to but, outside the context of this lawsuit.

On February 5, 2019, the Court, pursuant to 28 U.S.C. § 636, referred "all future matters, including consideration of all dispositive motions" to United States Magistrate Judge John F. Anderson. ECF 66.  On April 1, 2019, Defendants' counsel reached out to Plaintiff's counsel with three sets of dates during which Defendants were available for deposition near their place of residence, Jeddah, Saudi Arabia—May 2-3, May 9-10, and May 16-17. *See* Exhibit A. On April 2, 2019, Plaintiff's counsel sent Defendants' counsel a letter citing nothing but E.D. Va. Local Rule 30(A) and stating that "[y]our insistence that Mr. and Mrs. Al Saud's depositions be taken in Jeddah and not in Virginia (or in the District, by agreement), where they lived for many years, seeks an unfair advantage, contrary to applicable rules." *See* Exhibit B. Plaintiff's counsel's letter did not mention any safety concerns, *id.*, much less any "profound" ones. ECF 120 at 2.

On April 4, 2019, Defendants' counsel responded to Plaintiff's counsel's letter citing cases from federal courts throughout the country, including a court in the Eastern District of Virginia applying E.D. Va. Local Rule 30(A), holding that compulsory counterclaimants are entitled to

protection from deposition anywhere other than their residence or business location. *See* Exhibit C. Defendants not only provided substantial support for their position that Defendants are entitled to be deposed near their place of residence, but also offered to save all parties the expense of conducting foreign depositions by making themselves available for deposition via videoconference during the Court's normal business hours.

On April 8, 2019, without consulting Defendants' counsel, Plaintiff's counsel noticed Defendants' depositions for "April 23, 2019, for seven hours beginning at 9:00 a.m.," "April 24, 2019, for seven hours beginning at 9:00 a.m.," "April 25, 2019, for seven hours beginning at 9:00 a.m.," and "April 26, 2019, for seven hours beginning at 9:00 a.m.," in Falls Church, Virginia. *See* Exhibit D. None of these dates were dates on which Defendants indicated they were available.  On April 10, 2019, Defendants' counsel sent Plaintiff's counsel another letter, this time citing: (1) binding precedent from the Fourth Circuit holding, on facts strikingly similar to those in this case, that a defamation counterclaim was compulsory; and (2) 11 cases from federal courts throughout the country holding that compulsory counterclaimants are protected from deposition anywhere other than their residence or business location. *See* Exhibit E. In their April 10, 2019 letter, Defendants' counsel once again offered to make their clients available for deposition via videoconference during the Court's normal business hours. On April 12, 2019, Plaintiff's counsel responded to Defendants' offer to make themselves available for deposition, both in person and via videoconference, in Jeddah, Saudi Arabia, by stating that "we are not prepared to agree to take the depositions in Saudi Arabia, as opposed to Virginia," that "the law on this issue in the Eastern District of Virginia is [not] as clear as you state," and that "[w]e will follow up with you next week." *See* Exhibit F. Plaintiff's counsel's email again did not mention any safety concerns, *id.*, and Plaintiff's counsel did not follow up the following week.

After Plaintiff's counsel informed Defendants' counsel that Plaintiff's counsel would not agree to take depositions in Saudi Arabia, Plaintiff's counsel waited 14 days to follow up. Plaintiff's counsel did not contact Defendants' counsel or the Court to resolve the issue of Defendants' deposition location for two weeks. When Plaintiff's counsel finally responded, their April 26, 2019 letter, which Defendants' counsel thought would provide case law in support of Plaintiff's counsel's position, cited but one case, *Swimways Corp. v. Zuru Inc.*, 2014, WL 12603190 (E.D. Va. June 6, 2014), characterizing it as "binding" authority. *See* Exhibit G. To Defendants' counsel's surprise, in the one case Plaintiff's counsel cited in support of Plaintiff's position, Judge Leonard applied E.D. Va. Local Rule 30(A) and held that "when a defendant/counterclaimant is determined to be a compulsory counterclaimant, then the defendant remains entitled to protection from deposition anywhere but his or her residence or business location and is not required to submit to a deposition at the place designated by the plaintiff within the district." *Swimways*, 2014 WL 12603190, at *1 (internal quotation marks and citation omitted). Plaintiff's counsel then, for the first time, stated that they had "safety concerns" about traveling to the Kingdom.  Exhibit G at 2. Ironically, the articulation of Plaintiff's counsel's purported safety concerns came just two days after Plaintiff's counsel had the Court, by means of a motion for Letters Rogatory, compel five *other* Saudi Arabian citizens to join Plaintiff's counsel for up to 10 days of depositions in the Kingdom of Saudi Arabia. ECF 109.

Despite the facts that: (1) the only published decision within the Eastern District of Virginia to have considered the question held that, under E.D. Va. Local Rule 30(A), compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business location, and (2) every federal court from without the E.D. Va. to have considered the question has held that compulsory counterclaimants are entitled to protection from deposition

anywhere other than their residence or business location, and (3) the plain language of E.D. Va. Local Rule 30(A), which provides that the requirement that plaintiffs and counterclaimants submit to depositions in the Eastern District of Virginia does not apply to "involuntary plaintiffs;" Judge Anderson held that E.D. Va. Local Rule 30(A) requires defendants with compulsory counterclaims to choose between giving up their claims or giving up their right to be deposed at their place of residence.[1]  He then ordered Defendants to travel from their home in Saudi Arabia to Virginia for depositions.  Defendants appeal from that order.

Defendants also appeal from Judge Anderson's order that, even if E.D Va. Local Rule 30(A) did not force defendants with compulsory counterclaims to give up one of their rights, it would be unduly burdensome for Plaintiff to conduct Defendants' depositions via videoconference or for Plaintiff's ten-member legal team, the majority of which are men, to conduct Defendants' depositions in Saudi Arabia because of alleged Saudi Arabian practices pertaining to women, Jewish people, and those who criticize the Royal Family.

## ARGUMENT

I.    **Judge Anderson's reading of E.D. Va. Local Rule 30(A) requiring defendants with compulsory counterclaims to choose between giving up their claims or giving up their right to be deposed at their place of residence is contrary to law.**

A.    **Defendants' defamation counterclaim is compulsory.**

Defendants' counterclaim against Plaintiff—alleging that Plaintiff defamed Defendants by communicating to The Washington Post the same false allegations that form the basis of Plaintiff's complaint—is clearly compulsory. The Fourth Circuit "has suggested four inquiries to determine

---

[1] Hr'g Tr. at 42:3-7, May 10, 2019 ("I understand that under the *Painter* decision they may have waived their right to assert their defamation claims, but they made the decision to do it. And I think part of that decision in making it is that they now need to be subject to a deposition here in this jurisdiction.").

if a counterclaim is compulsory: (1) Are the issues of fact and law raised in the claim and counterclaim largely the same?; (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule?; (3) Will substantially the same evidence support or refute the claim as well as the counterclaim?; and (4) Is there any logical relationship between the claim and counterclaim?" *CSR Inc. v. Foster-Bey*, 2017 WL 1929439, at *3 (E.D. Va. May 10, 2017) (citing *Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988)). "A court need not answer all these questions in the affirmative for the counterclaim to be compulsory." *Painter*, 863 F.2d at 331 (4th Cir. 1988). "Rather, the tests are less a litmus, more a guideline." *Id.*

The Fourth Circuit's application of these "guidelines" to a fact pattern nearly identical to that of this case eliminates any doubt about whether Defendants' defamation counterclaim is compulsory. *See Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988) (Wilkinson, J.). In *Painter*, plaintiff filed a federal claim against defendant under 42 U.S.C. § 1983 alleging that defendant, a police officer, had violated her constitutional rights while arresting her. After plaintiff filed her complaint, but before defendant filed his answer, plaintiff made false allegations about defendant before her local town council and to a local newspaper. Defendant counterclaimed for defamation and the district court, finding that the defamation counterclaim was compulsory, exercised ancillary jurisdiction over the counterclaim. The jury returned a verdict for defendant on his defamation counterclaim and awarded him damages of $5,000 and punitive damages of $15,000. Plaintiff appealed on jurisdictional grounds and Judge Wilkinson, writing for the Fourth Circuit, held that, because defendant's defamation counterclaim was compulsory, the district court's exercise of ancillary jurisdiction was appropriate.

In *Painter*, the Fourth Circuit found that all four inquires counseled in favor of finding that defendant's defamation counterclaim was compulsory. The district court's analysis, which the

Fourth Circuit affirmed, applies with equal force to the facts of this case. As to the first inquiry, "[t]he central issue in both the claim and counterclaim is identical: What transpired during [Plaintiff's employment in 2011-2012]? The jury, in essence, [will be] faced with irreconcilably conflicting evidence and [will be] required to choose which version to accept or reject." *Id.* at 331- 32. As to the second inquiry, "[e]xamining the facts here, one finds that [a] jury verdict against [Plaintiff] on her [human trafficking] claim[s] necessarily determine[s] the issue of what happened during her [employment]. Thus, in subsequent state action she could well face an issue preclusion bar as to relitigating those facts." *Id.* at 332. As to the third inquiry, "[a]ll of the witnesses, except the newspaper editor and witnesses testifying to damages, [will] limit[] their testimony to a single factual issue—what transpired during [Plaintiff's employment]? It is hard to imagine a case in which the evidence bearing on the two claims is so closely identical." *Id.* And, as to the fourth inquiry, "the truth of [Defendants'] version of the events of [Plaintiff's employment with Defendants], is the central issue of fact in both the claim and counterclaim. They are inextricably and logically connected." *Id.* Given the factual similarities between *Painter* and this case, *Painter* controls this Court's decision on the issue of whether Defendants' defamation counterclaim is compulsory. As in *Painter*, this Court should find that Defendants' defamation counterclaim is compulsory. Indeed, Plaintiff does not appear to contest that point.

**B.     The plain language of E.D. Va. Local Rule 30(A) makes clear that the requirement to submit to deposition in the E.D. Va. does not apply to "involuntary plaintiffs" like Defendants.**

E.D. Va. Local Rule 30 (A) provides as follows:

Any party, or representative of a party (e.g., officer, director, or managing agent), filing a civil action in the proper division of this Court must ordinarily be required, upon request, to submit to a deposition at a place designated within the division. Exceptions to this general rule may be made on order of the Court when the party, or representative of a party, is of such age or physical condition, or special circumstances exist, as may reasonably interfere with the orderly taking of a deposition at a place within the division. A defendant, who becomes a

counterclaimant, cross-claimant, or third-party plaintiff, shall be considered as having filed an action in this Court for the purpose of this Local Rule. *This subsection shall not apply to an involuntary plaintiff or an interpleader plaintiff.*

(emphasis added).  Defendants-counterclaimants are plaintiffs in this case.  They have brought a civil suit in this court against Plaintiff for defamation.   Indeed, courts often use the term "counterclaim *plaintiff*" to refer to defendants-counterclaimants.  *See Palisades Collections LLC v. Shorts*, 552 F.3d 327, 343 (4th Cir. 2008) ("In state court, Palisades Collections, as a plaintiff, filed a collection claim against Shorts, as a defendant. Shorts, as a *counterclaim plaintiff*, then filed a class action against Palisades Collections, as a counterclaim defendant, and against AT & T, as an additional defendant joined under the West Virginia analog to Federal Rule of Civil Procedure 13(h).") (emphasis added); *Avaya, Inc. v. Mitel Networks Corp.*, 460 F. Supp. 2d 690, 691 (E.D. Va. 2006) (Ellis, J.) (describing a compulsory counterclaimant as "the counterclaim *plaintiff*") (emphasis added).

Defendants-counterclaimants are not just plaintiffs in this case, they are *involuntary* plaintiffs.  Before Plaintiff brought her civil suit against Defendants in the Eastern District of Virginia, Defendants had no intention of bringing a civil suit against Plaintiff in the Eastern District of Virginia.  Under Fed. R. Civ. P. 13(a), however, "[a] pleading must state as a counterclaim any claim that at the time of its service the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and . . . does not require adding another party over whom the court cannot acquire jurisdiction."  It is only because of this rule—which requires defendants to state their compulsory counterclaims in their responsive pleadings or risk losing them forever—that Defendants-compulsory counterclaimants asserted their defamation claim.  *See Wilson v. Perry*, 470 F. Supp. 2d 610, 626-27 (E.D. Va. 2007) (failing to plead a compulsory counterclaim bars a party from bringing a later independent action

on that claim).  Facing the risk of losing their defamation counterclaim forever, Defendants pled

their counterclaim against Plaintiff "contrary to or without choice."  *See* https://www.merriam-

webster.com/dictionary/involuntary (defining "involuntary" as "done contrary to or without

choice").  Defendants' compulsory counterclaims, like all other compulsory counterclaims, were

brought involuntarily.  *Id.* (defining "involuntary" as "compulsory").  Therefore, as "involuntary

plaintiffs," Defendants-compulsory counterclaimants are exempt from E.D. Va. Local Rule

30(A)'s requirement that they submit to depositions within the E.D. Va.

Defendants are aware that the Federal Rules of Civil Procedure make reference to one

particular type of "involuntary plaintiff."   Rule 19(a)(2) provides that a required party (as defined

in Rule 19(a)(1)) "who refuses to join as a plaintiff may be made either a defendant or, in a proper

case, an involuntary plaintiff."  The Federal Rules of Civil Procedure do not purport to define

"involuntary plaintiff," and there is no suggestion that the mechanism described in Rule 19(a)(2)

is the only means of becoming an "involuntary plaintiff."  Likewise, there is no evidence that the

drafters of E.D. Va. Local Rule 30(A) had Federal Rule 19(a)(2) in mind when they used the term

"involuntary plaintiff." [2]  To the contrary, Defendants submit that the term "involuntary plaintiff"

should be accorded its everyday, plain language meaning, and that a "compulsory

counterclaimant" meets that standard.  Defendants submit that such an interpretation is particularly

compelling when (as demonstrated below) such a reading brings the Eastern District of Virginia

into conformance with every other jurisdiction that has had occasion to address this issue and,

equally importantly, produces a fundamentally fair outcome for the litigants.

---

[2] The Local Rules do not define the term "involuntary plaintiff."  The Local Rules also do state that the term is to be interpreted in accordance with the definition of "involuntary plaintiff" as used in any other context.  The Local Rules, which span 98 pages, use the term "involuntary plaintiff" only this one time.

C.      **The only published decision from within the E.D. Va. to have considered the question of whether E.D. Va. Local Rule 30(A) requires compulsory counterclaimants to submit to depositions in the E.D. Va. held that it does not.**

In *Swimways Corp. v. Zuru, Inc.*, 2014 WL 12603190 (E.D. Va. June 5, 2014), "[t]he sole issue before the Court [was] whether Plaintiffs c[ould] compel Zuru (or, more precisely, a corporate representative of Zuru), a corporate defendant/compulsory counterclaimant with its principal place of business in China, to appear for the Rule 30(b)(6) deposition in Norfolk, Virginia, the forum chosen by Plaintiffs in filing suit." *Id.* at *1. Judge Leonard unequivocally found that, under E.D. Va. Local Rule 30(A), a defendant/compulsory counterclaimant cannot be so compelled. *Id.* After quoting the plain language of the E.D. Va. Local Rule 30(A), including the portion stating that "[t]his subsection shall not apply to an involuntary plaintiff," Judge Leonard held that "when a defendant/counterclaimant is determined to be a compulsory counterclaimant, then the defendant remains entitled to protection from deposition anywhere but his or her residence or business location and is not required to submit to a deposition at the place designated by the plaintiff within the district." *Id.* (internal quotation marks and citation omitted). The common law is premised on the notion that like cases should be treated alike, and litigants are entitled to a certain level of predictability in the application of legal rules. In this case, the *only* reported case from this jurisdiction supports Defendants position (not to mention every reported decision from outside this jurisdiction.) This Court should have a compelling reason to depart from the announced rule of this jurisdiction, and overturn the legitimate expectations of the parties. No such reason exists in this case.

**D.      Every federal court from outside of the E.D. Va. to have ever considered the question has, for good reason, held that compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business location.**

This Court should interpret the "involuntary plaintiff" exception of E.D. Va. Local Rule 30(A) to apply to compulsory counterclaimants, not just because the plain language of the Rule invites it, and the only reported decision from within the Eastern District of Virginia Rule has done the same, but also because every federal court to have ever considered the question has found good reason to hold that compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business location.  The general rule applied in federal courts throughout the country is that when a defendant files a compulsory counterclaim, like Defendants' defamation counterclaim, he remains entitled to protection from deposition anywhere other than his residence or business location. *See, e.g., Smartgene, Inc. v. Advanced Biological Labs*. SA, 2012 WL 13046338, at *2 (D.D.C. Feb. 6, 2012) ("If a counterclaim is compulsory, a defendant corporation remains entitled to protection from deposition anywhere but at its principal place of business, but if a counterclaim is permissive, a defendant-counter plaintiff may be deposed in the forum where the suit is pending.") (citation omitted); *DeGeer v. Gillis*, 2010 WL 3732132, at *2 (N.D. Ill. Sept. 17, 2010) ("Finally, DeGeer has not argued that Defendants' counterclaim is permissive. So, the fact that Defendants filed a counterclaim is not sufficient to require them to travel to Chicago for their depositions.") (citation omitted); *Gering v. Fraunhofer USA, Inc.,* 2008 WL 4427608, at *1 (E.D. Mich. Sept. 30, 2008) ("Because the counterclaim is compulsory, [defendant counter-claimant] remains in the position of a defendant for purposes of the location of depositions.") (citation omitted); *Pub. Works Supply Co. v. Soleno, Inc.*, 2008 WL 11389371, at *2 n.2 (D. Mass. May 22, 2008) ("If a counterclaim is compulsory, a defendant remains entitled to protection from deposition anywhere but his or her residence or business location.") (internal

quotation marks and citation omitted); *Lending Sols., Inc. v. Mortg. Now, Inc.*, 2008 WL 11407375, at *1 (N.D. Ga. Jan. 7, 2008) ("The Gibbs court reviewed these two cases, and summarized them by saying '[b]oth courts . . . held that filing a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) did not strip a defendant of that protection [not being compelled to appear in the forum state].'") (alterations in original); *Kuest Corp. v. Aitrol, Inc.*, 2006 WL 3592941, at *1 (W.D. Tex. Dec. 8, 2006) (Defendant's "filing of what likely is a compulsory counterclaim, does not serve to displace the general rule concerning the location of the corporate deposition."); *Gibbs v. National Railroad Passenger Corp.*, 170 F.R.D. 452 (N.D. Ind. 1997) ("Both district judges acknowledged the general rule that a defendant could not be compelled to appear in the forum state for a deposition. Both courts also held that filing a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) did not strip a defendant of that protection."); *Sears v. Am. Entm't Grp., Inc.*, 1995 WL 66411, at *2 (N.D. Ill. Feb. 13, 1995) ("However, if the counterclaim is compulsory, the defendant/counter plaintiff remains entitled to protection from deposition anywhere but for his or her residence or business location.") (citation omitted); *Fortune Mgmt., Inc. v. Bly*, 118 F.R.D. 21, 22 (D. Mass. 1987) ("All sides also concede that the filing of a permissive counterclaim results in a defendant counterplaintiff being treated as a party plaintiff for purposes of any depositions, *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982), and that, in general, the principle that the deposition of a defendant should be taken at his or her residence or place of business holds true when a compulsory counterclaim is filed.") (citation omitted); *Zuckert v. Berkliff Corp.*, 96 F.R.D. 161, 162 (N.D. Ill. 1982) ("If a counterclaim is compulsory, a defendant remains entitled to protection from deposition anywhere but his or her residence or business location; on the other hand, if a counterclaim is permissive, a defendant-counterplaintiff may be deposed at the place of trial.") (citation omitted); *Wisconsin*

13

*Real Estate Inv. Tr. v. Weinstein*, 530 F. Supp. 1249, 1253 (E.D. Wis. 1982) ("The parties agree that in general a defendant is entitled to protection from deposition anywhere except at his place of business or residence, and that a defendant who brings a counterclaim does not lose that protection if the counterclaim is compulsory but is put in the position of a plaintiff if the counterclaim is permissive and may be deposed at the place of trial.") (citation omitted); *Pinkham v. Paul*, 91 F.R.D. 613, 615 (D. Me. 1981) ("While the court may order a defendant to appear at any convenient place, case law indicates that 'it will be presumed that the defendant will be examined at his residence or place of business or employment.' 4 Moore's Federal Practice s 26.70 (1-3), at 26-514. This is so regardless of whether the defendant has asserted a counterclaim, provided it is a compulsory counterclaim.") (citation omitted); *Cont'l Fed. Sav. & Loan Ass'n v. Delta Corp. of Am.*, 71 F.R.D. 697, 700 (W.D. Okla. 1976) ("If the Counterclaim is a compulsive counterclaim pursuant to Rule 13(a), Fed. Rules Civ. Proc., then Defendant should not be considered to be in the same position as a party plaintiff which selected the forum.").

"Underlying this rule appears to be the concept that it is the plaintiffs who bring the lawsuit and who exercise the first choice as to the forum[;] . . . [t]he defendants, on the other hand, are not before the court by choice." *Gering*, 2008 WL 4427608, at *1 (citation omitted). This Court too has recognized that "because a non-resident defendant ordinarily has no say in selecting a forum, an individual defendant's preference for a situs for his or her deposition near his or her place of residence—as opposed to the judicial district in which the action is being litigated—is typically respected." *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 471 (E.D. Va. 2010) (Ellis, J.). Every federal court to have considered the question of whether defendants-compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business address has held that they are because, in filing a compulsory counterclaim and thereby becoming an

"involuntary plaintiff," defendants have done nothing to select the forum in which they are litigating. This Court should read E.D. Va. Local Rule 30(A) in accordance with the universally accepted principle that compulsory counterclaimants are entitled to protection from depositions in forums which they had no say in selecting.

Because (1) the plain language of E.D. Va. Local Rule 30(A) makes clear that the requirement that plaintiffs and counterclaimants submit to depositions in the E.D. Va. does not apply to "involuntary plaintiffs" (compulsory counterclaimants), (2) the only published decision within the E.D. Va. to have considered the question held that, under E.D. Va. Local Rule 30(A), compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business location, and (3) every federal court from without the E.D. Va. to have considered the question has held that compulsory counterclaimants are entitled to protection from deposition anywhere other than their residence or business location, Judge Anderson's reading of E.D. Va. Local Rule 30(A) requiring Defendants with compulsory counterclaims to choose between giving up their claims or giving up their right to be deposed at their place of residence is contrary to law.

**II.    Judge Anderson's finding that extraordinary circumstances exist warranting a departure from the presumption that Defendants-compulsory counterclaimants should be deposed near their place of residence is clearly erroneous because conducting depositions via videoconference would serve all of Plaintiff's legitimate discovery-related objectives and not be unduly burdensome.**

Neither the law of Saudi Arabia nor its geographic location could create any impediments to Plaintiff achieving her legitimate discovery-related objectives if Judge Anderson had simply ordered Defendants' to make good on an already issued offer to save everyone the costs of foreign depositions by making themselves available for depositions via videoconference.[3] "Ample case

_____

[3] Plaintiff has not argued that the issues involved in Defendants' depositions are too complicated to examine via videoconference. That is likely because they are not. The central issue in this case

law recognizes that a videoconference deposition can be an adequate substitute for an in-person deposition, particularly when significant expenses are at issue or when the deposition will cover a limited set of topics." *United States v. One Gulfstream G-V Jet Aircraft Displaying Tail No. VPCES*, 304 F.R.D. 10, 12 (D.D.C. 2014); *see also Gee v. Suntrust Mortgage, Inc.*, 2011 WL 5597124, at *3 (N.D. Cal. Nov. 15, 2011) ("[Defendant's] argument that conducting the depositions via videoconference would be detrimental to its ability to question and observe the deponents is unconvincing. Parties routinely conduct depositions via videoconference, and courts encourage the same, because doing so minimizes travel costs . . . .") (citation and quotation omitted).

While there is a "time difference between [Saudi Arabia] and Virginia," when Judge Anderson considered ordering that Defendants' depositions should take place in other than their residence or business location, he should have considered whether "disputes *requiring judicial intervention* are likely" and "whether defendants' willingness to conduct the depositions in [Saudi Arabia] during normal business hours in Virginia could mitigate such concerns." *In re Outsidewall Tire Litig.,* 267 F.R.D. at 474 (emphasis in original). As to the first inquiry, Defendants have not, at any point in this litigation, exhibited "uncooperative or obstructionist discovery behavior and the assertion of meritless or near-frivolous objections"—the "type of conduct warrant[ing] the forecast that disputes will arise in the course of the depositions that will likely require judicial intervention." *Id.*[4] As to the second inquiry, Defendants have offered to make themselves available

is whether the Plaintiff worked for the Defendants voluntarily or involuntarily. The deposition testimony will involve domestic routines within the home and personal interactions between Defendants and their domestic employees. This is not a complicated patent or antitrust case. The relevant issues can be easily explored either via videoconference.

[4] Even though Defendants have not exhibited any "uncooperative or obstructionist discovery behavior and the assertion of meritless or near-frivolous objections," in ruling on Plaintiff's motion to compel, Judge Anderson demanded more. *See* Hr'g Tr. at 30:7-14, May 10, 2019 ("I need a

for deposition via videoconference during Judge Anderson's normal business hours, thereby eliminating the cost of conducting foreign depositions[5] and any concern about the parties' ability to seek judicial intervention during the foreign depositions. *Id.* (vacating a magistrate's order for failure to consider "whether defendants' willingness to conduct the depositions in Dubai during normal business hours in Virginia could mitigate such concerns."). Having offered to make themselves available for deposition via videoconference during Judge Anderson's normal business hours, Judge Anderson had no basis to order that the law of Saudi Arabia or its geographic location would create any impediments to Plaintiff achieving her legitimate discovery-related objectives. *Id.* at 473.

### III. Judge Anderson's finding that extraordinary circumstances exist warranting a departure from the presumption that Defendants-compulsory counterclaims should be deposed near their place of residence  is clearly erroneous because he also applied the wrong legal standard with regard to Defendants' frequent traveler status.

As this Court has observed, "taken together, [the cases] indicate that the presumption [that defendants should be deposed at their residence or business location] is overcome where the record presents unique or distinctive circumstances demonstrating . . . that, by virtue of the [defendant's] regular course of activity in the alternative location, the burden of requiring the [defendant] to be deposed there is minimal and the savings to the deposing party are substantial." *In re Outsidewall Tire Litig.*, 267 F.R.D. at 473. Judge Anderson, however, did not apply the correct legal standard. In ruling that extraordinary circumstances exist sufficient to overcome the presumption, Judge

---

little bit more from you as to why you don't think that would be a situation that might arise. And, you know, I'll be up front with you, you've been litigating this case aggressively, as people who have been, feel like they've been wrongfully accused would want to do, and I don't want you to think I'm putting that into that's bad. I'm just saying that is the view that I suspect would continue in any deposition that comes up in this case.").

[5] Defendants have received a quote of $11,355 to conduct Defendants' depositions via videoconference.  Defendants spent over $19,000, in costs alone, to conduct the deposition of Plaintiff, given the need to furnish an interpreter.

Anderson stated that "[t]hey travel frequently. *Whether it's to the Eastern District of Virginia or not*, but it's clear that they, you know, frequent, meaning within the last year or two years, they're accustomed to travel, some indication, that they have their own method of transportation to travel. So clearly they wouldn't be having that if they weren't anticipating on using it." Hr'g Tr. 43:3-9, May 10, 2019 (emphasis added).[6] As this Court made clear in *Outsidewall*, "it is important to note that the correct inquiry is not whether a deponent is, without more, a frequent traveler; a requirement to travel to a place where one does not do business or typically visit is likely to be at least as inconvenient for the frequent traveler as for the occasional traveler. Rather, the correct inquiry is whether the deponent frequently travels to the forum district or the proposed deposition situs." *In re Outsidewall Tire Litig.*, 267 F.R.D. at 473.

Had Judge Anderson applied the correct legal standard, he would likely have noted that Defendants' "regular course of activity in the [E.D. Va.]" is not such that "the burden of requiring the [Defendants] to be deposed there is minimal." *Id.* Instead Judge Anderson applied a whole host of legal tests that have nothing to do with whether "the burden of requiring the [Defendants] to be deposed [in the E.D. Va.] is minimal." *Id.* Indeed, just prior to issuing his ruling, Judge Anderson asked "[s]o why isn't maintaining, caring for, paying for taxes and, you know, upkeep of that very expensive residential piece of property, doing business in the Commonwealth of Virginia?" Hr'g Tr. 20:18-21, May 10, 2019. Whether Defendants pay for maintenance or upkeep of a home in Virginia is irrelevant to whether the burden of traveling over 6,500 miles to be deposed in Virginia is minimal to Defendants—two Saudi Arabian residents who have not been anywhere in the United States since 2017. Had Judge Anderson applied the correct legal standard,

---

[6] Defendants have not lived in Virginia since 2013 and have not been anywhere in the United States since 2017. *See* Exhibits K and L.

he would have discovered that the burden to Defendants of being deposed in the Eastern District of Virginia is greater than what Plaintiff would bear were Defendants deposed in-person in Saudi Arabia.[7] If Defendants are required to be deposed in the Eastern District of Virginia, they will have to secure travel and accommodations for at least three individuals, each of the Defendants and—because they are members of the Saudi Royal Family—at least one security officer. If Defendants were deposed in-person in Saudi Arabia, Plaintiff would only need to secure travel and accommodations for one individual, the attorney conducting Defendants' depositions. Because the burden of requiring Defendants to be deposed in the Eastern District of Virginia is substantial, and greater than the burden Plaintiff would bear were Defendants deposed in-person Saudi Arabia, Judge Anderson's decision to deviate from the presumption that Defendants are entitled to be deposed near their place of residence is contrary to law.

**IV.    Setting aside that Defendants' offer to make themselves available for depositions via videoconference renders clearly erroneous any finding that the law of Saudi Arabia or its geographic location make conducting depositions there unduly burdensome, Judge Anderson made additional clearly erroneous findings of fact that affected his ruling.**

Not only did Judge Anderson apply the wrong legal standard, but he also made clearly erroneous factual findings in determining that Plaintiff had overcome the presumption regarding Defendants' deposition location.  In issuing his ruling, Judge Anderson stated that "you know, this situation is one in which in order, and given the nature of plaintiff's counsel of being *primarily female*, having a significant number of members of the Jewish religion, make it difficult for them to travel there, deemed to have sponsors to be there that sponsorship could be, you know, addressed or not addressed, you know, here I'll get you a sponsor, and then, you know, that sponsor would

---

[7] Defendants have, of course, offered to make themselves available for deposition via videoconference.  Defendants' offer remains open to Plaintiff, who has refused to accept it for over seven weeks.

have to meet them at the airport or do certain things like that." Hr'g Tr. 42:15-23, May 10, 2019 (emphasis added). Judge Anderson's factual finding was clearly erroneous. A review of the docket or of the certification of service attached to this motion reveals that six members of Plaintiff's ten-member legal team are male.[8]

The question for Judge Anderson was whether taking the depositions in Saudi Arabia would be unduly burdensome for Plaintiff. Judge Anderson found that it would be because Plaintiff's counsel was "primarily female." Hr'g Tr. at 42:17, May 10, 2019. It appears that Judge Anderson did not know that Plaintiff had six male attorneys at her disposal when he issued his ruling. If he did, he surely would have not stated that Plaintiff's counsel was "primarily female" and would not have held that it was unduly burdensome for Plaintiff to send one of those six male attorneys— Le'ake Fesseha, Andrew B. Cherry, Jonathan A. Langlinais, Nicholas Cooper Marritz, Simon Sandoval Moshenberg or Richard F. Levy—to depose the Defendants.

---

[8] Judge Anderson also indicated that, despite binding precedent from the Fourth Circuit holding that defamation claims are compulsory, *Painter v. Harvey*, 863 F.2d 329 (4th Cir. 1988) (Wilkinson, J.), his ruling was based on his view that Defendants' compulsory counterclaim was *less compulsory* than a patent infringement compulsory counterclaim. *See* Hr'g Tr. at 41:16-25, May 10, 2019 ("And, you know, I understand that the distinction between compulsory counterclaims or permissive counterclaims can be considered, you know, yes and no, binary, whatever. A patent infringement case, in which you've got a counterclaim for patent infringement or a counterclaim for invalidity, really are mirrors of each other. And I think the situation in that case, the facts were such that -- are much different in this case. So my initial ruling is that Rule 30(A) does apply in this case."). Defendants would suggest that, contrary to Judge Anderson's ruling, the distinction between compulsory and permissive counterclaims *is* binary. Certainly, Defendants could not later go to some other court and argue against dismissal of a subsequent claim by taking refuge in Judge Anderson's belief that their claim was somehow *less compulsory* than some other types of claims (particularly in light of *Painter*). Judge Anderson's resistance to applying the precedent of the Fourth Circuit—on an issue that was not even meaningfully contested by the Plaintiff—is difficult to fathom.

**V.    Even if Defendants had not offered to conduct their depositions via videoconference and Judge Anderson had not made clearly erroneous factual findings about the composition of Plaintiff's counsel, his finding that Saudi Arabian law makes conducting depositions there unduly burdensome for Plaintiff is still clearly erroneous.**

Plaintiff's counsel's "profound" safety concerns were all clearly manufactured for purposes of their motion to compel, but Judge Anderson credited them anyway.  Plaintiff's counsel's supposed concerns about Saudi Arabia, including "safety issues," "[r]estrictions on women," "prohibition[s] on criticism of the royal family," and "terrorist activity and elevated danger," were all manufactured for purposes of overcoming the strong presumption that Defendants should be deposed near their place of residence. In their April 2, 2019 letter to Defendants' counsel regarding Defendants' deposition location, Plaintiff's counsel did not mention any of these concerns. In their April 12, 2019 email to Defendants' counsel regarding Defendants' deposition location, Plaintiff counsel did not mention any of these concerns. And, crucially, Plaintiff's counsel did not mention any of these concerns when, on April 24, 2019, they asked Judge Anderson to "request international assistance to compel the appearance of Her Royal Highness Princess Maha bint Mohammed bin Ahmad Al Sudairi, Okba Gebreyesus, Alaa Hamid, Nelien Okba, and Necitas Megbanua Dmailig, (collectively, "the Witnesses"), at an interview conducted by counsel for the Plaintiff in the above-captioned matter, not to exceed at period of seven hours if in English or 14 hours if translation is required, **at a time and place convenient for the Witnesses** sometime before May 24, 2019." ECF 109-1 at 1 (emphasis added). Indeed, Plaintiff's counsel requested Judge Anderson's assistance in securing five depositions, of up to two-days each, for a total of up to 10 days of depositions in the Kingdom of Saudi Arabia. On April 29, 2019, Judge Anderson granted Plaintiff's request and issued Plaintiff's proposed letters rogatory to the Kingdom of Saudi Arabia. As it stood on May 8th, had the Kingdom of Saudi Arabia granted Plaintiff's counsel's request and the witnesses that Plaintiff's counsel sought to

depose required translation, Plaintiff's counsel would have been in the Kingdom of Saudi Arabia taking depositions for 10 of the 16 days then remaining in the discovery period.

Plaintiff's counsel would not have requested Judge Anderson's assistance in securing five potentially 14-hour depositions of Saudi Arabia-based witnesses "at a time and place convenient for the [w]itnesses" if they had any of the concerns they now claim to have and Judge Anderson should have seen that. As to safety issues, were the "local laws and safety concerns in Saudi Arabia [that] preclude it as an option for depositions," not applicable on April 24, 2019? As to restrictions on women, were none Plaintiff's four female attorneys going to participate in the 10 days of depositions they requested on April 24, 2019?[9] As to prohibitions on criticism of the royal family, were Plaintiff's counsel unaware that, if Judge Anderson issued their proposed letter requesting international assistance to compel the appearance of "Her Royal Highness Princess Maha bint Mohammed bin Ahmad Al Sudairi," Plaintiff's counsel would be deposing a member of the royal family? ECF 109-1 at 1 (emphasis added). As to terrorist activity and elevated danger, did concerns about "[m]issile attacks" only become serious enough to avoid depositions in Saudi Arabia after Plaintiff's counsel requested five two-day depositions in Saudi Arabia? ECF 120 at 7. The request for 10 days of depositions in Saudi Arabia, including of a member of the Saudi Royal Family, is a tacit admission that Plaintiff's counsel does not genuinely have any of the concerns that Judge Anderson considered in finding that Plaintiff had overcome the strong presumption in favor of Defendants being deposed near their residence or business location. Because Judge Anderson already assisted Plaintiff's counsel in their attempt to secure depositions in Saudi Arabia for the majority of the days then remaining in the discovery period, Plaintiff's counsel should not have

---

[9] Agnieszka Fryszman, Martina Vandenberg, and Sarah Bessell all appear on Plaintiff's Motion to Issue Letters Rogatory to the Kingdom of Saudi Arabia.

been heard to argue that the location for those 10 days of depositions is too dangerous. Judge Anderson not only heard Plaintiff's argument, he agreed with it. That was clear error.

Judge Anderson credited Plaintiff's "profound" safety concerns knowing that Plaintiff's counsel's representations with regard to those concerns lacked all candor. Not only did Plaintiff's counsel request that Judge Anderson order that Saudi Arabia is too dangerous and too burdensome a jurisdiction in which to conduct depositions after requesting 10 days of depositions in Saudi Arabia, but Plaintiff's counsel made such a request while openly soliciting representations requiring travel to, and the provision of legal services in, Saudi Arabia. Four members of Plaintiff's ten-member legal team are attorneys at the law firm of Jenner & Block: Richard Levy, Jonathan Langlinais, Andrew Cherry, and Satenik Harutyunyan. To this day, Jenner & Block's website, in an effort to acquire clients in need of legal services in particular jurisdictions around the world, boasts as follows:

> Our FCPA practice literally spans the globe. We have conducted dozens of FCPA investigations, compliance reviews and due diligence counseling for major corporate clients in jurisdictions across the world, including Afghanistan, Algeria, Argentina, Azerbaijan, Austria, Albania, Belgium, Bolivia, Brazil, Cambodia, Colombia, China, Croatia, Czech Republic, Democratic Republic of Congo, Ecuador, England, Equatorial Guinea, Egypt, France, Gabon, Germany, Ghana, Greece, India, Indonesia, Iraq, Japan, Korea, Kuwait, Mexico, Myanmar, Nepal, the Netherlands, the Philippines, Romania, the Russian Federation, **Saudi Arabia**, Slovenia, Switzerland, Taiwan, Thailand, United Arab Emirates, United States, Uzbekistan, Venezuela and Zimbabwe.

*See* Exhibit H at 2 (emphasis added). In fact, Jenner & Block's Investigations, Compliance and Defense Practice Group even provides a map of the jurisdictions in which it regularly practices, which happens to include the Kingdom of Saudi Arabia. *See* Exhibit I. And, two of the four co-chairs of that practice group are women. *See* Exhibit J at 1. When it is convenient for Plaintiff's counsel's to have concerns about providing legal services in Saudi Arabia, they have them. Otherwise, Plaintiff's counsel and their colleagues do not for a second hesitate, and, in fact,

frequently take affirmative steps to secure the opportunity to provide legal services in the Kingdom of Saudi Arabia. *See* ECF 109; Exhibit H; Exhibit I. [10]

IV.    **Defendants' legitimate fear of prosecution, which Judge Anderson may or may not have considered, provides an extraordinary circumstance counseling in favor of enforcing the presumption that Defendants are to be deposed near their place of residence.**

Plaintiff is suing Defendants for violations of criminal statutes.  She asks that this Court award her damages for Defendants' "violations of federal laws trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1590; forced labor in violation of 18 U.S.C. § 1589; unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced labor in violation of 18 U.S.C. § 1592; and involuntary servitude in violation of 18 U.S.C. § 1584."  ECF 53 at 23.  Plaintiff's counsel    asserts    that    Defendants    are    under    criminal    investigation. https://www.washingtonpost.com/local/social-issues/saudi-royals-a-mansion-in-a-quiet-dc-suburb--then-allegations-of-a-servants-mistreatment/2018/09/07/1936f0fe-a662-11e8-8fac-12e98c13528d_story.html?noredirect=on&utm_term=.9deea86c0fa1 ("The only people I know who are under investigation are the defendants".).  Defendants raised their concerns about the federal investigation with Judge Anderson.  But despite their obvious concerns about the investigation, Judge Anderson ordered Defendants to come to the United States for days of depositions.   Judge Anderson clearly should have considered the risks presented by the

---

[10] The implications of Judge Anderson's ruling are really quite extraordinary.  A judicial officer of the United States has now, in effect, ruled that it is too dangerous for women, and Jewish people, to travel to the Kingdom of Saudi Arabia to conduct business.   If Judge Anderson is correct, then the Court should take steps to publicize his ruling, to protect the unsuspecting businesspeople who travel there on a daily basis.  Of course, Judge Anderson reached his conclusion in reliance on the subjective, unreasonable, and demonstrably pre-textual fears of Plaintiff's 10-person legal team, none of whom, apparently, have ever actually been to the country.  This is not generally accepted as valid grounds for judicial fact-finding.

investigation due to Plaintiff's false reports of human trafficking when he issued that order.  *See Farquhar v. Shelden*, 116 F.R.D. 70, 73 n.5 (E.D. Mich. 1987) (ordering that defendant's deposition was to take place outside of the United States where "[a]t oral argument, counsel for [defendant] point[ed] out that the defendant's return to the United States for his deposition could subject him to immediate arrest and possible incarceration").  Instead of considering Defendants legitimate concerns, Judge Anderson stated that "I'm inclined to not even hear it."  Hr'g Tr. 38:19, May 10, 2019. Because it is not clear that Judge Anderson even considered Defendants' concerns about the federal investigation, this Court should overturn his decision and order that Defendants' are entitled to be deposed near their place of residence.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court reject Judge Anderson's reading of E.D. Va. Local Rule 30(A) requiring Defendants with compulsory counterclaims to choose between giving up their claims or giving up their right to be deposed at their place of residence as contrary to law and order that the presumption in favor of Defendants being deposed near their place of residence is not overcome by the circumstances presented in this case.

Dated: May 24, 2019

Respectfully submitted,

*/s/ John L. Brownlee*
John L. Brownlee (VSB #37358)
Stuart G. Nash (*pro hac vice*)
David L. Haller (*pro hac vice*)
Robert J. Farlow (VSB #87507)
HOLLAND & KNIGHT LLP
1650 Tysons Boulevard, Suite 1700
Tysons, VA  22102
Telephone: 703.720.8600
Facsimile: 703.720.8610

john.brownlee@hklaw.com
stuart.nash@hklaw.com
david.haller@hklaw.com
robert.farlow@hklaw.com

*Counsel for Defendants Mohammad bin
Abdullah al Saud and Nouf bint Nayef
Abdul-Aziz al Saud*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of May, 2019, a true copy of the foregoing was served via

electronic case filing to:

Nicholas Cooper Marritz
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

Richard F. Levy
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
rlevy@jenner.com

Jonathan A. Langlinais
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
jalanglinais@jenner.com

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
afryszman@cohenmilstein.com

Le'ake Fesseha
Le'ake Fesseha Law Office
901 S. Highland Street, Suite 312
Arlington, VA 22204
leakef@hotmail.com

Martina Elizabeth Vandenberg
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
mvandenberg@htlegalcenter.org

Sarah Linnell Bessell
The Human Trafficking Legal Center
1030 15th Street NW, Suite 1048
Washington, DC 20005
sbessell@htlegalcenter.org

Andrew B. Cherry
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
acherry@jenner.com

Satenik Harutyunyan
Jenner & Block LLP
1099 New York Avenue NW, Suite 900
Washington, DC 20001
sharutyunyan@jenner.com

Simon Sandoval Moshenberg
Legal Aid Justice Center
6066 Leesburg Pike, Suite 520
Falls Church, VA 22041
nicholas@justice4all.org

*Counsel for Plaintiff Simret Semere Tekle*

*/s/ John L. Brownlee*
John L. Brownlee (VSB #37358)