UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

SIMRET SEMERE TEKLE,                                    Case No.: 1:18cv211

        *Plaintiff*,

    v.

NOUF BINT NAYEF ABUL-AZIZ AL SAUD,
MOHAMMAD BIN ABDULLAH AL SAUD

        *Defendants*.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO SET ASIDE
THE MAGISTRATE JUDGE'S MAY 17, 2019 DISCOVERY ORDER ON THE
<u>NUMBER OF ALLOWABLE REQUESTS FOR ADMISSION</u>**

Defendants close their brief with the remarkable and misleading lament that "Judge Anderson has not required Plaintiff to respond to a single request for admission from the Defendants. This seems unjust." Dkt. 197 at 10.  This statement is not true.

Magistrate Judge Anderson required Plaintiff to respond to three requests for admissions regarding each of 259 different documents, for a total of 777 responses.  Indeed, Magistrate Judge Anderson did Defendants a courtesy: the Court rewrote their compound (and frequently incomprehensible) requests into clear, concise requests and directed Plaintiff to answer each part.

Magistrate Judge Anderson's decision that the sheer volume of the remaining requests served by Defendants was oppressive, unduly burdensome, and not proportional to the needs of the case is well-supported by ample case law.  Defendants ignore the authority from within this Circuit holding that the 1,994 requests for admission they propounded here "clearly impose an undue burden."  *See, e.g., Wigler v. Electronic Data Systems Corp.*, 108 F.R.D. 204, 205 (D. Md.

1985); Dkt 126 at 3 (citing cases).  As *Wigler* explained, filing so many requests is "unjustifiable" and answering that many "in a conscientious and timely way would have taxed the powers of Hercules."  Indeed, *Wigler* considered 1,664 requests so oppressive, that it *sua sponte* considered the imposition of sanctions but stopped short, holding "it should be clear henceforth to all counsel that the plain overkill in requesting admissions will be viewed with utmost disfavor."  *Wigler*. 108 F.R.D. at 207.  As it was, answering the requests ordered by Judge Anderson took Plaintiff and counsel well over 25 hours (a rate of roughly 2 minutes per question).

Defendants have not met their heavy burden to overturn Magistrate Anderson's well-reasoned decision, particularly as it falls well within the established precedent in this Circuit. Defendants' request for 19 additional requests for admission ignores that Plaintiff already responded to 777 other requests.  Moreover, at the initial meet and confer on this issue, Plaintiff suggested that Defendants withdraw their requests for admissions and re-serve Plaintiff with a reasonable number of the requests that Defendants considered most important, proportionate to the needs of the case.  Defendants refused, insisted that their 1,994 requests were reasonable and demanded that Plaintiff answer all of them.  Judge Anderson disagreed.  Defendants should not be rewarded for their intransigence, particularly as they were unable to cite to Magistrate Judge Anderson a single case where any court required a party to answer an equivalent number of RFAs.

Costs for opposing this unwarranted appeal should be awarded to Plaintiff.

# I. <u>PROCEDURAL BACKGROUND</u>

Late on April 24, 2019, the last day to submit written discovery, Defendants served

Plaintiff with 1,994 requests for admission, constituting one hundred twenty-one (121) pages.

Exhibit 1.

Plaintiff's counsel immediately notified Defendants' counsel that the sheer volume of

requests was abusive and that many of the requests were improper.  On April 26, 2019, counsel

met and conferred.

Plaintiff's counsel suggested that a stipulation on the authenticity of the relevant

documents was a less burdensome path forward for both sides.  Ex. 2, Email from Nicholas

Marritz to Defendants' counsel (Apr. 26, 2019).  Plaintiff also suggested that Defendants

withdraw their requests for admissions and re-serve Plaintiff with a reasonable number

proportionate to the needs of the case.  *See id*.  Plaintiff explained that:

> We noted that on April 24, you served Plaintiff's counsel with 1,994 requests for
> admissions. We stated our belief that such a large number of RFAs is on its face
> unduly burdensome and disproportionate to the needs of a one-plaintiff case, and
> that this position is supported by ample case law. We also noted that these RFAs
> do not serve the purpose of the Federal Rules that govern discovery. We noted that
> many of the individual requests for admission are also substantively improper for
> various reasons, such as calling for legal conclusions or asking for the admission
> of facts in pleadings that have since been superseded.

*Id.*

Defendants' counsel declined to withdraw or lower the number of requests, stating that

1,994 requests was reasonable.  *Id.*

Plaintiff moved for a protective order.  Dkt Nos. 126 & 160.

Magistrate Judge Anderson found that the caselaw was unambiguous: the close to 2,000

requests for admissions were oppressive, unduly burdensome and not proportional to the needs

of the case.  Ex. 3, May 17, 2019 H'rg Tr. at 5:1-9.

Judge Anderson granted the protective order in part, but directed Plaintiff to answer a number of requests.

First, Magistrate Judge Anderson recognized the requests were compound ("there are really three things that are, to some extent, included in that request for admission," (Ex. 3, H'rg Tr. at 6:21-24) and effectively rewrote the requests.  He directed Plaintiff to answer the following:

First, for each of 238 videos or photographs, Judge Anderson required Plaintiff to respond to the following: (1) is the person depicted you? (2) is it you at the time of your employment? And (3) is the exhibit authentic?   Ex. 3, Hr'g Tr. at 6:22–7:7.  If properly counted consistent with the Federal Rules, this is a total of 714 requests.

Second, for each of 14 bank records, Magistrate Judge Anderson required Plaintiff to answer (1) whether the document relates to her bank account; (2) whether the document accurately reflects transactions in her bank account; and (3) whether the record is authentic.  Ex. 3, Hr'g Tr. at 43:7–10.  If properly counted consistent with the Federal Rules, this is a total of 42 requests.

Third, for each of the seven travel records, Magistrate Judge Anderson required Plaintiff to answer (1) whether she had traveled to the location while employed by the Defendants; (2) whether she had stayed at the hotel represented in the record; and (3) whether the record is authentic.  If properly counted consistent with the Federal Rules, this is a total of 21 requests.

None of the photographs, videos, bank records or travel records were documents produced by Plaintiff.  All were documents produced by Defendant. Magistrate Anderson recognized that it was likely that Plaintiff could not admit the document was authentic, and

specifically separated Defendants' compound requests into portions that could be admitted. Ex. 3, H'rg Tr. at 6-7.

At the hearing, Defendants asked Magistrate Anderson to reconsider his ruling on the additional 56 requests "that weren't really relevant to any pictures or any of that stuff," Ex. 3, H'rg Tr. at 44:15-21. The Court declined to do so in light of the sheer volume of requests, that other than the 777 requests described above, it was granting the motion for a protective order. *Id.* at 6:15-19.

Plaintiff thus responded to a total of nearly 800 separate inquires and spent well over 25 hours doing so. Exhibit 4, Pl.'s Resp. to Defs.' First Set of Req. for Admis.

## II. <u>STANDARD OF REVIEW</u>

Magistrate Judge Anderson's order on the number of allowable requests for admission that Plaintiff must answer is entitled to "great deference." *Carlucci v. Han*, 292 F.R.D. 309, 311–12 (E.D. Va. 2013) ("Only if a magistrate judge's decision [on a non-dispositive matter] is 'clearly erroneous or contrary to law' may a district court judge modify or set aside any portion of the decision."); *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. 2010) ("The 'contrary to law' standard ordinarily suggests a plenary review of legal determinations, but many courts have noted that decisions of a magistrate judge concerning discovery disputes and scheduling should be afforded great deference.").

Defendants bear the burden of showing that Magistrate Judge Anderson's ruling was clearly erroneous, and that burden is a heavy one: "The leading treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as 'extremely difficult to justify.'" *Carlucci*, 292 F.R.D. at 312 (quoting 12 Wright & Miller, Federal Practice & Procedure § 3069 (2d ed. 1997)). Under Rule 72(a)'s deferential standard, the Court may not reverse "simply because it would have decided the case differently. Rather, a reviewing court

must ask whether ... it is left with the definite and firm conviction that a mistake has been

committed." *DietGoal Innovations LLC v. Wegmans Food Markets, Inc.*, 993 F. Supp. 2d 594,

600 (E.D. Va. 2013), quoting *United States v. Wooden*, 693 F.3d 440, 451 (4th Cir. 2012)

(quotation and punctuation omitted).

## III.  <u>ARGUMENT</u>

**A.    Magistrate Anderson's conclusion that the sheer volume of requests served by Defendants was oppressive, unduly burdensome and not proportional to the needs of the cases is well-supported by ample case law**

While the Federal Rules of Civil Procedure do not state a limit on the number of requests

for admission available to a party, under Rule 26(c), a court may limit discovery to protect a

party from "annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ.

Proc. 26(c)(1).  Courts routinely limit requests for admission where the volume of requests is

oppressive, unduly burdensome, and disproportionate to the needs of the case.

The number of requests for admission propounded by Defendants – 1,994 – was, by any

measure, oppressive.  *See Wigler v. Electronic Data Systems Corp.*, 108 F.R.D. 204, 205 (D. Md.

1985) (granting protective order because 1,664 requests for admission "clearly impose an undue

burden": "[a]nswering these requests in a conscientious and timely way would have taxed the

powers of Hercules, even before he cleaned the Augean Stables."); *see also Misco, Inc. v. U.S.

Steel Corp.*, 784 F.2d 198, 206 (6th Cir. 1986) (2,028 requests for admissions was abuse of

discovery process, particularly as many were improper); *Stokes v. Interline Brands Inc*, No. C-

12-05527 JSW (DMR), 2013 WL 6056886, at *2 (N.D. Cal. Nov. 14, 2013) ("sheer volume" of

1,059 requests for admission "is unduly burdensome and oppressive"); *Gannon v. United States*,

No. CIV.A.03-6626, 2006 WL 2927639, at *1 (E.D. Pa. Oct. 6, 2006) (1,407 requests "are

grossly excessive in number and are therefore abusive, burdensome and oppressive. The burden

and expense of responding to these requests for admissions far outweighs any possible benefit").

It is conceivable that a case could exist in which thousands of RFAs might be justified.  This is

not that case.  Ms. Tekle, a single plaintiff, has brought breach of contract and forced labor

claims against a husband and wife for abuse spanning just seven months.  This is not a complex

antitrust multi-district litigation involving multiple corporate defendants.

Courts routinely grant protective orders when faced with far fewer requests than the

thousands served here, routinely disallowing requests for admission that run into the mere

hundreds on the grounds that they are abusive, unreasonable, and oppressive. *Rapp v. Laufers*,

No. 17-CV-948-BBC, 2019 WL 121105, at *2 (W.D. Wis. Jan. 7, 2019) ("362 RFAs is just too

many"); *Byard v. City and County of San Francisco*, No. 16-cv-00691-WHA, 2017 WL 988497,

at *2 (N.D. Cal. Mar. 15, 2017) (531 requests for admission "abusive, oppressive, and overly

burdensome"); *Margulis v. Euro-Pro Operating, LLC*, No. 4:12-CV-2371 CAS, 2013 WL

5442702, at *4 (E.D. Mo. Sept. 30, 2013) (154 RFAs is too many: "sheer number of admissions

sought by plaintiff in his first request for admissions is, on its face, abusive of the process

intended by Rule 36"); *Powell v. Tosh*, No. 5:09CV-121-R, 2011 WL 1740211, at *3 (W.D. Ky.

May 5, 2011) (300 requests for admission are too many and "an abuse of the discovery

process"); *Taylor v. Great Lakes Waste Servs.*, No. CIV.A. 06-CV-12312DT, 2007 WL 422036,

at *2 (E.D. Mich. Feb. 2, 2007) (297 requests for admission are "oppressive and unduly

burdensome"); *Joseph L. v. Connecticut Dep't of Children & Families*, 225 F.R.D. 400, 403 (D.

Conn. 2005) (163 requests for admission are "excessive to the point of being abusive"); *Leonard

v. Univ. of Delaware*, No. CIV.A. 96-360 MMS, 1997 WL 158280, at *7 (D. Del. Mar. 20, 1997)

(800 requests are "oppressive").

Indeed, the court in *Wigler*, considered 1,664 requests so oppressive, that it *sua sponte* considered the imposition of sanctions but stopped short, holding "it should be clear henceforth to all counsel that the plain overkill in requesting admissions will be viewed with utmost disfavor." *Wigler*. 108 F.R.D. at 207.

Plaintiff cited this authority to Judge Anderson and Defendants failed to distinguish it. Plaintiff has not found a case where a court denied a protective order when faced with the staggering number of requests served here. To the contrary, courts routinely grant protective orders when faced with far fewer requests, routinely disallowing requests for admission that run into the mere hundreds because the volume is abusive, unreasonable, and oppressive.

Defendants cite but two cases. In *Synthes v. Globus Medical*, No. 04-1235, 2006 WL 3486544 (E.D.Pa. Nov. 29, 2006), the plaintiffs had served separate sets of requests of 126, 64, 250 and 118, for a total of 622 in a complex case involving corporate defendants. The requests concerned the authenticity, possession or use of 23 documents – in short, the requests are similar to the 777 requests Plaintiff has already answered. *Booth Oil Site Admin. Grp. v. Safety-Kleen Corp.*, 194 F.R.D. 76, 78 (W.D.N.Y. 2000) is another complex case, involving the investigation, removal and remediation of hazardous substances released at a waste oil reclamation facility. There, the court ordered Defendants to answer 39 Requests – far fewer than Plaintiff has answered here.

**B.      Defendants are not seeking 19 Requests but 19 on top of the 777 Requests already answered by Plaintiff**

At the inception of the meet and confer process, Plaintiff suggested that Defendants withdraw their voluminous requests and that in exchange, they would answer a reasonable number of Requests for Admission of Defendants' choosing.  Defendants refused.[1]

Plaintiff was then forced to move for a protective order, which was granted.  After forcing Plaintiff to expend time and effort briefing this issue (now for the second time) as well as time and effort answering the previously ordered RFAs, Defendants should not be permitted to say, in effect, "nevermind."

Magistrate Anderson ruled that Plaintiff had to answer a substantial number of RFAs.  And she has already done so.  If what Defendants are really arguing is that Magistrate Anderson picked the "wrong" RFAs and they really would have preferred to have Plaintiff answer these 19, rather than the 777 Plaintiff already answered, then Defendants should have accepted Plaintiff's offer to prioritize and re-serve reasonable number of requests at the start of meet-and-confer process.  Magistrate Anderson selected a substantial number of requests that he required Plaintiff to answer and his selection was reasonable in light of the sheer volume of requests that Defendants served. Courts overwhelmingly recognize that the sheer volume of requests originally served by Defendants makes even sorting the good from the bad unduly burdensome.

---

[1] Courts have adopted the approach suggested by Plaintiff, holding it was not in the interest of judicial economy to sort through thousands of requests and instead required the propounding party to re-serve 10 or 25 proper requests for admission.  E.g., *Rapp* , 2019 WL 121105, at *4 (holding "[t]he court is not going to sort through the RFAs to point out which ones it deems acceptable amidst the hundreds that defendants properly have challenged" and granting pro se plaintiff a "mulligan" to serve limited discovery); *Byard*, 2017 WL 988497, at *2 (requiring party to identify 10 RFAs out of hundreds served);  *Stokes*, 2013 WL 6056886, at *2 (N.D. Cal. Nov. 14, 2013)  But courts have emphatically not done so after Defendants rejected the same offer and Plaintiff has spent a significant amount of time and resources answering the previously ordered RFAs.

*See BAT LLC v. TD Bank*, N.A., No. 15CV5839RRMCLP, 2018 WL 3626428, at *6 (E.D.N.Y. July 30, 2018 (holding 157 requests are overly burdensome and that "It emphatically is not the job of the Court to correct a party's sloppy drafting or intentionally overreaching discovery requests"); *Wigler*, 108 F.R.D. at 205 ("the defendant's requests represent an attempt not just to nail down the core facts of the case, but also to pick every nit that a squad of lawyers could possibly see in it"); *Pittsburgh Hotels Ass'n v. Urban Redevelopment Auth. of Pittsburgh*, 29 F.R.D. 512, 513 (W.D. Pa. 1962) ("Where valid and invalid requests are intermingled, the court need not attempt to sort the good from the bad").

**C.     Plaintiff lodged valid and timely objections to Defendants' 19 RFAs, but Defendants did not address them before the Magistrate Judge and fail to cite those to the Court now**

Plaintiff served valid and timely objections to the RFAs.  Exhibit 5.   Defendants argue on appeal that their requests are proper, Dkt. 197 at 9, but do not address the objections actually served by Plaintiff.  Nor did they do so in their briefing before the Magistrate Judge. Dkt. 152 at 11. The objections should be raised to and resolved by the Magistrate Judge in the first instance. It is thus premature to address the objections and propriety of each request.  To the extent the court nonetheless wishes to evaluate the RFAs individually, Plaintiff has identified the following major improprieties.

As an initial matter, Rule 36 is not a discovery tool in the traditional sense, but rather a procedure for obtaining admissions for the record of facts already known, eliminating the necessity of proving essential undisputed and peripheral issues of fact; and narrowing the range of issues for trial.  *E.g. Byard*, 2017 WL 988497 at *1; *Wigler*, 108 F.R.D. at 206; *Robinson v. Stanley*, No. 06 C 5158, 2009 WL 3233909, at *2 (N.D. Ill. Oct. 8, 2009); Fed. R. Civ. P 36, advisory committee's notes to 1970 amendment..  The Requests should be simple and direct so

that they can be readily admitted or denied, and the statement of fact sought to be admitted must be phrased so that it can be admitted or denied without explanation. *Tamas v. Family Video Movie Club, Inc*., 301 F.R.D. (citing *United Coal Co. v. Powell Constr. Co*., 839 F.2d 958, 968 (3d Cir.1988)).

It is blackletter law that requests that seek to establish central facts in dispute or to admit conclusions of law are improper. *E.g. BAT LLC v. TD Bank, N.A*., No. 15CV5839RRMCLP, 2018 WL 3626428, at *6 (E.D.N.Y. July 30, 2018); *Taylor v. Great Lakes Waste Servs.*, No. CIV.A. 06-CV-12312DT, 2007 WL 422036 (E.D. Mich. Feb. 2, 2007); *Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006) ("It is still true, however, that one party cannot demand that the other party admit the truth of a legal conclusion.")  For example, several of Defendants' requests ask Plaintiff to admit legal conclusions: **Request No. 1976**  "You alleged in your Second Amended Complaint that 'Defendants knowingly obtained Ms. Tekle's forced and coerced labor through a scheme, plan, pattern and practice of physical …. abuse.' Admit that statement is untruthful." (ellipsis in original); **Request No. 1979**: "You allege in your Second Amended Complaint that 'Defendants kept Ms. Tekle in a condition of involuntary servitude through physical … coercion.' Admit that statement is untruthful." (ellipsis in original).  These requests are impermissible under Fed. R.C.P 36 because, among other deficiencies, they do not seek the admission of the truth of facts, the application of law to facts, opinions about either, or an admission about the genuineness of a document. *See* Fed. R.C.P 36(a)(1)(A) & (B).  The requests are also compound.

Likewise, several of the requests "are argumentative and clearly not drafted to narrow the issues to be tried in this case." *Byard*, 2017 WL 988497 at *2.  For example, Defendants ask: **Request No. 1967** "Admit that, while working for Defendants, there was no physical

impediment to you walking down the Defendants' street *to any place you wanted to go*"
(emphasis added) and **Request No. 1950,** with no time-period specified**,** "Admit that there were
occasions, during the Defendants' travels, when you were unsupervised by the Defendants, their
agents, or their employees."  These are not proper requests for admission.


D.     **The Court should award Plaintiff the costs she has incurred in litigating the
       propriety of Defendants' serving 1,994 RFAs.**

This appeal originally arose out of Plaintiff's motion for a protective order. Dkt. 197 at 1.
Magistrate Judge Anderson agreed with Plaintiff that it was facially unreasonable to serve 1,994
requests for admission in this case. The impropriety of serving nearly 2,000 RFAs should have
been obvious—ample case law describes such a high number of requests as oppressive, overly
burdensome and unjustifiable; Defendants should never have served so many requests; they
should never have forced Plaintiff to seek a protective order explaining that to the Magistrate
Judge; and they should never have appealed the Magistrate Judge's plainly correct ruling on that
issue to this Court. Plaintiff's attorneys have wasted a large amount of completely unnecessary
time addressing Defendants' obviously improper conduct. Fortunately, the Federal Rules give
the Court a means to ensure that Defendants do not repeat this conduct in the future.

Under Federal Civil Rule 26, if a party brings a motion for a protective order and wins,
the court must award the movant its reasonable attorneys' fees in accordance with Fed. R. Civ. P.
37(a)(5). Fed. R. Civ. P. 26(c)(3). The only exceptions are if the movant filed the motion without
first making a good-faith effort to resolve the matter without the court's help; if the opposing
party's conduct was substantially justified, or if other circumstances would make an award of
fees unjust. *Id.* No such concerns apply here: Plaintiff's counsel made every effort to get the
Defendants to withdraw their nearly 2,000 RFAs and re-serve the Plaintiff with a reasonable

number. Defendants have argued time and again that serving 1,994 RFAs is reasonable, despite a

deafening chorus of case law (and a decision by the Magistrate Judge) telling them that they are

wrong. Defendants' recalcitrance is not remotely justified, and no other circumstances would

make a fee award unjust. Plaintiff thus respectfully requests her attorneys' fees, both for

opposing this motion and for her previous successful motion for a protective order.

## IV.  **CONCLUSION**

For the above reasons, Defendants' motion should be denied.


Dated: June 14, 2019                                     Respectfully submitted,

                                                        /s/ Nicholas Cooper Marritz
                                                        Nicholas Cooper Marritz, VSB #89795
Richard F. Levy (*pro hac vice*)                        LEGAL AID JUSTICE CENTER
Andrew B. Cherry (*pro hac vice*)                       6066 Leesburg Pike, Suite 520
Sati Harutyunyan (*pro hac vice*)                       Falls Church, VA 22041
JENNER & BLOCK LLP                                      (703) 720-5607
353 N. Clark Street                                     nicholas@justice4all.org
Chicago, IL 60654
(312) 923-2648
rlevy@jenner.com

Agnieszka M. Fryszman (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue NW, Fifth Floor
Washington, DC 20005
(202) 408-4600
afryszman@cohenmilstein.com

Le'ake Fesseha (*pro hac vice*)
LE'AKE FESSEHA LAW OFFICE
901 S. Highland Street, Suite 312
Arlington, VA 22204
(703) 302-3410
leakef@hotmail.com

Martina E. Vandenberg (*pro hac vice*)
Sarah L. Bessell (*pro hac vice*)

THE HUMAN TRAFFICKING LEGAL CENTER
1030 15th Street, NW #104B
Washington, DC 20005
(202) 716-8485
mvandenberg@htlegalcenter.org

*Counsel for Plaintiff Simret Semere Tekle*